UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.

PROCAPS S.A., a Colombian
sociedad anonima,

      Plaintiff,

v.

PATHEON INC., a Canadian
corporation, SOBEL USA, INC., a
Delaware corporation, and BANNER
PHARMACAPS EUROPE B.V.,
a Netherlands private limited
liability company,

      Defendants.

_____/

## COMPLAINT

Plaintiff, Procaps S.A. ("Procaps"), a Colombian sociedad anonima, sues Defendants,

Patheon Inc. ("Patheon"), a Canadian corporation, Sobel USA, Inc., a Delaware corporation, and

Banner Pharmacaps Europe B.V. ("Banner Europe"), a Netherlands private limited liability

company, and alleges:

### Nature of the Action

1.    Procaps brings this action for declaratory and injunctive relief, and damages,

under antitrust and other competition laws as a result of Patheon's unlawful business conduct and

gross disloyalty in connection with Patheon's imminent acquisition of companies organized

under the "Banner" trade name.

2.    Procaps is a worldwide manufacturer and developer of softgel capsules and

related services.

3.      Patheon provides many types of commercial manufacturing and pharmaceutical development services to the global pharmaceutical industry, and it enjoys a substantial worldwide marketing network with advantageous customer and business relationships.

4.      Patheon, which does not itself have softgel commercial manufacturing capabilities, desired to enter the competitive softgel business by acquiring Banner.  A Banner acquisition would have transformed Patheon into one of Procaps' fiercest competitors.

5.      In July, 2011, during its first visit to Procaps in Colombia, Patheon mentioned that it had previously evaluated the acquisition of an existing softgel capsule commercial manufacturer, including Banner, among others. However, because such an acquisition was not progressing, it offered Procaps an enticing, exclusive arrangement to provide softgel products and services to Patheon's customers through its worldwide network.

6.      Thereafter, on January 10, 2012, Procaps and Patheon entered into an exclusive Collaboration Agreement to develop a new brand of softgel products to be offered to customers. The Collaboration Agreement provided Patheon with the means to offer branded softgel development and manufacturing services to customers, while giving Procaps access to Patheon's vast marketing network and customer relationships around the world, including the United States.

7.      By bringing together the different specialized abilities and resources of Procaps and Patheon and by enabling each company to expand its market presence beyond what either could do or was doing alone, this strategic alliance expressed in the Collaboration Agreement enhanced competition in the softgel capsule development and manufacturing market.

8.      Trusting Patheon's loyalty to the Collaboration Agreement, and pursuant to the Agreement, Procaps disclosed to Patheon its proprietary information about the development and

manufacturing of softgel products, including confidential information regarding its manufacturing capacity, pricing strategies, cost structure, key development strategies and models, as well as detailed strategic business plans. In furtherance of the Collaboration Agreement, in January 2012, Patheon announced by press release a new offering of a branded softgel capsule development and manufacturing service called P-Gels™, and in early May 2012, officially launched P-Gels™.  P-Gels™ are currently marketed on Patheon's website, among other places.

9.      Within only a few months of the launch of P-Gels™, however, and less than a year into the Collaboration Agreement, in gross derogation of its obligations, Patheon informed Procaps that it was proceeding with an acquisition of Banner after all.  In apparent recognition that the acquisition of that major competitor would fundamentally alter the arrangement Patheon had only recently entered into with Procaps under the Collaboration Agreement, Patheon requested that Procaps modify its business plans with Patheon.

10.      In fact, as detailed in this Complaint, the Banner acquisition will fundamentally alter the Collaboration Agreement from an efficiency enhancing arrangement between non-competitors (Patheon and Procaps) that promotes competition into an agreement that unlawfully restrains trade between companies who are now vigorous competitors.

11.      As a direct result of Patheon's acquisition of Banner, Procaps and Patheon will become horizontally-situated competitors in the softgel manufacturing and development services market rendering the Collaboration Agreement illegal under antitrust and competition laws.  The situation is all the more egregious because, under the Collaboration Agreement, Patheon is the primary customer contact handling all matters relating to lead qualification, proposals, price quotations, and proposed engagement terms; Patheon has the authority and responsibility to

determine how, where, and to whom P-Gels™ will be sold (or not sold) in the territory covered by the Agreement; and Patheon and Procaps have agreed through the Collaboration Agreement to not compete in the Territory.  Additionally, Procaps has given Patheon confidential, trade secret, and privileged information with regard to pricing strategies and cost structure.

12.     The fundamental problems Patheon has created are manifest.  After the Banner acquisition, Procaps will become an unwilling participant in an agreement involving the nature and extent of its competition with Banner—an agreement that enables its then-competitor Patheon to influence the prices for Procaps' softgel manufacturing and development services and to divide the softgel manufacturing and development services market between itself and Procaps as it deems fit.  In addition, because of the contractually obligated disclosure of Procaps' cost and other confidential, sensitive information, Banner will be in a position to compete unfairly with Procaps.  As such, the Collaboration Agreement will no longer be viable or capable of being performed in a lawful manner.

13.     As a result of the antitrust violations and Patheon's unfair competition as described above, Procaps has sustained and will continue to sustain damages that are not fully calculable and has no adequate remedy at law.

