UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:12-cv-24356-DLG

PROCAPS S.A., a Colombian
sociedad anonima,

          Plaintiff,

v.

PATHEON INC., a Canadian
corporation, SOBEL USA, INC., a
Delaware corporation, and BANNER
PHARMACAPS EUROPE B.V.,
a Netherlands private limited
liability company,

          Defendants.

_____/

## PLAINTIFFS' RESPONSE TO PATHEON'S MOTION TO DISMISS COMPLAINT

    Plaintiff, Procaps S.A. ("Procaps"), submits its response to the Motion to Dismiss Complaint (the "Motion") filed by Defendant, Patheon, Inc. ("Patheon").

## I.
## INTRODUCTION

    In its Complaint, Procaps seeks redress for Patheon's acts of corporate betrayal and its arrogant disregard of laws prohibiting restraints of trade.  Patheon exclusively agreed with Procaps in the Collaboration Agreement (the "Agreement") that Patheon would market, and Procaps would develop and manufacture, softgel capsules under the P-Gels™ brand in a defined worldwide territory.  Only months later, after Procaps trusted Patheon with all of its confidential and proprietary manufacturing and development strategies, business plans, pricing and cost structure and intellectual property, Patheon abruptly announced that it was acquiring Banner, the second largest competitor in the softgel capsule market.  In so doing, Patheon converted (or as it puts it, "transmogrified") a pro-competitive Collaboration Agreement between non-competitors into an illegal, anticompetitive arrangement between horizontally-situated competitors. But for the Banner acquisition, Procaps and Banner would today be competing for customers in the

Agreement's territory.  Now, they will not.  Instead, Procaps and Patheon-Banner will *de facto* be allocating the market between them. Instead of the marketplace enjoying the free and open competition that existed before Patheon's treacherous acquisition, competition between Banner and Procaps will no longer exist as contemplated and encouraged by the Agreement.

In its Motion, Patheon essentially argues that its acquisition of Banner is an inconsequential non-event, notwithstanding its devastating effects on the soft gel capsule worldwide market as well as its collaboration partner.  As detailed in the Complaint, this assertion is patently false.  The Banner acquisition transforms the Agreement from a pro-competitive collaboration between non-competitors into an illegal horizontal agreement to allocate markets between direct competitors.   Under more than 100 years of antitrust jurisprudence, whether under a "*per se*" or "rule of reason" analysis, Patheon's acquisition of Banner is a naked restraint on trade – no less illegal than price fixing or bid rigging.  For its own self-serving reasons, Patheon has now forced Procaps to be a collaborative partner with its direct competitor.  This is untenable and illegal.  Procaps had no alternative but to file suit.

**II.**
**MOTION TO DISMISS STANDARD**

A complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Rather, the "[f]actual allegations must [only] be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true…"  *Id.* at 555.  All that is required is "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  Procaps' Complaint easily meets this standard.

**III.**
**ARGUMENT**

**A.     THE COMPLAINT IS NOT PREMATURE.**

Patheon first argues that the Complaint is premature because Procaps "never **formally** escalate[d] the matter to the firms' CEO's" (Motion at 9) (emphasis added) pursuant to the Agreement's dispute resolution clauses. In support, Patheon attaches selective correspondence between counsel (*id.* at 6, 8).[1]

---

[1] Attaching the correspondence to the Motion is improper. Courts may not consider materials outside of a complaint without converting a motion to dismiss into one for summary judgment and giving the parties ten days' notice pursuant to Federal Rule of Civil Procedure 56(c). *See*

Patheon's use of "formally" is a purposeful evasion. It knows, and discovery will confirm, that its CEO was fully aware of the dispute having participated for months, personally and through surrogates, in negotiations with Procaps before and throughout the lawsuit. A review of **all** the evidence will establish that Procaps objected to the Banner acquisition as soon as it was notified by Patheon, and that Procaps exhausted all available contractual remedies before filing suit. On such a "pre-discovery, undeveloped, motion-to-dismiss record," it is "premature and analytically inappropriate" for a court to decide whether this lawsuit was timely filed. *See Tello v. Dean Witter Reynolds, Inc*., 410 F.3d 1275, 1294 (11th Cir. 2005).

Second, it is disingenuous for Patheon to complain that Procaps did not "formally" utilize the Agreement's dispute resolution mechanisms when Patheon intentionally frustrated Procaps' ability to do so. Patheon chose strategically to delay informing Procaps of its decision to acquire Banner – Procaps' direct competitor – until only **5 business days** before executing the Banner purchase agreement and publicly announcing the acquisition to the world market. This left Procaps only **a few weeks** to attempt to resolve the dispute before the December, 2012 closing date. Patheon's delay was a classic "gotcha!" tactic to prejudice, if not vitiate, Procaps' ability to act "formally" pursuant to the Agreement's dispute resolution provisions to prevent Patheon's corporate betrayal. Such tactics are abhorrent to due process. *See Salcedo v. Asociacion Cubana, Inc*., 368 So. 2d 1337 (Fla. 3d DCA 1979); *Scipio v. State*, 928 So. 2d 1138, 1144 (Fla. 2006).

