**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-24356-CIV-GOODMAN**

**[CONSENT CASE]**

PROCAPS S.A.,

     Plaintiff,

v.

PATHEON INC.,

     Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION TO RE-DESIGNATE DOCUMENTS

Lyrics from a Beatles song help resolve a discovery dispute which should not, at least for now, even be a dispute:

> *We can work it out. Life is very short, and there's no time for*
> *fussing and fighting, my friend.*[1]

The dispute here concerns a frequently-arising circumstance in complex commercial litigation cases: protective orders outlining the methodology for designating documents as "confidential" or "highly confidential," and challenges to such designations. Surprisingly, the case law is sparse on how to resolve such disputes.

---

[1] The Beatles, "We Can Work it Out," on Day Tripper (1965, EMI Studios).

## I.    INTRODUCTION

Plaintiff Procaps S.A. ("Procaps") asks the Court to compel Defendant Patheon Inc. ("Patheon") to re-review **all** 8,893 documents (from about 200,000 pages produced) Patheon designated as "highly confidential" and to re-designate these documents on a page-by-page basis. [ECF No. 96]. Procaps did not pinpoint which of the 8,893 documents it believes were inappropriately classified. Rather, Procaps contends that it does not have to mount specific document-by-document challenges and that Patheon should bear the burden of re-reviewing and re-designating all 8,893 documents because: (1) Patheon abused the "highly confidential" classification in designating documents, i.e., Patheon did not act in good faith in making its document designations; and (2) Patheon improperly utilized a document-by-document methodology in designating documents when it should have been doing so on a page-by-page basis.

Patheon contends that the Stipulated Confidentiality Order (the "Confidentiality Order") [ECF No. 86], permits it to make designations on a document-by-document basis. [ECF No. 103]. Patheon argues that it would be unduly burdensome to require it to make page-by-page designations. In addition, Patheon argues that it is Procaps who did not act in good faith when it brought this discovery dispute without advising Patheon of which documents it was specifically challenging.

2

As discussed below, Procaps' motion is **premature** and will be <u>denied</u>, albeit <u>without prejudice</u>. For now, the Court cannot conclusively determine, based on a limited review of less than 100 pages of Patheon-designated material, whether Patheon's designations after reviewing approximately 200,000 pages (resulting in almost 9,000 documents designated as "highly confidential") were made in good faith or not.[2] Based on the favorable results obtained when Procaps finally designated (in the actual motion) specific documents (or pages within documents) to challenge, the Court is confident that the parties will be able to resolve most, if not all, of the dispute on their own, *after* Procaps advises Patheon of the document designations it is challenging and after the Court resolves the essential issue of which designation methodology is to be used in the case and demonstrates its philosophy through particular rulings on specific pages.

At the hearing on this matter [ECF Nos. 116; 120], both parties advised that if they were to prevail they should receive attorney's fees under Federal Rule of Civil

---

[2]      The Court is not implying that the designations were not made in good faith. Instead, the Court is merely noting that it would be a stretch to reach a conclusion about a process applicable to 200,000 pages reviewed for designation decisions based on a peek at only 100 pages. As explained later, the parties ultimately agreed to the appropriate designations for 50 of the 100 pages submitted under seal, and the Court therefore did not need to carefully analyze more than the 50 pages still in dispute.

Procedure 37. The Court is **not** entering a fees award at this point. The Court, however, may be willing to entertain a fees request later, depending on developments.

## II.   BACKGROUND

### A.  General Factual Background

In January 2012, Procaps entered into a Collaboration Agreement with Patheon to develop a new brand of softgel products. [ECF No. 21, p. 3]. The Collaboration Agreement gave Patheon the exclusive right to market Procaps' softgel technology, development, and manufacturing capabilities and gave Patheon licenses to use Procaps' intellectual property. [ECF No. 50, p. 1]. The Collaboration Agreement provided that if either party acquired a third-party softgel service provider, it would have a six-month grace period after the acquisition to address the issue, by either divesting the overlapping business or by bringing it into the collaboration. [*Id.* at pp. 1-2].

