UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

**[CONSENT CASE]**

PROCAPS S.A.,

    Plaintiff,

v.

PATHEON INC.,

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO FILE UNDER SEAL AND *SUA SPONTE* RECONSIDERING ORDERS GRANTING PRIOR MOTIONS TO SEAL**

Defendant Patheon Inc. ("Patheon") and Plaintiff Procaps S.A. ("Procaps") have filed several motions to seal certain filings and to redact a portion of a transcript of a hearing held in open court. The proffered justification: their counsel's hourly billing rates are confidential and some of the documents contain confidential information. The Court has previously granted some of these motions, but, upon further reflection, the Court **denies in part and grants in part** Patheon's instant motions and **recedes** from its prior rulings. As explained below, the public's right of access to the business of the federal courts overrides the alleged need to seal for the bulk of the materials at issue.

I. BACKGROUND

In January 2012, Procaps entered into a Collaboration Agreement with Patheon to develop and market a brand of softgel products called "P-Gels." [ECF Nos. 1, ¶¶ 6-9; 21, p. 3]. In short, Procaps would develop and manufacture the P-Gels and Patheon's role was to market and sell the P-Gels. [ECF No. 1, ¶¶ 42, 47-50]. But in late 2012, Patheon acquired Banner Pharmcaps Europe B.V. ("Banner"), a company Procaps classifies as a competitor. [ECF Nos. 21, p. 3; 50, p. 2].

Procaps' lawsuit alleges that Patheon's acquisition of Banner renders the Collaboration Agreement illegal under antitrust laws because Procaps and Patheon will become horizontally-situated competitors in the softgel market. [ECF No. 21, p. 3]. Procaps seeks various forms of relief (declaratory judgment, permanent injunction, damages, etc.) arising from Patheon's acquisition of Banner. [*See generally* ECF No. 1].

II. PATHEON'S MOTION FOR JUDGMENT ON THE PLEADINGS AND RELATED MOTION TO SEAL

A. Applicable Legal Principles

Information exchanged by litigants between themselves during discovery may remain behind a veil of secrecy. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). There are sound reasons for this. At common law discovery proceedings were not open to the public. *Id.* (internal citations omitted). Pragmatically, much of discovery is

2

conducted in private and much of the information exchanged during discovery is only tangentially relevant to the actual issues in the litigation. *Id.*

But when discovery materials are filed in connection with a *substantive* pretrial motion, the common law right of the public's access attaches to the documents and the veil of secrecy must be lifted. *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007). This common law right of access, however, may be overcome by a showing of good cause which requires the court to balance the public right of access against the party's interest to keep the information confidential. *Id.* at 1247 (citation omitted); *Emess Capital, LLC v. Rothstein*, 841 F. Supp. 2d 1251, 1254-55 (S.D. Fla. 2012).

B.  <u>Analysis</u>

Patheon has moved to file under seal an unredacted version of its memorandum in support of its motion for judgment on the pleadings [ECF No. 174] and to seal exhibits 1-3, 7, 9, and 11, which are attached to the memorandum. [ECF Nos. 172; 173]. Patheon reasons that because the memorandum quotes from the Collaboration Agreement (exhibit 1), which purportedly contains confidential information, the unredacted memorandum should be filed under seal. Concerning the attached exhibits, Patheon argues that because the parties have designated these materials as "confidential" under the Protective Order [ECF No. 86] and because they too quote

parts of the Collaboration Agreement, they should also be sealed. The Court rejects Patheon's rationale.

In this case, a party's designation of whether a document is "confidential" under the Protective Order does not control whether the document is entitled to be *sealed* under Local Rule 5.4. [ECF No. 86]; *see also Consejo de Defensa Del Estado de La Republica de Chile v. Espirito Santo Bank*, No. 09-20613-CIV-GRAHAM/TORRES, 2010 WL 2712093 (S.D. Fla. July 7, 2010). The Court alerted the parties to this distinction when entering the Protective Order. [ECF Nos. 83; 96, pp. 3-4]. Because Patheon is attempting to seal documents in connection with a substantive pretrial motion, Patheon must show that the balance tips in its favor, and against the public's common law right of access. *See Romero*, 480 F.3d at 1247. Patheon has not made that showing as to all the documents it seeks to seal.

