UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

     Plaintiff,

v.

PATHEON INC.,

     Defendant.

_____/

## ORDER ON REQUESTS FOR ATTORNEY'S FEES
## CONCERNING TWO MOTIONS TO COMPEL DISCOVERY

Writers, scholars, musicians, and many others have all commented on the concept of consequences. Robert Louis Stevenson noted that "everybody, sooner or later, sits down to a banquet of consequences." Stephen R. Covey observed that "while we are free to choose our actions, we are not free to choose the consequences of our actions." And in a song, blues guitarist Robert Cray advised "[o]h, listen baby, it's just common sense, sooner or later we're going to suffer the consequences."[1]

Consequences are at the heart of this Order, which concerns the ramifications of Plaintiff Procaps S.A. ("Procaps") and Defendant Patheon Inc.'s ("Patheon") discovery positions. Specifically, this Order concerns Patheon's two motions to compel against Procaps and Patheon's demand for more than $260,000 in attorney's fees incurred in

---

[1]     "Consequences" on Midnight Stroll (Mercury 1990).

litigating those motions (i.e., the requested consequences).[2] Procaps contests Patheon's entitlement to attorney's fees and takes issue with the amount of fees Patheon seeks. Procaps also seeks its own attorney's fees relating to Patheon's discovery motions.

For the reasons outlined below, the Court **grants in part** Patheon's attorney's fees request and **denies** Procaps' later-propounded, reciprocal attorney's fees request. Specifically, the Court awards Patheon **$40,451.50**, which is approximately 85% less than the amount requested ($261,479.50). Five reasons explain the reduction: (1) Patheon did not prevail on all aspects of its two motions to compel; (2) some of Procaps' discovery positions were substantially justified or other circumstances made a fees award unjust for some of the specific disputes; (3) the Court is using South Florida hourly billable rates, not the significantly higher rates used by Patheon's Washington, D.C. law firm; (4) Patheon's attorneys used block billing and then estimated the time spent on tasks encompassed by the fees request; and (5) Patheon's law firm appears to have somewhat overstaffed the work on the two discovery motions and Procaps should not be responsible for the beyond-necessary time spent by Patheon's counsel. The Court makes clear that this Order on fees is not based on a finding that Procaps or its attorneys acted in bad faith. Instead, the fees are merely the fee-shifting consequences mandated by Federal Rule of Civil Procedure 37.

---

[2]     Patheon says the attorney's fees actually totaled $328,632.50 but it adopted a conservative approach and voluntarily discounted its initial fees request by $67,153, to a total request of $261,479.50. Thus, Patheon contends that the financial consequences for Procaps are actually *less* grave than justified by the circumstances.

Procaps' attorneys declined to advise the Court how much the client knew about, or what role the client played in, the instant discovery dispute. Procaps' counsel contends that providing such information would violate the attorney-client privilege. Procaps' counsel also did not reveal which attorneys on its multi-attorney team made the discovery decisions which led to this Rule 37 award. Instead, they advised that *all* attorneys working on the case cooperated collaboratively to develop Procaps' responses to Patheon's discovery requests.

Given this lack of information,[3] it is difficult for the Court to determine (1) whether the fees award should be paid by Procaps or by its law firm, (2) assuming the law firm is solely or partially obligated to pay the fees award, whether the law firm should shoulder the entire amount or whether individual attorneys should be responsible, (3) if individual attorneys are required to pay all or some of the fees award, then which attorneys must pay, and (4) if attorneys are individually responsible, then are they all equally responsible on a *pro rata* basis, or should some attorneys pay more than others?

Based on explanations provided by Procaps' counsel -- that the client was and is involved in all major decisions, including discovery decisions, and that all attorneys jointly participated in discovery decisions -- responsibility for the fees award will be as

---

[3]     The Court is not faulting Procaps for asserting the attorney-client privilege and takes no position on the merits of the privilege claim. Nevertheless, the practical effect of a privilege assertion is always the absence of information, and that is precisely what happened here.

3

follows: Procaps shall pay 25%; Procaps' law firm shall pay 65%; and the seven individual lawyers shall equally pay the remaining 10%.

## I.   BACKGROUND

### A.  General Overview

In January 2012, Procaps entered into a Collaboration Agreement with Patheon to develop and market a brand of softgel products called "P-Gels." [ECF Nos. 1, ¶¶ 6-9; 21, p. 3]. In short, Procaps would develop and manufacture the P-Gels and Patheon's role was to market and sell the P-Gels. [ECF No. 1, ¶¶ 42, 47-50]. But in late 2012, Patheon acquired Banner Pharmcaps Europe B.V. ("Banner"), a company Procaps calls a competitor. [ECF Nos. 21, p. 3; 50, p. 2].

Procaps' lawsuit alleges that Patheon's acquisition of Banner renders the Collaboration Agreement illegal under antitrust laws because Procaps and Patheon will become horizontally-situated competitors in the softgel market. [ECF No. 21, p. 3]. Procaps seeks various forms of relief (declaratory judgment, permanent injunction, damages, etc.) arising from Patheon's acquisition of Banner. [*See generally* ECF No. 1].

### B.  The Parties are on Notice Regarding Rule 37 Awards

Prior to Patheon's two motions to compel, which underlie this fees Order, Procaps and Patheon have raised numerous discovery-related issues before the Court. [*See* ECF Nos. 69; 96; 117; 122]. The Court advised the parties in writing early on about the consequences of Rule 37. [ECF No. 72]. In an August 26, 2013 discovery hearing on a

Procaps discovery motion [ECF No. 96], the Court again reiterated that it takes seriously Rule 37's mandate to award attorney's fees to the prevailing party in a discovery dispute. [ECF No. 120, pp. 60-62]. Initially, Procaps' counsel explained that he would not have expected this "based on his 37 years of experience" as a litigator in this district. [*Id.* at p. 60]. In response, the Court advised that its standard practice is to regularly award attorney's fees to the party prevailing in a discovery dispute. [*Id.* at p. 61]. Nevertheless, despite the numerous prior discovery disputes, the Court has yet to award attorney's fees against either side under Rule 37.

### C. Patheon's Motions to Compel

Procaps and Patheon became embroiled in significant battles over Patheon's written discovery requests. The disputes flowed from, in part, the parties' different views on the antitrust implications of the discovery disputes. These disputes, in turn, led to lengthy letters summarizing the various meet and confer meetings and outlining the reasons for each party's discovery positions. [*See, e.g.*, ECF Nos. 132-3; 132-4; 153-17].

Many of the disputes were not resolved despite additional communications between counsel, and Patheon filed the two motions to compel at issue. [ECF Nos. 131; 132; 133; 134]. The Court held an almost six-hour hearing on the motions to compel on October 7, 2013. [ECF No. 147]. During that hearing, Procaps' counsel confirmed his prior representations that his client "is involved in virtually every decision in this case."

