UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

    Plaintiff,

v.

PATHEON INC.,

    Defendant.

_____/

### ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

*If I swing my fist at your face, you may decide to duck. But if you stand still, and I deck you, I am the cause of your injury. You did not punch yourself.*[1]

Defendant Patheon Inc. ("Patheon") and Plaintiff Procaps S.A. ("Procaps") entered into a Collaboration Agreement to work together to produce and market a brand of softgels. A few months later, Patheon acquired Procaps' main competitor, Banner Pharmcaps Europe B.V. ("Banner"). Procaps filed this lawsuit alleging that when Patheon acquired Banner it made the Collaboration Agreement illegal under state and federal antitrust and competition laws. Patheon has now moved for judgment on the pleadings on counts I-IV of Procaps' complaint and contends that Procaps has caused its own antitrust injury by declining multiple offers to terminate the Collaboration Agreement. In other words, Patheon says that by not ducking its antitrust

---

[1] *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 754 F. Supp. 1336, 1353 (N.D. Ill. 1991), *aff'd*, 961 F.2d 667 (7th Cir. 1992).

1

punch, Procaps has punched itself. According to Patheon, Procaps has manufactured Article III standing by injuring itself, and the Court therefore lacks subject matter jurisdiction over counts I-IV.

It is true that a party lacks Article III standing where it is the *sole* cause of its injury. But assuming, as the Court must for purposes of this motion, that Procaps was injured and that its injury can be redressed, the Court cannot now conclude on this record that Procaps' decision to not terminate the Collaboration Agreement is the *sole cause* for its antitrust injury. To be sure, Procaps could have ducked Patheon's antitrust punch by terminating the Collaboration Agreement. It likewise could have sought to block the punch by seeking an injunction to prevent the Banner acquisition. But the fact that Procaps did neither of those things does not mean that Patheon didn't throw the punch that started the causal chain in Procaps' antitrust injury. Consequently, and as explained below, the Court **denies (albeit without prejudice)** Patheon's motion.

I.   **Background**

   A.   *Factual Background*

In January 2012, Procaps entered into a Collaboration Agreement with Patheon to develop and market a brand of softgel products called "P-Gels." [ECF Nos. 1, ¶¶ 6-9; 21, p. 3]. Procaps would develop and manufacture the P-Gels and Patheon's role was to market and sell the P-Gels. [ECF No. 1, ¶¶ 42, 47-50].

2

On October 22, 2012, Patheon advised Procaps that it was considering acquiring Banner, a company Procaps calls a competitor. [ECF No. 1, ¶¶ 19, 56-57]. On October 29, 2012, Patheon entered into an agreement to acquire Banner. [*Id.* at ¶ 58]. Almost a week after that, on November 5, 2013, Procaps' counsel advised Patheon that the proposed Banner acquisition might "adversely affect[]" Procaps' rights under the Collaboration Agreement. [ECF No. 174-2]. The parties met on November 17, 2012, but were not able to resolve Procaps' concerns about the proposed Banner acquisition.

On December 10, 2012, Procaps filed the instant five-count complaint. [ECF No. 1]. Procaps alleged that Patheon's proposed acquisition of Banner will render the Collaboration Agreement illegal under federal and state antitrust and competition laws because Procaps and Patheon will become horizontally-situated competitors in the softgel market. [ECF No. 21, p. 3]. In counts I-IV of its complaint, Procaps sought various forms of relief under federal antitrust laws and Florida's Deceptive Unfair Trade Practice Act. [*See generally* ECF No. 1]. In count V, Procaps sought damages for common law unfair competition. Procaps, however, did not seek a preliminary injunction to prevent the Banner acquisition, and on December 14, 2012, the Banner acquisition closed.

B. *The Instant Motion*

Patheon has now moved for judgment on the pleadings on counts I-IV of Procaps' complaint based on Procaps' purported lack of Article III standing. [ECF Nos.

3

170; 171; 174]. In its motion, Patheon submitted evidence showing that before and after the Banner acquisition closed it offered Procaps the opportunity to terminate the Collaboration Agreement, but Procaps refused. [ECF Nos. 171-5; 171-6; 171-7]. Thus, Patheon contends, it is Procaps' *own* decision to refuse to terminate the Collaboration Agreement which is the actual cause of its purported antitrust injuries. Therefore, Patheon argues that Procaps lacks Article III standing because it has impermissibly manufactured its own injury and, consequently, this Court lacks subject matter jurisdiction.

