UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

**[CONSENT CASE]**

PROCAPS S.A.,

    Plaintiff,

v.

PATHEON INC.,

    Defendant.

_____/

## OMNIBUS ORDER ON PATHEON'S THREE MOTIONS TO COMPEL

Defendant Patheon Inc. ("Patheon") has filed three motions to compel against Plaintiff Procaps S.A. ("Procaps"). [ECF Nos. 262; 264; 272]. These are not Patheon's first motions to compel (i.e., others have been filed and granted) and there is a need for a timely ruling because the summary judgment filing deadline will elapse soon, as will the discovery deadline.

For the reasons outlined below, the Court is **granting** the motions in large part and **denying** the motions in small part. Because most of the disputes involve situations where the parties' positions are substantially justified or where one party prevailed on approximately half the challenges but lost on the other half, the Court is not granting Patheon's fees request for its first two motions. For the third motion, however, the Court is granting the motion and also awarding fees (albeit a modest amount, because it

is a simple, straightforward motion which did not require a significant amount of attorney time to prepare).

I. INTRODUCTION

Much of the discovery disputes at issue here concern the simple issue of scheduling depositions. Although some of the disputes relate to the location of the depositions, some of the disagreement is about when the depositions sought by Patheon can be taken. And some of those disagreements concern Procaps' purported failure to timely provide acceptable dates, despite repeated requests, while another factor is Procaps' apparent insistence that its lead trial counsel personally appear to defend all depositions. According to Patheon's motion, Procaps' lead counsel will not even use his other *partners* working on this case to defend depositions. [ECF No. 265, p. 5]. Patheon says that this policy is unworkable and has generated undue prejudice because "Patheon has been at the mercy of lead counsel's calendar since the beginning of this case." [*Id.*]. In its response, Procaps does not dispute that it has adopted this policy of insisting that this one specific attorney defend the depositions.

Based on opinions generated by Procaps' damages expert, Procaps is seeking more than $375 million in damages (as trebled in the federal antitrust laws). Given this exposure, Patheon seeks to adequately and vigorously defend itself by, among other things, taking depositions of experts and fact witnesses. Patheon complains that its

efforts to defend itself have been significantly undermined by the schedule of one attorney -- Procaps' lead trial counsel, who appears to be an exceptionally busy lawyer, both in this case and in others.

Given the magnitude of this case (more than $375 million in alleged damages), the size of Procaps' law firm,[1] and the rapidly approaching deadlines for discovery and summary judgment motions,[2] the Court is sympathetic to Patheon's situation. It is no longer reasonable for Procaps to postpone depositions based on the schedule of only **one attorney**. This is a major lawsuit, with more than a third of a billion dollars in alleged damages -- not a garden-variety breach of contract case. It is simply impractical to postpone depositions for weeks and weeks in order to accommodate one attorney's hectic schedule. Asking for a one or two-day accommodation is reasonable, but a blanket refusal to provide available deposition dates for weeks on end is, at this late point in the case, inequitable and problematic.

Therefore, Procaps may no longer delay the scheduling of depositions by relying on the scheduling conflicts of one attorney. Instead, it must take steps to provide workable deposition dates *regardless* of whether its lead counsel can attend. To the

---

[1]     According to the Carlton Fields website, it has 370 attorneys with offices in 10 different cities. At least seven experienced attorneys from the firm have been working on this case for Procaps.

[2]     February 27, 2014 is the summary judgment motion deadline -- i.e., less than a month from now.

extent that Procaps' lead trial counsel has conflicts in other cases, then he may seek to postpone, delay, or reschedule matters in the *other* cases, or he may simply arrange for one of his colleagues to defend the deposition in question in this case. This ruling is reciprocal, and Patheon may also not seek to unduly delay discovery because one attorney on its multi-member team has a conflict.

One other introductory point:

In a relatively recent hearing, after the Court reviewed rhetoric-filled motions and memoranda and listened to strident argument, counsel for both parties advised the Court that they were embarking on a clean slate. Basically, Procaps' lead trial counsel advised that he had extended the olive branch to Patheon's counsel and that the offer to start anew had been accepted.

