UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

     Plaintiff,

v.

PATHEON INC.,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION

## FOR A FORENSIC ANALYSIS OF PLAINTIFF'S ELECTRONIC MEDIA

In the 1967 film *Cool Hand Luke*, the Captain, a prison warden played by actor Strother Martin, beats Luke, a prisoner played by Paul Newman, and says, "[w]hat we've got here is [a] failure to communicate."

Although this movie quote was first uttered 45 years before Plaintiff Procaps S.A. ("Procaps") filed its lawsuit against Defendant Patheon Inc. ("Patheon"), it may well explain, at least in part, a discovery collection effort which Patheon describes as "shockingly deficient" and a discovery shortfall Patheon brands as a "wholesale failure to preserve potentially relevant information or conduct a proper document collection, search or production process." [ECF Nos. 301, p. 4; 318, p. 2].

By way of introductory summary, Procaps is seeking more than $350 million in damages from Patheon in this federal antitrust lawsuit it filed in December 2012, but it

did not implement a formal litigation hold as of February 27, 2014, when this *Court* ordered one to be implemented in response to Patheon's motion. [ECF No. 324]. Procaps' United States lawyers never traveled to Colombia (where Procaps is based) to meet with Procaps' information technology ("IT") team (or other executives) to discuss how relevant or responsive electronically stored information ("ESI") would be located, and it did not retain an ESI retrieval consultant to help Procaps implement a litigation hold or to search for relevant ESI and documents. It seems as though some critical Procaps executives and employees conducted their own searches for ESI and documents without ever seeing Patheon's document request or without receiving a list of search terms from its counsel.

Procaps' counsel now concedes that, in retrospect, the document and ESI search was inadequate, thus confirming the applicability of the "[b]ut I still haven't found/ what I'm looking for" lyric from the hit U2 song.[1] Despite this concession, Procaps' counsel (1) contends that it had several conversations about discovery with its client, (2) notes that an attachment to the November 2012 engagement letter explained the need to preserve materials, (3) argues that there has been no showing that any ESI or documents have been deleted or destroyed as a result of the no-litigation-hold status, and (4) suggests that employees may not have understood deposition questions when they

---

[1]      *I Still Haven't Found What I'm Looking For, on* THE JOSHUA TREE (Island 1987).

testified that they generated their own search terms without specific instructions from counsel.

Patheon's critical description of Procaps' discovery response arises in connection with its Motion for a Forensic Analysis of Procaps' Electronic Media. [ECF Nos. 301; 302]. The Court has considered Patheon's motion, Procaps' response in opposition, Patheon's reply, and the relevant portions of the record, and held a multi-hour hearing on the motion. [ECF Nos. 313; 318; 325].

Although Procaps agreed to a forensic analysis by an outside vendor specializing in ESI retrieval, the parties did not agree on the scope of the analysis or on other significant components, such as whether certain conclusions reached by the outside ESI vendor would be shared with Patheon.

As explained below, the Court **grants** the motion and awards Patheon reasonable attorney's fees in the amount of $24,115. [2]

## I.     BACKGROUND & DISCUSSION

Patheon and Procaps entered into a Collaboration Agreement to work together to produce and market a brand of softgels. A few months later, Patheon acquired Procaps' main competitor, Banner Pharmcaps Europe B.V. ("Banner"). Procaps filed this lawsuit

---

[2]     Patheon also asked for leave to bring a sanctions and fees motion at a later date, but the Court need not provide Patheon with advance authority to file motions. If Patheon were to file a motion for sanctions, fees and other relief as a result of Procaps' deficient search for ESI and documents, then the Court will of course consider it, just like any other motion.

alleging that when Patheon acquired Banner, it made the Collaboration Agreement illegal under state and federal antitrust and competition laws. Since the filing of the lawsuit, Procaps and Patheon have aggressively litigated this case, generating myriad discovery disputes, which, in turn, led to numerous motions, hearings, and orders.

To support its instant motion, Patheon submitted deposition transcript excerpts from Procaps executives and employees. Those excerpts demonstrate that Procaps' counsel permitted its client to self-collect ESI and documents, allowed some of its client's executives to use a single search term to collect emails, and failed to realize that its client never actually implemented the litigation hold mentioned in the attachment to the November 2012 engagement letter.

