UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

    Plaintiff,

v.

PATHEON INC.,

    Defendant.

_____/

## ORDER ON PATHEON'S MOTION FOR ADEQUATE SEARCH TERMS

In 1963-1969 and again in 1975, NBC, and then CBS, broadcast a television game show called "You Don't Say," which used the tagline, "[i]t's not what you say that counts, it's what you DON'T say."[1] More than a decade later, Pink Floyd stressed a similar message in "Sorrow," a song containing the lyric, "[a]nd silence that speaks so much louder than words."[2]

In the discovery dispute underlying Defendant Patheon Inc.'s ("Patheon") motion to compel Plaintiff Procaps S.A. ("Procaps") to propose adequate search terms, Procaps' counsel followed this practice of silence by failing to respond to specific questions about Procaps' efforts to obtain search terms for a forensic analysis of its electronic media. This, in turn, caused Patheon to file the instant motion based on

---

[1] http://www.imdb.com/title/tt0057802 (last visited March 14, 2014).

[2] *Sorrow, on* A MOMENTARY LAPSE OF REASON (Columbia 1987).

Procaps' counsel's alleged failure to obtain search term input from its client. [ECF Nos. 354; 355]. Although Procaps' counsel *later* advised that it *had* obtained search term input from its client, that information was not disclosed until after Patheon filed its motion. Likewise, Procaps' Court-ordered affidavit [ECF No. 391-1] outlines in considerable detail the very information which Patheon was seeking, but it was submitted after Patheon's motion was filed and after the Court required an affirmative response with specific information about the input for search terms. Accordingly, the Court **grants** Patheon's motion and also awards Patheon $3,750 in fees, as the party prevailing in a discovery dispute.

I.   **BACKGROUND**

   **A.  The Meet and Confers Leading to Patheon's Motion**

The Court granted Patheon's motion for a forensic analysis of Procaps' electronic media because, among other reasons, Procaps never implemented a formal litigation hold, and because it permitted its personnel to self-search for electronically stored information ("ESI") without ever seeing Patheon's discovery requests or without receiving a list of search terms from its counsel. [ECF No. 341]. The Court also required Procaps to implement a formal litigation hold and ordered the parties to agree to a preliminary list of proposed search terms. [ECF Nos. 324; 341].

Procaps is headquartered in Colombia and its employees speak Spanish, although some employees also speak and write English. Procaps, however, generated

an initial list of only eight proposed search terms, all in English. [ECF No. 355-1]. In that same February 24, 2014 email (containing the proposed search terms), a Procaps attorney advised Patheon's counsel that "we can confer with our clients as to appropriate Spanish translation" of English-language terms on which the attorneys agreed. [*Id.* at p. 3].

Patheon's counsel responded and noted that Procaps' eight search term proposal was "patently unreasonable" and stressed that "perhaps most troubling is that it doesn't appear these terms were discussed with Procaps' employees in order to determine what words and phrases they use." In that regard, Patheon's counsel emphasized that the absence of Spanish-language terms was problematic and criticized Procaps' proposal to translate the search terms after the parties agreed on English-language search terms. [ECF No. 355-1, p. 2]. This email ended with the following point: "[W]e remind and expect that you will confer with your client's employees to determine what words (in English and Spanish) they used when discussing the facts at issue in this case." [*Id.* at p. 3].

On March 4, 2014, a Patheon attorney sent an email to Procaps' lead trial counsel, stating that "this confirms that, during our call earlier today, Procaps does not agree that it has an obligation to come up with search terms with input from Procaps' custodians about the words and abbreviations they use, **and** that Procaps will not suggest any search terms other than the eight search terms it proposed on February 24."

3

[ECF No. 355-2, pp. 3-4 (emphasis supplied)]. In a one-line email response, Procaps' lead trial attorney said only that "I do not believe your characterization of our position is accurate." [ECF No. 355-2, p. 3]. As is evident from the terse nature of the response, the email did not explain which part of the two-point email was supposedly inaccurate (or if both points were inaccurate). Confronted with this response, Patheon's counsel asked for clarification (i.e., "please explain what part is inaccurate"). [ECF No. 355-2, p. 3]. No clarification was forthcoming.

The next morning, Patheon's attorney sent another email, reminding Procaps' lead counsel that he had not responded to the email. [*Id.*]. He also flagged the specific questions again: "[d]oes Procaps agree that it has an obligation to come up with search terms with input from Procaps' custodians about the words and abbreviations they use?"; and "[w]ill Procaps suggest any search terms other than the eight search terms it proposed on February 24?" [*Id.*]. Four minutes later, Patheon's counsel sent a follow-up email advising that Patheon would file a motion with the Court if Procaps' counsel did not agree with the two lingering issues.

