UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

    Plaintiff,

v.

PATHEON INC.,

    Defendant.

_____/

## SECOND ORDER ON MOTION TO COMPEL DOCUMENTS
## REGARDING PROTECTION OF CONFIDENTIAL INFORMATION

This is the Court's second order on Plaintiff Procaps S.A. ("Procaps") motion to compel defendant Patheon Inc. ("Patheon") to produce documents that show how Patheon protected Procaps' confidential information from being used by Banner Pharmcaps Europe B.V. ("Banner"), a Procaps' competitor who Patheon acquired. [ECF Nos. 337; 440]. As outlined below, the Court **denies** Procaps' motion and declines to award Patheon fees under Federal Rule of Civil Procedure 37.

I.    **BACKGROUND**

    A.  **General Relevant Background**

After learning of Patheon's acquisition of Banner, Procaps became concerned that the confidential information it gave to Patheon under the Collaboration Agreement would be used by Banner. Procaps asserts that Patheon has a contractual obligation to

make sure that its confidential information does not get into Banner's hands. To that end, Procaps' counsel sent a letter to Patheon on January 11, 2013, asking about the protection of Procaps' confidential information. [ECF No. 337-2, p. 1]. In response, Michael Lytton ("Lytton"),[1] advised Procaps' counsel in a letter that a "firewall" was implemented to protect Procaps' confidential information. [ECF No. 376-1, p. 1]. Lytton, however, did not disclose any further details about the firewall.

As the litigation progressed, Procaps requested more information regarding this firewall. In late March 2013, its counsel sent another letter asking for more information. That same month, Procaps propounded a request for documents regarding the firewall and its implementation. [ECF Nos. 337-3; 337-4, p. 9]. Patheon produced some documents to show how it handled Procaps' confidential information. [ECF Nos. 337-5, pp. 18-21; 360-3–360-8]. Patheon, however, also stated that it was not producing some documents because they were protected by the attorney-client privilege or the work-product doctrine. [ECF No. 337-5, pp. 18-21].

Procaps next served an interrogatory asking Patheon to identify the specific steps it took to protect Procaps' confidential information. [ECF No. 337-8, p. 1]. Patheon responded with a detailed answer. [*Id.* at pp. 1-4]. Finally, Procaps probed Lytton at his February 20, 2014 deposition about the firewall. [ECF No. 337-6]. Lytton testified that Patheon created the firewall "to live up" to its obligations under the Collaboration

---

[1]   Procaps' counsel's letter described Lytton as Patheon's General Counsel and Executive Vice President, Corporate Development and Strategy.

2

Agreement and that Jason Conner ("Conner"), a Patheon in-house attorney, was involved in establishing and implementing the procedures to protect Procaps' confidential information. [*Id.* at pp. 4-6].

### B. Procaps' Motion

After Lytton's deposition, Procaps moved to compel Patheon to produce the documents relating to the firewall. [ECF No. 337]. Procaps argued that, because the documents were created for a business purpose (i.e., complying with contractual obligations under the Collaboration Agreement) **and** a legal purpose (this litigation), they are not protected. [*Id.* at p. 4]. Procaps also asserted that Patheon waived any protection because it is affirmatively relying on these documents to argue that it protected Procaps' confidential information. [*Id.* at p. 5].

In response, Patheon stated that it produced all non-protected documents regarding the steps it took to protect Procaps' confidential information and that the remaining documents are protected from disclosure because they were primarily created for litigation purposes, not business purposes. [ECF No. 360, pp. 2-3]. Patheon argued that it has not waived any protection because it is not relying on the documents. [*Id.* at p. 3]. Patheon then contended that these documents are not relevant to Procaps' lawsuit, and, even if they are, it has given Procaps the information it seeks by producing the non-protected documents and by answering Procaps' interrogatory. [*Id.* at pp. 4-5].

Finally, Patheon advanced the argument that Procaps' motion was untimely under Local Rule 26.1(h).

After hearing oral argument, the Court required Patheon to file an affidavit regarding whether there are "any written policies, procedures, guidelines, or instructions" between Patheon and Banner regarding the protection of Procaps' confidential information. [ECF No. 384, p. 5]. Patheon was also required to submit under seal for *in camera* review a fair sampling of Conner's emails regarding the steps taken to protect Procaps' confidential information. [*Id.* at pp. 5-6].

Patheon filed Conner's affidavit. [ECF No. 389-1]. Conner attested that there were "no written policies, procedures, guidelines, or instructions between Patheon and Banner regarding the protection of Procaps' information." [*Id.* at p. 2]. Instead, Patheon created a process to segregate Procaps' confidential information from Patheon's other work. [*Id.*]. As part of that process, Conner met and emailed with Patheon employees and gave legal advice on how to protect Procaps' confidential information. [*Id.* at pp. 2-3]. Patheon also filed the requested sampling of Conner's emails for the Court to review *in camera*. The sampling totaled 8 pages.

After reviewing these documents, the Court determined the sample size was too small to determine whether all of these types of documents should be protected from disclosure. [ECF No. 440]. Therefore, the Court deferred ruling on Procaps' motion and required Patheon to submit *all* of the purportedly protected documents. [*Id.* at pp. 5-6].

4

Curiously[2] enough, Patheon responded that it could not identify any additional documents, other than the ones submitted, i.e., the 8 pages. [ECF No. 458].