## Parties, Jurisdiction and Venue

14.     Procaps is a Colombian sociedad anonima with its principal place of business in Barranquilla, Colombia.  Procaps commercializes pharmaceutical products in the form of softgel capsules and other formulations in 11 countries throughout Latin America, and has direct contacts with approximately 125,000 doctors each month. Outside of Latin America, Procaps provides softgel manufacturing and development services to customers in the United States and elsewhere, exporting its products to more than 30 countries worldwide. Specifically for the

United States market, Procaps has its own division for development and commercialization of generic products in softgel formulations.

15.    Patheon is a Canadian corporation with its principal place of business in Durham, North Carolina.   Patheon operates facilities and/or development centers in San Francisco, California, and Cincinnati, Ohio.   Patheon provides development and manufacturing services related to various pharmaceutical products for customers throughout the United States, and its individual business has a substantial effect on United States commerce. Upon information and belief, Patheon is the number two provider of commercial manufacturing operations worldwide in most formulations except softgel capsules.

16.    The Collaboration Agreement between Procaps and Patheon also involves substantial ties to United States commerce. The Collaboration Agreement contemplates the sale of softgel capsules and services provided to consumers located in the United States, among other countries.   The United States softgel capsule market alone is worth approximately $8 billion. The activities conducted through the Collaboration Agreement have, and are intended to have, a substantial effect on United States commerce.

17.    Sobel USA Inc. is a Delaware corporation with its principal place of business in High Point, North Carolina.  Sobel USA Inc. owns Banner Pharmacaps, Inc. and its subsidiaries, including Banner Pharmacaps Canada Ltd. and Banner Pharmacaps Mexicana S.A. de C.V. The outstanding shares of stock of Sobel USA Inc. are being sold through the Stock Purchase Agreement.  Upon information and belief, Sobel USA Inc. is a holding corporation that conducts no operations of its own but instead does business through the Banner entities identified in this paragraph and, in that respect, exercises operational control over those entities.   Accordingly, Sobel USA Inc. is the alter ego of those entities for purposes of personal jurisdiction.  Sobel

USA Inc. and the Banner entities identified in this paragraph are collectively referred to as "Sobel USA."

18.     Banner Europe is a private limited company organized under the laws of The Netherlands, and is a party to the Stock Purchase Agreement.

19.     The global headquarters and principal place of business for Sobel USA and Banner Europe (collectively "Banner") are in High Point, North Carolina. High Point houses Banner's Global Research & Development Department, as well as its largest manufacturing facility. Banner specializes in the research, development, manufacturing, and distribution of soft-gelatin pharmaceutical, over-the-counter, and nutritional consumer products.

20.     The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 because this action arises, in part, under Federal law and under the Clayton Act, 15 U.S.C. §§ 4, 26, and diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount of controversy exceeds $75,000, exclusive of interests and costs.  Declaratory relief is authorized by 28 U.S.C. § 2201. The Court also has supplemental subject matter jurisdiction over the alleged state law claims as provided by 28 U.S.C. § 1367.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and under the Clayton Act, 15 U.S.C. § 22.  The Collaboration Agreement provides that "Patheon shall have the sole right and responsibility to market Softgel Branded Services for Softgel Capsules in the Field in the Territory." The "Territory" is defined as "worldwide, except for the Excluded Territory." The only "Excluded Territories" are Vietnam, Iran, Thailand, Turkey, South America, Central America, Mexico and the United Arab Emirates.  As a result, the Collaboration Agreement provides for Patheon to transact business in this district in a substantial and ongoing manner, including the marketing of P-Gels™. The Collaboration Agreement also was negotiated

in Miami, Florida, and provides that in the case of arbitration for certain types of disputes thereunder, "[t]he place of arbitration shall be Miami, Florida." In addition, meetings with the parties' representatives since the execution and implementation of the Collaboration Agreement have occurred in Miami, Florida.

22.     Venue is further appropriate in this district because Patheon is engaged in the ongoing and substantial transaction of business in this district even apart from the Collaboration Agreement. Patheon has an extensive product reach in the United States, including in the Southern District of Florida. Patheon manufactures 12 of the top 100 prescription drugs, is currently developing 17 of the top 100 pharmaceutical products, and annually produces over 600 products. Patheon serves approximately 300 clients, including 18 of the 20 largest pharmaceutical companies, 9 of the top 10 biotech companies, and 7 of the 10 largest specialty pharmaceutical companies.

23.     Banner also has an extensive product reach in the United States, including in the Southern District of Florida, and has engaged in the ongoing and substantial transaction of business in this district. Banner has partnered with many of the top 10 pharmaceutical companies in the United States, and has manufactured billions of units of softgel products that are distributed worldwide. Upon information and belief, Banner's products are marketed and sold throughout the United States, including in the Southern District of Florida. For example, Banner has filed suit as a plaintiff and obtained relief in state court in Miami-Dade County, Florida in connection with its business activities, and has partnered with a pharmaceutical company based in this district to develop and market products.

24.     There being ample contacts with the United States such that the Due Process Clause of the Fifth Amendment is satisfied, and venue being proper in this district under the

Clayton Act, 15 U.S.C. § 22, Patheon and Banner are subject to personal jurisdiction in this district.

25.     Venue is also sufficient in this district pursuant to the pendent venue doctrine because the injunction sought against the acquisition of Banner by Patheon arises out of the same common nucleus of operative fact as the antitrust claims, and all claims involve overlapping common issues of proof.