Patheon's reliance on one sentence in Magistrate Goodman's Order on Motion for Expedited Discovery [DE 21] that "the lawsuit was premature" because Patheon has six months to "resolve" the dispute (Motion at 9) is specious. Magistrate Goodman reviewed only Patheon's brief on the issue, without allowing Procaps an opportunity to respond or having the benefit of a fully-developed record. As alleged in the Complaint, Patheon had already made clear that it had no intention of divesting any portion of Banner that conflicts with Procaps' operations, much less commence divestiture of those conflicting operations as required by the Agreement (Complaint at ¶92). "The law does not require that a party to a contract take action that would clearly be futile." *Waksman Enters., Inc. v. Oregon Props, Inc.*, 862 So.2d 25, 43 (Fla. 2d DCA 2003). *See*

---

*Williams v. Jefferson County, Ala.*, 2012 WL 2987238, 1 (11th Cir. 2012). Only extraneous documents that are "central" to the plaintiff's claim and are not in dispute can be considered at the pleading stage. *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Here, the limited correspondence provided by Patheon is not "central" to Procaps' claims and should be disregarded.

*also ex rel. Cemex Const. Materials Fla., LLC v. EPB Enter., LLC*, 2012 WL 831610 (M.D. Fla. Mar. 12, 2012); *Hopfenspirger v. West*, 949 So. 2d 1050, 1053-54 (Fla. 5th DCA 2006); *Southern Internet Systems, Inc. v. Pritula*, 856 So.2d 1125 (Fla. 4th DCA 2003); *McDonough v. Americom Intern. Corp.*, 151 F.R.D. 140 (M.D. Fla. 1993). Moreover, Magistrate Goodman's Order noted that "Procaps *also* contends that it would be forced to operate unlawfully" if immediate action is not taken [DE 21]. Thus, if Procaps had waited to file suit, Patheon would have argued that Procaps delayed in asserting its rights while Patheon and Banner fundamentally changed their positions in consummating the acquisition. Patheon took exactly that position in opposing Procaps' motion to expedite discovery.  It is a classic "Catch-22" argument that is not permitted. *Salcedo*, 368 So. 2d 1337.[2]

Procaps' exhaustion of remedies defense is premature, it cannot be adjudicated without discovery that will confirm that Patheon's CEO was on notice of the dispute and participated in negotiations, and the Motion should be denied. *See Tello*, 410 F.3d at 1294.

**B.   THE COMPLAINT STATES A CLAIM FOR VIOLATION OF SECTION 1 OF THE SHERMAN ACT.**

Patheon acknowledges that Procaps' Complaint seeks to allege a *per se* claim that Patheon has violated the antitrust laws (Motion at 10). Patheon insists, however, that "the Collaboration Agreement challenged as illegal must be judged under the rule of reason" and argues that "Procaps has not alleged the elements of a rule-of-reason case." *Id.* at 2, 10.  Patheon

---

[2] The Agreement does not require CEO consultation for 30 days prior to filing a lawsuit anyway. Article 14.2, "Internal Resolution", states that if the Parties are unable to resolve a dispute within 30 days, the dispute shall be referred to the CEOs for "attempted resolution." Article 14.3, "Arbitration", requires that disputes left unresolved by the CEOs shall be resolved by arbitration, **unless the dispute is an Excluded Claim**. Because the Complaint asserts Excluded Claims, it is not subject to Article 14.3. The Agreement is silent as to when Excluded Claims may be litigated. This is a fundamental distinction between this case and the cases cited by Patheon. *See John Carlo, Inc. v. Greater Orlando Aviation Auth.*, 2007 WL 430647 (M.D. Fla. 2007) (dispute resolution clause specifically stated that it was a "condition precedent to a party litigating the unresolved dispute"); *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235 (11th Cir. 2008) (agreement mandated that dispute "shall be submitted to non-binding arbitration or mediation"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) (same). The Agreement here contains no condition precedent language for Excluded Claims. Where a contract does not contain language stating that a particular requirement is a "condition precedent" to filing suit, it cannot operate as a condition precedent.[2] *See Solymar Inv., Ltd. v. Banco Santander S.A.*, 2011 WL 1790116, at *7 (S.D. Fla. Mar. 14, 2011), *Cf. Bulgartabac Holding AD v. Republic of Iraq*, 2011 WL 6015759, 2 (2d Cir. 2011).

is incorrect.  The Complaint clearly and sufficiently alleges a violation of the Sherman Act, either under a *per se* theory of liability or under a quick look rule of reason analysis.

**1.    The Complaint states a claim under the *per se* rule.**

 "A restraint may be violative of the Sherman Act because it is solely a naked restraint of trade so offensive to competition as to be unreasonable *per se*."  *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 746 (11th Cir. 1998).  The Supreme Court has recognized that some restraints are "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality."  *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 692 (1978).  These types of restraints have such predictable and pernicious anticompetitive effects – and such limited potential for procompetitive benefits – that they are deemed unlawful 'per se.'"  *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958).  When courts apply the *per se* rule, "there is a conclusive presumption that the restraint is unreasonable" under §1.  *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 344 (1982).

The Supreme Court declared in *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49 (1990), that "[o]ne of the classic examples of a *per se* violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition" – precisely the type of restraint alleged in Procaps' Complaint.  Such agreements have been *per se* unlawful for more than a century. *See Addyston Pipe & Steel Co. v. United States*, 175 U.S. 211 (1899) (combination to allocate business among participants was "necessarily a restraint upon interstate commerce"); *Timken Roller Bearing Co. v. United States*, 341 U.S. 593 (1951) (allocation of trade territories was illegal "aggregation of trade restraints"); *United States v. Sealy Inc.*, 388 U.S. 350 (1967) (arrangement unlawful in which bedding manufacturers established jointly controlled subsidiary that divided market for mattresses among each licensee, restricting each licensee to designated territories); *United States v. Topco Assoc., Inc.*, 405 U.S. 596, 608 (1972) (horizontal market allocation among association members of supermarket chains that divided territories and prohibited members from selling outside their assigned territories *per se* illegal, even though unaccompanied by price restraints); *Palmer*, 498 U.S. at 49-50 (market allocation "agreements *per se* illegal regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other").