In late 2012, Patheon acquired Banner Pharmcaps Europe B.V. ("Banner"), a company that specializes in the research, manufacture, and distribution of softgel products. [ECF No. 50, p. 2]. Banner's services significantly overlap with those provided by Procaps. [*Id.*]. In fact, Procaps classifies Banner as a significant competitor in the research, development, manufacturing, and distribution of softgel capsules. [ECF No. 21, p. 3].

Procaps filed this action alleging that Patheon's acquisition of Banner will render the Collaboration Agreement illegal under antitrust and competition laws because Procaps and Patheon will become horizontally-situated competitors in the softgel market. [*Id.* at p. 3]. Procaps seeks various forms of relief (declaratory judgment, permanent injunction, damages, etc.) arising from Patheon's acquisition of Banner. [*See generally* ECF No. 1].

B. <u>**The Confidentiality Order**</u>

On July 3, 2013, at the parties' request, the Court entered the Confidentiality Order. [ECF No. 86]. The Confidentiality Order contains two types of protected materials: "confidential"[3] and "highly confidential"[4] information. [*Id.* at ¶¶ 2(g)-(h)].

---

[3]    "'Confidential Information' means Discovery Material containing information that either: (i) has not been made public and that the Producing Party would not make public in the ordinary course of its activities; (ii) the Producing Party is under a preexisting obligation to a non-party to treat as confidential; (iii) the Producing Party has [in] good faith been requested by the Receiving Party to so mark on the ground that the Receiving Party considers such material to contain information that is confidential or proprietary to the Receiving Party; or (iv) the Receiving Party has in good faith been requested by a Producing Party to so mark on the ground that . . . such material . . . contain[s] information that is confidential or proprietary to the Producing Party." [ECF No. 86, ¶ 2(g)].

[4]    "'Highly Confidential Information' is a narrow subset of 'Confidential Information,' containing trade secret information or information of a competitively sensitive nature that would create a genuine risk of competitive injury if disclosed to a Receiving Party." [ECF No. 86, ¶ 2(h)].

"Confidential" information may be provided to, among other people, "any employee of a Party who Counsel believes in good faith has a need to access the information solely for the purposes of this Action." [*Id.* at ¶ 4(c)(i)(ii)]. "Highly confidential" information, however, cannot. [*Id.* at ¶ 4(c)(ii)]. In other words, "confidential" documents may be shown to the client, "highly confidential" documents may not.

Paragraph 3 of the Confidentiality Order concerns "designation of protected material." Subsections (a) and (b) of paragraph 3 provide in relevant part: "Discovery Material that the Producing Party believes in good faith to **contain** or constitute" "confidential" or "highly confidential" information "may be so designated . . . by **marking on each document** or discovery response" the legend "'CONFIDENTIAL'" or "'HIGHLY CONFIDENTIAL.'" [*Id.* at ¶¶ 3(a)-(b) (emphasis added)].

Paragraph 8 of the Confidentiality Order provides for challenges to the propriety of a designation and states in relevant part:

> Any Party challenging the designation of any Protected Material shall serve notice of such challenge upon Counsel for the relevant Producing Party within two (2) business days of filing any such Challenge with the Court. The burden of proof shall be on the Producing Party claiming Protected Material status for the Discovery Material. The parties shall **first attempt to resolve** *such* *__challenges__* **in good faith on an informal basis.** Any **document** designated Confidential Information or Highly Confidential Information shall enjoy the protection of such designation until the issue relating to the propriety of the designation has been resolved by the Court or by agreement of the parties.

6

[ECF No. 86, ¶ 8 (emphasis added)].