The Court will *for now* allow the Collaboration Agreement (exhibit 1) to be filed under seal because of the District Court's prior order allowing it to be filed under seal. [ECF No. 10]. The Court, however, notes that in filing the Collaboration Agreement under seal when filing this suit, Procaps stated its belief that the Collaboration Agreement does *not* warrant being sealed. [ECF No. 9, ¶ 4]. Procaps filed it under seal anyway to comply with a non-disclosure provision in the Collaboration Agreement. [*Id.*]. As such, the District Court *temporarily* allowed the Collaboration Agreement to be

4

filed under seal and required Patheon, within ten days of filing its answer, to file a motion explaining why the Collaboration Agreement should remain sealed. [ECF No. 10]. It does not appear that Patheon filed such a motion. Accordingly, the Court will unseal the Collaboration Agreement upon ruling on Patheon's motion for judgment on the pleadings.

The Court will also allow the excerpt of a Patheon letter to Procaps (exhibit 9) to be filed under seal because it contains the names of certain potential customers who were to receive proposals (from Patheon and Procaps) regarding softgel capsules. The public disclosure of the names of potential customers and potential proposals to Patheon and Procaps' competitors may reasonably cause potential financial harm to Patheon and Procaps' business.

The Court will unseal the unredacted memorandum and the remaining exhibits. To be sure, the unredacted memorandum and the exhibits reference and quote from the Collaboration Agreement. But simply because they do that does not mean that they, too, should be sealed. As discussed above, it is not clear the Collaboration Agreement should even be sealed in the first place, given that one party to the agreement does not believe it should be sealed. Even if quoting a small portion of, or referencing, a sealed document could in certain instances control whether to seal a document (which it generally does not), the references to, and quotes from, the Collaboration Agreement

5

are short and general in nature and do not disclose the material aspects or details of the Collaboration Agreement.

### III. THE PARTIES' MOTIONS TO SEAL FILINGS THAT MENTION THEIR ATTORNEY'S HOURLY RATES

#### A. Background

In connection with its discovery order granting in part two Patheon-filed motions to compel and a possible fees award arising from that result, the Court instructed Patheon to file an affidavit outlining its fees request, along with the hourly rates of its counsel. [ECF No. 146]. If Procaps disputed Patheon's counsel's hourly rates, then the Court instructed Procaps to file its own affidavit advising of, among other things, its counsel's hourly rates. [*Id.*].

Both parties submitted the appropriate filings required by the Court, but they both sought to file the declarations containing their counsel's hourly rates under seal. [ECF Nos. 151; 152; 163; 164].[1] The Court granted these requests. [ECF Nos. 155; 167]. The Court also granted Patheon's motion to redact portions of the hearing transcript because it mentions Patheon's counsel's hourly rates. [ECF No. 166]. Patheon has now moved to file under seal its reply to Procaps' response in opposition to its fees request

---

[1] The under-seal declarations of Patheon and Procaps' lead trial counsel contend that the hourly rates for their law firms' attorneys are competitively sensitive, confidential, and proprietary.

and the supporting declaration because they mention Procaps and Patheon's counsel's hourly rates. [ECF Nos. 180; 181]. Patheon is also seeking to keep secret the **total amount** of its fee request. [ECF Nos. 179; l81].

### B. Legal Standard

Unlike the scenario involving exhibits to substantive pretrial motions, there is no common law right to public access to materials filed in connection with discovery motions. *Romero*, 480 F.3d at 1245-46 (citing *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001)). But this does not mean that the documents will be automatically sealed. The party seeking to seal must still show that the documents should be sealed under Local Rule 5.4 and Federal Rule of Civil Procedure 26. What the party does not have to show when discovery materials are sought to be filed under seal is that the balance tips in its favor, outweighing the public's common law right of access.

Under Local Rule 5.4, the presumption in this district is that court filings and proceedings are public. Local Rule 5.4(a). The Local Rule, however, provides the procedure to follow when a party seeks to file something under seal: the party must file a motion, "setting forth a **reasonable basis** for departing from the general policy of a public filing." Local Rule 5.4(b) (emphasis added). Likewise, Federal Rule of Civil

Procedure 26 authorizes a court, for **good cause**, to enter a protective order to seal or to limit disclosure.