[ECF No. 147, pp. 149-50]. Near the end of the hearing, Patheon outlined its attorney's fees request and sought approximately $143,000 in fees. [*Id.* at pp. 138-40]. Because of the large amount of attorney's fees, in addition to voicing its objection to the fees request at the hearing, Procaps was permitted to submit a post-hearing memorandum on Patheon's attorney's fees request.

Following the hearing, the Court entered an order granting in part and denying in part Patheon's motions to compel (more on the merits of the parties' discovery positions at issue in this Order later). [ECF No. 146]. In the order, the Court also imposed additional requirements on the parties concerning the attorney's fees issue. [*Id.*]. The Court required Patheon to first submit its billing records so that Procaps could review and evaluate them. [*Id.* at p. 6]. If Procaps was going to challenge (which it did) Patheon's hourly rates and the reasonableness of the time entries, then it was required to take certain steps. Specifically, Procaps was required to submit an affidavit listing:

> the attorney time relating to the discovery dispute, including, but not limited to, time spent reviewing, researching and responding to Patheon's motions to compel, **participating in the various meet and conferrals, reviewing and drafting the voluminous meet and confer letters sent by each side**, and preparing for and attending the October 7, 2013 discovery hearing.

[*Id.* at p. 8 (emphasis added)]. The affiant was required to "**certify** that all hours concerning the discovery dispute have been accounted for in the total and that the billing records represent **all** of the time incurred in connection with the discovery dispute." [*Id.* (emphasis added)].

### D. **The Attorney's Fees**

Patheon's counsel filed a comprehensive declaration and outlined Patheon's request for $143,865 in fees. [ECF No. 153]. In the declaration, Patheon's counsel outlined how Patheon was actually billed $211,018 in fees, but that Patheon's counsel had erred on the side of caution and discounted its original fees request by about 32%, or $67,153. [*Id.* at p. 18].

Procaps filed its response in opposition and did in fact challenge Patheon's entitlement to a fees award and Patheon's counsel's hourly rates and time entries. [ECF Nos. 160; 165]. In addition, Procaps sought attorney's fees for the parts of Patheon's motions that were denied. [ECF No. 160, p. 15]. Procaps' counsel invoked the attorney-client privilege and declined to advise the Court how much the client (Procaps) knew about, or what role the client played in, the instant discovery dispute. [*Id.* at p. 20]. Despite the requirement to do so in the Court's order, Procaps' counsel also did not reveal which attorneys on its multi-attorney team made the discovery decisions which led to this fees award. [*Id.* at p. 21]. Instead, Procaps' counsel stated that if the Court were to award attorney's fees, it should do so against counsel's law firm, not the individual attorneys.

Procaps' response also did not include the above-noted Court-ordered certification and it did not include all the time mandated by the order. Rather, Procaps intentionally carved out the attorney time associated with the meet and confer

meetings. [ECF No. 165]. To be sure, in its memorandum opposing Patheon's fee request, Procaps argued that Patheon is improperly seeking fees for time expended in the meet and confer process. [ECF No. 160, p. 15]. But the mere fact that Procaps disagreed with Patheon's entitlement for certain time did not generate good cause to not comply with an order requiring that very information.

Confronted with a party refusing to fully comply with a specific order,[4] the Court entered two additional orders requiring Procaps to include the time incurred in the meet and confer process and to submit additional information concerning its law firm's fees. [ECF Nos. 191; 192].

Procaps complied with these two orders. [ECF No. 201].[5] In doing so, it revealed that the amount of attorney's fees generated in the meet and confer process was virtually the same as the fees listed in the first declaration. [*Id.*]. Specifically, the first declaration disclosed fees of $26,346.46, while the second declaration disclosed fees of $26,321.59 for only the time related to the meet and confer process. Procaps' total fees

---

[4]     "A court need not beg a party to comply with its orders." *Peters-Turnball v. Bd. of Educ. of the City of New York,* No. 96 CIV. 4914 (SAS), 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999).

[5]     Procaps also sought a stay of the entry of this Order pending the resolution of the case. After giving Patheon the opportunity to respond, the Court denied Procaps' request. [ECF No. 209]; *see Indus. Aircraft Lodge 707, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney Aircraft Div.,* 104 F.R.D. 471 (D. Conn. 1985) (denying motion to stay enforcement of Rule 37 fees award order until final judgment was entered).

for the discovery dispute are $52,668.05. Procaps' law firm also confirmed that its hourly rates for this case were discounted from its standard hourly rates.

Patheon filed its reply and requested an additional $117,514.50 in attorney's fees incurred in connection with the discovery dispute. [ECF Nos. 182; 183]. It did not reduce the fees requested in the second request. Patheon seeks $261,479.50 in fees.

## II.    DISCUSSION: WHO IS ENTITLED TO ATTORNEY'S FEES UNDER RULE 37

### A.  <u>Rule 37</u>

Rule 37 *requires* the Court to enter an award of reasonable expenses, including attorney's fees, against the party or attorney advising the conduct which necessitated the successful discovery motion unless one of these three exceptions applies:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). If any of these three exceptions apply, then the Court is prohibited from entering an award. *Id.* An award is required even if the non-producing party ultimately agrees to produce discovery. That's because the Rule also includes a provision for an award if "the disclosure or requested discovery is provided **after** the motion was filed." *Id.* (emphasis added).

In discussing the 1970 amendments to Rule 37, the Advisory Committee Notes explain that "the change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified." *See Devaney v.*

*Cont'l Amer. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993) ("[t]he rule was toughened in 1970 to mandate that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified"). As one acclaimed treatise has noted, "[t]he great operative principle of Rule 37(a)(5) is that the loser pays." 8B Charles Alan Wright, Arthur Miller & Richard Marcus, <u>Federal Practice and Procedure</u> § 2288 (3d ed. 2010); *see also Brown v. State of Iowa*, 152 F.R.D. 168, 173 (S.D. Iowa 1993).

When a trial court grants a Rule 37 motion to compel, then it may not deny an award of fees unless it discusses and applies the correct legal standard. *Slep-Tone Entm't Corp. v. Johnson*, 518 F. App'x 815 (11th Cir. 2013) (reversing order denying attorney's fees because the trial court did not analyze the fees award under the rule-imposed standard and noting that "the desire to end the litigation between these parties," while understandable, "is not a proper reason to deny . . . attorney's fees").