In response, Procaps does not contest Patheon's assertions that it could have terminated the Collaboration Agreement. [ECF Nos. 193; 195]. Rather, Procaps first contends that the District Court[2] already decided the issue of Procaps' standing in its Order on Patheon's motion to dismiss. [ECF No. 195, pp. 10-11]. Second, Procaps argues that it did not cause its own injury because its injury flowed from an event which it had no control over, i.e., Patheon's acquisition of Banner. [*Id.* at p. 15].

In its reply, Patheon reiterated its position that Procaps could have avoided its purported injury by accepting Patheon's offer to terminate the Collaboration

---

[2] United States District Judge Donald Graham presided over this case until the parties consented to full magistrate judge jurisdiction, at which point Judge Graham referred the entire case to the Undersigned. [ECF Nos. 88; 89]. Patheon's motion to dismiss and Judge Graham's Order denying the motion predated the parties' consent.

4

Agreement. [ECF No. 199, pp. 2-7]. Patheon also contends that the District Court only decided Procaps' antitrust standing, not Article III standing. [*Id.* at pp. 9-10].

The Court ordered supplemental briefing from the parties regarding whether Patheon's motion implicated the merits of Procaps' lawsuit. [ECF No. 233]. As expected, Patheon argued that its motion did not and Procaps argued that it did. [ECF Nos. 243; 244]. The Court also requested the parties to submit respective proposed orders on Patheon's motion to help flesh out issues that in the Court's view were not sufficiently addressed in the parties briefing. [ECF No. 253]. Both parties timely submitted their respective proposed orders. [ECF Nos. 257; 258].

## II.  Legal Standard for a Subject Matter Jurisdiction Challenge

If a court lacks subject matter jurisdiction at any time during a case, then it must dismiss the case without reaching the merits. Fed. R. Civ. P. 12(h)(3); *Swann v. Georgia*, 668 F.3d 1285, 1289 (11th Cir. 2012) (internal citations omitted). A court evaluates a party's challenge to its subject matter jurisdiction under Rule 12(b)(1). *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

There are two kinds of attacks on subject matter jurisdiction: facial and factual. *Morrison v. Amway Corp.*, 323 F.3d 920, 924, n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint. *Lawrence*, 919 F.2d at 1529. A factual attack challenges subject matter jurisdiction irrespective of the pleadings. *Id.* In a factual attack, a court is free to consider extrinsic

5

evidence such as testimony and affidavits, may "proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56," and may "weigh the evidence" because "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* (internal citations and quotations omitted).

However, this flexible rule regarding factual attacks is subject to a significant caveat: a court may rely on Rule 12(b)(1) only "if the facts necessary to sustain jurisdiction **do not implicate the merits of plaintiff's cause of action**." *Morrison*, 323 F.3d at 925 (internal citation omitted) (emphasis added). If a factual attack does in fact implicate the merits of the underlying claim, then the court is directed to find that jurisdiction exists, deal with the objection as a direct attack on the merits of the complaint, and "treat[] the motion as a motion for summary judgment under Rule 56 and refrain[] from deciding disputed factual issues." *Id.* (internal citation omitted).

### III.  Analysis

The Court will first examine whether Patheon's motion implicates the merits of Procaps' lawsuit. The Court will then determine if the District Court has already decided the issue of Procaps' Article III standing. Finally, the Court will analyze the merits of Patheon's instant motion.

#### A.  *Does Patheon's Motion Implicate the Underlying Merits?*

In order to rule on Patheon's motion, the Court must first assure itself that Patheon's motion does not implicate the merits of Procaps' lawsuit.

Patheon contends that its motion assumes the truth of Procaps' factual allegations and further assumes that Procaps met all the requisite elements. [ECF No. 244]. To prove this point, Patheon highlights the fact its motion does not ask for a ruling on any of the elements of Procaps' claims. [*Id.*].

Procaps, on the other hand, stridently proclaims that the motion does implicate the merits of its lawsuit because it says "Patheon's posited theory is that Procaps could *never* bring an antitrust claim under any circumstances, even though Patheon's acquisition of Banner converted the Collaboration Agreement into a *per se* unlawful restraint of trade." [ECF No. 243, pp. 2-3]. But that is not exactly Patheon's argument. The critical distinction between Procaps' analysis and Patheon's theory is that Procaps fails to include the significant point that it decided to not accept Patheon's invitation to terminate the Collaboration Agreement if it believed it had been transformed into an unlawful contract.