But based on the tone, tenor, and language in the motions and responses at issue, and in the emails submitted as exhibits, it seems that the olive branch has been burned up by vitriol, anger, and frustration.[3] And that's a shame.

---

[3] For example, in one of its motions, Patheon accuses Procaps' counsel of "withholding documents, delay, diversion and refusing to cooperate." [ECF No. 264, p. 4]. Not to be outdone, Procaps accuses Patheon's counsel of "xenophobia" (because he described Colombia as "a third world country"), describes Patheon's accusation as "astounding," and attacks Patheon for making "misleading[] represent[ations]" to the Court." [ECF Nos. 283, p. 1; 284, pp. 3, 4, n. 3]. As the Court has noted before, it will continue to disregard these over-the-top personal attacks.

But the Court cannot compel counsel to like each other, to get along, to extend courtesies, or to give each other the benefit of the doubt. It appears that counsel genuinely dislike each other and make no bones about not masking their feelings. These attitudes surely must affect the case and are likely responsible, at least in part, for the earlier discovery disputes, as well as the current ones. Litigation is sometimes analogized to war, and it seems as though the parties and their counsel are following at least one of the teachings of Sun Tzu (544-496 BC), the famous Chinese military general, strategist, and philosopher: "The quality of decision is like the well-timed swoop of a falcon which enables it to strike and destroy its victim." Sun Tzu, *The Art of War* (Filiquarian 2006).

## II. DISCUSSION

### A. Patheon's First Motion to Compel [ECF No. 262]

In this motion, Patheon seeks an order compelling Procaps to produce for deposition in the United States seven Procaps employees who live and work in Colombia: Alain Cortesi, Luis Guillermo Velazquez, Camilo Suarez, Carlos Salazar, Diego Monterroza, Osiris Norton, and Andres Nitola.

#### 1. Applicable Legal Standard

The parties agree that under Fed. R. Civ. P. 30(b)(1), a deposition subpoena need not be issued if the person to be deposed is a party, officer, director, or managing agent

of a party. They also agree that a foreign corporation's managing agents may be compelled to appear for deposition in the United States. The critical issue here is whether the proposed deponents are managing agents.

"The determination of whether a person is a managing agent, and therefore subject to a Rule 30(b)(1) notice of deposition, is not formulaic; rather, it is a fact-specific inquiry." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2008 WL 4487679, at *2 (S.D. Fla. Sept. 29, 2008) (citing to 8A Wright, Miller & Marcus, *Federal Practice and Procedure*: Civil 2d § 2107 (3d ed.)).

To decide whether a person is a managing agent, courts examine the following factors: (1) whether the individual has general power to exercise discretion in corporate matters; (2) whether he or she can be expected to testify at the employer's request; (3) whether there are persons within the corporation with greater authority regarding the information sought; (4) the general responsibilities of the individual regarding the matters under litigation; and (5) whether the witness identifies with the interests of the corporation. *Zurich Ins. Co. v. Essex Crane Rental Corp.*, No. 90 Civ. 2263, 1991 WL 12133, at *1 (S.D.N.Y. Jan. 29, 1991) (internal citation omitted).

The party seeking the deposition bears the burden of establishing that the person to be examined is in fact a managing agent. *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798-CIV, 2012 WL 6205044, at *1 (S.D. Fla. Dec. 12, 2012). If the corporate employee

does not qualify as an officer, director or managing agent, then the employee is treated as any other non-party and is not subject to deposition by notice. *Id.* Whether a deponent is a managing agent does not depend on his or her job title, but is determined by examining the witness' actual job responsibilities. *Bay Exploration, Inc. v. Pensa, Inc.*, No. CIV-07-754-D, 2012 WL 122313 (W.D. Ok. Jan. 12, 2012).