For example, Alvaro Franco, Procaps' Director of Business Development and the primary liaison with Patheon in the Collaboration Agreement, testified that he was never given instructions on how to search for ESI and documents and decided for himself whether something was relevant. Perhaps the most important Procaps fact witness in this case, Franco searched for emails containing only the term "Patheon," a search protocol he generated himself without any assistance from counsel. He did not search for emails using other search terms (such as "Banner," "Collaboration Agreement," "softgels," "soft gels," etc.) and did nothing else to locate and collect responsive ESI and other documents.

Similarly, many of Procaps' executives, including its CEO, testified that they never saw Pathoen's document requests. During a 30(b)(6) deposition, Procaps' designee said he did not know if Procaps had backup tapes or an automated deletion process and, if so, whether that process was suspended when litigation began. Another Procaps executive testified that his ESI and document collection focused only on emails to or from Pathoen -- and did not include *internal* emails discussing Pathoen or emails where he was copied but not directly addressed.

Although Procaps' counsel notes that a document retention policy was mentioned in an attachment to its engagement letter issued before the lawsuit was filed, several critical Procaps employees testified that they never received any instructions from counsel to retain relevant evidence. Procaps' counsel did not advise the Court about whether the attachment was circulated to employees or whether counsel ever actually discussed the attachment among executives or employees.

Pathoen says it learned of these Procaps discovery practices only recently, during depositions of Procaps' executives and employees. In addition to condemning Procaps' ESI and document collection procedures, Pathoen contends that the inadequate procedure has already caused several Procaps employees to not produce numerous emails between them.

Procaps' counsel stresses that there is no evidence that any ESI or other documents have been deleted or purged with no chance of being recovered.  Even if

5

true, this argument does not address the indisputable conclusion that the ESI and document searches were inadequate -- a scenario which strongly suggests that some (and perhaps even a significant amount of) responsive discovery from Procaps has not yet been located and mandates a comprehensive forensic search of Procaps' ESI and other sources of relevant documents.

## II.     THE COURT'S RULING REGARDING THE FORENSIC EXAMINATION

In addition to the Court's Preliminary Order on Patheon's motion [ECF No. 324, (requiring the immediate implementation of a formal litigation hold by Procaps)], it is **ORDERED** and **ADJUDGED** as follows:

1.      By March 4, 2014, Procaps shall engage Kroll Ontrack, Inc. ("Kroll") to conduct the forensic analysis detailed in this Order. Kroll shall be considered a neutral, third-party forensic examiner and shall not be deemed an agent, representative, or expert of either Procaps or Patheon, except that Procaps shall contract directly with Kroll regarding the work to be performed pursuant to this Order. Kroll's work in connection with this Order shall not be deemed the work product of either party. However, Kroll shall execute an acknowledgement of the Court's Stipulated Order for the Protection of Confidential and Highly Confidential Information. [ECF No. 86]. Kroll shall start its work on the forensic analysis detailed in this Order **as soon as practicable**.

2.      The following persons shall be custodians whose paper and electronic files will be searched pursuant to this Order: Alain Cortesi, Rosella Del Vecchio Herrera,

Alvaro Franco, Ted Green, Ruben Minski, Diego Monterroza, Andres Nitola, Osiris Norton, Jorge Ochoa, Carlos Salazar, Camilo Suarez, Luis Guillermo Velasquez, Alberto Ballestas, Yisell Pineda, Daniel Doria, Maurcio Anaya, Javier Otero, and Diana Correa (each a "Custodian" and, collectively "Custodians"). As set forth below, additional custodians may be identified and, once they are so identified, each shall be deemed a "Custodian" and each of their electronic and paper files will be searched pursuant to the terms of this Order.

3.      By March 7, 2014, Procaps' counsel shall interview each Custodian and identify and disclose to Patheon any other custodians, potential sources of hard copy documents or ESI that are reasonably likely to contain relevant information, including shared ESI or hard copy documents (e.g., department files).

4.      By March 11, 2014, the parties shall agree to the following: (i) a preliminary list of proposed search terms ("Search Terms") that Kroll will use to search for relevant information; (ii) a reasonable procedure by which the Search Terms may be reasonably refined, if necessary; and (iii) a suitable format for production, including the specific metadata fields to be provided. If the parties are unable to agree to the Search Terms, a procedure for reasonably refining the Search Terms, or a production format, then the parties shall **immediately** raise this issue with the Court.

5.      By March 12, 2014, Kroll shall interview Procaps' head of IT to understand the architecture of Procaps' computer systems and Procaps' retention/backup

procedures, and, within three business days of conducting this interview, shall provide a report to **both** Patheon and Procaps about Kroll's findings in this regard. Procaps shall make its head of IT available for Kroll to conduct its interview.