Less than an hour later, Patheon's counsel sent yet another email to Procaps' lead trial attorney to say that "this confirms that we just had a telephone call and you refused to tell me why you think my email was inaccurate and refused to answer these questions." [ECF No. 355-2, p. 2]. Procaps' lead attorney responded with a one-paragraph email (on March 5, 2014) that said, in pertinent part: (1) "we informed

4

Patheon that **if** the parties were able to reach agreement on the English-language terms, we would confer with Procaps as to the appropriate Spanish **translations** of those terms, if any"; (2) "[w]e reiterate that we will confer with our client as to appropriate Spanish **translations,** if any, of the preliminary search terms to which Patheon and Procaps have agreed to date based on telephone conversations yesterday and again today"; and (3) "to the extent Patheon is now attempting to impose any greater obligation on Procaps than is specified in the Court's Order, we disagree." [*Id.* at p. 2 (emphasis added)].

Patheon filed its motion to compel the next day. It raised several issues concerning the Court's requirements for producing a search term list for the required forensic analysis, including the allegation that "Procaps is improperly relying solely on outside counsel to generate search terms." Patheon argued that this was evidenced "by several factors, such as the absence of Spanish terms" and "obvious terms such as the names of Patheon employees or Procaps customers with whom Procaps communicated." [ECF No. 355, p. 3 n. 3]. On this point, Patheon argued that the law "expressly prohibits Carlton Fields from creating search terms without input from Procaps' ESI custodians." [*Id.* at pp. 3-4].

In its opposition response memorandum, Procaps argued that Patheon had "no basis to make such accusations and they are inaccurate." [ECF No. 370, p. 4]. The accusations referenced in the memorandum are that Procaps' counsel failed to obtain

5

input from its client's ESI custodians on the search terms and stuck to its position that its only obligation was to confer with its client about appropriate Spanish translations of the proposed terms after an agreement was reached.

### B. The Hearing

The Court held a multi-hour hearing on the motion (and other motions and disputes) on March 11, 2014. [ECF Nos. 380; 387]. At the hearing and in response to one of the Court's questions, Procaps' lead counsel agreed that the law requires him and his law firm to receive input from his client's ESI custodians in order to determine appropriate search words. [ECF No. 387, p. 78]. He also advised that Procaps' outside counsel did in fact obtain that input from the client's records custodians. [*Id.*]. He did not pinpoint *when* the input was provided and did not *expressly* disclose whether it was before or after Patheon's motion was filed. But he did say that he (or his fellow attorneys) did obtain input from Procaps' ESI custodians in order to generate the February 24, 2014 eight-term search list. [ECF No. 387, p. 78]. The Court noted at the hearing that Procaps' counsel's position -- that it *had* obtained input from the ESI custodians and that it never advised that it would contact its client *only* for translations of agreed upon terms -- seemed inconsistent with their pre-motion emails.

Procaps' counsel did not (and could not) challenge what he said (or did *not* say) in his emails. But he attempted to explain his communications (or non-communications) by arguing that Patheon has a history of sending emails which he believes incorrectly

summarize telephone conversations. He further noted that he initially did not know whether his legal team members consulted with Procaps about search terms but soon starting receiving Patheon's emails asking him those questions and then he received the email purporting to "confirm" the conversation. [ECF No. 387, pp. 84-85]. Procaps' counsel argued that Patheon was seeking to engage in an "e-mail war," that email is being used "as a tool to gain an advantage" and that the Patheon-sent emails were an "ambush attempt" and that he was not going to "get trapped into this kind of tactic" and was not going to "engage in that war." [*Id*. at pp. 88-89].

Procaps' counsel then explained that he and his law firm colleagues *have* been in constant communication with the ESI custodians and the client's information technology personnel. He further noted that two attorneys had been in Colombia during the previous 10 days to verify the search terms and that they worked weekends to consult with their client on search terms. [ECF No. 387, p. 85].