## II. DISCUSSION

### A. Procaps' Motion Was Timely

The Court rejects Patheon's argument that Procaps' motion was not timely filed under Local Rule 26.1(h). To be sure, as Patheon points out, Procaps did not file its motion within 30 days of when Patheon objected to producing these documents. Inherent in that argument is that Procaps would have had a good-faith basis to argue that these documents should have been produced because they were dual-purpose documents at the time Patheon objected. The pragmatic reality, however, is that Procaps could not have known to raise such an argument until after it deposed Lytton. Indeed, Procaps filed this motion 8 days after Lytton's deposition. Alternatively, the Court also exercises its discretion under Local Rule 26.1(h) and will consider Procaps' motion. *Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-CV-80787-RYSKAMP, 2010 WL 411088, at *2 (S.D. Fla. Jan, 29, 2010)

---

[2] The Court uses the term curiously because Patheon had multiple opportunities to state how many such documents there were, but did not do so until the Court ordered the production of all of them. Stated another way, at no time in its response to Procaps' motion, at the hearing, or in its submission of the representative sample documents did Patheon say that the universe of total documents that the parties were arguing over was **8** pages. The Court draws no inference either way about this development.

### B. The Documents Are Protected From Disclosure

As the Court previously noted [ECF No. 440, p. 5], dual purpose documents are protected from disclosure "if, 'taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.'" *Developers Sur. & Indem. Co. v. Harding Vill., Ltd.*, No. 06-21267-Civ-Brown, 2007 WL 2021939, at *2 (S.D. Fla. July 11, 2007) (quoting *In re Grand Jury Subpoena,* 357 F.3d 900, 908 (9th Cir. 2004)). Thus, "'dual purpose' documents created because of the prospect of litigation can be protected even though a non-litigation purpose can also be ascertained." Wright, Miller & Kane, 8 Fed. Prac. & Proc. § 2024 (3d ed. 2010). While the test is straightforward, "the analysis is more complicated." *In re Grand Jury Subpoena,* 357 F.3d at 908.

At issue here are the following kinds of documents: emails from Conner to Patheon employees regarding the creation and implementation of the firewall; emails between Conner and Patheon's outside **litigation** counsel regarding the firewall; and a memorandum prepared by Patheon's outside litigation counsel for Conner about the firewall. All of these documents are dated **after** Procaps filed its lawsuit alleging common law unfair competition against Patheon based, in part, on the use of Procaps' confidential information. [ECF No. 1]. Thus, coupling these facts with Conner's affidavit, it would seem that the documents were created with Procaps' claims in this

6

litigation in mind, and, therefore, meet the requirements for either the attorney-client or work-product protection from production. But these are not all of the facts.

As noted, Lytton testified that the firewall was created so that Patheon could "live up" to its obligations under the Collaboration Agreement. The clear implication of Lytton's testimony is that the firewall was created, in large part, for a non-litigation business purpose. The problem the Court had the first time around was that the submitted documents do not reflect this. For instance, the Court knows that Patheon was negotiating with Banner **before** Procaps filed its suit [ECF No. 13], yet all of the documents originally submitted were dated **after** Procaps filed suit. If the firewall was **mainly** created for a business/non-litigation purpose, then it would make some sense that there likely would have been such documents pre-suit, i.e., when Patheon and Banner were negotiating and doing their respective due diligence. Deciphering the circumstances surrounding the creation of these documents in light of Lytton's testimony was one of the reasons why the Court ordered Patheon to produce all of the documents.

The Court now knows that there are no other documents (other than the ones originally submitted). And, as explained, there is nothing in these documents that hints about a business purpose to them. For example, there is no email that states in substance or form "we need to create a firewall to comply with our contractual obligations." To the contrary, the documents were all created after this litigation was

7

underway and involved at some level Patheon's outside litigation counsel. As a result, the Court finds that while these documents may have been motivated in small part by the business purpose of creating a firewall, "their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated . . ." *Developers Sur. & Indem. Co.*, 2007 WL 2021939, at *2. As such, the Court finds that they are protected from disclosure under the attorney-client privilege or work-product doctrine. *In re Trasylol Prods. Liab. Litig.*, No. 08-1928-MDL, 2009 WL 2575659 (S.D. Fla. Aug. 12, 2009).

### C. Procaps' Other Arguments

The Court rejects Procaps' other arguments that Patheon waived any protection for these documents because Patheon has relied on these documents and that Procaps has no alternative means to obtain this information.

First, the Court does not find that Patheon is relying on these documents as a defense to Procaps' claims. To paraphrase former NBA star Allen Iverson, "we're sitting here talking about" 8 pages, "not a" mountain of documents.[3] And from the Court's review, there is no "smoking gun" in these 8 pages. Moreover, based on Patheon's

---

[3] Mr. Iverson's often-quoted remark was: "I mean listen, we're sitting here talking about practice, not a game, not a game, not a game, but we're talking about practice." http://sportsillustrated.cnn.com/basketball/news/2002/05/09/iverson_transcript/ (last visited April 22, 2014). Mr. Iverson would go onto say "practice" more than 20 times in a two-minute period.

8

representations, all other relevant documents have been produced to Procaps or they simply do not exist.

Second, Procaps has had ample time and opportunity through other discovery means to seek information about the firewall. Indeed, because it appears that most of the firewall instructions were verbal, Procaps' interrogatories and depositions were far more useful in gathering information about the firewall than its document request. Thus, the Court does not find persuasive Procaps' argument that it did not have alternate means to obtain this information.

### III.   CONCLUSION

For the foregoing reasons, the Court **denies** Procaps' motion. The Court declines to award Patheon fees under Rule 37 because it finds that Procaps' discovery position was substantially justified in light of Lytton's testimony. Fed. R. Civ. P. 37(a)(5)(A)(ii).

**DONE AND ORDERED** in Chambers, in Miami, Florida, April 23, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All Counsel of Record