## Factual Allegations

### The Softgel Capsule Market

26.     The softgel capsule market is essentially comprised of two separate service sectors:  a development services sector and a manufacturing sector.  The development services sector includes services related to developing new or existing softgel products.    The manufacturing sector involves the commercial manufacturing of softgel capsules.

27.     Successfully competing in the softgel market requires a company to provide both development services, including the capacity to assist customers in developing softgel products, and commercial manufacturing capacity to produce softgels.  Importantly, development services operate as a pipeline for future commercial manufacturing opportunities.  For this reason, it is nearly impossible to separate development from manufacturing, particularly with respect to prescription products.

28.     The United States softgel capsule market is estimated to be worth about $8 billion.  The United States softgel market has experienced continued growth since 2007 and was estimated in 2011 to be comprised of approximately $6.2 billion in prescription products, $0.7 billion in over-the-counter products, and $0.8 billion in nutritional products.

29.     The softgel dosage form provides important advantages for drug delivery and consumer experience.   In many cases, softgels improve the solubility of drugs that pose bioavailability challenges.  The market for softgel capsules is growing and will continue to grow over time because new active pharmaceutical ingredients being produced by pharmaceutical companies are well suited to the softgel capsule delivery form.

**Procaps' Softgel Business**

30.     Procaps was founded in 1977 in Colombia, was one of the first companies in South America to develop softgel capsules, and is today the largest manufacturer of softgel capsules in South America. Procaps develops, manufactures, and markets its own branded products as well as develops and manufactures softgel capsule products for third parties.

31.     Procaps' primary production plant, located in Colombia, has the capacity to produce more than 7 billion softgel capsules per year.  Its facilities in Venezuela and Brazil increase that capacity to approximately 10 billion capsules per year.   In May, 2009, Procaps got a letter of acceptance from United States Food and Drug Administration ("USFDA") based on an inspection of its facilities in Barranquilla, Colombia. More recently, in June 2012, Procaps received another USFDA pre-approval inspection related to other sites.  As a result of that inspection, Procaps received a letter of acceptance from the USFDA in September 2012.

32.     Procaps has developed approximately 520 different formulations in softgel capsules, commercially manufactured approximately 130 billion softgel capsules to date, and currently manufactures over 300 different products in softgel capsules.

33.     Procaps owns various proprietary technologies related to softgel capsules.

Carlton Fields, P.A.
ATLANTA     MIAMI     ORLANDO     ST. PETERSBURG     TALLAHASSEE     TAMPA     WEST PALM BEACH

**Banner's Competing Softgel Business**

34.     Banner is the world's second largest commercial manufacturer of softgel capsules for over-the-counter, prescription, and nutritional consumer products.   Its operations extend throughout North America, Europe, and Latin America.

35.     According to its website, Banner "hold[s] an impressive position as a leading innovator of softgel technologies for the pharmaceutical industry."   According to its website, "[m]any of the top 10 US pharmaceutical companies have chosen to partner with Banner to develop gelatin based formulations for both their [prescription] and [over-the-counter] compounds."

36.     In or around April 2009, Banner's parent company placed Banner and its softgel manufacturing business up for sale to focus more exclusively on other aspects of its business.

37.     Patheon desired to enter the competitive softgel market by acquiring Banner and commercially manufacturing its own softgel capsules. Because Patheon enjoys a substantial worldwide marketing network, a Banner acquisition would have turned Patheon into Procaps' fiercest competitor.  In or around October, 2011, Patheon informed Procaps that its negotiations to acquire Banner had failed.  Patheon offered Procaps an exclusive collaboration to produce and offer softgel capsule services to Patheon's customers and consumers using its worldwide network, particularly throughout North America, Europe and Asia.

**The Collaboration Agreement and its Pro-Competitive Benefits**

38.     On January 10, 2012, Patheon and Procaps executed the Collaboration Agreement.[1]

---

[1] Although Section 8.1 of the Collaboration Agreement permits disclosure of the confidential agreement "to the extent required by applicable law," copies of the Collaboration Agreement and the Addenda are not attached as exhibits to this Complaint, and will be submitted to the Court under seal pending the Court's ruling pursuant S.D. Fla. Local Rule 5.4(c).

39.     The Collaboration Agreement enhances competition in the softgel capsule market and is pro-competitive. The Collaboration Agreement enables Procaps to compete more efficiently and effectively and in a significantly expanded worldwide geographic area, and enables Patheon to offer softgel development and commercial manufacturing services that it otherwise did not have the ability to offer, and was not offering, prior to the Collaboration Agreement.

40.     According to Patheon's website, the "partnership with Procaps allows [Patheon] to offer unparalleled softgel scientific expertise, and an impressive breadth of formulation experience." The Collaboration Agreement also allows Patheon to take advantage of Procaps' current business with large pharmaceutical companies in Latin America and expand it to the United States and Europe.

41.     Through the Collaboration Agreement, Patheon received the exclusive right to market Procaps' softgel technology, development, and manufacturing capabilities in North America, Europe, and Asia, and received licenses to use all of Procaps' intellectual property.

42.     By combining Patheon's vast marketing network with Procaps' development and manufacturing capacity, Patheon and Procaps were able to introduce an innovative new line of softgel development and manufacturing services under the trade name P-Gels$^{TM}$.  By integrating and controlling the entire process, P-Gels$^{TM}$ offers to pharmaceutical companies a comprehensive, high-quality softgel solution at an exceptional value, including shorter lead times, more manufacturing flexibility, freedom from intellectual property restrictions, and a broad range of dosing formats that are leading technologies.  For example, P-Gels$^{TM}$ developed an exclusive service offering using Unigel$^{TM}$, a trademarked product owned and patented by

Procaps. Concomitantly, the addition of commercial-scale softgel capacity through the Collaboration Agreement complemented Patheon's dosage form portfolio.