In *Palmer*, the Supreme Court summarily reversed a summary judgment in favor of the defendant without even waiting to grant the plaintiff's *certiorari* petition, forcefully reminding litigants that "[t]his Court has reiterated time and time again that [h]orizontal territorial limitations … are naked restraints of trade with no purpose except stifling competition." *Id.* (quoting *Topco Assoc., Inc.*, 405 U.S. at 608). "Such an agreement has the obvious tendency to diminish output and raise prices." *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1304 (11th Cir. 2003) (holding that one firm's paying a potential competitor to exit or refrain from entering the market would be *per se* illegal outside the patent infringement context).

The Complaint clearly describes a *per se* illegal agreement to divide the market for softgel capsules between Patheon-Banner and Procaps. The required elements are: (1) concerted action between two or more persons; (2) actual or potential competition between the participants; and (3) an elimination of competition in the market serviced by the participants. *See Compact v. Metropolitan Gov't of Nashville & Davidson Cnty, TN*, 594 F. Supp. 1567 (M.D. Tenn. 1984). Procaps' Complaint pleads each of these elements. It alleges concerted action between Procaps and Patheon-Banner in the form of the Agreement (Complaint at ¶¶ 6, 38). It alleges that Procaps and Banner were "vigorous competitors" as manufacturers of softgel capsules before Patheon acquired Banner and that Procaps and Patheon-Banner, solely by virtue of Patheon's acquisition, are now horizontal competitors for softgel capsule manufacturing.[3] *Id.* ¶¶ 10-11, 34, 37, 59, 76. Finally, it alleges that Patheon-Banner has eliminated competition between itself and Procaps within the scope of the Agreement. *Id.* ¶¶ 10, 12, 101.

The Complaint also includes substantial and detailed factual support for this claim. It alleges that, "[t]hrough the Collaboration Agreement, Patheon received the exclusive right to market Procaps' softgel technology, development, and manufacturing capabilities in North America, Europe, and Asia, and received licenses to use all of Procaps' intellectual property." *Id.* ¶ 41. It alleges that "[p]ursuant to the Collaboration Agreement, Patheon agreed not to offer any competing softgel capsule products and services in the field for use or sale in the Territory"

---

[3] Patheon goes outside the Complaint to suggest that Banner and Procaps are not competitors in the Territory because Banner concentrates on softgel capsules used in over-the-counter products, whereas Procaps sells P-Gels to prescription drug manufacturers through the Agreement (Motion at 4). None of this is contained in record evidence. As Patheon acknowledges, the Complaint's allegations that Banner and Procaps compete directly for prescription drug customers must be taken as true, *id.* at 3 n.1, including the allegation that they compete for the development and manufacture of softgel capsules in North America and elsewhere (Complaint at ¶ 41).

and that they "also agreed to not develop, manufacture, promote or otherwise commercially exploit softgel capsules in the field for use in the Territory other than pursuant to the Agreement." *Id.* ¶ 51. It further alleges that "under the Collaboration Agreement, Procaps has ceded the marketing of its softgel products to Pantheon in the Territory," but that "[b]ecause Pantheon will control Banner after the acquisition, Pantheon is in position to dictate and coordinate the marketing activities of two direct competitors – Procaps and Banner – thereby controlling or eliminating competition between them in the Territory covered by the Agreement." *Id.* ¶ 77. Thus, the Complaint provides much more than the required "short, plain statement," *see* Fed. R. Civ. P. 8, alleging factual details as to how Pantheon has eliminated competition between two horizontal competitors, Procaps and Banner, in the defined Territory.

The Complaint's allegations are analogous to those in *Palmer*. There, BRG and HBJ, competing providers of bar review courses, eliminated the "direct, and often intense, competition" between them by entering into an agreement that gave BRG an exclusive license to market HBJ's material in Georgia and to use its trade name "Bar/Bri." 498 U.S. at 47. They further agreed that HBJ would not compete with BRG in Georgia and that BRG would not compete with HBJ outside Georgia. *Id.* The Supreme Court found the agreement *per se* unlawful: "[HBJ and BRG] agreed not to compete in the other's territories… Such agreements are anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other." *Id.* at 49-50.

Because the Complaint was filed before Pantheon purchased Banner, the allegations are framed prospectively. But as Pantheon admits, the Banner acquisition now has occurred over Procaps' objection and notwithstanding this lawsuit (Motion at 6). Thus, Pantheon may (a) caus[e] Banner's capsules and services to no longer compete in the Territory, ceding the Territory to P-Gels; (b) caus[e] Banner's capsules and P-Gels to compete in the Territory on terms and conditions dictated by Pantheon; or (c) caus[e] Banner's capsules and P-Gels to be sold in separate places in the Territory not as a result of free and open competition, but as a result of decisions and market allocations made by Pantheon on behalf of Procaps and Banner (Complaint at ¶61). The point is, no matter what Pantheon ultimately decides, each potential method of implementation violates the *per se* rule.