C.  **The Instant Motion**

On August 6, 2013, Procaps filed its motion to re-designate and requested the Court to compel Patheon to re-review and re-designate all 8,893 documents it designated as "highly confidential." [ECF No. 96]. Procaps explained that its position was generated by the sheer volume of documents designated as "highly confidential": 8,893 out of 25,133, or 35%. [*Id.* at p. 3].[5] Procaps contended that such a high percentage -- 35% -- indicates Patheon's abuse of the designation. In addition, Procaps argued that Patheon abused the "highly confidential" designation by invoking it for documents which are not "highly confidential" such as, for sale opportunities, a conference call meeting request, etc. In support, Procaps mentioned 11 Bates numbered documents it contends were improperly designated. Therefore, Procaps argues, because Patheon blatantly abused the "highly confidential" designation, it should be saddled with the burden of re-reviewing all 8,893 designated documents. Procaps did not, however, expressly outline the specific efforts it made to resolve the dispute.

---

[5]     For comparison purposes, Procaps alleges that it designated less than 2% of its produced documents as "highly confidential." Procaps, however, did not specify, in its motion or at the hearing, how many documents it produced, how many it designated as "highly confidential" or how much production is still forthcoming. Indeed, at the hearing, Patheon disputed Procaps' assertion because it has not received the bulk of Procaps' document production.

After Procaps filed its motion, the Court scheduled a hearing and issued two administrative orders [ECF Nos. 101; 102], requiring Patheon to respond and each side to file under seal copies of 50 pages which it contends supports its position on Patheon's use of the "highly confidential" designation. Thus, Patheon filed under seal 50 pages it contends are in fact "highly confidential," while Procaps filed under seal 50 pages it believes were *incorrectly* designated (by Patheon) as "highly confidential." The Court required the parties to confer about the 100 pages filed under seal and to see whether they could agree on whether certain Bates labeled pages were appropriately designated or whether any challenges were meritorious.

In its response [ECF No. 103], Patheon made three major points. First, it emphasized that Procaps failed to facilitate the dispute-resolution process by giving Patheon specific Bates numbers of documents it believes do not warrant a "highly confidential" designation. According to Patheon, once Procaps provided illustrative Bates numbers to the *Court* in its motion, Patheon re-designated 8 of the 11 documents Procaps mentioned and also re-designated other documents during its own additional review. Patheon contends that this process (of pinpointing the Bates numbers of the pages or documents for the challenged designations) is the one "contemplated by the Confidentiality Order -- and it works."

8

Second, Patheon argued that Procaps' argument (that Patheon do a blanket re-review of all documents and that Procaps need not identify potentially mis-designated documents) is unpersuasive and incorrect for three primary reasons: (1) it contradicts the process described in the Confidentiality Order; (2) it is illogical because Procaps "could easily identify the Bates numbers during its review of Patheon's document production;" and (3) it is impractical because a blanket re-review "simply leaves Patheon in the dark about the documents Procaps believes do not warrant a Highly Confidential designation."

Finally, Patheon disputes Procaps' theory that a 35% rate for designating documents as "highly confidential" is unreasonable, and it contends that the percentage does not generate any presumptions of bad faith or intentional over-designation.

Before the hearing, the parties reported on the results of their Court-directed discussions. [ECF No. 115]. Of the 50 pages Patheon filed under seal as "highly confidential," Procaps agreed that 39 pages should remain "highly confidential," but Procaps challenged the classification for the remaining 11 pages. Of the 50 pages which Procaps challenged as being inappropriately designated as "highly confidential," the parties agreed that 3 pages should remain as "highly confidential" and 8 pages should be downgraded to "confidential" or be de-designated. Therefore, the parties resolved

their dispute as to 50 of the 100 pages filed under seal. They later resolved a few more during the hearing.