C.      <u>Analysis</u>

Here, both parties have sought to file, and have filed, under seal various documents relating to an attorney's fee request and to redact a discovery hearing transcript because it mentions their hourly billing rates. The Court initially granted some of the parties' requests, but, upon further reflection, finds that a purported concern over the public filing of counsel's hourly rates is not a sound legal basis to seal these filings.

As an initial matter, the Court notes that counsel for both Procaps and Patheon contend that their hourly billing rates are confidential and not publicly available and that filing their declarations publically (in which the specific rates are disclosed) would be competitively damaging. But these contentions are inaccurate because they are inconsistent with their conduct in other cases. In fact, both Procaps' and Patheon's law firms have in just the past few years publicly filed -- i.e., not under seal -- *numerous* fees requests disclosing the hourly rates of their attorneys, **including some of the attorneys involved in this case**.[2] It is not clear why their attorney's hourly rates should be

---

[2]      *See Taylor v. Mitre Corp.*, No. 1:11-CV-1247, 2013 WL 588763, at *3 (E.D. Va. Feb. 13, 2013) (Patheon's law firm); *In re Am Corp.*, No. 11-15463, ECF No. 4483 (Bankr.

8

deemed confidential for *this* case, but not for others. The Court cannot find any logical rationale for this dichotomy (of disclosing hourly rates in some cases but not others) and finds that the confidentiality argument is significantly undermined by the law firms' conduct, as opposed to their rhetoric.

Setting aside this contradiction, there is no explicit basis under the Federal Rules of Civil Procedure for sealing attorney's fees motions. *See Grand Elec., LLC v. Int'l Broth. of Elec. Workers Local 265*, 192 L.R.R.M. (BNA) 2782 (D. Neb. 2011) (finding no basis under Rule 5 to seal attorney's fees request and denying motion to seal); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (reversing district court for sealing fee records in determining attorney's fees in class action litigation under Rule 23(h)).

The same is true under the Local Rules. The provisions in the Local Rule governing attorney's fees motions, and responses to the same, **require** that the hourly rates for each time keeper must be disclosed when the motion is filed. Local Rule 7.3(a). There is absolutely nothing in the Local Rule that implies that attorney's fees motions

---

S.D.N.Y. Sept. 17, 2012) (Patheon's law firm); *Ward v. Siebel*, No. 06-CV-00036-WYD-MJW, 2012 WL 2196054 (D. Colo. June 15, 2012) (Patheon's law firm); *Whitney Nat'l Bank v. Accend, Inc.*, No. 8:10-CV-594-T-24 TGW, 2011 WL 5105505 (M.D. Fla. Oct. 27, 2011) (Procaps' law firm); *JGT, Inc. v. Ashbritt, Inc.*, No. 1:09CV380WJG-JMR, 2011 WL 1323410 (S.D. Miss. Apr. 5, 2011) (Procaps' law firm); *Mitchell Co., Inc. v. Campus*, No. CIV.A.08-0342-KD-C, 2009 WL 2567889 (S.D. Ala. Aug. 18, 2009) (Procaps' law firm).

should be filed under seal. If anything, the Local Rule cuts the other way by stating that the motion shall be filed with the court without specifying that the filing be under seal. *See, e.g., Ramirez v. Ban Bin of Miami, Inc.*, No. 07-21437-CIV-OSULLIVAN, 2008 WL 5110519 (S.D. Fla. Dec. 2, 2008) (denying motion to seal motion for attorney's fees and discussing the reasonableness of the requested hourly fee).