The burden of establishing substantial justification (or other exception) is on the losing party. *Kramer Scientific Lab. Prods. Corp. v. Golf Med. Corp.*, No. 11-61610-CIV, 2011 WL 5914255, at *2 (S.D. Fla. Nov. 28, 2011) (Rosenbaum, J.) (internal citations omitted). "Whether a party was substantially justified in resisting discovery is determined by 'an objective standard of reasonableness and does not require that the party have acted in good faith.'" *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (internal citations omitted). Substantial justification is present when "'reasonable people could differ as to the appropriateness of the contested action.'"

*Devaney,* 989 F.2d at 1163 (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)); *see also Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 847, 853 (11th Cir. 1997). A court is not required to find that a party or counsel acted in bad faith before awarding Rule 37 attorney's fees. *Devaney,* 989 F.2d at 1161-62.

Given Procaps' position that Patheon's fee request is "obscenely inflated" and "eye-popping," it is appropriate to note that a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *City of Riverside v. Rivera,* 477 U.S. 561, 580 n.11 (1986) (internal citation and quotations omitted).

## B. Analysis

If a court grants in part and denies in part a discovery motion, then it may apportion the reasonable expenses between the parties. Fed. R. Civ. P. 37(a)(5)(C). That is the scenario here because Patheon's motions to compel were granted in part and denied in part. [ECF No. 146]. Consequently, the Court will revisit the parties' discovery dispute on a request-by-request basis to determine which party prevailed on each request and if the losing party can avail itself of one of Rule 37's exceptions.

As a threshold matter, the Court rejects each party's accusation that the other did not make a good-faith attempt to resolve the discovery dispute. The record indicates that the parties engaged in numerous discussions regarding the discovery dispute. [*See, e.g.,* ECF Nos. 132-3; 132-4; 132-5; 153-17]. Thus, this Rule 37 exception is not available to

either party. Fed. R. Civ. P. 37(a)(5)(A)(i). That means that the only two possible exceptions here are whether the losing party was substantially justified in its discovery position or if the circumstances make an award of expenses unjust.

     i. *Patheon's Motion to Compel Procaps to Answer Interrogatories*

      1. <u>Interrogatory 13</u>

Interrogatory 13 related to Procaps' goodwill and reputation damages. [ECF No. 134-2, pp. 6-7]. Procaps objected to the interrogatory on the basis that it sought information that was developed by Procaps' experts. [ECF No. 138, p. 2]. But after Patheon filed its motion to compel, Procaps, *in its response in opposition,* withdrew its $25 million claim for goodwill and reputation damages. [*Id.*; ECF No. 134-8, pp. 10-12]. At the discovery hearing, the parties agreed that Procaps' concession mooted this interrogatory. [ECF No. 147, pp. 7-8].

  Patheon now seeks attorney's fees for the time incurred in filing the motion to compel related to this interrogatory. Procaps argues that awarding Patheon fees for this mooted interrogatory would constitute unsound public policy because it would encourage litigants to not compromise like it did by dropping its goodwill and reputation damages. [ECF No. 160, pp. 14-15].

  While Procaps' policy argument sounds appealing, it ignores the policy articulated in Rule 37. Specifically, the Rule makes clear that an expense award is required if "the disclosure or requested discovery is provided **after** the motion was

filed." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added); *Reyes v. Wyeth, Inc.*, No. 03-CV-20471, 2011 WL 4389896, at *3 (S.D. Fla. Sept. 21, 2011). That is what happened here. Procaps dropped its goodwill and reputation damages *only* after Patheon filed its motion. Setting aside the fact that dropping a $25 million element of a damages claim in a *response* to a discovery motion is, to say the least, slightly unorthodox, Procaps has provided no explanation as to why it could not have made this concession in the numerous meet and confer meetings and communications *before* Patheon filed its motion. All that Procaps says is that Patheon was on notice that Procaps' damages claim was subject to change based on expert testimony. [ECF No. 160, p. 15]. But that is not very illuminating or persuasive because it does not explain when Procaps knew, or should have known, that it did not have a sound basis for these damages.

As a result, the Court finds that Patheon is the prevailing party on this interrogatory. The Court further finds that Procaps was not substantially justified in its discovery position and that there are no other circumstances which make an award of expenses for this interrogatory unjust.

2.   <u>Interrogatory 15</u>

Patheon requested that Procaps identify specific products, services, customers, etc., that were subjected to market division or price fixing by Patheon. [ECF No. 134-2, p. 7]. Procaps argued that it should not have to provide this information because Patheon has it, as Patheon is the one who was and is allocating markets and customers.

[ECF No. 138, pp. 4-5]. The Court granted Patheon's request. [ECF No. 146, p. 2]. As the Court stated at the hearing, this was a straightforward contention-type interrogatory for which Patheon was entitled to get an answer. [ECF No. 147, pp. 46-49; 53-54].

Procaps argues that Patheon is not entitled to attorney's fees for this interrogatory because Procaps' answer (every single customer, service, product, etc.) has been conveyed in its other discovery responses and in its correspondence with Patheon's counsel. [ECF No. 160, pp. 5-7]. According to Procaps, because Patheon received the same answer it had before by virtue of Procaps' prior discovery responses to other discovery requests, Patheon did not in fact prevail.

Procaps' argument attempts to focus on the substance of its response to the interrogatory. But that's not the issue. The issue is what was the basis for not answering the interrogatory. In that respect, Procaps' argument is unavailing. If Procaps' answer was every single customer, service, product, etc., then, as the Court noted, it simply could have said that. [ECF No. 147, p. 54]. As a result, the Court finds that Patheon is the prevailing party on this interrogatory and that Procaps' position was not substantially justified and that there are no other circumstances which make an award of expenses for this interrogatory unjust.

3.  <u>Interrogatory 17</u>

Like interrogatory 13, interrogatory 17 was mooted by Procaps' withdrawal of its claim for goodwill and reputation damages. [ECF Nos. 138, pp. 2-3; 147, pp. 7-8]. As

such, the same analysis applicable to interrogatory 13 is applicable to interrogatory 17. Accordingly, the Court finds that Patheon is the prevailing party on this interrogatory and that Procaps' position was not substantially justified and that there are no other circumstances which make an award of expenses for this interrogatory unjust.

### 4. Interrogatory 18

Interrogatory 18 was mooted because Procaps withdrew its claim for reputation and goodwill damages and because it agreed to produce its 2013 financial information by a date certain (October 17, 2013). [ECF Nos. 138, p. 3; 146, p. 3; 147, p. 7]. As a result, the Court finds that Patheon is the prevailing party on this interrogatory. To the extent that the interrogatory was mooted by Procaps withdrawing its claim for reputation and goodwill damages, the analysis from interrogatory 13 is applicable. Thus, Procaps was not substantially justified in not answering this interrogatory on that basis. The Court will examine the other basis for the mootness of the interrogatory -- Procaps' agreement to produce its 2013 financial information -- in more detail.