Patheon's approach is akin to the defendants' **second** motion to dismiss in *In re Hydrogen Peroxide Antitrust Litigation*, 702 F. Supp. 2d 548 (E.D. Pa. 2010). There, the court initially denied a motion to dismiss which mounted a facial challenge to subject matter jurisdiction. *Id.* at 549. After substantial discovery, the defendants filed a second motion to dismiss under Rule 12(b)(1), asserting a factual challenge to the court's subject matter jurisdiction. *Id.* at 549-50. In granting the second motion to dismiss, the court rejected the plaintiffs' arguments that jurisdiction was intertwined with the

7

merits. *Id.* at 560. Even after construing every fact in the plaintiffs' favor, the court concluded that the plaintiffs failed to meet the causation element of subject matter jurisdiction -- a failure which justified dismissal. *Id.* at 560-61; *accord Christian Coalition of Fla., Inc. v. United States,* No. 5:09-cv-144-Oc-10GRJ, 2010 WL 3061800 (M.D. Fla. Aug. 3, 2010) (granting Rule 12(b)(1) motion because controversy was moot as the plaintiff received tax refund and noting that factual attack did not implicate the merits because the court did not need to address whether the plaintiff is "actually entitled to a refund . . . in order to assess jurisdiction").

The Court finds that Patheon's arguments relate to the merits of Procaps' Article III **standing**, not to the merits of the underlying *claims.* Basically, Patheon's position is: assuming we (Patheon) converted the Collaboration Agreement into an unlawful agreement which violates antitrust and competition laws (i.e., assuming the facts in Procaps' complaint), the Court still lacks jurisdiction as Procaps is pursuing a self-inflicted injury because it refused to terminate the purportedly unlawful agreement, and Procaps cannot create Article III standing by causing the very injury it complains of. The Court agrees with Patheon's *description* of its position and agrees that the factual jurisdictional challenge does not implicate the merits of the underlying claims. Therefore, Patheon's factual challenge to Procaps' Article III standing may proceed.

### B. *Did the District Court Already Decide This Issue?*

Procaps contends that Patheon's current attack on Procaps' standing is the "exact same argument" the District Court rejected in Patheon's unsuccessful motion to dismiss. [ECF No. 195, pp. 11-12]. Thus, Procaps argues that the District Court has already decided this issue. Patheon vigorously denies this notion and contends that not only did the District Court not reject the "exact same argument," but, according to Patheon, it did not even reject a *similar* one. [ECF No. 199, p. 9].

In its earlier motion to dismiss, Patheon argued that (1) "Procaps has no standing to sue, because, as a competitor, any anticompetitive effects would benefit it," and (2) that "Procaps is the cause of the alleged antitrust injury it seeks to cure." [ECF No. 34-1, pp. 6-7]. However, Patheon's second argument (i.e., that Procaps **caused the antitrust injury** because it refused Patheon's offer to terminate the Collaboration Agreement) was not cast as a *standing* argument. Instead, Patheon argued that Procaps' decision to not terminate the very agreement it now says is illegal required dismissal of the lawsuit **under the *in pari delicto* doctrine**. [*Id.* at pp. 19-20].

In denying Patheon's motion to dismiss, the District Court explained that "Procaps has standing to assert an antitrust claim against Patheon." [ECF No. 50, p. 6]. In particular, the District Court held that "the injuries **alleged** by Procaps fall within the scope of United States antitrust law" and that Procaps therefore "has standing to bring this action." [*Id.* at p. 7 (emphasis added)].

9

Given this reality, the standing analysis in the District Court's Order denying the motion to dismiss nowhere mentions the argument that Procaps lacks *standing* because it caused its own injuries by not agreeing to terminate the Collaboration Agreement. [*See* ECF No. 50]. In fact, the District Court did not discuss, let alone evaluate, the new defense argument that Procaps *inflicted its own injury* and therefore lacks Article III standing. [*Id.*].

More importantly, Article III standing and antitrust standing are not one and the same. *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 965-66 (11th Cir. 2006). The District Court's Order and Patheon's earlier motion to dismiss discussed Procaps' antitrust standing, not its **Article III** standing. Thus, it would seem that the District Court could not have ruled on the Article III standing issue if it only ruled on Procaps' antitrust standing. But here's the wrinkle in that proposition: antitrust standing requires a plaintiff to show *more* than what is required for Article III standing. *Florida Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) ("[a]ntitrust standing requires more than the 'injury in fact' and the 'case or controversy' required by Article III of the Constitution").

The difference between Article III standing and antitrust standing can be thought of in the following way. Article III standing is the lobby of the building, while antitrust standing is the second floor of the same building. Therefore, if a plaintiff is found to have antitrust standing, then it is on the proverbial second floor and it seems logical to

conclude that it has also made it past the lobby (Article III standing). In other words, a plaintiff with antitrust standing has most likely[3] implicitly met Article III's standing requirement. On the other hand, a plaintiff with Article III standing might not necessarily also have antitrust standing (as that plaintiff could be stuck in the metaphorical lobby without having ventured up to the second floor).