Although employees of a corporation may not be managing agents regarding their everyday duties, they may still be managing agents about their testimony concerning their important activities in the underlying facts. *See, e.g., Magdalena v. Toyota Motor Corp.,* No. 12-20661-CIV, 2012 U.S. Dist. LEXIS 178666 (S.D. Fla. Dec. 12, 2012) (finding two Toyota employees who inspected the vehicle at issue to be managing agents); *see also Zurich Ins. Co.,* 1991 WL 12133.

2. Employee-by-Employee Analysis

Because Patheon could not compel a Procaps employee to appear in the United States for a deposition unless the employee is a director, officer, or managing agent, Patheon would need to pursue more formal methods of compelling the employee to take a deposition.

Technically speaking, Procaps employees who are not directors, officers, or managing agents would not be subject to deposition in Colombia through a subpoena served in Colombia, and if Procaps wanted to insist on procedural formality, it could

have taken the position that Patheon is required to use the letters rogatory procedure (which would likely take many months, at a minimum). Procaps is willing to produce its non-managing agent employees in Colombia for a deposition there and is also willing to make the employees available for a video deposition, with Patheon's counsel asking questions from the United States through a satellite or computer hookup.

As will be explained below, Patheon makes different arguments regarding whether the proposed deponents are managing agents. Patheon, however, makes the following argument that is applicable to all witnesses about why they should be deposed in Miami: (1) Colombia is not a safe location for a deposition; (2) it would cost Procaps less to bring its agents to Miami than to pay its counsel to travel to Colombia; (3) Patheon is willing to pay the witnesses' coach airfare to the United States; (4) Patheon's law firm discourages partners from traveling to Colombia and would prefer private security (estimated at $6,000 to $10,000 per day); and (5) the Court's ability to intervene in depositions in Colombia would be severely limited.

        i.     *Alain Cortesi and Luis Guillermo Velazquez*

Patheon and Procaps agree that Cortesi and Velazquez are managing agents and should therefore be deposed in Miami. [ECF Nos. 263, p. 4; 283, p. 2]. They just disagree on dates. So there is no substantive issue here, and the sole remaining issue is to compel

their appearance on a date certain or before a deadline. Procaps shall make them available for deposition in Miami by **February 20, 2014**.

        ii.      *Camilo Suarez, Carlos Salazar, and Diego Monterroza*

For Suarez, Salazar, and Monterroza Patheon's primary argument is based on the employees' status as managing agents. Their titles (a factor which Patheon relies upon) are Head of New Project Development and Director of Business Intelligence; Director of Softgel Technologies; and Director of Research and Development, respectively. Patheon also has other arguments, however. Patheon says they are responsible for the specific business activities at issue in this case and are part of a small group of Procaps managers responsible for the collaboration with Patheon. Moreover, Patheon describes them as the managers who strategized with Procaps' CEO about the Banner acquisition and "schemed" with the CEO to file this lawsuit in order to extract a huge settlement. Finally, Patheon notes that Suarez and Salazar are on Procaps' trial list.

Procaps, however, contends that they are not managing agents. It says the titles are not controlling, and it submitted a declaration [ECF No. 283-1] from Alvaro Franco, who says he was responsible for interfacing with Patheon and that he reports directly to the corporate vice president of the Softgel unit. Procaps, however, has not relied on any authority to support the notion that an employee with an important title is necessarily *not* a managing agent.

9

After reviewing the record before it, the Court finds that Suarez, Salazar, and Monterroza are managing agents (for purposes of testifying about their activities in this case) for the following reasons.

Concerning factors 1 and 4 of the managing agent analysis, their titles indicate they are vested with authority to act and deal on Procaps' behalf. For example, Suarez's title is Head of New Project Development and Director of Business Intelligence. Salazar's title is Director of Sofgel Technologies. Monterroza's title is Director of Research and Development. These are not low level titles. Furthermore, in what appears to be the "contact us" portion of Procaps' Softigel group's website, these three individuals' information is provided, including their cell phone numbers. [ECF No. 263-1]. To be sure, titles are not, in and of themselves, controlling. But if their titles and being named as the contact people on the website were not enough, they were also involved in the management of Procaps and Patheon's joint projects.