6.      By March 14, 2014, Procaps shall make available to Kroll all of the sources of Procaps' ESI and documents that are relevant to this case ("Sources"), wherever located, including, but not limited to:

a)  all computers used by each Custodian identified in Paragraph 2;

b)  all mailstores for each Custodian that are maintained on any Procaps e-mail server;

c)  all electronic storage media (e.g., thumb drives, CDs, DVDs, smart phones, etc.) used by each Custodian for any business purpose. But for each Custodian's smart phone or PDA device (e.g., I-Pad), the Custodian must have used the smart phone or PDA device for business purposes and Kroll must determine (after interviewing Procaps' head of IT) that any ESI or documents available on the smart phone or PDA device are not also fully retrievable from a common server;

d)  any file servers/databases that are reasonably likely to contain relevant information; and

e)  all hard copy documents in the possession, custody, or control of Procaps (including but not limited to those hard copy documents in the possession, custody, or control of each Custodian) that are reasonably likely to contain relevant information.

8

Notwithstanding the foregoing, "Sources," shall **not** include the following databases: Salesforce.com; SAP; or Visual Enterprise.

Within three business days after completing its collection of these Sources, Kroll shall provide a report to both Patheon and Procaps that identifies all of the Sources that Kroll collected.

7.    By March 24, 2014, Kroll shall make a forensic image of each electronic source identified in Paragraph 6 of this Order. Kroll also shall scan all hard copy documents identified in Paragraph 6 of this Order.

8.    For each source of ESI identified in Paragraph 6 of this Order, Kroll shall attempt to recover any user-created files that were deleted after October 22, 2012[3] ("Deleted Files"). By April 3, 2014, Kroll shall provide a written report to **both** Patheon and Procaps that identifies the file names of any of the Deleted Files that it could not recover in full, the date the Deleted Files were deleted, and from what electronic media the Deleted Files were deleted. By April 9, 2014, the parties shall file a succinct joint notice summarizing Kroll's findings regarding the Deleted Files. As used in this Order, the term "user-created files" means any file created by a human being and does not

---

[3]    The Court's selection of the October 22, 2012 date relates solely to Kroll's forensic examination. It is **not** a ruling or determination of the date when Procaps or its counsel reasonably anticipated litigation for purposes of implementing a litigation hold and preserving evidence, nor is it a ruling on the date when Procaps' work product claim begins.

include any file created by a machine or a file necessary for the normal operation of a computer system.

9.     By April 7, 2014, Kroll shall begin to run the Search Terms on all of the Deleted Files that it was able to recover and all of the Sources that Kroll collected pursuant to Paragraph 6 of this Order. By April 11, 2014, Kroll shall report to the parties how many document hits resulted from each of the Search Terms. Within two business days of receiving Kroll's report regarding the number of document hits that resulted from each of the Search Terms, the parties shall, if necessary, employ the procedure established pursuant to Paragraph 4 to reasonably refine the Search Terms. Kroll shall then re-run any modified Search Terms on the Deleted Files and the Sources.

10.    Promptly after Kroll has completed the search set forth in Paragraph 9 and located the ESI and documents that contain the Search Terms ("Uncovered Documents"), Kroll shall, if possible, provide for the de-duplication of exact copies of the Uncovered Documents. As used in this Order, the phrase "exact copies" refers to documents that have identical MD5 or SHA1 hash values. By April 11, 2014, Kroll shall then provide the Uncovered Documents to Procaps' counsel for further review. Kroll shall not provide the Uncovered Documents to Patheon without Procaps' prior written authorization after Procaps has reviewed the Uncovered Documents.

11.    Procaps shall use the following procedure for reviewing and producing the Uncovered Documents. Procaps may withhold from Patheon any documents that it

considers privileged or work product, in which case Procaps shall create a privilege and redaction log ("Privilege Log") that complies with the requirements of Federal Rule of Civil Procedure 26. If Procaps contends that just a portion of a document is privileged, then it shall redact only that portion and produce the non-privileged portion of the document to Patheon. Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted. All redactions must be logged on the Privilege Log. Procaps may also apply appropriate confidentiality designations to the Uncovered Documents pursuant to the Stipulated Order for the Protection of Confidential and Highly Confidential Information. [ECF No. 86].