### C. Post-Hearing Developments

Pursuant to the Court's order [ECF No. 384], Procaps filed a declaration from its lead trial counsel [ECF No. 391-1], outlining in significant detail the steps its attorneys took to obtain input from ESI custodians about proposed search terms. The affidavit explains that Procaps' attorneys spoke to 24 custodians about search terms (and also spoke with two former custodians about the location within Procaps of documents and ESI that are reasonably likely to contain relevant information). According to the

affidavit, Procaps' attorneys spoke with most of the ESI custodians on March 6 or 7, 2014 about proposed search terms and also spoke with other custodians on March 13 and 14, 2014.[3]

In other words, none of the input from Procaps' ESI custodians was obtained before the day Patheon filed its motion to compel (i.e., on March 6, 2013). From another perspective, as of March 5, 2014, when Procaps' lead counsel sent his email advising that *translations* would be obtained but remaining silent on the issue of obtaining actual search terms, Procaps' counsel had **not** yet obtained the search term input it later detailed in the post-hearing affidavit.

The affidavit does not explain why lead counsel advised the Court in the March 11, 2014 telephone hearing that Procaps' counsel obtained search word input from its client before it submitted the February 24, 2014 list, yet explained in a later affidavit that counsel first discussed search term suggestions with its client on March 6, 2014. Patheon has filed a motion [ECF No. 398] for leave to file a sur-reply on this issue and Procaps' response is not yet due. [ECF No. 403]. The instant Order does not depend on the resolution of Patheon's motion.

---

[3]  The affidavit notes that two custodians proposed actual search terms and that five expressed concerns that the initial search terms under discussion were too broad and would result in "false and irrelevant hits," and two custodians tried to provide limiting connectors to focus the hits to what Procaps deems to be relevant documents. The affidavit also listed the Spanish language translations for English search terms and provided far more than the initial eight search terms initially proposed by Procaps.

## II.     DISCUSSION

As noted, Procaps *now* agrees with the basic rule that outside counsel "must carefully craft the appropriate keywords, with input from the ESI's custodians as to the words and abbreviations they use." *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,* 256 F.R.D. 134, 135-36 (S.D.N.Y. 2009); *see also Moore v. Publicis Groupe SA*, 287 F.R.D. 182, 193 (S.D.N.Y. 2012), *adopted sub nom., Moore v. Publicis Groupe SA*, No. 11 CIV. 1279 ALC AJP, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) (noting that "counsel for the producing party often is not sufficiently knowledgeable about their own client's custodians and business terminology."). It is unclear whether Procaps agreed with this rule before Patheon filed its motion to compel. Indeed, the email exchanges suggest that Procaps did not accept this principle before the motion was filed. It never in the pre-motion emails acknowledged the rule despite repeated requests, and it affirmatively objected to requirements it did not believe were encompassed by the Order on the forensic analysis -- a somewhat nebulous reference which in context seems to relate to the Patheon-expressed notion that litigation counsel searching for ESI must obtain input from the client's employees.

There are two problems with Procaps' concession that it must obtain employee input on search terms: (1) it was made only *after* Patheon filed its motion to compel; and (2) its pre-motion conduct, in the email exchanges and telephone conversations, communicated a different position -- that its counsel was *not* going to obtain input from

9

the client's ESI custodians, that the attorneys would later receive input only about mere translations. By refusing to say whether Procaps agreed with Patheon's view on the steps which Procaps' counsel needed to take in order to adequately obtain sufficient search terms, Procaps' counsel, in effect, sent the message that he *disagreed*.

Moreover, when he finally sent a substantive email response on March 5, 2014, Procaps' lead counsel said more with his silence than with his actual response. Patheon asked him to confirm his position on certain points. By affirmatively mentioning agreement only on the translation issue and by noting an objection to certain unspecified points, Procaps' lead trial counsel responded in a way which would cause Patheon to reasonably conclude that Procaps' counsel had not obtained (and would not obtain) input from its client on search terms. Phrased differently, the silence (on the input-from-client-on-search-terms issue) was more significant than the few comments made about obtaining only translations.

Given Procaps' post-hearing, unequivocal representation that its counsel did obtain substantive input from the ESI custodians, it seems as though most of Patheon's motion -- requiring Procaps' counsel to obtain that search term input -- is now moot. Nevertheless, to the extent that there is any doubt about whether this Court is imposing the requirement and to generate a ruling on which a fees award can be based, the Court **grants** Patheon's motion and requires Procaps to have its counsel obtain search word input from all the ESI custodians. The Court may enter further orders on the search

term methodology and/or the specifics of the search term list after receiving additional information from Procaps about the search term protocol.

### III. ATTORNEY'S FEES

#### a. Patheon's Entitlement to an Award of Fees

As the party prevailing on this discovery motion, Patheon is entitled to attorney's fees. Indeed, the law **requires** a fees award unless an exception applies. The Court finds that none of the exceptions in Rule 37(a)(5)(A) apply.