43. The Collaboration Agreement is designed to enable Patheon and Procaps to compete with other suppliers in the worldwide softgel market who enjoy a much greater market share, including Banner and Catalent, the market leaders.

44. In its 10-Q filing with the Securities and Exchange Commission on March 9, 2012, Pantheon stated that "On January 19, 2012, we and PROCAPS S.A. announced an agreement to provide a line of prescription pharmaceutical soft-gel product development and manufacturing services. The capabilities we gain via this new offering include large scale commercial supply of prescription softgel capsules for the North American, European and Asian markets."

**Information Sharing Under the Collaboration Agreement**

45. In order to successfully market Procaps' softgel capsule development and manufacturing services and find opportunities for new softgel products, the Collaboration Agreement calls for, and Patheon has, full access to Procaps' proprietary information and technical knowledge relating to the development and manufacture of softgel products, including prescription, over-the-counter, and nutritional products, as well as information regarding Procaps' manufacturing capacity, softgel product analytical know-how and expertise, the handling of softgel capsule life-cycle management, gelatin formulation to support difficult-to-make products, production standards in all critical equipment, detailed cost structure, and pricing strategies.

46. This confidential and proprietary information is deemed confidential under the Collaboration Agreement and is subject to certain non-disclosure requirements that prevent

disclosure to Third Parties but would not prevent disclosure to Banner once Patheon has acquired Banner, thereby exacerbating the conflict of interest and restraint of trade problems detailed herein.

**Scope and Terms of the Collaboration Agreement**

47.     The initial scope of the Collaboration Agreement was limited primarily to prescription softgel products. By addenda, however, the Collaboration Agreement was extended to certain customers outside the prescription field, including development, manufacturing, and related services for softgel capsules in all fields (for example, over-the-counter and nutritional) with respect to certain third parties and pharmaceutical companies.

48.     Pursuant to the Collaboration Agreement, Patheon and Procaps agreed to exclusively develop, market, and provide softgel capsule services within the scope of the Agreement. In particular, Patheon is obligated to develop an overall marketing plan, quotes processes, and promotional and marketing materials for the new softgel capsule service. Patheon has the sole and exclusive right and responsibility to market the new softgel capsule service in the Territory. Thus, Patheon controls the location and the information provided about the softgel capsule service offered through the Collaboration Agreement.

49.     Patheon is to maintain the trademarks, service marks, and trade names used to brand and market the new softgel capsule service. Thus, Patheon controls the "P-Gels" name and branding and also has the first option on termination of the Agreement to acquire all of Procaps' right, title, and interest in any branded service marks such as P-Gels$^{TM}$.

50.     Pursuant to the Collaboration Agreement, Procaps and Patheon jointly developed terms and conditions for the provision of the P-Gels$^{TM}$ service to customers, including pricing plans, and Patheon is responsible for serving as the primary customer contact for the service. Patheon is to take the lead role in negotiating contracts with customers for use of the P-Gels$^{TM}$

service. Thus, Patheon controls the customer relationships arising from the P-Gels™ service that is provided by Patheon and Procaps pursuant to the Agreement.

51.     Pursuant to the Collaboration Agreement, Patheon agreed not to offer any competing softgel capsule products and services in the field for use or sale in the Territory. Patheon and Procaps also agreed to not develop, manufacture, promote or otherwise commercially exploit softgel capsules in the field for use or sale in the Territory other than pursuant to the Agreement.

52.     In the event that either Procaps or Patheon generates leads for the development and manufacturing of softgel capsules outside the scope of the Agreement, the parties are obligated to discuss such opportunities in good faith and consider whether the Agreement should include such activities.

53.     Procaps has the sole right to perform all commercial manufacturing activities for softgel capsules covered by the Agreement.

54.     The Collaboration Agreement was to remain in effect for an initial term of 7 years from January 10, 2012, the effective date of the Agreement, and had performance objectives including at least $5 million in the dollar value of sales made for the period commencing from 12 months from the effective date and ending 12 months thereafter.  The parties are to share, pursuant to the terms of the Agreement, the net revenue received from customers for sale or performance of the softgel branded services described in the Agreement.

**The Surprise Banner Acquisition**

55.     On October 22, 2012, at Patheon's request, an urgent meeting was held between representatives of Patheon and Procaps at the Miami Airport Hotel in Miami, Florida.

56.     At the meeting, Patheon informed Procaps that it had resumed negotiations with Banner to acquire its softgel business and manufacturing facilities. Apparently recognizing that

the acquisition of that major competitor would fundamentally alter the arrangement Patheon had only recently entered into with Procaps under the Collaboration Agreement, Patheon requested that Procaps modify its business plans with Patheon.

57.     Procaps raised concerns at that meeting, and at various other meetings and in writing, that the Banner acquisition was fundamentally contrary to the terms and intent of the Collaboration Agreement, and would render Patheon a direct competitor of Procaps, creating a host of problems and a conflict of interest.

58.     Notwithstanding Procaps' legitimate concerns, on October 29, 2012, Patheon went ahead and entered into a Stock Purchase Agreement to acquire Banner.