Under any of these options, each softgel customer faces a market where Pantheon – not the invisible hand of competition – determines whether Procaps or Pantheon-Banner will compete for

that customer's business.  Courts recognize that the "essence" of an unlawful market allocation is that "competitors apportion the market among themselves and cease competing in another's territory or for another's customers."  *Mid-west Underground Storage, Inc. v. Porter*, 717 F.2d 493, 497-98 n.2 (10th Cir. 1983); *see also United States v. Brown*, 936 F.2d 1042 (9th Cir. 1991) (affirming criminal convictions because "[t]he agreement restricted each company's ability to compete for the other's billboard sites," "clearly allocated markets between the two billboard companies," and "[a] market allocation agreement between competitors at the same market level is a classic per se antitrust violation").  As the Complaint specifically alleges:

> Patheon/Banner would be agreeing with Procaps to exclusively develop, market, and provide the services within the scope of the Agreement.  Thus, Patheon/Banner would be agreeing with Procaps to not offer competing softgel capsule products and services in the Territory, and Procaps would be agreeing to refrain from doing the same.  Thus, Patheon/Banner and Procaps, now competitors in the same product market, would be agreeing to not compete in certain geographic areas for softgel services …

Complaint at ¶60.

The Complaint properly alleges that Patheon has committed a *per se* violation of §1 of the Sherman Act.  Patheon's Motion should be denied.

### 2. Patheon's arguments that the *per se* rule does not apply fail.

Patheon first argues erroneously that the *per se* rule does not apply because the Complaint "fails to allege facts that plausibly show that Patheon acquired Banner or entered into the Collaboration with the sole purpose of stifling competition" (Motion at 12).  In *Topco*, the Supreme Court emphasized that it had held "time and time again" that horizontal restraints to allocate territories, such as the *per se* claim Procaps has made here, **by definition**, "are naked restraints of trade with no purpose except stifling of competition."  405 U.S. at 608 (emphasis supplied); *see also Palmer*, 498 U.S. at 49.

Second, Patheon argues that the Agreement contains "pro-competitive or efficiency-enhancing potential" (Motion at 12). But Patheon nowhere articulates the pro-competitive effects which result from acquiring and controlling Banner and thereby creating a competition-reducing market allocation.  Nor is it appropriate to evaluate any claimed efficiencies in the context of a motion to dismiss.  Regardless, Patheon's argument is legally irrelevant.  The *per se* rule is a "conclusive presumption that the restraint is unreasonable."  *Maricopa*, 457 U.S. at 344.  Even if "procompetitive consequences" happen to flow from a condemned restraint in a given case, the

C a r l t o n   F i e l d s ,   P . A .
ATLANTA     MIAMI     ORLANDO     ST. PETERSBURG     TALLAHASSEE     TAMPA     WEST PALM BEACH

"*per se* rule reflects the judgment that such cases are not sufficiently common or important to justify the time and expense necessary to identify them."   *Id.* (quoting *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 50 n.16 (1977)).

In *Sealy* and *Topco*, the competitors which were geographically dividing markets argued that they were merely seeking to prevent members from taking a free ride on other members' promotion efforts.   In both cases, the Supreme Court pointedly ignored the asserted economic benefits in holding the market divisions to be *per se* illegal.   *See also Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588 (7th Cir. 1984) (rejecting free rider argument and affirming preliminary injunction  on ground that association's territory division among members was likely *per se* unlawful).

Patheon mistakenly relies (Motion at 12-13) on *Texaco v. Dagher*, 547 U.S. 1 (2006), a case which applied the rule of reason to alleged price fixing.   *Dagher* is clearly distinguishable because the legitimate joint venture there is the opposite of the market allocation alleged here.   In *Dagher*, Texaco and Shell formed a fully-integrated joint venture, Equilon, to consolidate their operations in the western United States.   The Supreme Court presumed the joint venture's legitimacy because it had been approved by the Federal Trade Commission, 547 U.S. at 6 n.1 notwithstanding that  the venture ended competition between the parties in the domestic refining and marketing of gasoline in the applicable territory.   Under the joint venture agreement, Texaco and Shell had "agreed to pool their resources and share the risks and profits from Equilon's activities," 547 U.S. at 4, thereby creating a "single entity" out of the former competitors.   *Id.* at 6.   The only question was whether that single entity could establish its own prices even though the product was sold under the Texaco and Shell names.   The Supreme Court held that the venture could establish its own prices without violating the *per se* rule against price fixing because Texaco and Shell were no longer competitors.   Rather, they participated in the market jointly through their investments in Equilon.   In other words, "the pricing policy challenged … amounts to little more than price setting by a single economic entity – albeit within the context of a joint venture – and not a pricing agreement between competing entities with respect to their competing products."   *Id.*

Subsequent courts and commentators have noted that "*Dagher* should be interpreted narrowly" and only within the context of a highly integrated collaboration that functions as a "single entity."   *See Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201, 2215 (2010) (corporation

established by NFL to market team gear was not a "single entity" for antitrust purposes because the teams did not function like components of a single firm maximizing the firm's profits); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 326 (2d Cir. 2010) (refusing to dismiss section 1 claims on the basis of *Dagher* where plaintiffs challenged the venture as anticompetitive and it was not approved by state or federal regulators); *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 879 n.3 (N.D. Ill. 2010) (*Dagher* is inapplicable where joint venture has no independent structure); P. Areeda & H. Hovenkamp, Antitrust Law ¶ 2132, p. 387 (Supp. 2010) ("[O]ne should not overread the opinion … This particular joint venture came very close to being a full merger of the two firms.).   Significant to the Court's ruling was a presumption "that Equilon is a lawful joint venture." *Dagher*, 547 U.S. at 6 n.1.