### D. __The Hearing__[6]

As a preliminary matter, in response to the Court's question, Procaps was unable to advise how many documents it reviewed in order to flag the 11 noted in its motion as purportedly mis-designated. Likewise, it could not say how many pages it reviewed in order to pinpoint the additional 39 pages it filed along with the initial 11 documents to generate the under-seal submission of 50 pages of discovery material it says Patheon misclassified.[7]

The hearing helped to crystallize the underlying discovery disputes raised in Procaps' motion: which methodology should be used to designate documents, i.e., page-by-page or document-by-document; how a party can challenge improper designations; and Patheon's substantive use of the "highly confidential" designation.

---

[6]     The Court commends both counsel for the high level of their preparation and the oral advocacy skills demonstrated at the hearing.

[7]     The Court asked for this information because, if available, it might shed light on the scope of the alleged abuse. If, for example, Procaps reviewed 3,000 documents in order to find 11 it considers over-classified, then the Court likely would assess the scenario differently than one where Procaps found the 11 from a universe of only 100 documents reviewed.

Procaps contends that Patheon should have used a page-by-page designation methodology rather than document-by-document. Thus, under Procaps' view, in a 20-page report containing only 10 "highly confidential" pages, only those 10 pages could be designated as "highly confidential," not the entire report. Consequently, Procaps' counsel could show its client those non-highly confidential pages. In support of its position, Procaps' counsel argues that a document-by-document designation methodology hampers Procaps from prosecuting its case because it cannot show its client vast amounts of non-highly confidential pages simply because they happen to be **in** "highly confidential" documents.

Patheon vigorously defended its document-by-document designation methodology and explained the painstaking double review process it went through in designating documents. First, Patheon pointed to paragraph 3(b) of the Confidentiality Order, which provides for the designation to be placed on "the document," as opposed to being affixed to specific pages within a document, as authority for its position. Patheon emphasized that the parties heavily negotiated the Confidentiality Order, but it could not conclusively represent that the language from paragraph 3(b) was a provision involved in the negotiation process. Procaps, however, unequivocally maintained that this specific provision was *not* discussed or negotiated.

11

Second, Patheon reasoned its document-by-document methodology was necessitated by two practical concerns. Patheon posited that it would be unduly burdensome and expensive to use a page-by-page approach, and it would never have agreed to such an approach. The other practical concern is the so-called "family" issue or "parent-child" concept in document production and designation.[8] Patheon's approach is to produce the entire "family" of documents in an abundance of caution and to avoid an accusation of discovery abuse for purposefully hiding discovery material. In this case, this procedure meant that if any portion of the responsive document (i.e., the parent) is designated as "highly confidential," then the *entire* document (including the non-responsive "children" attached as exhibits) is also produced but it is also deemed "highly confidential."

Because Patheon used a document-by-document methodology, its counsel explained at the hearing that some specific pages might appear to be innocuous and not sensitive -- but clarified that its evaluation and designation of documents would *still* be appropriate, notwithstanding the presence of pages which in and of themselves might not appear worthy of confidentiality. Thus, using Patheon's methodology for the 20-

---

[8]     The "family" or "parent-child" issue arises when non-responsive exhibits are attached to a responsive document. When this occurs, the producing party must determine whether to produce only the responsive document or to produce the document and all of its non-responsive exhibits or attachments.

page report example above, the entire report would be "highly confidential," not just

the 10 pages, and Procaps' counsel could not show any part of the document to its client

because the *document* itself (i.e., the entire report) is branded "highly confidential."

Both parties agreed to the *general* rule: when challenging arguably improper

designations, the challenging party must identify the specific Bates numbered

documents it is challenging. However, both parties conceded that if one party over-

designates in bad faith, then the burden shifts to the producing party to re-review its

designations. Procaps takes the position that Patheon over-designated in bad faith and

thus the burden has shifted to Patheon to re-review its document designations. Patheon,

of course, adopts the contrary position and contends that the burden remains with

Procaps to identify specific Bates numbers.

Although most of the dispute arises from the fundamental difference in

methodology, Procaps also disagrees with some substantive grounds asserted for the

"highly confidential" designations. Procaps maintains that documents which merely

discuss *generally* competitive information do not meet the heightened "highly

confidential" classification. Patheon does not necessarily take issue with that notion but

disagrees on how the approach is applied for the documents at issue.