Likewise, examining the case law does not provide much support for sealing attorney's fees motions. Attorney's hourly rates are **routinely** publically disclosed and discussed in judicial opinions at all levels. *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 547 (2010) (discussing attorney's publicly disclosed hourly rates in a 42 U.S.C. § 1988 action); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 391 (1973) (Burger, C.J. dissenting) (hourly rates in *antitrust* action); *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952 (S.D. Fla. July 15, 2011), *aff'd,* 492 F. App'x 73 (11th Cir. 2012) (discussing Holland and Knight's hourly rates in publicly filed attorney's fees request in trademark case); *Wynn Oil Co. v. Purolater Chem. Corp.,* 391 F. Supp. 522 (M.D. Fla. 1974) (discussing specific hourly rates for fees calculation in *antitrust* action); *Apple Inc. v. Samsung Elecs., Ltd.,* No. 11-CV-01846-LHK, ECF No. 906 (N.D. Cal. May 7, 2012) (publicly filed affidavit disclosing Morrison Forrester's attorney rates and discussing opposing counsel's (Quinn Emanuel) hourly rates).

Concededly, there are some out-of-circuit trial court opinions which have found that counsel's hourly rates are "competitively sensitive" and, as such, have allowed fee requests to be filed under seal. *See, e.g., Mine O'Mine, Inc. v. Calmese*, No. 2:10-CV-00043-KJD, 2012 WL 1279827, at *4 (D. Nev. Apr. 16, 2012); *E & J Gallo Winery v. Proximo Spirits, Inc.*, No. 1:10-CV-00411 LJO, 2012 WL 1635190 (E.D. Cal. May 8, 2012). But the Court does not find these cases particularly persuasive for several reasons.

First, as shown above, these cases represent, at best, the minority position as to whether attorney's hourly rates should be deemed confidential. Second, these cases are distinguishable from this case because they relate to fees in trademark cases, not an antitrust case or a discovery dispute in an antitrust case. Third, these cases do not appear to consider or discuss the logical **consequences** flowing from a decision to seal an attorney's fees motion.

For instance, if a court permits a party seeking attorney's fees to submit the hourly rates under seal but then issues an order disclosing those hourly rates, then the sealing would become meaningless. Thus, the only way an order permitting the hourly rates to be submitted under seal could provide any benefit to the attorney claiming confidential status would be to seal the subsequent order or the portions thereof discussing the hourly fees. Serious public policy concerns arise if the court starts sealing orders and the record underlying these orders. As the Third Circuit has noted, "[p]ublic

11

confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir. 1978).

A straightforward hypothetical illustrates the significant public policy concerns arising from sealed orders on attorney's fees and from orders keeping secret the hourly rates upon which the court based its ruling:

Assume that a law firm submitted under seal (with court permission) a fees request based on hourly rates of between $3,000 to $4,000 per hour. Further assume that in a sealed order the court grants the fees request and approves these hourly rates (which in 2013 would be wildly, extraordinarily high in this district). This type of highly unusual, significantly atypical, perhaps unprecedented, order would remain secret, hidden from the public.

It is troubling to think that the parties and the court could keep such a development hidden from the public. But under the approach advocated by Patheon and Procaps, the court would have to either file the order under seal, seal only the portions disclosing the hourly rates, or completely avoid a detailed analysis of the hourly rates (which would yield such a vague discussion that no one could effectively assess whether the rates used were appropriate). There is no question that an order like

the one described in the above hypothetical is one related to the "conduct of the court." *Romero*, 480 F.3d at 1246; *see also In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 230 ("[o]n a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly").

Moreover, the attorney's fees request here is not limited solely to a discovery issue. True, the request arose from two motions to compel discovery, but the arguments raised by the parties and the analysis used by the Court involved far more substantive issues than a garden variety discovery motion. Indeed, some of the discussion involved issues relating to the fundamental merits of the claim, such as whether Procaps' antitrust claims are based solely on a *per se* violation or whether it would be urging a rule of reason theory. These types of issues were vigorously argued, and involved comprehensive memoranda and a multi-hour hearing which addressed arguments about the substantive issues in the case.

Furthermore, the documents at issue are not technically "discovery" documents, such as interrogatory answers or sensitive documents produced outside of court in response to a discovery request. Rather, the purportedly confidential information consists of attorney declarations outlining the law firms' hourly billing rates -- information which could arise in many contexts in the litigation, not merely in connection with heavily-litigated discovery motions.