Several discovery disputes related to Procaps' ability or desire to produce its 2013 financial information. In its respective responses to the motions to compel, Procaps agreed that it would produce this information when it became available. [ECF Nos. 138, p. 3; 139, p. 7]. Procaps is correct that in the meet and conferrals it never said that it would not produce this information. [ECF No. 138, p. 3]. But the converse is also true: it did not unequivocally state that it would produce the 2013 financial information. [*See*

ECF Nos. 134-4, p. 11; 134-5, pp. 2-3]. Rather, Procaps' counsel was vague and non-committal about the production of the 2013 information. [*See* ECF No. 134-5, pp. 2-3]. And even when it agreed to produce the information (in its responses to the motions to compel), Procaps did not state when it would produce it or explain why it had not done so already. [*See* ECF Nos. 138, p. 3; 139, p. 7].

At the discovery hearing, Procaps' counsel stated that Procaps would produce its 2013 financial information and explained in detail the reason for the delay in producing this information. According to Procaps' counsel, because Procaps is a Colombian company it does not have the same reporting obligations as a publicly traded company here in the United States. [ECF No. 147, pp. 103-04]. Therefore, at the time of the hearing, Procaps was still in the process of putting its "first semester" 2013 financial information together. [*Id.* at pp. 103-04, 115-16]. Stated another way, Procaps simply did not have the 2013 financial information to produce and would not have been expected to have it under Colombian law. Procaps' counsel also explained that in the last meet and confer (September 24, 2013) with Patheon's counsel, they explained to Patheon's counsel that the 2013 financial information was not prepared yet and would be produced when it was completed. [*Id.* at p. 116; ECF No. 160, pp. 11-12]. Procaps' counsel did not state that they explained to Patheon's counsel *why* the 2013 financial information had not been prepared yet, however.

On its face, Procaps' reason for the delay in producing its 2013 financial information seems defensible. If this information had not yet been prepared in the course of Procaps' normal business operations because of applicable Colombian law, then it would be difficult to fault Procaps for not producing what it does not have. Indeed, if Procaps had expressly committed to Patheon that it would produce this information and explained the reason for the delay, then Patheon would be the party having to explain why it filed a motion to compel to get this information. But that's not what happened.

Despite multiple opportunities to do so, Procaps did not unequivocally advise Patheon that it would produce the 2013 financial information until September 24, 2013 (well after Patheon's motion was filed) and didn't explain to Patheon why there was a delay. [ECF Nos. 132-4, pp. 11, 13; 132-6, pp. 2-3; 153-17; 160, pp. 11-12]. Nor did Procaps take the position that Patheon was not entitled to this information. Rather, Procaps' response to Patheon's repeated inquiries for this information was, essentially, the ubiquitous 'we'll get back to you on that.' After specifically pressing for this information and receiving non-committal responses [*see, e.g.,* ECF No. 132-6, pp. 2-3], Patheon was forced to file the motion.

Therefore, the motion resulted in judicial intervention to resolve what is actually a non-issue. This is precisely one of the kinds of problems that the meet and confer rules were intended to prevent. *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F. Supp. 2d

1297, 1301-02 & n.7 (S.D. Fla. 2010). Thus, the Court finds that there is no substantial justification for Procaps' discovery position.

**Nevertheless** (because the Court is adopting an extremely one-time lenient approach toward Procaps' less-than-clear, equivocal responses), the Court finds that the unique circumstances here make an award of expenses against Procaps unjust. To be sure, Procaps should have been clearer with Patheon sooner regarding the production of the 2013 financial information. But it is difficult for the Court to fault Procaps for failing to produce, or not committing to produce by a date certain, something it was not obligated to already have created in its normal business operations under Colombian law. Of course, Procaps could easily and timely have said, "our 2013 financials are not yet prepared and they will not be prepared until at least [date certain]." As a result, while the Court finds that Patheon is the prevailing party and that Procaps' discovery position was not substantially justified, the Court declines to award fees against Procaps resulting from the delayed production of its 2013 financial information. For future discovery disputes, the Court will likely not adopt such a flexible position toward a party who does not clearly articulate its discovery position in response to repeated requests to do so.

5. <u>Interrogatory 19</u>

Patheon requested that for each document Procaps had produced to identify which of those documents contained "confidential information" and to describe how

Procaps was, or will be, harmed by Patheon's use of the document outside of the Collaboration Agreement. [ECF No. 134-13, p. 6]. Procaps objected to the request as unduly burdensome because of the large volume of confidential information exchanged by the parties in the due diligence period leading to the Collaboration Agreement and under the Collaboration Agreement. [*Id*.]. The Court granted in part and denied in part the request. [ECF No. 146, pp. 2-3].

In sum, Patheon won in that Procaps was required to specify what confidential information it knows was misused and to specify the documents containing that misused confidential information. [ECF No. 147, p. 69]. But Procaps also won because it was not required to go back through all the documents it produced and identify which ones contained confidential information. [*Id*.]. Under these circumstances, the Court finds that neither party prevailed on this discovery request and, as such, neither party is entitled to an expense award for this request.

      ii.    *Patheon's Motion to Compel Procaps to Respond to Patheon's Requests for Production*

In its discovery order [ECF No. 146], the Court paired some Patheon requests together in its discovery rulings. For purposes of this Order, the Court has kept some of these pairings and segregated others where appropriate.

      1.   <u>Request for Production Numbers 29, 42</u>

Like interrogatory 18, these requests related to the production of Procaps' 2013 financial information. As such, the relevant analysis applicable to interrogatory 18 is

applicable here. Accordingly, the Court finds that Patheon is the prevailing party as to these requests and that Procaps' position was not substantially justified. But the Court finds that the circumstances are such to make an award of expenses for these requests unjust.

### 2.   Request for Production Numbers 30, 31

These two requests related to Procaps' financial projections. The Court fashioned a resolution where both parties would exchange their projections for their softgel business inside and outside the "territory" and "field." [ECF Nos. 146, p. 4; 147, pp. 111-15]. In this regard, Patheon won and lost. Patheon won because it succeeded in causing Procaps to finally produce its projections. But Patheon also lost because it didn't obtain what it originally wanted: all of Procaps' business and operations projections, not just those in the "field" and "territory." [ECF Nos. 132-4, p. 14; 153-18, pp. 5-6]. Under these circumstances, the Court finds it unjust to award expenses against either party.

### 3.   Request for Production Number 32

This request was mooted because Procaps represented at the hearing that it had no documents responsive to this request. [ECF No. 147, pp. 104-07]. Like interrogatory 13, this is another example of a non-issue that should have been resolved before the hearing and before Patheon filed its motion. As a result, the Court finds that Patheon is the prevailing party as to this request. The Court further finds that Procaps was not

substantially justified in its discovery position and that there are no other circumstances which make an award of expenses for this request unjust.