Using this logic, Procaps argues that by finding that it had antitrust standing in its Order, the District Court *implicitly* found that Procaps had Article III standing. Procaps' argument would likely carry the day *if* Patheon had in its current motion raised a facial attack to Procaps' Article III standing. By mounting a factual attack, however, Patheon has allowed the Court to evaluate matters outside the four corners of the complaint and even weigh evidence. *Supra* p. 6. This is something the District Court could not do in evaluating Patheon's Rule 12(b)(6) motion to dismiss. To the contrary, the District Court's assessment was limited because it had to accept as true Procaps' allegations. [ECF No. 50, p. 3]. Thus, the District Court's Order concerned only the *facial* sufficiency of the allegations, not the proof-based factual challenge before this Court.

As a result, the Court finds that the District Court's Order finding the *allegations* of Procaps' complaint sufficient for **antitrust standing** does not foreclose Patheon's later *factual attack* on Procaps' Article III standing.

---

[3] It is difficult to logically conceive of a scenario where an antitrust plaintiff is found to have antitrust standing, but not Article III standing. Nevertheless, the Court leaves open the theoretical possibility of such a situation.

## C. *Does Procaps Have Article III Standing?*

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). A plaintiff must show its claim presents the court with a case or controversy under the Constitution and meets the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the Eleventh Circuit has recently explained, to make this showing, a plaintiff must show that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012).

Patheon does not challenge the first and third elements. [ECF No. 170, pp. 10, 15]. Accordingly, the Court will assume that Procaps satisfies these elements. Patheon challenges only the causation element, i.e., that Procaps' injuries are not fairly traceable to Patheon's conduct. In particular, Patheon contends that Procaps' antitrust injuries are self-inflicted because Procaps could have alleviated the injury by terminating the Collaboration Agreement, but chose not to do so. [ECF No. 170, pp. 14-16]. Patheon asserts that Procaps' motive in refusing to terminate[4] the Collaboration Agreement is

---

4     The parties spent a great deal of time in their briefs discussing the current status of the Collaboration Agreement, i.e., whether it is terminated or not. Patheon contends

clear: money. According to Patheon, Procaps is trying to keep the Collaboration Agreement alive because without it, Procaps' "potential $126+million [antitrust] lottery ticket disappears." [ECF No. 174, p. 16].

A plaintiff may not establish Article III standing where it injures itself. *Clapper*, 133 S. Ct. at 1152. Likewise, the causal chain between the defendant's conduct and plaintiff's injury may be broken where the plaintiff's self-inflicted injury results from its knowing and unreasonable decision to walk into the harm. *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000).

But "[n]ot every infirmity in the causal chain deprives a plaintiff of [Article III] standing." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000). And "[t]he mere fact that the [plaintiff's] own decisions played a role in its [injury] does not obviate the causal connection between the defendants' conduct and the plaintiff's injury." *Nucor Corp.*, 466 F.3d at 965. Rather, an injury is self-inflicted only if it is so "***completely*** **due to the [complainant's] own fault**" as to break the causal chain." *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438 (D.C. Cir. 1989) (Ginsburg, J.) (citing 13A C. Wright, A. Miller

---

that it terminated the Collaboration Agreement because of Procaps' failure to perform. [ECF No. 174-6]. Despite seeking termination of the Collaboration Agreement in its complaint, Procaps rejected Patheon's termination offer. [ECF No. 171-12]. After reviewing the record, the Court agrees with Patheon that Procaps' position regarding the status of the Collaboration Agreement has shifted during the litigation. Regardless, the current status of the Collaboration Agreement is not directly before the Court in Patheon's instant motion.

& E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3531.5 (3d ed.)) (emphasis added).

Patheon argues that Procaps could have avoided its antitrust injuries caused by Patheon's antitrust violation by terminating the Collaboration Agreement. Patheon's argument on that point is similar to the defendant's argument in *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 754 F. Supp. 1336, 1353 (N.D. Ill. 1991). There, the Chicago Bulls (the "Bulls") had contracted with WGN, a tv station, to televise 25 Bulls games. *Id.* at 1339. The National Basketball Association ("NBA"), of which the Bulls are a member, passed a new rule reducing the amount of games WGN (and other stations) could televise to 20. *Id.* at 1344. The Bulls and WGN sued to enjoin the NBA's new rule reducing the amount of televised games as an antitrust violation.