While the three are not in the hierarchy of Procaps' management, they are included in emails within Procaps' management group. For instance, only those three individuals from Procaps are listed in an email from Franco to Ruben Minski (Procaps' CEO and founder) and Cortesi regarding Procaps and Patheon's joint proposal to Biocryst. [ECF No. 278-3]. To provide another illustration, Franco emailed only Monterroza and Suarez (with Velazquez copied) regarding an exchange with Minski

regarding Procaps buying equipment for the Biocryst project (something Patheon questioned Franco on at his deposition) and the overall performance of that project. [ECF No. 278-6]. Moreover, there is also another email exchange between Franco, Monterroza, and Suarez regarding a project with Patheon. [ECF No. 278-7].

Procaps relies heavily on Franco's affidavit to show that Suarez, Monterroza, and Salazar are not managing agents. But in his affidavit, Franco does not affirmatively state that these three have no management authority within Procaps. Rather, his affidavit is carefully crafted to say they are not officers or board members, that they do not negotiate or enter into contracts on behalf of Procaps, and they do not have control over this litigation. But that doesn't mean they are not managing agents for deposition purposes. Franco's assertion that his emails to them were part of the normal operational aspects of the Collaboration Agreement is belied by the record. To use a military analogy, the emails indicate that Franco may have been the general, but they were his first lieutenants – and Franco discussed strategy with them and these first lieutenants also had subordinates under them to carry out the agreed-upon directions.

Finally, as to factors 2 and 5 of the analysis, all three can be expected to testify at Procaps' request and identify with Procaps' interests.

Given that these three witnesses are managing agents and can therefore be compelled to give a deposition in Miami (where Procaps chose to file its lawsuit), the

11

Court need not here analyze Patheon's argument about the so-called safety risk of traveling to Colombia. Accordingly, Procaps shall make these three employees available for deposition in Miami by **February 20, 2014**.

        iii.    *Osiris Norton and Andres Nitola*

Patheon argues that despite their respective titles Osiris Norton and Andres Nitola are managing agents concerning the central facts in the case. Patheon describes Norton as the Procaps employee who forecast the P-Gels business before the lawsuit was filed and is "among the most important witnesses in the case." Patheon describes Nitola as the employee who prepared a "blatantly false" spreadsheet which Procaps' expert relied upon for his opinion.

Procaps rejects that theory, contending that Norton and/or Nitola's knowledge about its damages calculation does not make them managing agents because there is no evidence they exercised control over the collaboration. In addition, Procaps flags a practical reason precluding Norton from traveling to the United States for a deposition: he lacks a visa.

At bottom, all Patheon can say on this point is that Norton and Nitola prepared the excel spreadsheet Procaps' damages expert relied on and were involved in forecasting the P-gels business. [ECF No. 263, p. 4]. But what Patheon omits is that Franco testified that while Nitola put the spreadsheets together, he relied on the

12

information and feedback given to him by his supervisors and Procaps' management. [ECF No. 278-1, pp. 7, 8, 11]. That hardly seems like someone who is a managing agent. Norton was copied on one email between Franco and Suarez, where Franco asked Norton to remind him how much Procaps put in the budget for new products for Patheon. [ECF No. 278-5]. To be sure, these two people have some information regarding some aspects of the litigation, but to say they are managing agents is a stretch based on the limited record before the Court.

The Court does not find Patheon's "Colombia-is-too-risky-a-locale" theory to be persuasive. That argument might have had better traction several years ago, but it is not a viable argument in 2014. Procaps' counsel has traveled to Colombia for this case and Patheon's own employees have traveled to Colombia in connection with the Collaboration Agreement. If Patheon wishes to retain its own security, then it is surely entitled to make those arrangements on its own. But the Court is not requiring Procaps to pay those (likely unnecessary) expenses and will not declare the entire country off limits for depositions in this case.