12.     **By April 18, 2014**, Procaps shall produce to Patheon: (a) all of the non-privileged Uncovered Documents, if any, including any redacted documents; and (b) the Privilege Log identified in Paragraph 11. If the volume of Uncovered Documents is so large as to require additional time for Procaps to generate the production, prepare the necessary redactions, and generate the Privilege Log, Procaps may file a motion with the Court seeking an appropriate extension of the deadline in this Paragraph. However, the Court strongly prefers that the April 28, 2014 date the parties selected for mediation not be moved because the Uncovered Documents have not been produced or sufficiently reviewed before the mediation. Therefore, any motion to extend this deadline must be based on compelling reasons bordering on a genuine emergency. As

outlined in paragraph 14, Procaps and Kroll need to take steps necessary to make sure that the deadlines are met, including, but not limited to, increasing the number of persons assigned to the project and/or increasing the hours or workload of those participating in the forensic analysis, collection, retrieval, review, and production.

13.     Procaps shall pay all of Kroll's fees, costs, and expenses that Kroll incurs in connection with performing its work under this Order. As set out at the hearing, the prevailing party in this litigation may *seek* to recover its e-discovery costs. The Court will address the issue of whether the prevailing party is entitled to recover its e-discovery costs at that time. The Court is not now ruling on whether e-discovery costs (in general) or the costs of the Kroll forensic analysis (in particular) will in fact be awarded as costs to the prevailing party.

14.     Kroll and Procaps must staff this project sufficiently to meet the deadlines established in the Order. If they need to increase the number of persons assigned to the project or the number of hours worked in order to complete it on time, then they shall make those necessary arrangements. The Court understands that these arrangements may increase the cost of the project, but that consequence is the result of an inadequate collection process and is not something which Patheon should be penalized for here.

15.     If Patheon wants to follow through with its stated intent to seek additional fees or other sanctions as a result of the last-minute discovery of Procaps' deficient

ESI/document collection after reviewing the Uncovered Documents, then it must file a motion and memorandum by April 27, 2014.

## III.   ATTORNEY'S FEES

Patheon has filed an affidavit and supporting documentation [ECF No. 339] to support its request for fees as the party prevailing in this discovery dispute. The Court has reviewed the submission and is awarding **$24,115,** which must be paid by **March 10, 2014**. This amount *includes* the 2.2 hours of Attorney Cahill's time (which was not tallied in Patheon's submission) and a reduction for the database issue on which Patheon did not prevail. Because Patheon's submission is based on the significantly discounted hourly rates which the Court established in an earlier Order [ECF No. 223, p. 31], there does not need to be further reductions to reflect local rates, as opposed to the significantly higher rates used by Patheon's out-of-town firm.[4]

Procaps itself shall be responsible for paying 50% of the Rule 37 fees-shifting award and its counsel (i.e., the Carlton Fields law firm) shall be responsible for paying the remaining 50%.  The Court does not want to generate a mini-trial to further break down fees responsibility and therefore will not require the Carlton Fields firm to advise the Court of which attorneys were primarily responsible for the ESI and document searches, the failure to realize that Procaps never implemented a litigation hold, and the

---

[4]     By way of example, Patheon attorney Joshua Siegel incurred the most amount of time in connection with this motion (i.e., 52.8 hours). His standard hourly rate, according to the time records submitted, is $710, but this fees award uses a $260 hourly rate.

inadequate, insufficiently supervised methodology Procaps used to locate and collect ESI and other documents. However, Carlton Fields is urged (though not required) to explore which attorneys caused, or helped cause, this discovery failure and to determine whether those attorneys (rather than the firm itself) should pay all or some of the $12,057.50 fees award.

If either party wishes to object to either the ruling on entitlement to fees or the amount of fees, then it may file a motion within five days of entry of this Order. If one or more motions were to be filed, then the Court will schedule the objections raised in the motions for an evidentiary hearing and the two law firms will be required to produce their billing records for the time incurred in connection with the motion to compel. The time incurred in connection with the hearing will, of course, also be compensable in the fees award.

If no motions raising objections to the fees award are filed, then the fees must be paid by the March 10, 2014 deadline. In addition, an affidavit confirming the payments and explaining who is paying the Carlton Fields portion of the award (i.e., the firm itself or the lawyers responsible for the discovery mess, and, if so, which attorneys) must be submitted to the Court's e-file inbox within three days of payment. If any individual attorney (or attorneys) will be making some or all of the payment, then the Court underscores the point flagged in the last fees award: this is a fee-shifting award, not a disciplinary sanction. [*See* ECF No. 223, p. 39, n. 10].

**DONE AND ORDERED** in Chambers, in Miami, Florida, February 28, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record