Procaps lead counsel's refusal to answer simple and direct questions, his silence on the specific issue when providing information on another related issue, and his vague objection to Patheon's purported efforts to demand additional obligations all generated the (apparently incorrect) impression that Procaps' counsel had not, and would not, obtain substantive input from his client on suggested search terms. Procaps' communications were unhelpful and cryptic. They caused Patheon to file a motion to compel.

The "Sounds of Silence" may be a catchy title for a Simon and Garfunkel song and album,[4] but it is a problematic, risky, and usually unworkable approach when engaging in a conference designed to eliminate the need for a discovery motion. Had Procaps' counsel simply said, "we will ask our client's employees about their search term suggestions in the next day or two" or a similarly simple and direct message, then

---

[4]   SOUNDS OF SILENCE (Columbia 1966).

11

Patheon would not have reached the conclusion (logical as it was under the circumstances) that Procaps' counsel had not taken those steps and would not take those steps.[5]

The mere fact that Procaps' counsel *now* says that they ultimately arranged for their client's ESI custodians to provide search word input does not immunize them from a fees award. As the Court has previously explained in this case, Rule 37(a)(5)(A) mandates a fees award, in the absence of an available exception, when the "disclosure or requested discovery is provided **after** the motion was filed." Rule 37(a)(5)(A) (emphasis added); *see also* [ECF No. 223, pp. 9-10].

### B. The Amount of the Fees Award

Patheon says it is seeking only $5,000 in fees and advises that this amount is significantly less than it has actually incurred -- but that it is willing to accept this lower amount in order to eliminate additional litigation over the amount of fees. [ECF No. 355, p. 2, n. 2]. The Court has reviewed Patheon's request and is familiar with the amount of time spent on the issue at the hearing. Using the discounted hourly rates previously established [ECF No. 223], the Court finds that a **$3,750** fees award is appropriate.

---

[5] This assumes that Procaps understood the legal requirement to obtain employee input on ESI search terms and intended to obtain employee input when it failed to answer questions about its position in the pre-motion email exchanges. This may not be a correct assumption, however. Procaps has never advised the Court that it agreed with the rule before Patheon filed its motion to compel and its representations on when it actually first obtained employee input are inconsistent.

This fees award must be paid by **March 23, 2014**.

Because his non-responsive and/or vague email responses triggered this discovery dispute, Procaps' lead attorney shall personally be responsible for paying **$1,000** of the fees award, and his law firm (the Carlton Fields law firm) shall be responsible for paying the remaining **$2,750**. The Court does not want to generate a mini-trial to further break down fees responsibility and therefore will not require the Carlton Fields firm to advise whether other attorneys are responsible in part for the circumstances generating Patheon's need to file a motion to compel. Nevertheless, the Court notes that other Carlton Fields attorneys were copied on the emails and sometimes generated their own emails on the forensic search term issues, which suggests that they too might bear some financial responsibility for the fees award. For example, one Carlton Fields attorney described on the firm's website as having "substantial experience managing complex e-discovery issues and large-scale identification, collection, review, and production" of ESI was directly involved in the pre-motion exchange of emails, both as an originator and as an attorney copied on emails. Carlton Fields is urged (though not required) to explore which other attorneys (besides lead trial counsel) caused, or helped cause, this discovery motion and to determine whether those other attorneys (rather than the firm itself) should pay all or some of the $2,750 fees award now allocated for law firm responsibility (or some of the $1,000 awarded against lead trial counsel).

If either party wishes to object to either the ruling on entitlement to fees or the amount of fees, then it may file a motion within five days of entry of this Order. If one or more motions were to be filed, then the Court will schedule the objections raised in the motions for an evidentiary hearing and the two law firms will be required to produce their billing records for the time incurred in connection with the motion to compel. The time incurred in connection with the hearing will, of course, also be compensable in the fees award.

If no motions raising objections to the fees award are filed, then the fees must be paid by the March 23, 2014 deadline. In addition, an affidavit confirming the payments and explaining who is paying the Carlton Fields portion of the award (i.e., the firm itself or other lawyers responsible for the motion to compel, and, if so, which attorneys) must be submitted to the Court's e-file inbox within three days of payment. Because at least one attorney -- lead trial counsel -- will be paying some of the fees award (and because others may also be paying a portion), the Court underscores the point flagged in the prior fees awards: this is a fee-shifting award, not a sanction. [*See* ECF No. 223, p. 39 n. 10].

**DONE AND ORDERED** in Chambers, in Miami, Florida, March 18, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record