**The Banner Acquisition Converts the Collaboration Agreement into an Anticompetitive Restraint of Trade**

59.     The Collaboration Agreement was designed to create, and did create, a significant collaborative arrangement under which the unique resources, abilities, and skills of Patheon and Procaps were brought together to offer to the marketplace what neither was in a position to offer alone, in order to enhance competition in the manufacturing and services market for softgel capsules.  That objective now has been obliterated because, after the Banner acquisition, Banner will become a wholly-owned subsidiary of Patheon.  Thus, under federal antitrust and state competition laws, Banner and Patheon will be considered the same entity or economic unit for purposes of determining whether Patheon competes directly with Procaps and whether the activities of Banner are considered to be those of Patheon.  Accordingly, the Collaboration Agreement will be rendered an agreement between direct competitors, namely, Patheon/Banner and Procaps.

60.     As a result, if the Collaboration Agreement were to remain in effect following Patheon's acquisition of Banner, Patheon and Procaps would be agreeing to not compete in

significant respects.  In particular, Patheon/Banner would be agreeing with Procaps to exclusively develop, market, and provide the services within the scope of the Agreement.  Thus, Patheon/Banner would be agreeing with Procaps to not offer competing softgel capsule products and services in the Territory, and Procaps would be agreeing to refrain from doing the same. Thus, Patheon/Banner and Procaps, now competitors in the same product market, would be agreeing to not compete in certain geographic areas for softgel capsule services while at the same time sharing competitively sensitive information between them, even though they are direct competitors in other geographic areas and in all other respects.

61.     Alternatively, on information and belief, Patheon does not intend to honor the exclusivity provisions to market only P-Gels$^{TM}$ in the Territory.  But whether Patheon proceeds by (a) causing Banner's capsules and services to no longer compete in the Territory, thereby ceding the Territory to P-Gels$^{TM}$; (b) causing Banner's capsules and P-Gels$^{TM}$ to compete in the Territory on terms and conditions dictated by Patheon; or (c) causing Banner's capsules and P-Gels$^{TM}$ to be sold in separate places in the Territory not as a result of free and open competition, but rather the decisions and market allocations made by Patheon on behalf of Procaps and Banner, the glaring fact remains that Patheon, Banner, and Procaps (as an unwilling participant) will be enmeshed in an unlawful market allocation and restraint of trade, in violation of the antitrust laws.

62.     Additionally, because the Collaboration Agreement requires that Patheon and Procaps jointly approve any pricing strategy with respect to P-Gels$^{TM}$, Patheon/Banner will be participating in setting the price of a softgel capsule service that competes with its own softgel capsule service.  Thus, Patheon/Banner will essentially be setting the price at which its competitor offers its services to customers in violation of the antitrust laws.

63.     Additionally, the Agreement would create an obvious conflict of interest. Because the Collaboration Agreement requires Procaps to share intellectual property and information regarding internal development products with Patheon, Procaps' direct competitor would also receive confidential competitive information relating to pricing, marketing and output.  As noted above, the Collaboration Agreement requires Procaps to disclose to Patheon information from customer visits to Procaps' manufacturing facilities, information from technical meetings and new technologies, formulations and special processes.

64.     In fact, because Patheon already has acquired such information from Procaps, it has an already-existing conflict of interest in continuing to perform under the Agreement upon acquiring similar information regarding Banner.  Pursuant to the Stock Purchase Agreement, Patheon has access to "all properties, the books, records, accounts and Contracts of the Banner Companies, and to discuss any matters relating to the Banner Companies with the key personnel of the Banner Companies." Further, Patheon is permitted to communicate with customers, suppliers, and distributors of Banner.  Under the Collaboration Agreement Procaps and Patheon would also be required to share information regarding the development of new softgel capsule products that can be used to compete with Procaps, both inside and outside the Territory.

65.     By entering into the Collaboration Agreement with Procaps and then turning around and seeking to acquire Procaps' direct competitor, Patheon has put itself in a position to tarnish Procaps' general business reputation and specifically its reputation in the healthcare and medical industries and with patients seeking high-quality products, as well as diminish or destroy Procaps' branded products and the value of the P-Gels$^{TM}$ brand.

66.     In the weeks since the October 29, 2012 public announcement of the Banner acquisition, Patheon's unfair competition is already occurring.  Procaps' customers have already

questioned why Patheon has chosen to acquire Banner only a few months after entering into the Collaboration Agreement with Procaps, and have questioned whether this indicates that Patheon perceived something wrong with Procaps' services and manufacturing, thereby subjecting Procaps to competitive harm.

67.     For all the foregoing reasons, as a result of the Stock Purchase Agreement, the Collaboration Agreement has been converted from a pro-competitive arrangement designed to enhance the ability of Procaps and Patheon to compete in the competitive softgel capsule market to a contract in restraint of trade between competitors in violation of the Sherman Act and state competition law, replete with conflicts of interest that will cause Procaps competitive harm. Should Patheon acquire Banner, which it plans to do by December 31, 2012, the Collaboration Agreement will become a horizontal market allocation agreement between competitors, made all the more problematic from an antitrust and unfair competition standpoint because of the competitively sensitive information that has already been exchanged between Procaps and Patheon and that the Collaboration Agreement contemplates will continue to be exchanged.