Here, Banner and Procaps have not formed a single entity joint venture.  Indeed, Patheon implicitly acknowledges that there is no integration between them when Patheon purportedly agreed to keep Procaps' confidential information from Banner (Motion at 7).  Banner and Procaps are no more than independent competitors who now have their competition controlled by Patheon.  Nor does the Agreement establish a joint venture between Procaps and Patheon of the type created by Texaco and Shell in *Dagher* because it does not create a "single entity" that pools resources and shares profits and losses.  It does not create an economic integration of Patheon and Procaps.  To the contrary, the Agreement merely provides that the parties' joint activity is governed by a Joint Steering Committee comprised of representatives of each independent company.  In sum, nothing in the Complaint suggests that Patheon has created a "single entity" or fully-integrated joint venture which would be subject to the rule of reason. *Dagher* is inapplicable.

Fourth, Patheon argues that the rule of reason must be the proper mode of analysis because Procaps admits in the Complaint that the Agreement was not anticompetitive before its acquisition of Banner and "[w]e know of no case where an acquisition transmogrified a procompetitive collaboration into a *per se* violation" (Motion at 13).  Patheon argues that it is "impossible" to "take two activities judged under the *rule of reason* and *ipse dixit* condemn them *per se*."  *Id.* at 14.  Not only does this argument lack legal support, it makes no sense.  If Patheon had first acquired Banner and then pursued the Agreement with its direct competitor, Procaps, it would have been an unlawful horizontal market allocation between competitors.  That the

chronological order was reversed makes no difference; the result is illegal under the antitrust laws.[4]

Fifth, Patheon states that the Banner acquisition is not anticompetitive because the federal antitrust enforcement agencies granted early termination in the Hart-Scott-Rodino Act process (Motion at 6). This is of no relevance. Patheon did not disclose the Agreement to the federal agencies, and therefore, those agencies had no occasion to consider the issues raised in this lawsuit. In any event, Procaps does not challenge the Banner acquisition standing by itself, but instead alleges that the acquisition turned the Agreement into an unlawful restraint of trade.

Finally, Patheon argues that the Agreement is a "dual distribution" arrangement subject to the rule of reason (Motion at 14). This argument is meritless. A dual distribution arrangement is one "[w]here a manufacturer or trademark licensor uses independent distributors and itself operates as a distributor in actual or potential competition with its independent distributors." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 2007 WL 4150666, at *12 n.7 (M.D. Pa. Nov. 19, 2007) (quoting ABA Section of Antitrust Law, *Antitrust Law Developments* 160 (5th ed. 2002)). As Patheon observes, such arrangements typically are vertical and subject to the rule of reason. *See Continental T.V. v. GTE Sylvania*, 433 U.S. 36 (1977); *Jacobs v. Tempur-Pedic, Intern., Inc.*, 626 F.3d 1327, 1341 (11th Cir. 2010).

However, Procaps' claim here does not involve a vertical dual distribution arrangement. Vertical restraints are "imposed by … firms at different levels of distribution." *Id.*; *Bus. Elec. Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 730 (1988). By contrast, "[r]estraints imposed by … competitors have traditionally been denominated as horizontal restraints." *Id.* at 730. Here, the Complaint explicitly alleges that the relationship between Procaps and Patheon-Banner is horizontal, not vertical. *E.g.*, Doc. 1 ¶¶ 10-12, 57, 59-60, 65, 67, 75, 76, 101.

For a dual distribution theory to apply, the Complaint would have to allege that Patheon was a manufacturer of softgel capsules selling **its own** product through Procaps, pursuant to the collaboration, and now, after the Banner acquisition, also selling **its own** products through its

---

[4] It matters not whether prior courts have encountered the exact fact pattern in the same industry as the horizontal market allocation alleged here. "[T]he argument that the *per se* rule must be rejustified for every industry that has not been subject to significant antitrust litigation ignores the rationale for *per se* rules, which in part is to avoid the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable." *Maricopa*, 457 U.S. at 351.

newly-acquired Banner subsidiary.  Patheon does not and the reality is to the contrary.  As the Complaint alleges, Procaps is a manufacturer selling **its** P-Gel products and services pursuant to the Agreement with a non-competitor. Complaint at ¶¶ 30-33, 39, 41-43, 51).  Patheon then became a horizontal competitor of Procaps when it acquired Banner– precisely because Banner already was Procaps' horizontal competitor.  *Id.* ¶¶ 34-37, 59-62.  As such, the challenged restraint is horizontal, i.e., between entities at the same market level, not vertical.  It has nothing to do with dual distribution.

### 3.     Patheon's market allocation is unlawful under a "quick look" theory of antitrust liability.

Patheon is wrong when it argues that the Complaint fails to allege a proper market or market power under the rule of reason (Motion at 15-17) Even apart from the *per se* rule, which requires no such market allegations, the Complaint must be sustained pursuant to the "quick look" theory.  Courts recognize that "a certain class of restraints, while not unambiguously in the *per se* category, may require no more than cursory examination to establish that their principal or only effect is anticompetitive."  XI Areeda & Hovenkamp ¶ 1911a at 295-96.  In other words, the rule of reason analysis does not always require the extensive market analysis described by Patheon; it sometimes can be applied "in the twinkling of an eye."  *NCAA v. Bd. of Regents*, 468 U.S. 85, 109 n.39 (1984).  The Supreme Court has explained that this truncated rule of reason or "quick look" analysis may be appropriately used where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets."  *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999).  Full rule of reason treatment is unnecessary where the anticompetitive effects are clear even in the absence of a detailed market analysis.  *See NCAA*, 468 U.S. at 110.