Near the end of the hearing, the Court reviewed the remaining contested

designations on a page-by-page basis. During that discussion, Patheon agreed to de-

designate a few additional pages in the spirit of cooperation, in addition to the ones it agreed to re-designate before the hearing.

Finally, *both* parties argued entitlement to attorney's fees under Rule 37 if they were the prevailing party (and that no exceptions to the fees-award presumption apply).

## III.     DISCUSSION

### A.  <u>Methodology: Page-by-Page Versus Document-by-Document</u>

The Court finds that Patheon's document-by-document designation methodology is the correct one here for two reasons. First, the parties agreed to it in the Confidentiality Order. Second, absent the parties' agreement otherwise, practical concerns lean heavily in favor of a document-by-document designation methodology.

#### 1.   <u>Agreement of the Parties</u>

Parties have the freedom and flexibility to agree on the terms of stipulated protective orders designed to protect "confidential" and "highly confidential" material. Unless the agreement contains provisions that are illegal, unlawful, against public policy, contrary to applicable rules, confusing or otherwise problematic, courts typically enter the proposed stipulated protective orders jointly submitted by the parties.

Thus, the parties here could have agreed to a mechanism requiring confidentiality designations on a page-by-page basis. *See, e.g., FDIC v. Cuttle,* No. 11-

14

CV-13422, 2013 WL 878773 (E.D. Mich. Mar. 8, 2013) (stipulated protective order provides for designation of confidential information by "marking appropriate pages or sections"). They could have agreed to a challenge protocol where the challenging party was expressly required to provide specific page numbers, not merely document numbers. They could have agreed that a party placing "highly confidential" designations on more than a certain percentage of its production would be required to provide a log to explain each designation or would be obligated to re-review all documents.

But that is not the controlling agreement here.[9] Negotiated or not, discussed in detail before the hearing or not, the parties did in fact agree to the Confidentiality Order, and the Court thereafter entered it. The Court finds that the Confidentiality Order provides for document-by-document designation as it relates to document production. [ECF No. 86, ¶¶ 3(a)-(b)]. Where the parties sought to provide for page-by-page designations, they did so. [*Id.* at ¶ 3(c) (providing for page-by-page designations of deposition testimony containing "confidential" or "highly confidential" information)]. Procaps may now have second thoughts about the document-by-document designation

---

[9]       Procaps is not seeking to vacate or modify the Confidentiality Order. Instead, it asks the Court to enforce the *existing* Confidentiality Order by requiring a significant and burdensome procedure not specifically mentioned in the agreed-to order.

protocol it agreed to and may now actually prefer a page-by-page approach, but it did in fact agree to the document-by-document system.

### 2. Practical Concerns Favor a Document-By-Document Approach, Absent Agreement

Discovery is a means to an end: learning relevant facts, documents, and witnesses so that a party is not ambushed by surprise information. It is not meant to be what it often has become: an expensive, time-consuming litigation within the litigation. Courts have recognized this in the confidentiality context by noting that the practical burdens (i.e., inordinate time and expense) associated with a page-by-page or section-by-section designation protocol militate against such a default rule, unless the parties otherwise agree. *See S2 Automation LLC v. Micron Tech., Inc.,* 283 F.R.D. 671, 686 (D.N.M. 2012) (acknowledging "concern that parties should not designate entire documents as confidential when only a small portion of the document is confidential," but deciding to not require a more-detailed procedure because it "could increase the cost of production dramatically and make production more time consuming" and noting that "sometimes it is better and more simple to just designate a document as confidential to facilitate speedy production of discovery"); *Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists,* No. 1:07-cv-997, 2008 WL 4545310, at *4 (S.D. Ind. Oct. 10, 2008) ("requiring counsel to scour each document . . . to parcel out which portions of which documents

16

should properly be designated as confidential undoubtedly adds additional burdens and expenses to the litigation").