13

The Court is simply not persuaded that attorney's hourly rates are the sort of confidential information that warrants the secrecy provided by a sealing order. As the Fifth Circuit has noted, "[a]ttorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 230. To the contrary, they are frequently discussed in public and written about in the legal media. Numerous local and national publications, such as the Daily Business Review and the National Law Journal, conduct annual surveys and publish attorney's hourly rates.[3] Colleagues in different firms will often discuss and compare their rates to see if their hourly rates are too high or too low. Stated another way, attorney's hourly rates are not the equivalent of Coca-Cola's secret formula.

As a practical matter, the routine practice in this district is for the public filing of attorney's fees motions, with the public disclosure of the hourly rates of the involved attorneys. In fact, to the best of the Court's recollection, this is the first case where a

---

[3] *See, e.g., The National Law Journal's 2011 Billing Survey*, listing, among other firms, Procaps' law firm's billing rates. http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202535905815&interactive=true (last visited Nov. 1, 2013). In a September 24, 2012 article entitled "Tampa firm chosen to investigate Manatee schools," the Herald Tribune story noted that Procaps' law firm, which did not win the bid but had the second lowest rate, had an average hourly rate of $307. http://www.heraldtribune.com/article/20120924/article/120929807 (last visited Nov. 1, 2013).

party seeking attorney's fees in a case before the Court has requested permission to seal the declaration describing the attorney's hourly rates and the time incurred.

If attorney's billing rates were so competitively proprietary and confidential that they require under-seal submissions, then it would seem logical for most (or at least many) firms to follow that philosophy and ask for leave to file under seal. But that has not been the case. This real world experience suggests that the hourly-rates-must-be-filed-under-seal view is not one followed by most firms, at least in this district. And this, in turn, is powerful evidence suggesting that the hourly fees are not confidential enough to ordinarily merit under-seal status.

Nevertheless, the Court will not immediately unseal the parties' filings discussing their attorney's hourly rates. Rather, as outlined below, the Court will unseal the filings upon the issuance of its order on Patheon's attorney's fees request.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Patheon's motion [ECF Nos. 172; 173] to file under seal an unredacted version of its memorandum in support of its motion for judgment on the pleadings and to seal exhibits 1-3, 7, 9, and 11 attached to the memorandum is **denied in part and granted in part** as follows:

   a. The Clerk is directed to **seal** exhibits 1 and 9 [ECF Nos. 174-1; 174-5].

      b. The Clerk is directed to **unseal** the remaining exhibits and the unredacted memorandum [ECF Nos. 174; 174-2; 174-3; 174-4; 174-6].

      c. The Clerk is directed to **unseal** Patheon's motion and memorandum [ECF Nos. 172; 173].

2. The Court **vacates** its prior orders [ECF Nos. 155; 166; 167] granting the parties' motions to file certain matters [ECF Nos. 153; 165] under seal and to redact a portion of the hearing transcript. The Court will enter a separate order instructing the Clerk to unseal those records upon the issuance of its order on Patheon's request for attorney's fees. But the Court will *not* unseal exhibits 7 and 14 to Patheon's counsel's declaration in support of its fees request [ECF No. 153] as the Court finds those exhibits contain proprietary information that should remain sealed.

3. The Court **temporarily grants** Patheon's motion to seal its reply and accompanying declaration to Procaps' response in opposition [ECF Nos. 180; 181] as follows:

      a. The Clerk is directed to **unseal** Patheon's motion and memoranda [ECF Nos. 180; 181].

      b. The Clerk is directed to **seal** Patheon's reply and declaration [ECF Nos. 182; 183].

16

    c. The Court will enter a separate order instructing the Clerk to unseal these filings upon the issuance of the Court's order on Patheon's request for attorney's fees.

4. However, if Patheon does not want its attorney's hourly rates to be unsealed and made public, then the Court will allow Patheon to *withdraw* its attorney's fees request. If Patheon adopts the withdrawal alternative, then the hourly rates will become irrelevant and the documents discussing the rates will remain sealed. If Patheon chooses to withdraw its attorney's fees request, then it must do so by filing a brief notice by November 8, 2013. Alternatively, if Patheon wishes to pursue its fees request, then it shall file a succinct notice to that effect by the same deadline. Patheon need not wait until the deadline to file either notice, and the Court encourages Patheon to file its notice before the deadline if it has already made its decision.

    **DONE AND ORDERED** in Chambers, in Miami, Florida, November 1, 2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record