### 4.   Request for Production Number 34

Patheon sought a duplicate of Procaps' database that "tracks or includes bids, opportunities, wins, losses or sales of Softgel products or manufacturing services." [ECF No. 132-14, pp. 4-5]. Procaps objected to this request on the grounds that it was overbroad, burdensome, and not feasible. [*Id.*; ECF No. 147, p. 134]. At the hearing, Procaps' counsel stated that he did not know anything about the costs of duplicating the database, but that he ventured it might be in the tens if not hundreds of thousands of dollars. [ECF No. 147, pp. 127-28]. As such, the Court reserved ruling on this request and ordered Procaps to submit an affidavit detailing the costs of producing the requested database. [ECF No. 146].

Procaps filed the required affidavit. [ECF Nos. 159; 159-1]. Procaps' affidavit severely undermined its counsel's discovery position regarding the database. For instance, the affidavit revealed that there were in fact three databases, not one database, and that, for the most part, the feasibility of granting Patheon access to or duplicating a database differed from database to database. [ECF No. 175]. Even more startling, the affidavit revealed that one Procaps database could be exported **with less than one hour of time expended by a Procaps' employee** -- a far cry from Procaps' counsel's unduly burdensome objection. [*Id.* at pp. 2-3 n.2]. After reviewing the affidavit, the Court

granted Patheon's request in principal, but required the parties to meet and confer to try and work out the logistics of the database production. [*See* ECF No. 175]. Fortunately, the parties were able to resolve their logistical issues. [ECF No. 188].

The Court finds that Patheon is the prevailing party. The Court also finds that Procaps was not substantially justified in its discovery position and that there are no circumstances which make an award of expenses for this request unjust.

5.   Request for Production Numbers 35, 51

Patheon withdrew these two requests after Procaps' concessions at the hearing regarding pursuing a "rule of reason" antitrust claim, and its representation that it has produced all responsive documents to request 51. [ECF No. 147, pp. 84-101]. Each party argues that the other is at fault for failing to resolve the "rule of reason" issue during the various meet and conferrals. [ECF Nos. 160, pp. 9-10; 179, pp. 13-14]. The Court disagrees. At the hearing, the "rule of reason" issue was likely the most contentious and drawn-out issue between the parties. The Court is not confident that the parties could have resolved this issue without the Court's help in brokering the resolutions reached at the hearing.

Moreover, the Court understands both parties' positions. Patheon wants an answer sooner rather than later on the kind of antitrust claim it has to defend. Procaps, on the other hand, wants to have all its options available for as long as possible. To be sure, Procaps had to choose which way it would go at some point in time. [ECF No. 98,

p. 42]. But when it ultimately had to do so is a matter reasonable people could differ on. As a result, the Court finds that neither party prevailed on this discovery request and, as such, neither party is entitled to an expense award for this request.

### 6.   Request for Production Number 40

The Court denied this request because it found the request did not specify the actual financial documents which Patheon was seeking. [ECF Nos. 146, pp. 3-4; 147, pp. 121-24]. Therefore, Procaps would be entitled to fees if, among other things, Patheon's discovery request was not substantially justified. To that end, while the Court denied this request because it found it inartful, the Court did find that Patheon would be entitled to propound additional requests seeking these specific documents. [ECF No. 147, p. 124]. Consequently, the Court finds that Patheon's discovery position was substantially justified and declines to award Procaps expenses for this request.

### 7.   Request for Production Number 50

Like interrogatories 13 and 17, this Patheon discovery request was mooted by Procaps' withdrawal of its claim for goodwill and reputation damages. [ECF Nos. 139, pp. 4-5; 147, pp. 78-79]. Therefore, the same analysis applicable to those two interrogatories is applicable here. Accordingly, the Court finds that Patheon is the prevailing party and that Procaps' position was not substantially justified and that there are no other circumstances which make an award of expenses for this request unjust.

## C.  Conclusion

There were 15 discovery requests at issue. As set forth above, the Court finds that Procaps is not entitled to an expense award on any discovery request and that Patheon is entitled to an expense award on 6 of the 15 requests. Therefore, the Court finds that Patheon is entitled to recover only 6/15 (or 40%) of the time it spent on this discovery dispute. *See Cal Dive Int'l, Inc. v. M/V Tzimin (Ex Stena Seahorse)*, 127 F.R.D. 213, 217–18 (S.D. Ala. 1989) ("[t]he apportionment of reasonable expenses by the magistrate on a 70%/30% basis was factually acceptable and legally permissible"); *accord S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 WL 3656454, at *42-43 (D.N.M. Aug. 9, 2012).

## III.    DISCUSSION: AMOUNT OF ATTORNEY'S FEES

Patheon states that its actual attorney's fees for this discovery dispute totaled $328,632.50. [*See* ECF Nos. 153-30; 183-2]. But it states that it adopted a conservative approach and discounted its original request by $67,153, for a total request of $261,479.50.[6] [*See* ECF No. 153, pp. 14-19]. The breakdown of the attorney time and hourly rates Patheon seeks is as follows:

---

[6]      Patheon's supplemental request for attorney's fees included time incurred for preparing the fees request. [ECF Nos. 183-1; 183-2]. This time, also known as "fees on fees," is generally compensable. *See, e.g., Minor v. Christie's, Inc.*, No. C 08-05445 WHA, 2011 WL 902235, at *22-23 (N.D. Cal. Jan. 29, 2011) *report and recommendation adopted*, No. C 08-05445 WHA, 2011 WL 902033 (N.D. Cal. Mar. 14, 2011)

| Attorney | Years in Practice | Requested Hourly Rate | Requested Time |
|---|---|---|---|
| Marc Schildkraut | 37 | $995 | 51.0 |
| Michael Klisch | 23 | $945 | 54.6 |
| Robert Cahill | 18 | $785 | 50.2 |
| Mary Kathryn Kelley | 20 | $740 | 26.2 |
| Mazda Antia | 13 | $685 | 5.0 |
| Grace Kwon | 8 | $670 | 79.1 |
| Joshua Siegel | 7 | $665 | 38.5 |
| Sarah Talkovsky | 1 | $355 | 51.6 |

Procaps objects to Patheon's fee request. [ECF No. 160, pp. 16-19]. Among other things, Procaps claims that Patheon's time entries are exorbitant, its hourly rates are too high, and that Patheon is not entitled to recover fees for time spent during the meet and confer process.