Like Patheon, the NBA argued that WGN and the Bulls' loss of five televised games was self-inflicted because the Bulls and WGN failed to take advantage of other opportunities to sidestep the antitrust injury caused by the NBA. In rejecting the NBA's self-inflicted injury argument, the court stated:

> Logically, the NBA's argument has holes. If I swing my fist at your face, you may decide to duck. But if you stand still, and I deck you, I am the cause of your injury. You did not punch yourself.

*Id.* at 1353. The court also found that the Bulls had antitrust standing, despite being members of the NBA, the very entity committing the antitrust violation. *Id.* at 1355. On appeal, the Seventh Circuit affirmed the district court and noted that both WGN and the

Bulls had antitrust and Article III standing. *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 669 (7th Cir. 1992) (Easterbook, J.).

Similarly here, Patheon argues that while it committed an antitrust violation, Procaps injured itself by not sidestepping the injury by terminating the Collaboration Agreement. But like the NBA, Patheon ignores the fact that it threw the unlawful antirust punch that started the causal chain in Procaps' antitrust injury. The underpinning of Patheon's argument is that it was somehow Procaps' responsibility to avoid the consequences of Patheon's unlawful conduct. But that argument goes too far from both a logical and legal perspective.

Taking Patheon's argument to its logical conclusion would mean that, in general, a defendant could commit unlawful acts and injure a plaintiff, but that the plaintiff would never have standing to sue so long as it was somehow possible for it to avoid the injury from the defendant's unlawful acts. Logically that makes little sense and the law does not support such a position. *Chicago Prof'l Sports Ltd. P'ship*, 754 F. Supp. at 1353 ("[p]laintiffs do not ordinarily have an obligation to change their behavior in order to escape injury from the unlawful acts of defendants").

Applying Patheon's argument in an antitrust case where there is a contract between the parties would mean that an antitrust plaintiff would have no standing so long as it could terminate the illegal agreement. But that is likewise not the law. An antitrust plaintiff may be a party to the illegal contract and still sue the defendant for an

antitrust violation. *See Am. Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1230, 1254 (3d Cir. 1975); *Hobart Bros. Co. v. Malcolm T. Gilliland, Inc.*, 471 F.2d 894, 900-01 (5th Cir. 1973). And Patheon has not cited an on-point case where an antitrust plaintiff was denied Article III standing because it refused to terminate the contract it had entered into with the defendant before the defendant took steps to render that contract unlawful.

To be sure, Procaps could have ducked the punch by terminating the Collaboration Agreement. Procaps could also have tried to block the punch by seeking a preliminary injunction to prevent the Banner acquisition. By failing to do those things, Procaps may have very well *contributed* to its antitrust injury, but its actions are not the entire cause of its antitrust injury so as to break the causal chain Patheon started when it acquired Banner. *See Nucor Corp.*, 466 F.3d at 965-66 (even though plaintiff contributed to its own injury by not submitting a higher bid, its injuries were not *entirely* self-caused because the plaintiff's "need to make a higher bid was occasioned only by the" defendants' unlawful participation).

Nor has Patheon shown that Procaps knowingly walked into its antirust punch by showing, for example, that Procaps knew about the Banner acquisition *before* entering the Collaboration Agreement. *See, e.g., Big Blue Capital Partners, LLC v. Recontrust Co., N.A.*, No. 6:11-CV-06368-AA, 2012 WL 1605784, at *4-5 (D. Or. May 4, 2012) (plaintiff lacked standing to assert injury for loss of foreclosed property, where

plaintiff knowingly purchased property after default and defendants had initiated foreclosure proceedings). To the contrary, there is nothing in the record that indicates that Procaps knew *before it* entered the Collaboration Agreement that Patheon was going to acquire Banner.

As a result, the Court finds that because Patheon had a hand in causing Procaps' antitrust injury, "it would be better to recognize" Procaps' Article III standing. *St. Pierre,* 208 F.3d at 402; *accord Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), as amended (Mar. 21, 2013).

## IV.    CONCLUSION

The Court finds that Procaps has Article III standing because its injuries were not entirely self-caused. *Nucor Corp.*, 466 F.3d at 965-66.[5] Accordingly, the Court **denies without prejudice** Patheon's motion for judgment on the pleadings on counts I-IV of Procaps' complaint. This ruling is premised on Patheon's "assume-all-alleged-facts-to-be-true" approach. Therefore, this Order does not preclude a summary judgment motion on the same self-inflicted injury theory, nor does it prevent Patheon from raising the argument during or after the trial.

**DONE AND ORDERED** in Chambers, in Miami, Florida, January 29, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record

---

[5]    Interestingly enough, while the defendants initially lost before the Eleventh Circuit on their attack on the plaintiff's standing, they recently won on summary judgment, albeit on a different issue. *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 721 F.3d 1281 (11th Cir. 2013).