Therefore, if Patheon wishes to take the depositions of Norton and/or Nitola, then its counsel must travel to Colombia or arrange for a video deposition. As noted, Procaps is being flexible on this point because it could have insisted on the formal

13

letters rogatory procedure. Procaps shall make these two witnesses available for deposition in Colombia by **February 20, 2014**.

    3. Conclusion

The Court **grants in part and denies in part** Patheon's second motion to compel [ECF No. 262] and Procaps shall at its own expense produce the five employees for deposition in Miami by February 20, 2014. Norton and Nitola need not appear in the United States for deposition, however, and Patheon has the choice of taking their depositions in Colombia or arranging for video depositions. Procaps must produce all seven deponents for deposition by February 20, 2014.

    **B. Patheon's Second Motion to Compel [ECF No. 264]**

    1. Background

In the second discovery motion, Patheon seeks to (1) reconvene the deposition of Procaps' damages expert, W. James Lloyd, in its Washington, D.C. office, (2) require Procaps to produce appropriate 30(b)(6) witnesses for deposition in the next week, and (3) require Procaps to produce all versions of a spreadsheet which Lloyd relied upon but did not disclose before his deposition as having reviewed.[4]

Patheon notes that it took Lloyd's deposition on January 8, 2014 (after repeated efforts to schedule the deposition earlier) and that it uncovered key documents on

---

[4]     It appears that Procaps has now produced all versions of this spreadsheet.

14

which he relied but did not disclose when he purported to list all materials relied upon. After the deposition, Patheon says, it learned that the spreadsheet was first created by Nitola on September 27, 2013, almost four months before Procaps finally produced it (after Lloyd's deposition). Patheon asked Procaps to produce Lloyd for another deposition but says that Procaps never responded, thereby forcing it to file the motion.

Regardless of whether Lloyd and/or Procaps intentionally failed to produce the spreadsheet and other documents before Lloyd's deposition or whether the omission was an inadvertent or negligent oversight, the significant point is that Patheon's ability to adequately take Lloyd's deposition was adversely affected.

2. Discussion

The Court cannot discern a viable and logical reason to *not* permit Patheon to reconvene Lloyd's deposition. In fact, in its response [ECF No. 284], Procaps says it previously agreed to make Lloyd available for a continued deposition. Patheon says Procaps never conclusively responded to its request to continue Lloyd's deposition. Moreover, because it was Lloyd and/or Procaps who was responsible for the incomplete production of documents and the compromised deposition, it seems only fair to require the reconvened deposition to be in Washington, D.C., where Patheon's lead trial counsel is located.

Patheon notes that Procaps takes the position that Lloyd is unavailable for a deposition at any point from January 21 through February 24, 2014. This is unreasonable, especially because the discovery cutoff is looming and because Patheon is hardly to blame for the lack of complete document production by Lloyd. Procaps says that it is acting reasonably because it will make Lloyd available between February 24 and February 27. But this is not a reasonable proposal, given that the summary judgment deadline is February 27.

If Procaps does not make Lloyd available for a reconvened expert witness deposition by **February 20, 2014**, then it may not use his expert opinion testimony for any purpose in this case, including for summary judgment purposes (both affirmative and defensive use) or for trial purposes. The continued deposition shall be limited to questions arising from the documents not produced before or at Lloyd's initial deposition, and questions naturally flowing from the answers provided.

As outlined in its motion, Patheon contends that Procaps has been less than cooperative in providing dates for its Rule 30(b)(6) depositions. Procaps need not identify to Patheon in advance the identities of its 30(b)(6) designees, though it surely may do so as a courtesy. What it must do, however, is timely provide dates upon request and not delay Patheon's discovery by not providing timely responses to requests for dates, hindering timely depositions by insisting that only one busy attorney

16

must attend all depositions, or by strategically spacing out the dates for these depositions.

Procaps contends that it has been reasonable and responsive and accuses Patheon of jumping the gun with a premature motion to compel.