68.     The situation Patheon has created by its announced acquisition of Banner is untenable, unworkable, and subjects Procaps to the prospect of violating the antitrust laws if it continues to go forward under the Collaboration Agreement.  Procaps thus brings this action for antitrust, unfair competition and other damages, seeks a declaration that the Collaboration Agreement can no longer be performed, and seeks an injunction preventing Patheon from acquiring Banner.

69.     Procaps has retained the undersigned counsel and is obligated to pay its attorneys' fees.

## COUNT I
## Declaratory Judgment Under Antitrust Laws
## (Patheon)

70.     Procaps realleges the allegations in Paragraphs 1 through 70.

71.     This is an action brought under the Declaratory Judgment Act, 28 U.S. C. § 2201. A real, actual, and justifiable controversy exists among the parties with respect to whether Patheon's acquisition of Banner as contemplated by the Stock Purchase Agreement converts the Collaboration Agreement into an unlawful restraint of trade under Section 1 of the Sherman Act.

72.     According to information filed along with Patheon's 8-K announcing the acquisition of Banner, the acquisition is "expected to close by the end of calendar year 2012." The dispute between Patheon and Procaps regarding the impact of the Banner acquisition on the Collaboration Agreement is therefore real and immediate.

73.     Declaratory relief will effectively adjudicate the rights and obligations of the parties because it will determine whether the Banner acquisition renders the Collaboration Agreement a violation of Section 1 of the Sherman Act and therefore no longer capable of being performed.

74.     This Court has the authority to enter a declaratory judgment regarding the rights and responsibilities of the parties.

75.     Agreements between direct competitors to set prices, affect prices, divide markets and/or allocate territories or customers are unlawful under Section 1 of the Sherman Act.

76.     Patheon's acquisition of Banner will render Patheon a direct competitor of Procaps.  Additionally, satisfying the ongoing obligations of the Collaboration Agreement will require an ongoing sharing among competitors of competitively sensitive information that

Carlton Fields, P.A.
ATLANTA    MIAMI    ORLANDO    ST. PETERSBURG    TALLAHASSEE    TAMPA    WEST PALM BEACH

exacerbates the situation and furthers the reality that the Collaboration Agreement will become an unlawful restraint of trade in violation of Section 1 of the Sherman Act.

77.    In particular, under the Collaboration Agreement, Procaps has ceded the marketing of its softgel products to Patheon in the Territory.  Because Patheon will control Banner after the acquisition, Patheon is in position to dictate and coordinate the marketing activities of two direct competitors – Procaps and Banner – thereby controlling or eliminating competition between them in the Territory covered by the Agreement.

78.    Because Patheon presently expects to consummate the acquisition of Banner in the near future, upon information and belief, Patheon is already planning marketing strategies to implement such coordination, necessarily resulting in lessened efforts on Patheon's part to vigorously implement the Collaboration Agreement and promote P-Gels$^{TM}$.  Therefore, on information and belief, Procaps has already been negatively impacted by the imminent acquisition.

79.    Further, because the Stock Purchase Agreement requires Banner to share highly sensitive confidential information with Patheon – and Patheon already possesses Procaps' confidential business information – the Stock Purchase Agreement poses a further risk of anticompetitive consequences as a result of what will become an unlawful exchange of competitively sensitive information.

80.    There is a definite actual injury and/or threat of injury to Procaps as a result of the impending and imminent Banner acquisition. Patheon's acquisition of Banner will render Patheon a competitor of Procaps, and satisfying the ongoing obligations of the Collaboration Agreement will require an ongoing agreement between competitors that will be an unlawful restraint of trade in violation of Section 1 of the Sherman Act.

81.     There is a bona fide, genuine dispute between the parties since, on information and belief, Patheon takes the position that the Banner acquisition does not convert the Collaboration Agreement into an unlawful restraint of trade.

82.     As a result, Procaps is in doubt regarding its rights under the Collaboration Agreement, whether Procaps and Patheon can continue to perform their respective obligations thereunder after the Banner acquisition, and whether the Collaboration Agreement can remain in force for the remaining years of its term consistent with the antitrust laws.

WHEREFORE, Plaintiff, Procaps S.A., requests that this Court enter judgment in its favor and against Defendant, Patheon, Inc., declaring that:

A.     if Patheon proceeds with the acquisition reflected in the Stock Purchase Agreement, the Collaboration Agreement will be rendered a violation of Section 1 of the Sherman Act;

B.     the Collaboration Agreement must cease and/or terminate as of the closing date of the Stock Purchase Agreement;

C.     Procaps is entitled to damages, including treble damages, in an amount to be determined by virtue of Procaps and the marketplace being deprived of the pro-competitive benefits of lawful competition pursuant to the Collaboration Agreement;

D.     Patheon shall not use in any way the confidential information that it has acquired from Procaps pursuant to the Collaboration Agreement;

E.     Patheon shall not provide any confidential information it has received from Procaps to Banner;

Carlton Fields, P.A.
ATLANTA     MIAMI     ORLANDO     ST. PETERSBURG     TALLAHASSEE     TAMPA     WEST PALM BEACH

F.      Patheon shall immediately return all confidential information to Procaps it has received from Procaps;

G.      Patheon shall not use the licenses provided by Procaps to Patheon pursuant to the terms of the Collaboration Agreement and such licenses shall terminate immediately;

H.      Procaps is relieved from its obligations under the Collaboration Agreement by virtue of the Collaboration Agreement having been converted into a restraint of trade;

I.      Procaps is entitled to prejudgment and post-judgment interest, costs, and attorneys' fees in bringing this action; and

J.      Procaps is entitled to such other relief as this Court deems just and proper.

## COUNT II
### Injunction
### (Patheon and Banner)

83.     Procaps realleges the allegations in Paragraphs 1 through 70.

84.     This is an action brought under the Clayton Act, Section 16, 15 U.S.C. § 26, for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

85.     Procaps is a "person" as that term is used in Section 4 of the Clayton Act.

86.     Procaps seeks this injunction to prevent threatened loss or injury by reason of the violation of the Sherman Act set forth herein.