Such is the case here, where Patheon converted the procompetitive Agreement between non-competitors into an arrangement between horizontally situated competitors (one of whom, Banner, controls the second largest market share for soft gel capsules).  The Banner acquisition transformed the Agreement into an illegal allocation of markets and customers between competitors which stifles competition, and reserves to Patheon the ability to operate as a central planner in the market, with all its attendant potential for output restriction and price increases..

Once it is established that the anticompetitive effects of the restraint are easily ascertained, as here, the burden shifts to the defendant to produce evidence of procompetitive justification or effects that would necessitate a more extensive inquiry into market effects.  *Cal.*

*Dental*, 526 U.S. at 775.  Patheon offers no procompetitive justification for its post-Banner acquisition market allocation in the Territory; nor could it do so at the motion to dismiss stage. Accordingly, even if the *per se* rule did not apply, the Complaint survives Patheon's motion to dismiss on a quick look analysis and any arguments Patheon may make that the arrangement is not anticompetitive must await discovery and trial.

> **4.    Procaps' well-pleaded *per se* and quick look claims render irrelevant Patheon's arguments regarding market share and market power.**

Patheon contends that the Complaint does not adequately allege the relevant market or market effects.  Under a *per se* theory, no such allegations are necessary. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) (noting a *per se* Section 1 violation does not require market power evidence).  Moreover, even under a full-blown rule of reason inquiry (much less a quick look approach, which applies here), courts are hesitant to base dismissals on a failure to adequately plead the relevant market. *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) ("Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant market"); *Alt. Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322, 333 (E.D.N.Y. 2009) ("Courts are reluctant to dismiss antitrust claims for failure to plead the relevant market because determining the relevant market requires a fact-intensive inquiry that is best served by allowing the parties discovery").

The Complaint's market allegations are far from implausible.  In terms of product market definition, the Complaint describes the softgel capsule market by stating that it "is essentially comprised of two separate service sectors:  a development services sector and a manufacturing sector."  It alleges that successfully competing "in the softgel market requires a company to provide both."  Complaint at ¶¶ 26-27.  It alleges that the softgel dosage form is distinct from other forms because it "provides important advantages for drug delivery and consumer experience."  *Id.* ¶ 29.  The Complaint further describes the geographic scope of the market as the Territory encompassed by the Agreement, including the entire United States.  *Id.* ¶¶ 21, 51, 60-61.  In addition, although market power allegations are not required under a quick look approach, the Complaint alleges that Banner is the "world's second largest commercial manufacturer of softgel capsules," *id.* ¶ 34, and that Patheon's rendering the Agreement anticompetitive "will thus harm competition in the marketplace."  *Id.* ¶ 101.  Patheon may not like or agree with these market allegations, but under a quick look analysis, they are plausible and sufficient.

C.    **PROCAPS HAS STANDING.**

In conducting a standing inquiry, the Court should assume that an antitrust violation has occurred.  *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance*, 123 F.3d 301, 306 (5th Cir. 1997).  Patheon asserts that Procaps lacks standing because it does not state a claim for antitrust injury.  More specifically, it contends that the "alleged exclusion of a competitor from territories in which [Procaps'] products are marketed would only be to [Procaps'] benefit" and "a plaintiff who stands to gain from anticompetitive conduct has not suffered antitrust injury" (Motion at 18).  Patheon misapprehends Procaps' claim.

Although section 1 is focused on competitive injury to consumers, courts nonetheless hold that competitors, and even cartel participants, have standing to bring section 1 claims as long as they sue to enhance competition and not to reap supracompetitive profits.  *Compare Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) (competitor lacked standing to challenge maximum vertical price restraint because it was advantaged by the restraint) *and Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991) (excluded physician plaintiff lacked standing to challenge radiologists' conspiracy because he sought to join the cartel and reap inflated prices resulting from the scheme); *with Gulf States Reorganization Group, Inc. v. Nucor Corp.*, 466 F.3d 961, 967 (11th Cir. 2006) (injury to competitor excluded from market was "inseparable" from injury to competition because "[i]t is this same exclusion from the market that denies consumers the benefit of the pressure to lower prices that would likely accompany the [plaintiff's] becoming a viable competitor") *and Volvo N. Am. Corp. v. Men's Intern. Prof'l Tennis Council*, 857 F.2d 55, 67-68 (2d Cir. 1988).  *See also* 2A Phillip E. Areeda, et al., *Antitrust Law* ¶ 348 (competitor standing serves antitrust policy when the rival is in a position to detect a violation earlier than consumers are or the rival's injury is large when contrasted with consumer injury).

For example, in *Volvo* the Second Circuit ruled that "to the extent a cartel member credibly asserts that it would be better off if it were free to compete – such that the member's interest coincides with the public interest in vigorous competition – we believe that the individual cartel member satisfies the antitrust injury requirement."  857 F.2d at 67-68.  Indeed, the court held that the plaintiffs, tennis event sponsors, had alleged antitrust injury from the professional tennis association's market division because the complaint alleged that it had divided the market to favor competing events over events produced by the plaintiffs.  In short,

while a complaint about an inability to reap cartel profits is not antitrust injury, being precluded from free and open competition most certainly is.