Indeed, contrary to Procaps' position, it appears that, unless the parties agree otherwise, the emerging norm in complex commercial litigation is for document-by-document designation.[10] To be sure, the parties may agree to a more onerous, time-consuming, and expensive page-by-page or section-by-section designation procedure, but the Court is not going to require it in the absence of an agreement or a demonstrated failure to designate in good faith.

### B.  Challenging Designations

#### 1.  The General Rule: Specific Document Challenges

The Court begins with the undisputed premise that the Federal Rules of Civil Procedure, the Local Rules, and this Court's Scheduling Order provide that the parties must in good faith confer and attempt to resolve discovery disputes before bringing them to the Court's attention *See* Fed. R. Civ. P. 37(a)(1); Local Rule 7.1(a)(3); [ECF No. 94, p. 11].

---

[10]     *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08-Civ. 7508, 2011 WL 3738979 (S.D.N.Y. Aug. 18, 2011) (explaining that the "prevailing practice" is for parties to designate the entire document including any family documents) *report and recommendations adopted by* No. 08-Civ. 7508, 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011) (Scheindlin, J.).

The Confidentiality Order provides a mechanism for challenging a designation. It provides that the "burden of proof shall be on the Producing Party claiming Protected Material status for the Discovery Material," but that the parties first attempt to resolve "such" challenges in "good faith" and on an "informal basis." [ECF No. 86, ¶ 8].

By using the term "such" to discuss a challenge, the parties (who submitted the proposed agreed order) must have intended the word to refer to **specific** documents -- i.e., the **particular** ones being challenged. In context, this phrase cannot logically be construed as referring to *all* documents which were designated. Indeed, the only way this paragraph makes sense is if the challenging party specifies *which* documents it is challenging. Otherwise, there is no practical way for the parties to have a meaningful dialogue, as required, about the propriety of the designations. *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (explaining that the "the **burden** of raising the confidentiality with **respect to individual documents shifts to the other party**") (emphasis added) (internal citations omitted); *Medcorp, Inc. v. Pinpoint Techs., Inc.*, No. 08-cv-00867, 2009 WL 3588362, at *3 (D. Colo. Oct. 23, 2009) (denying motion to require party to re-review and re-designate **all** "confidential" documents and explaining that "it is certainly permissible for [a party] to request, on a **document by document** basis, that a Confidential designation be lifted") (emphasis added).

Procaps' sweeping approach is inconsistent with the policies underlying the Federal Rules of Civil Procedure, the Local Rules, and the Court's Scheduling Order. As Patheon argued, how are parties expected to confer in good faith about the propriety of designations when the challenging party refuses to tell the designating party *which* documents it is challenging and simply demands that the designating party justify *every* single designation? Under this approach, a party who issued "highly confidential" designations on 1 million documents would be forced to re-review every single page of those 1 million documents (totaling perhaps 10 or 20 million pages) if the other party found a handful of documents which might not be entitled to the more-protective type of designation. The Court does not find this approach workable, logical, or persuasive.

The case law also supports the view that the general rule requires a targeted challenge, not a blanket demand to re-review all documents produced and designated. *See, e.g., Giddy Up, LLC v. Prism Graphics, Inc.*, No. 3-06-CV-0948, 2007 WL 2460646, at *2 (N.D. Tex. Aug. 29, 2007) (protective order on confidentiality implicitly requires party challenging a designation "to identify the *specific* documents at issue so that the attorneys can attempt to negotiate an acceptable resolution of the matter," and rejecting "blanket request to reclassify *all* documents designated as 'attorneys eyes only'").