A. **General Legal Principles**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "This amount is ordinarily referred to as the lodestar." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161,

163-64 (11th Cir. 2008) (internal citations and quotations omitted). The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886 (1984). In computing the lodestar, the Court must first determine the reasonable hourly rate. Once the hourly rate is set, the Court must determine the reasonable number of hours expended.

Because the fees requested are significant and comparatively voluminous, the Court is not required to engage in an hour-by-hour analysis. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

**B.**   **Analysis: Reasonable Hourly Rate**

   i.   *Applicable Legal Principles*

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The fee applicant bears the burden of establishing the claimed market rate. *See ACLU of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999). Generally, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed,'" *id.* at 437 (internal citation omitted), provided that local attorneys have the skills to handle the specific type of matter at issue. *See Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir. 1983). A fee applicant seeking to recover the non-local rate of an attorney who is not from the place in which

the case was filed must show a lack of attorneys practicing in that place who are willing and able to handle its claims. *Barnes,* 168 F.3d at 437. A prevailing party is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price; instead, a prevailing plaintiff may recover market-rate fees only for an attorney with reasonable expertise. *Id.*

In determining the prevailing market rate, the Court should consider several factors including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness,* 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (referring to factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-18 (5th Cir. 1974), *abrogated in part by Blanchard v. Bergeron,* 489 U.S. 87, 90 (1989)). The Court may use its own experience in assessing the reasonableness of attorney's fees and may form an independent judgment either with or without witnesses. *Loranger,* 10 F.3d at 781; *see also Crescenzo v. Healthcare Revenue Recovery Grp., LLC,* No. 11-60384-CIV, 2012 WL 291431, at *2 (S.D. Fla. Jan. 31, 2012).

  ii.  *Analysis*

Here, Patheon has not satisfied its burden that its hourly rates are in line with the prevailing local market rates. While the Court acknowledges the experience and credentials of the defense attorneys representing Patheon, the Court notes that the fee

requests and supporting materials do not contain evidence suggesting that any of the requested hourly billable rates are consistent with "the prevailing market rate in [South Florida] for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781. Procaps filed this case in Florida, yet Patheon requests Washington, D.C. hourly rates, which are among the highest in the country. Hourly billing rates, however, must be based on the prevailing *local* market rate, not the billing rates in another geographically distinct market. Nor has Patheon demonstrated a lack of South Florida attorneys who could defend it in this lawsuit at significantly lower local rates. *See Lil' Joe Wein Music, Inc., v. Jackson*, No. 06-20079, 2008 WL 2688117, at *10 (S.D. Fla. July 1, 2008).

Patheon's requested rates are well above those used in South Florida by attorneys practicing sophisticated commercial litigation. For instance, Procaps' law firm, Carlton Fields, submitted an affidavit establishing that their attorneys' hourly rates **for the instant case** are lower. Specifically, Alan Rosenthal, a Florida Bar member since 1976, is billing $590.63 per hour for this case; Chris Coutroulis, who has been in practice since 1980, is using an hourly rate of $678.13; Donald Schmidt, who has been in practice since 1979, is being billed at $481.25 per hour; D. Matthew Allen, in practice since 1990, is using $520.63 per hour; Natalie Carlos, who has been practicing since 1988, is billing at $485.63 per hour; Mac McCoy, who has been practicing since 2001, is

billing at $395.00[7] per hour; and Joanna Garcia, who earned her J.D. in 2000, is being billed at $371.88 per hour.[8]

In general, most of the Carlton Fields attorneys involved in this case have *more* years of experience than the Cooley attorneys working on this matter.

Moreover, there does not appear to be a significant difference in relevant experience between the attorneys involved in the case. For example, Mr. Schildkraut spent 17 years as an assistant director of the Federal Trade Commission's Bureau of Competition, where he directed investigations of mergers. In contrast, Mr. Coutroulis, the Carlton Fields antitrust law specialist, is board certified in antitrust and trade regulation law by the Florida Bar, was a founding member of the Florida Bar Antitrust and Trade Regulation Certification Committee, and has written on antitrust issues.

---

[7]     The supplemental declaration explains that the initial declaration did not include Mr. McCoy's time because he was not involved in preparing Procaps' responses to the motions to compel or preparing for the hearing on the motions. Because the Court ordered (once again) Procaps to list the time incurred in the meet and confer process, the supplemental declaration includes his time because he was involved in this activity. Mr. McCoy graduated from law school in 2001. In that regard, he has similar experience to Mr. Antia, a Cooley attorney who graduated in 2000. Mr. McCoy, a Carlton Fields shareholder, had a standard hourly rate of $395. Mr. Antia, a Cooley partner, had a $685 hourly rate. But, to be complete in this comparison, Mr. McCoy is based in Tampa, where the hourly billing rates are generally lower than in Miami.

[8]     In a supplemental declaration [ECF No. 201-1] required by the Court, Procaps' lead trial counsel summarized his firm's standard rates and explained that the rates in this case were discounted by 12.5% from the firm's 2012 standard rates. In September 1, 2013, Carlton Fields increased its standard rates but did not increase the rates charged to Procaps.

Therefore, it seems as though each side is represented by experienced, competent counsel who have substantially similar backgrounds and experiences.

For purposes of evaluating the reasonableness of Patheon's out-of-district rates to the rates typically charged by South Florida firms, it is helpful to compare them to Procaps' attorneys' rates, which are noted above. But the Court will not simply adopt the hourly rates used by comparable Carlton Fields attorneys for the time incurred by the Cooley lawyers, as the Court finds that Carlton Fields' rates are on the high side for the South Florida legal market.

When determining the hourly fee, the Court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the **least amount necessary** to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) (emphasis added); *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1364 (S.D. Fla. 2010) (internal citations omitted). To be sure, there are South Florida law firms which charge the same hourly fees as the Carlton Fields attorneys. And there are South Florida firms which at times charge higher hourly rates. But there are also similarly experienced and competent law firms which charge *lower* hourly rates, and those are the rates to be used when calculating an hourly fees award.

Upon review of the materials submitted and in consideration of the Court's own knowledge of the local market, *Loranger,* 10 F.3d at 781, the Court finds the following

hourly rates reasonable for a sophisticated federal antitrust case in a South Florida-filed federal case (and the chart below also reflects the corresponding requested rates):

| Attorney | Requested Hourly Rate | Awarded Hourly Rate |
|---|---|---|
| Marc Schildkraut | $995 | $565 |
| Michael Klisch | $945 | $515 |
| Robert Cahill | $785 | $425 |
| Mary Kathryn Kelley | $740 | $410 |
| Mazda Antia | $685 | $395 |
| Grace Kwon | $670 | $285 |
| Joshua Siegel | $665 | $260 |
| Sarah Talkovsky | $355 | $220 |

*See, e.g., Golf Clubs Away, LLC v. Hostway Corp.*, No. 11-62326-CIV, 2012 WL 2912709 (S.D. Fla. July 16, 2012) (awarding Arthur Miller (nationally known law professor and author of leading federal practice treatise) only $500 per hour even though he requested $995 per hour)*; MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-22963-CIV, 2013 WL 1289261 (S.D. Fla. Mar. 28, 2013) (finding rates of attorneys at large Miami-based firm to be excessive and lowering hourly rates from $610 to $500 and from $475 to $350); *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952

(S.D. Fla. July 15, 2011), *aff'd,* 492 F. App'x 73 (11th Cir. 2012) (using blended rate of $425 for attorneys in multinational firm).