Part of the delay in scheduling the 30(b)(6) depositions is Procaps' refusal to allow anyone but its lead trial counsel to defend the depositions. As outlined above, this policy is no longer viable and is now an unworkable, impractical, and one-sided hurdle to discovery. Therefore, Procaps shall make its 30(b)(6) witnesses available for deposition by **February 14, 2014**. Given the magnitude of the claimed damages, Procaps will do what is necessary to produce these corporate designees, including the scheduling of depositions in the evenings, on the weekends, or through double-tracked depositions. If Procaps decides to use its expert witness, Lloyd, as a 30(b)(6) designee, then it is free to do so -- just so long as the deposition occurs before the expiration of the February 14 deadline imposed here.

3. Conclusion

Procaps shall produce Lloyd for a continued deposition in Washington, D.C. no later than February 20, 2014, and shall produce its 30(b)(6) witnesses for deposition by February 14, 2014. No fees will be awarded for these disputes. Although the Court is now finding unacceptable Procaps' "our-lead-attorney-must-personally-defend-all-

17

depositions" policy, I did not prohibit the practice earlier. Patheon was not happy over this practice but it never sought a ruling on the propriety of the practice. Under these circumstances, Procaps' position was substantially justified and a fees award would be unjust.

C. **Patheon's Third Motion to Compel [ECF No. 272]**

1. Background and Discussion

This motion concerns only a delay in providing dates for the deposition of Ted Green, Procaps' Senior Director of Business Development. Basically, Procaps has been slow to respond to Patheon's repeated requests to schedule this deposition. Frustrated by almost three weeks of silence and Procaps' final failure to live up to its agreement to provide a deposition date by January 27, Patheon filed its motion to compel.

According to Procaps' own timetable [ECF No. 289, pp. 2-3] summarizing the discussions about scheduling Green's deposition, Patheon requested dates on January 10, 2014 but Procaps never provided a specific date by January 28, 2014, when Patheon filed its motion.

In its response [ECF No. 289], Procaps advised that it now is offering to produce Green for deposition in Miami on February 25, 2014. But this is too little, too late. Permitting Patheon to take the deposition of a high-ranking official two days before the

summary judgment motion deadline expires is not reasonable and is not flexible enough.

Regardless of whether Procaps' delay was an intentional bad faith tactic designed to obstruct discovery or a careless failure to follow up on several scheduling requests, Procaps' failure to provide dates is unjustified and the Court therefore grants the motion to compel Green's deposition.

2. Conclusion

Procaps must produce Green for a deposition in Miami by **February 21, 2014**. As noted earlier, the unavailability of Procaps' lead counsel will not be an adequate reason to not comply with the scheduling component of this Order.

The Court will award fees to Patheon for this one discovery dispute.

3. Attorney's Fees

The Court grants Patheon's fees request for this motion and awards **attorney's fees of $500** in Patheon's favor. The Court does not want to generate additional litigation over the fees request and wants to avoid the significant effort the parties and the Court put forth in connection with time-consuming fees litigation occurring earlier in this case. Therefore, the Court directs Procaps' counsel to discuss the issue of payment responsibility with its client and determine whether Procaps, its law firm, and/or individual attorneys (or some combination thereof) shall pay the fees.

If either party wishes to object to either the ruling on entitlement to fees or the amount of fees, then it may file a motion within 5 days of entry of this Order. If one or more motions were to be filed, then the Court will schedule the objections raised in the motions for an evidentiary hearing and the two law firms will be required to produce their billing records for the time incurred in connection with the motion to compel. The time incurred in connection with the hearing will, of course, also be compensable in the fees award.

If no motions raising objections to the fees award are filed, then the fees must be paid within 7 days of entry of this Order. In addition, an affidavit confirming the payment and explaining who is paying the award must be submitted to the Court's e-file inbox within 3 days of payment. If any individual attorney (or attorneys) will be making some or all of the payment, then the Court underscores the point flagged in the last fees award: this is a fee-shifting award, not a disciplinary sanction. [*See* ECF No. 223, p. 39, n. 10].

**DONE and ORDERED**, in Chambers, in Miami, Florida, January 30, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All counsel of record