87.     The impending acquisition of Banner by Patheon will render the Collaboration Agreement an unlawful restraint of trade and therefore no longer viable or workable. Additionally, the exchanges of information between Banner and Patheon on the one hand, and

Procaps and Patheon on the other, will harm Procaps' ability to compete in the softgel capsule manufacturing and development services market and will harm competition generally.

88.    Patheon and Banner are parties to the Stock Purchase Agreement or their interests are directly affected thereunder.

89.    Procaps has thus sustained and will continue to sustain irreparable harm and has no adequate remedy at law. Procaps is threatened with injury, including but not limited to, the loss of contracts for softgel capsule manufacturing and development services, and will sustain substantial damages that cannot fully be determined or calculated from its inability to enjoy the benefits that were contemplated by the Collaboration Agreement and to compete in the manner the Collaboration Agreement was designed to enable.   In addition to monetary losses that cannot fully be determined if an injunction is not entered, Procaps will suffer intangible injuries including, but not limited to, injury to its goodwill and brand reputation and disclosure of proprietary information and technical knowledge to its largest competitor.

90.    Procaps seeks an injunction to enjoin Patheon from consummating the Banner acquisition or, if the transaction has consummated, to mandate that Patheon immediately divest Banner's softgel manufacturing capabilities and facilities to a third party pursuant to the Collaboration Agreement.

91.    If an injunction is not entered and Patheon proceeds with the acquisition, as it intends to do without complying with the Collaboration Agreement's mandatory divestiture provisions, the Collaboration Agreement will become an unlawful restraint of trade and harm the global softgel capsule manufacturing and development services market, including Procaps' ability to fairly compete in that market.

92.     Although the Collaboration Agreement allows Patheon six months to fully complete the divestiture, Patheon has indicated that it will not divest, much less commence the divestiture of, Banner in the manner required under the Collaboration Agreement.

93.     Moreover, delayed divestiture under the extreme circumstances created by Patheon–an acquisition of one of Procaps' largest direct competitors which was not contemplated by Procaps – would constitute a violation of Section 1 of the Sherman Act because it would permit Patheon to violate the federal antitrust laws for six months and enable Patheon to destroy competition from Procaps through the information it has received. It is not feasible, consistent with the antitrust laws, to rectify the situation by including Banner's substantial capacity within the scope of the Collaboration Agreement, thereby allowing Patheon to control both its subsidiary, Banner, and its collaborative partner, Procaps.

94.     Procaps has no adequate remedy at law.

95.     For these reasons, Patheon should be enjoined from acquiring Banner.

96.     If the closing of the Stock Purchase Agreement occurs before such injunction is issued, then Patheon should be ordered to unwind the Stock Purchase Agreement and to divest Banner forthwith. Further, Procaps should be excused from performing under the Collaboration Agreement during the period Patheon owns Banner and should be compensated for the damages to its business or property it sustains thereby.

WHEREFORE, Plaintiff, Procaps S.A., requests that this Court enter an injunction in its favor and against Defendants, Patheon, Inc., Sobel USA, Inc., and Banner Pharmacaps Europe B.V., as follows:

A.     Enjoining Patheon from proceeding with the Banner acquisition or, if the closing of the Stock Purchase Agreement has occurred, a mandatory

injunction ordering Patheon to divest Banner in a manner consistent with the antitrust and competition laws;

B.    Enjoining Patheon from using the confidential information it acquired from Procaps pursuant to the Collaboration Agreement;

C.    Enjoining Patheon from providing any confidential information it has received from Procaps to Banner;

D.    Ordering Patheon to immediately return all confidential information to Procaps it has received from Procaps;

E.    Enjoining Patheon from using the licenses provided by Procaps to Patheon pursuant to the terms of the Collaboration Agreement;

F.    Awarding Procaps' prejudgment and post-judgment interest, its costs, and attorneys' fees in bringing this action; and

H.    Awarding Procaps such other relief as this Court deems just and proper

## COUNT III
## Damages Under Antitrust Laws
## (Patheon)

97.    Procaps realleges the allegations in Paragraphs 1 through 70.

98.    This is an action brought under the Clayton Act, Section 4, 15 U.S.C. § 15(a), for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

99.    Procaps is a "person" as that term is used in Section 4 of the Clayton Act.

100.    The Stock Purchase Agreement renders the Collaboration Agreement an unlawful restraint of trade in violation of Section 1 of the Sherman Act that can no longer be performed in a lawful manner.    Specifically, the Stock Purchase Agreement renders the Collaboration Agreement an agreement between direct competitors to set prices, affect prices, divide markets

and/or allocate territories or customers.  Under the Collaboration Agreement, Procaps has ceded the marketing of its softgel products to Patheon in the Territory.  Because Patheon will control Banner after the acquisition, Patheon is in position to dictate and coordinate the marketing activities of two direct competitors – Procaps and Banner – thereby controlling or eliminating competition between them in the Territory.  Moreover, Patheon/Banner will have the right to jointly set the price of the P-Gels$^{TM}$ service, which competes with similar services currently offered by Banner.