Here, as in *Volvo*, the Complaint alleges that Patheon may allocate customers in the Territory in such a way that advantages Banner and disadvantages Procaps (Complaint at ¶¶60-61). In such a scenario, the same anticompetitive conduct that harms purchasers also harms Procaps, creating antitrust injury. It is also possible that, as Patheon suggests, it may allocate customers in such a way that advantages Procaps. For example, Patheon conceivably may simply withdraw Banner from the market, leaving the Territory entirely to Procaps. According to Patheon, Procaps benefits in this scenario from the supracompetitive prices Patheon apparently would establish (demonstrating, of course, exactly why its market allocation is a naked, anticompetitive restraint to begin with). Hence, so Patheon's argument goes, Procaps benefits and therefore lacks antitrust injury.

Patheon's argument in this regard is fundamentally at odds with anything in Procaps' Complaint, which nowhere alleges that Procaps seeks to "benefit" from supracompetitive pricing that Patheon may impose on the market. To the contrary, Procaps does not want to be a part of Patheon's cartel, forced to operate under an illegal agreement and subjected to antitrust exposure from enforcement authorities and private litigants aggrieved by the restraint of trade that now exists between Patheon-Banner and Procaps. Nor does it want to "benefit" from supracompetitive prices that Patheon may potentially allocate to it in the short run as part of Patheon's anticompetitive activity. Simply put, Procaps seeks to operate in a competitive environment consistent with the free and open environment existing before Patheon's acquisition of Banner. In a competitive market, Procaps (and Patheon, as its Agreement partner) would compete with Banner in numerous ways, including price as well as product and development quality. Because Patheon has destroyed the viability of the Agreement by acquiring Banner, Procaps will lose the benefit it would have enjoyed from such lawful competition, with Patheon as its collaboration partner. In short, the only "benefit" sought by Procaps is the benefit of its bargain of operating according to the Agreement as it was designed. But as Patheon would have it, Procaps must either go along with an antitrust violation or walk away from the Agreement and, consequently, from the benefit of its bargain. Procaps chooses neither. As in *Volvo*, Procaps wishes to compete in a free, unrestrained market. As such, its interest coincides with the

C a r l t o n   F i e l d s ,  P . A .
ATLANTA     MIAMI     ORLANDO     ST. PETERSBURG     TALLAHASSEE     TAMPA     WEST PALM BEACH

public interest in vigorous competition, and the damages it has suffered through the destruction of the Agreement constitute antitrust injury.

Patheon also ironically asserts that Procaps lacks standing because "it is Procaps, not Patheon, that insists on continuing the allegedly unlawful agreement" (Motion at 19). This fundamentally mischaracterizes Procaps' position. Procaps seeks to continue the Agreement as it was initially conceived and implemented, free from the antitrust taint of Patheon's market allocation. That is why Procaps seeks, among other relief, a declaration requiring Patheon to divest Banner to the extent necessary to rectify the antitrust violation. Nowhere does the Complaint suggest that Procaps seeks to benefit from Patheon's illegal scheme. To the contrary, Procaps seeks to reverse the effect of that scheme and restore free and open competition to the marketplace.

**D.     PROCAPS' CLAIMS ARE NOT BARRED BY *IN PARI DELICTO*.**

Patheon next argues that Procaps' claims are barred under the doctrine of *in pari delicto* because Procaps has "refused Patheon's offer to permit Procaps to terminate" and therefore, it is "at fault for the supposedly anticompetitive activity that will occur under the Collaboration" (Motion at 19). Patheon even asserts that Procaps' conduct "goes beyond the situation where five Supreme Court Justices" in *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134 (1968) suggested an unclean hands defense would be available to a defendant "where a plaintiff actively, equally, and voluntarily participated in the challenged misconduct" (*id*. at 19).

For Patheon to argue that Procaps is equally responsible for Patheon's anticompetitive conduct such that an unclean hands defense would apply is astonishing. As the Complaint alleges, Procaps has become an "unwilling participant in an agreement involving the nature and extent of its competition with Banner" (Complaint at ¶ 12, 61, 63-68).

Naturally, Patheon hopes that Procaps simply walks away from the Agreement and the benefit of its bargain to avoid any liability for its conduct. But Procaps will not walk away from the Agreement (contrary to Patheon's misstatement of its intent). Rather, as alleged in the Complaint, Procaps seeks, along with damages, (a) a declaration that the Agreement – as the situation now stands – has been rendered a violation of § 1 of the Sherman Act by virtue of the Banner acquisition, (b) a mandate that Patheon divest Banner's softgel manufacturing capabilities and facilities to a third party pursuant to the Collaboration Agreement, thereby restoring the Collaboration Agreement to the viable and procompetitive arrangement it was, and

(c) failing that, after judgment has been entered in favor of Procaps, a declaration that the Agreement must cease and/or terminate, with an appropriate recovery of damages (*id.* at ¶¶ 90; Count I Wherefore Clause (A) & (B)).  Procaps does not seek a termination of the Agreement without a declaration of illegality and an award of damages; termination would reward rather than punish Patheon for its antitrust violation and deceptive and unfair trade practices.