19

### 2.  The Exception to the General Rule

As explained, the general rule is that the challenging party must make specific challenges. But like the situation for many legal rules, there is, of course, an exception for the rule here. Under the exception, if the challenging party demonstrates that the producing/designating party did not act in good faith, then it has grounds to assert a broad, blanket request for re-review and re-designation. *Paradigm Alliance, Inc. v. Celeritas Techs., LLC,* 248 F.R.D. 598 (D. Kan. 2008) (producing party who still designated 80% of documents as attorney's eyes only in revised production supposedly designed to ameliorate over-designation problem justified challenging party's blanket challenge and an order requiring a log to explain the designation for each document). Procaps argues that this case fits under this exception.

The difficulty with Procaps' exception theory, at least at this stage, is that the Court cannot agree that Patheon acted in bad faith. Procaps' emphasis on the percentage of documents designated "highly confidential" as evidence of Patheon's lack of good faith is unpersuasive. *See, e.g., Eisai, Inc. v. Sanofi-Aventis U.S., LLC,* No. 08-4168, 2012 WL 1299701 (D.N.J. Apr. 16, 2012) (rejecting motion to modify confidentiality order simply because defendant designated **more than two million pages of documents** as highly confidential). Procaps cannot direct the Court to one case, and the Court can find none, where a 35% document designation, or some other lower percentage, justified a

blanket challenge on a lack of good faith theory. To the contrary, the cases which have found a lack of good faith involved percentages significantly greater than 50%. *See, e.g., Paradigm Alliance, Inc.,* 248 F.R.D. 598 (80% of documents designated); *In re Ullico Inc. Litig.,* 237 F.R.D. 314 (D.D.C. 2006) (99% of documents designated). In addition, as noted above, Procaps could not say how many documents it reviewed in order to find the 50 pages it says support its position. *See supra* n.7. The Court therefore cannot now accept the argument that there was bad faith here.

### 3. Designation Challenges Going Forward

At bottom, the Court finds that Procaps' motion is **premature**. It did not sufficiently vet its challenges with Patheon and did not provide Patheon with the opportunity to reconsider its "highly confidential" designations as to the specific documents challenged by Procaps. Nor has Procaps shown that Patheon has acted without good faith to warrant a blanket challenge and re-designation by Patheon. Accordingly, Procaps must present Patheon with specific document challenges and then address the challenges on a document-by-document basis in a good faith conference.

The Court is, however, sensitive to Procaps' counsel's argument that certain pages in a "highly confidential" document may in fact not be "highly confidential" and need to be shown to their client to help prosecute this case. Accordingly, the Court will

allow Procaps to also make specific page-by-page challenges for non-highly confidential pages that are in "highly confidential" documents. Assuming the document is properly designated as "highly confidential," Procaps will need to demonstrate that the actual page is not "highly confidential," even though the document is, and that it is reasonably necessary to show this page to the client to aid in the prosecution or defense of this case. As with the other challenges, Procaps and Patheon must have a good faith conference regarding any page-by-page challenges before submitting the dispute to the Court.

The Court need not wonder *whether* good faith conferences will eliminate some of the challenges to specific documents or pages. Instead, the Court knows that Patheon will re-designate documents once it knows which ones are at issue -- because it has in fact already done that here, before and during the hearing. Indeed, Patheon even re-designated specific documents not mentioned in Procaps' motion because it voluntarily re-analyzed documents in the same category as those it re-designated as a result of Procaps' belated, modest listing of challenged documents.

### C.  The Documents Under Seal

Although this case, for now, will proceed under a document-by-document designation methodology, the Court has nevertheless considered and ruled upon the challenged page designations in an effort to assist the parties in working through future

challenges. For the sake of convenience and efficiency, the Court's rulings on these specific pages are in a table attached as an Exhibit to this Order.

### D. Attorney's Fees

#### 1. Attorney's Fees for the Instant Motion

Although Procaps lost this motion to re-designate and although there is a presumption that fees should be awarded to the prevailing party, the Court rejects the parties' reciprocal requests for fees and will not be awarding fees as a cost-shifting mechanism here.