The Court-set hourly fees are appropriate for a comparatively complicated federal antitrust lawsuit involving entities in two different countries. The Court is in no way suggesting or even implying that these hourly rates would apply to a garden variety breach of contract lawsuit or a routine commercial litigation case.

**C.  Analysis: Reasonable Hours Expended**

Now that the hourly rates have been established, the analysis shifts to Patheon's requested time. In that vein, Procaps objects to an entire category of time it says should not be included in the attorney's fee calculation -- Patheon's time spent in, and related to, the mandatory meet and confer meetings. Procaps argues that Patheon should not be awarded fees for the 76.8 hours of time its attorneys incurred in the meet and confer process. [ECF No. 160, pp. 16-17].

Procaps does not cite any on-point, applicable law to support its position. Its reliance on *Tollett v. City of Kemah,* 285 F.3d 357 (5th Cir. 2002), is unhelpful. That case concerned costs incurred in preparing discovery requests, an item for which Patheon is not seeking fees and which is significantly different than time Patheon was required to spend in the meet and confer process as a precondition to filing motions to compel. *Id.* at 368-69. In *Tollett,* the court explained that fees incurred in preparing the underlying discovery requests "were not caused by any failure to comply" because those fees

would have been incurred even if there had not been a discovery dispute. *Id.* at 368. Thus, the court reasoned that those fees were not recoverable. *Id.* at 368-69. But this common sense finding has no bearing on whether the time incurred in the meet and confer process -- which **was** generated by the discovery dispute -- is compensable.

The Court finds persuasive the analysis provided in *Woodland v. Viacom, Inc.*, 255 F.R.D. 278 (D.D.C. 2008). There, the court ordered the plaintiff to pay all reasonable attorney's fees and costs incurred by the defendant in filing a motion to compel. Some of the fees requested were for time expended by defense counsel preparing emails and placing telephone calls to opposing counsel. The plaintiff objected to a fee award for those time entries.

In awarding fees for those emails and phone calls, the court found that "a near 'but for' relationship must exist between [Federal Rule of Civil Procedure] Rule 37 violations and the activity for which fees and expenses are awarded." *Id.* at 283 (internal citations and quotations omitted). In addition, the court held that "[a] party is only entitled to compensation for the work that is 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Id.* (internal citations omitted). Because defense counsel engaged in the activities to comply with a local rule requiring a pre-filing conference and because the court also required counsel to arrange a conference call with the court, they were "useful and of a type ordinarily necessary to file the motion to compel." *Id.* at 284.

In the instant case, both the Local Rules and this Court's discovery practices order required the pre-filing meet and confer meetings. Therefore, Patheon's meet and confer activities meet the "useful and of a type ordinarily necessary" test, thereby entitling Patheon to recover reasonable attorney's fees for its meet and confer activities.

As explained above, the time Patheon incurred in the meet and confer process was necessary, reasonable and, in general, compensable. But, setting aside the meet and confer time, Procaps contends that Patheon's attorneys did not otherwise work efficiently. It notes that Patheon's counsel advised the Court that "every lawyer on this team" worked on the discovery litigation, thereby creating what Procaps describes as "numerous inefficiencies." Procaps takes issue with the numerous conferences for which Patheon is seeking attorney's fees, arguing that "the Cooley lawyers spent far more time talking about the motions than actually drafting them." [ECF No. 160, p. 18]. Procaps also argues that Patheon's counsel engaged in duplicative work, which it brands as redundant or unnecessary.

Procaps also objects to the amount of fees requested because it says the fees are grossly disproportionate to the work needed on only two motions to compel. As discussed above, however, the motions to compel are not the run-of-the-mill, standard motions which are more-typically filed in this district. Therefore, the mere fact that the litigation events at issue are two motions to compel is not controlling or particularly persuasive in assessing the reasonableness of the time.

The Court does not doubt that Patheon's attorneys worked all the hours listed in the billing records. Nevertheless, it is also clear that an entire team of attorneys worked on the discovery dispute and that some of the time spent was inefficiently incurred. For example, Procaps argues that Patheon's attorneys "spent an excessive 32 hours just editing the two 5 page briefs and one 10 page reply." [ECF No. 160, p. 17].

There is, of course, nothing inherently unreasonable about a client having multiple attorneys. And it is certainly not unusual in a major lawsuit like this one for law firms to assign a team of attorneys, ranging from senior partners to junior associates, to the case. But when multiple attorneys are involved in representing one client in litigation, there is always the risk of inherent inefficiencies. Thus, in order to recover time for multiple attorneys, the fee applicant bears the burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Barnes,* 168 F.3d at 432.

Patheon may have instructed its attorneys to pursue a "leave-no-stone-unturned" approach for this case (in general) or for the discovery dispute (in particular), and the firm may have followed its client's instructions. Or maybe the Cooley attorneys adopt this litigation philosophy in every case. Or maybe they pursued this approach only for this case. The Court is not faulting Patheon's attorneys for being comprehensive and exceptionally diligent. While Patheon is certainly free to pay its *own* attorneys full rack rates for a full-court press litigation effort, "courts are not authorized

to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428.

In its initial fee request [ECF No. 153, p. 10], Patheon's lead trial counsel explained that he "made every effort to push work down to attorneys with lower billable rates whenever possible." The Court does not in any way challenge this goal, but the end result demonstrates that the attorney with the *highest* billable rate (Mr. Schildkraut) billed approximately the third *most* amount of time among eight Cooley lawyers. When a trial court is confronted with a fees request which demonstrates billing inefficiencies, it is appropriate to make an "overall reduction" in the fees award by adopting an across-the-board percentage reduction. *MKT Reps S.A. De C.V.*, 2013 WL 1289261, at *12 (imposing 20% reduction after reducing the hourly billing rates).

Patheon's fee request included a self-imposed reduction of approximately 20% (by reducing its fee request from $328,632.50 to $261,479.50).[9] Given this significant, voluntary reduction, the Court finds that an additional reduction of only 5% is warranted.