101.    Patheon's horizontal market allocation and price fixing will deprive the marketplace of the lawful competition and pro-competitive effects in the softgel manufacturing and development services market that the Collaboration Agreement had made possible prior to the Banner acquisition.  Rendering the Collaboration an unlawful restraint of trade will thus harm competition in the marketplace, and will specifically harm Procaps in its business or property within the meaning of Section 4 of the Clayton Act.

102.    Procaps has been and will continue to be injured in its business or property by reason of the violation of the Sherman Act set forth herein.

WHEREFORE, Plaintiff, Procaps S.A., requests that this Court enter judgment in its favor and against Defendant, Patheon, Inc., for damages in an amount to be determined, including statutory damages at threefold the amount, prejudgment and post-judgment interest, as well as costs and reasonable attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT IV
### Damages Under Statutory Unfair Trade Competition Law
### (Patheon)

103.    Procaps realleges the allegations in Paragraphs 1 through 70.

Carlton Fields, P.A.
ATLANTA      MIAMI      ORLANDO      ST. PETERSBURG      TALLAHASSEE      TAMPA      WEST PALM BEACH

104.    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

105.    Other states prohibit similar practices under "Little FTC Acts" like FDUTPA.

106.    The Stock Purchase Agreement renders the Collaboration Agreement an unfair method of competition and/or unfair or unconscionable trade practice in the conduct of trade and commerce in Florida and other states in which Patheon and Banner do business.

107.    Agreements between direct competitors to set prices, affect prices, divide markets and/or allocate territories or customers are unfair methods of competition and/or unfair or unconscionable trade practices pursuant to FDUTPA and other Little FTC Acts.

108.    Procaps sustained damages as a direct and proximate result of Patheon's unfair and unconscionable trade practices and unfair method of competition. FDUTPA and other states' Little FTC Acts provide Procaps a private right of action against Patheon and entitle it to recover its actual damages, plus attorney's fees and costs. Procaps has been and will continue to suffer actual damages by reason of the violation of FDUTPA and other Little FTC Acts set forth herein.

WHEREFORE, Plaintiff, Procaps S.A., requests that this Court enter judgment in its favor and against Defendant, Patheon, Inc., for the full amount of damages permitted by applicable statute, prejudgment and post-judgment interest, as well as costs and reasonable attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT V
## Damages Under Common Law Unfair Competition
## (Patheon)

109.    Procaps realleges the allegations in Paragraphs 1 through 70.

110.    This is an action against Patheon for common law unfair competition.

111.    Patheon is Procaps' collaborative partner for purposes of competing for the business of a common pool of customers, but is now being turned into its competitor by virtue of the Stock Purchase Agreement under which Patheon will acquire Banner.

112.    Patheon engaged in deceptive or fraudulent conduct contrary to honest practice in industrial and commercial matters by entering into the Collaboration Agreement, thus gaining access to Procaps' intellectual property and information regarding internal development products, pricing, cost structure, marketing, and output information, and then, shortly thereafter, entering into the Stock Purchase Agreement, gaining access to Banner's intellectual property and information regarding internal development products, pricing, cost structure, marketing, and output information.

113.    Patheon's actions have created customer confusion including, but not limited to, the status of Procaps' and Patheon's jointly developed P-Gels[TM], and confusion as to why Patheon chose to acquire Banner only a few months after entering into the Collaboration Agreement with Procaps, creating questioning as to whether this indicates that Patheon perceived something wrong with Procaps' services and manufacturing, thereby subjecting Procaps to competitive harm, tarnishing Procaps' business reputation, and diminishing or destroying Procaps' branded products and the value of the P-Gels[TM] brand.

114.    As a direct and proximate result of Patheon's unfair and unlawful competition, Procaps has been injured in its business and property including injury to its good will and valued business reputation, and actual damages as a result of Patheon's wrongful acts and the loss of business opportunities.

WHEREFORE, Plaintiff, Procaps S.A., requests that this Court enter judgment in its favor and against Defendant, Patheon, Inc., for damages, prejudgment and post-judgment interest, as well as costs and reasonable attorneys' fees, and such other relief as the Court deems just and proper.

### **Demand for Jury Trial**

Plaintiff demands a trial by jury on all triable issues.

Date: December _10_, 2012

Alan Rosenthal
Florida Bar Number 220833
arosenthal@carltonfields.com
Natalie Carlos
Florida Bar Number 0146269
ncarlos@carltonfields.com
CARLTON FIELDS, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile:  (305) 530-0055

and

Chris S. Coutroulis
Florida Bar No. 300705
ccoutroulis@carltonfields.com
Donald R. Schmidt
Florida Bar No. 607959
dschmidt@carltonfields.com
Kathryn H. Christian
Florida Bar No. 027594
kchristian@carltonfields.com
CARLTON FIELDS, P.A.
P.O. Box 3239
Tampa, Florida 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

Attorneys for Plaintiff Procaps S.A.

Carlton Fields, P.A.
ATLANTA      MIAMI      ORLANDO      ST. PETERSBURG      TALLAHASSEE      TAMPA      WEST PALM BEACH