Just as meritless is Patheon's argument that it is entitled to dismissal based on an *in pari delicto* defense.  In *Perma Mufflers*, the Supreme Court ruled that the common law doctrine of *in pari delicto* was "not to be recognized as a defense to an antitrust action."  392 U.S. at 140.  The Eleventh Circuit appears to have adopted this blanket rule prohibiting the *in pari delicto* defense in the antitrust context.  *Tidmore Oil Co., Inc. v. BP Oil Co.*, 932 F.2d 1384, 1388 (11th Cir. 1991); *see also Greene v. General Foods*, 517 F.2d 635, 646-7 (5th Cir. 1975) (questioning continuing vitality of doctrine).  It is true that five justices, in concurring or dissenting opinions in *Perma Mufflers*, appeared to recognize a very limited defense which would bar a plaintiff from recovering damages for violations for which he was substantially equally responsible.  As a result, some lower courts have accepted and endorsed a narrow defense where the plaintiff is equally responsible for the violation.  *E.g.*, *Wilson P. Abraham Const. Corp. v. Texas Indus., Inc.*, 604 F.2d 897, 902 (5th Cir. 1979) (defense unavailable when plaintiff does not bear equal responsibility for creating and establishing an illegal scheme or is required by economic pressure to accept such an agreement); *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 15-16 (4th Cir. 1971) (same); *Moecker  v. Honeywell Intern., Inc.*, 144 F. Supp. 2d 1291 (M.D. Fla. 2001) (plaintiff must be equally at fault or at greater fault for the defense to apply).

Here, the Complaint alleges that Procaps had the antitrust violation thrust upon it.  It clearly alleges that it objected to the Banner acquisition by Patheon and made clear its position that it would render the Agreement unworkable and a conflict of interest.  It filed this lawsuit before the stock purchase agreement closed and sought to prevent consummation of the acquisition. But Patheon went forward nonetheless, fully understanding its risks and liabilities. Since it was the acquisition of Banner that caused the Agreement to become a restraint of trade, Patheon cannot credibly argue that Procaps was of equal or greater fault when, as the Complaint alleges, Patheon **alone** entered into and completed the Banner acquisition – and it did so over Procaps' vehement protest (Complaint at ¶¶ 55-58).  Thus, even if *in pari delicto* theoretically remains a valid defense, it has no application here.

**E.    PATHEON RELIES ON ABROGATED AND INAPPLICABLE STATUTORY AUTHORITY IN CHALLENGING PROCAPS' STATE LAW CLAIMS.**

Patheon argues that Procaps' state law claims should be dismissed for two reasons.  First, it asserts that "Florida antitrust law follows federal antitrust law," citing Fla. Stat. § 542.32, the Florida Antitrust Act and *St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*, 457 So. 2d 1028, 1032 (Fla. 2d DCA 1984) (construing the Florida Antitrust Act).  However, Procaps did not sue Patheon under the Florida Antitrust Act.  It sued Patheon under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and similar laws of other states for Patheon's deceptive acts.  FDUTPA is an independent statute, although it prohibits unfair trade practices that also constitute antitrust violations. *See Mack v. Bristol-Myers-Squibb Co.*, 673 So. 2d 100, 104 (Fla. 1st DCA 1996).

Patheon also contends that Procaps lacks standing to sue under FDUTPA because "[b]usiness entities may not use FDUTPA for damages actions unless they involve transactions in which the business entity was itself acting as a consumer" (Motion at 21).  However, Patheon cites the now-superseded 1999 version of FDUTPA and a case construing it.  In 2001, the Florida Legislature amended FDUTPA and permitted competitors to bring damages actions under its provisions.  This Court's decision in *Niles Audio Corp. v. GEM Sys. Co.*, 174 F. Supp. 2d 1315 (S.D. Fla. 2001), which Patheon does not cite, is the seminal opinion discussing that statutory change.  There, as here, a manufacturer sued its competitors and sought damages and injunctive relief under FDUTPA.  As here, the defendants argued that the plaintiff failed to state a FDUTPA claim because it was "a competitor of Defendants and not a consumer."  This Court rejected that argument because, as of July 1, 2001, the Florida Legislature had modified the statute to permit "a person" as opposed to "a consumer" who has "suffered a loss as a result of a violation of this part" to recover "actual damages, plus attorney's fees and court costs."  *Id.* at 1319.  *See also Crowley Liner Servs., Inc. v. Transtainer Corp.*, 2007 WL 433352 (S.D. Fla. 2007) ("the Court finds no support for the plaintiff's claim that the FDUTPA does not apply to sophisticated commercial transactions").

# IV.
# <u>CONCLUSION</u>

Patheon's Motion should be denied.[5]

_s/ Alan Rosenthal_

Alan Rosenthal
Florida Bar Number 220833
arosenthal@carltonfields.com
Natalie Carlos
Florida Bar Number 0146269
ncarlos@carltonfields.com
CARLTON FIELDS, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile:   (305) 530-0055

and

_s/ Chris S. Coutroulis_

Chris S. Coutroulis
Florida Bar No. 300705
ccoutroulis@carltonfields.com
Donald R. Schmidt
Florida Bar No. 607959
dschmidt@carltonfields.com
Kathryn H. Christian
Florida Bar No. 027594
kchristian@carltonfields.com
CARLTON FIELDS, P.A.
P.O. Box 3239
Tampa, Florida 33601-3239
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133

---

[5] In the event the Court were to disagree, in accordance with _Wagner v. Daewoo Heavy Industries Am. Corp._, 314 F.3d 541 (11th Cir. 2002), Procaps requests leave to amend.

C a r l t o n   F i e l d s ,   P . A .
ATLANTA      MIAMI      ORLANDO      ST. PETERSBURG      TALLAHASSEE      TAMPA      WEST PALM BEACH

## CERTIFICATE OF SERVICE

I CERTIFY that on January 31, 2013, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*s/ Alan Rosenthal*

Carlton Fields, P.A.
ATLANTA      MIAMI      ORLANDO      ST. PETERSBURG      TALLAHASSEE      TAMPA      WEST PALM BEACH