To be sure, it would have been better had Procaps provided a list of documents to challenge, but there is published legal authority suggesting that it need not do so if the designating party designated in bad faith. *See generally In re Ullico Inc. Litig.*, 237 F.R.D. 314 (concluding that party challenging designations on 99% of the documents produced complied with the meet and confer requirement even though no particular documents were specified in the pre-motion challenge). Procaps argued that Patheon acted in bad faith, and it relied on case law for its view that it could demand a wholesale re-review.

Moreover, Patheon did not clearly articulate its view that paragraph 3(b) of the Confidentiality Order created the document-by-document approach it used when determining whether to designate a document. Procaps might not have filed the motion

23

had Patheon clearly conveyed its views concerning the paragraph. Alternatively, Procaps might have filed a different type of motion and/or asserted different arguments had it realized it would be confronted with the language of 3(b) as the authority for the methodology Patheon used. So it seems unjust to award fees to Patheon when it bears some responsibility for creating or aggravating or maintaining the dispute.

2.   <u>Attorney's Fees Related to This Issue</u>

The Court understands that Procaps will undergo significant expense to pinpoint specific pages or documents (from about 9,000 produced) to challenge. This burden should not fairly be placed on Procaps if Patheon's designations were shown to have been made without the requisite good faith. It is too early for the Court to make this assessment and the Court has not come anywhere close to reviewing a sufficient number of pages to feel comfortable with any good faith/bad faith conclusion.

Therefore, Procaps may file a motion for fees and costs and/or for complete re-review and re-designation **if** it has sufficient proof that Patheon did not act in good faith when making its initial designations and/or in responding to any specific challenges made on a page-by-page or document-by-document basis. On the other hand, if Procaps files a renewed motion for a complete re-review or seeks fees based on a renewed claim of bad faith designating by Patheon and the Court determines that Patheon acted in good faith and/or a complete re-review is not warranted, then Patheon

may file a motion for fees and costs. As noted earlier, Rule 37 presumes that a party prevailing on a discovery motion is entitled to an expense-shifting fees award.

The Court will not specify a percentage of document designations which will establish or suggest bad faith. The percentage of documents designated may be a *factor* to consider, but it is unlikely to conclusively dictate the result. Determining if a party over-designated depends more on the nature of the case, the types of documents, and the relationship between the parties than on an arbitrary percentage cutoff. Moreover, the presence of only a comparatively few pages of incorrectly designated documents is likely to evidence inadvertent errors, rather than bad faith.

The Court forcefully urges the parties to adopt a practical, realistic view of the potential issues. It may well be inefficient to pursue a re-designation for a document (or for pages within a document) which the client need not review. On the other hand, Patheon should appreciate its burden to justify a "highly confidential" designation once a specific challenge has been made. If the challenge is to specific pages, then Patheon will need to justify the designation for *each* page being challenged.

Thus, Patheon may have acted in good faith by designating, for example, an entire 20-page report as "highly confidential" if it contains only two pages of material sensitive enough to merit the classification -- and it will not lose the good faith status merely because it later agreed, in response to a page-specific "challenge" by Procaps, to

permit Procaps' counsel to show a few pages to its client. In this situation, Procaps is not actually **challenging** "the designation" of the document (i.e., the report), because the Confidentiality Order permits the designation of the entire document. Instead, Procaps would be asking Patheon to analyze its appropriate designation of the entire document and to specify which pages, if any, Procaps' counsel may show to its client.

## IV.    CONCLUSION

For now, Procaps' motion conflicts with musical advice in two songs:

1.   *Keep your toe on the line, keep your foot on the brake/No sense jumpin' the gun.*[11]

2.   *All we are saying is give peace a chance.*[12]

The Court denies Procaps' motion without prejudice because it is premature.

**DONE AND ORDERED** in Chambers, Miami, Florida, September 4, 2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[11]    Meat Loaf, "Jumpin' the Gun," on Bad Attitude (1984, Arista).

[12]    John Lennon (with the Plastic Ono Band), "Give Peace a Chance," (1969, Apple Records).