But the Court also finds that another 5% reduction is warranted. Patheon's counsel explained that his firm uses block billing to bill Patheon. As a result, Patheon's

---

[9]     The self-imposed reduction was made only on the first of the two fee submissions. The reduction amounted to approximately 32% of the fees requested there, but the total reduction for *both* submissions is approximately 20%.

attorneys had to go back and pinpoint the specific time related to these two motions from their original block billing entries, which included other work for Patheon. While the Court does not doubt Patheon's attorneys' sincerity and efforts in pinpointing their hours after the fact, the Court also realizes that such an exercise is inherently difficult and may lead to imprecise estimations. Accordingly, in an abundance of caution, the Court finds that a further 5% reduction is warranted.

### D. Conclusion

In sum, the Court has substantially reduced the hourly rates requested by Patheon and in addition to only awarding Patheon 40% of the time it seeks related to the motions to compel, the Court has also imposed an additional 10% reduction. Consequently, the Court is awarding Patheon for 30% of the time associated with the discovery dispute. The Court's total fee award is $40,451.50, broken down as follows:

| Attorney | Awarded Hourly Rate | Awarded Hours | Total |
|---|---|---|---|
| Marc Schildkraut | $565 | 15.3 | $8,644.50 |
| Michael Klisch | $515 | 16.4 | $8,446 |
| Robert Cahill | $425 | 15.0 | $6,375 |
| Mary Kathryn Kelley | $410 | 7.9 | $3,239 |
| Mazda Antia | $395 | 1.5 | $592.50 |

| | | | |
|---|---|---|---|
| Grace Kwon | $285 | 23.7 | $6,754.50 |
| Joshua Siegel | $260 | 11.5 | $2,990 |
| Sarah Talkovsky | $220 | 15.5 | $3,410 |

## IV.    DISCUSSION: WHO PAYS THE FEES AWARD

Federal Rule of Civil Procedure 37(a)(5)(A) mandates an order requiring "the party or attorney advising that conduct, or both," to pay the successful movant's reasonable expenses, including attorney's fees. The rule does not use the phrase law firm and it does not provide any specific guidance on how to determine when an award should be against a party, when it should be against an attorney, when it should be against the attorney's law firm, or when it should be against some combination of those potential payors.

Procaps notes its "positions were developed jointly between client and counsel," but represents that it cannot provide any greater clarity without violating the attorney-client privilege. [ECF No. 160, p. 19]. The Court is sensitive to the inherently problematic scenario which would be generated if Procaps were to provide further information and is therefore not going to press Procaps for additional details.

Federal courts routinely award Rule 37 expense awards (including attorney's fees) against **both the party and its counsel.** *See Biovail Corp. v Mylan Labs., Inc.,* 217 F.R.D. 380 (N.D. W.Va. 2003). In other cases, federal courts award Rule 37 expense

38

awards against the **attorney personally**. *See FDIC v. Conner,* 20 F.3d 1376 (5th Cir. 1994) (affirming Rule 37 award of $6,045 against FDIC attorney); *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.,* 617 F.2d 1365 (9th Cir. 1980) (affirming Rule 37 award against government attorney). In other cases, courts award Rule 37 fees against the **party's law firm**. *McCoo v. Denny's Inc.,* 192 F.R.D. 675 (D. Kan. 2000). In many other instances, courts merely grant an expense award, sometimes deeming them "sanctions,"[10] **without specifying** who should pay. *JSR Micro, Inc. v. QBE Ins. Corp.,* No. C-09-03044 PJH, 2010 WL 1957465 (N.D. Cal. May 14, 2010) (awarding $130,212.08 against defendant); *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.,* No. 10 CV 1762 (RRM)(ALC), 2011 WL 2490808 (E.D.N.Y. June 22, 2011); *Underdog Trucking L.L.C.,* 273 F.R.D. 372. And courts sometimes enter the Rule 37 expense award against the **party itself**. *Design Basics, LLC v. Strawn,* 271 F.R.D. 513, 529-30 (D. Kan. 2010) (awarding expenses, including attorney's fees, against plaintiff).

In some instances, it is relatively easy to determine who should be ordered to pay the award. For instance, if an attorney repeatedly gives his client improper instructions to not answer deposition questions, then it is that attorney who should pay

---

[10]     As the Court previously advised counsel, the Court does not consider a Rule 37(a)(5)(A) expense-shifting award to be a sanction or the imposition of discipline or an indication that anyone acted in bad faith. Rather, it is merely a **consequence** of taking certain unsuccessful discovery positions. Thus, this Order would not require the Carlton Fields law firm or any of the seven attorneys involved in the discovery dispute to answer "yes" if ever asked (e.g., by a prospective employer, by an insurance carrier, by a judicial nominating commission, by a client, or by a prospective client) if the firm or the attorneys had ever been sanctioned or disciplined.

the expense award associated with a successful motion to compel another deposition. On the other hand, a client who repeatedly (and inaccurately) tells its attorney that it does not archive emails should pay an expense award triggered by a successful motion to compel production of electronically stored information.

Here, however, the lines are fuzzy, and Procaps' counsel has not provided the information necessary to clear up the lack of clarity. Because an expense award should only be levied upon the person responsible for the violation, an expense award against a party "requires specific findings that the party was aware" of the conduct causing the award. *McCoo,* 192 F.R.D. at 697.

Procaps' counsel has explained, in general, that the law firm regularly updates its clients with all significant developments in the litigation. Likewise, counsel has represented, in general, that the discovery decisions were jointly made between client and counsel. Given these representations, the Court concludes that there is sufficient record evidence to find that Procaps itself was aware of the discovery positions articulated by its counsel. Therefore, it is appropriate that Procaps assume some of the financial responsibility.

On the other hand, Procaps' counsel has explained that this lawsuit is Procaps' first lawsuit in the United States, suggesting that it is not as sophisticated as other similarly-situated United States-based firms in the pharmaceutical industry. As a result, the Court believes it would be unduly harsh to saddle Procaps with the obligation to

pay half of the expense award. Therefore, Procaps will pay 25% ($10,112.88), the Carlton Fields law firm will pay 65% ($26,293.47) and the seven attorneys will each pay 1/7th of the remaining 10% ($577.88 per attorney).

## V.     CONCLUSION

Procaps, the Carlton Fields law firm, and the seven lawyers shall make their respective payments within 14 days of the entry of this Order and they shall each submit an affidavit or declaration in the Court's e-file inbox (goodman@flsd.uscourts.gov), **not CM/ECF**, confirming the payments, within **five** days of making the payment. The seven attorneys may, if they wish, submit one omnibus affidavit or declaration, signed by all of them.

**DONE AND ORDERED** in Chambers, in Miami, Florida, December 3, 2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record