**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-24356-CIV-GOODMAN**

**[CONSENT CASE]**

PROCAPS S.A.,

      Plaintiff,

v.

PATHEON INC.,

      Defendant.

_____/

**OMNIBUS ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**
**AND BOTH PARTIES' MOTIONS TO COMPEL DISCOVERY**

In his iconic song "Call Me the Breeze,"[1] covered by Lynyrd Skynyrd, Johnny Cash and John Mayer, among many others, recently-deceased songwriter and musician JJ Cale[2] penned some lyrics which apply to Plaintiff's Motion for Reconsideration:

"Ain't no change in the weather / Ain't no changes in me."

The musical message of keeping things the same applies to Plaintiff Procaps S.A.'s ("Procaps") Motion for Reconsideration of the Court's Summary Judgment Order. The Omnibus Order issued here concerns both the reconsideration motion and

_____

[1]    From the *Naturally* album (1972 Mercury Records).

[2]    Born in 1938, JJ Cale died on July 26, 2013. http://www.cnn.com/2013/07/27/showbiz/jj-cale-obit/ (last visited September 30, 2014).

pending discovery motions -- Procaps' and Defendant Patheon Inc.'s ("Patheon") three Motions to Compel Discovery (two by Procaps and one by Patheon). [ECF Nos. 569; 576; 577; 584]. The parties have filed their respective responses and replies and the motions are now ripe. [ECF Nos. 580; 593; 600].

Procaps asks the Court to reconsider its summary judgment order on its Florida Deceptive Unfair Trade Practices Act ("FDUPTA" or "FDUTPA") claim and also requests the Court to correct certain purportedly inaccurate factual statements. As will be explained below, the Court denies this motion because Procaps has not persuasively pinpointed any legal errors in the FDUPTA claim ruling and because the earlier order did not contain the factual errors Procaps highlights in its motion.

Both Patheon and Procaps have filed motions to compel discovery. The Court denies these motions because (1) discovery, for the most part, closed on March 10, 2014, (2) the parties' agreement to hold discovery in abeyance without the Court's approval (or knowledge) is legally insufficient, and (3) the parties delayed bringing the discovery disputes to the Court's attention until long after the presumptive deadline established by local rule expired.

I.      BACKGROUND

In January 2012, Procaps and Patheon entered into a Collaboration Agreement to develop and market a brand of softgel products called "P-Gels." [ECF No. 565, pp. 6-7]. A few months later, Patheon acquired Banner Pharmcaps Europe B.V. ("Banner"), a

Procaps competitor.  [*Id.* at p. 29]. Procaps then filed this action, alleging that the Banner acquisition rendered the Collaboration Agreement illegal under federal and state antitrust and competition laws because Procaps and Patheon will become horizontally-situated competitors in the softgel market. [ECF Nos. 1; 21, p. 3]. In counts I-III of its complaint, Procaps sought equitable and monetary damages under the Sherman Act, 15 U.S.C. § 1. In count IV, Procaps claimed a FDUPTA violation. And, in count V, Procaps sought damages for common law unfair competition.

Both parties moved for summary judgment; Patheon for full summary judgment and Procaps for partial summary judgment. [ECF Nos. 332; 334]. The Court denied in large part the contested aspects of the summary judgment motions.  As to the antitrust claims (counts I-III), the Court granted Procaps' motion that the interstate commerce requirement was met (a point which was not in dispute). The Court, however, denied the remainder of both parties' motions on these claims and found that the rule of reason analysis, rather than the *per se* analysis, applies to the antitrust claims. As to the FDUPTA claim, the Court denied in large part Patheon's summary judgment motion on this claim for the same reasons articulated in its antitrust analysis. But the Court granted Patheon summary judgment on count IV for any recovery theories other than the section 1 antitrust claim. Finally, the Court granted Patheon summary judgment on count V, the common law unfair competition claim.

Procaps has now moved for reconsideration of the Court's decision on count IV and to clarify certain factual matters in the Order. [ECF No. 569]. As to its FDUPTA claim, Procaps argues the following in support of its reconsideration request: (1) the Court misinterpreted FDUPTA in requiring Procaps to show misuse or disclosure of its confidential information; (2) if the Court does not find that it erred in applying FDUPTA, then it should allow Procaps leave to amend its complaint; and (3) the Court's summary judgment on the FDUPTA claim was premature because discovery remains ongoing and outstanding. As to the correction of factual errors, Procaps contends the Court made certain factual errors in its orders.  Patheon agrees that discovery is ongoing, but opposes the motion.

A week after filing its reconsideration motion, Procaps filed two discovery motions on August 20, 2014. [ECF Nos. 576; 577]. In its first motion, Procaps seeks to compel documents from its *February 8, 2014* Fifth Request for Production. [ECF No. 576].  Procaps also filed a motion to compel interrogatory answers. [ECF No. 577]. Patheon opposes these motions. [ECF No. 593]. Patheon also filed its own motion to compel production of documents and interrogatory answers. [ECF No. 584]. Procaps opposes that motion. [ECF No. 600].

## II.    DISCUSSION

### A. <u>The Reconsideration Motion</u>

Procaps' reconsideration motion consists of two main arguments: the FDUPTA arguments and the alleged factual errors arguments. The Court will deal with these issues in reverse order.

### 1.    *Applicable Legal Standard*

While the Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration, such a motion can be raised under various rules, depending on the nature of the underlying order. Because the Court's summary judgment order is a non-final interlocutory order, Procaps has chosen to pursue relief under Rule 54(b). That Rule provides, in pertinent part, that an interlocutory order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); *James River Ins. Co. v. Fortress Sys., LLC*, No. 11-60558-Civ-Cohn, 2012 WL 6738534, at *3 (S.D. Fla. Dec. 31, 2012) (noting that an order denying motion for summary judgment was not a final order and thus reviewable under Rule 54(b)).

While Rule 54(b) does not specify a standard for reconsideration, courts in this circuit have recognized three major grounds that justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Burger King Corp. v. Ashland*

*Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (citing *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). A motion for reconsideration should "not be used to present authorities that were available at the time of the first decision, or to reiterate arguments previously made." *Z.K. Marine*, 808 F. Supp. at 1563. Similarly, it "is not an opportunity to rethink what the Court already thought through-rightly or wrongly." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, No. 04-20073-Civ-Ungaro, 2007 WL 4699017, at *1 (S.D. Fla. Oct. 12, 2007) (internal citations and quotations omitted). "Rather, the movant must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *James River Ins. Co.,* 2012 WL 6738534, at *3 (internal citation and quotations omitted).

> 2.   *The Alleged Factual Errors in the Court's Order*

Procaps argues that the Court should correct four factual errors.

> i.   Date of Proposals

Regarding the date of the proposals submitted under the Collaboration Agreement, the Court wrote: "Between January 2012 and October 2012, the parties submitted 43 solicited and unsolicited proposals." [ECF No. 565, p. 9]. Procaps contends that this statement is inaccurate because 41 of the 43 proposals were submitted after March 2012. [ECF No. 569, p. 11].

It is not clear how the Court's statement is incorrect. No one disputes that the parties did in fact submit 43 proposals between January 2012 (the date the parties entered into the Collaboration Agreement) and October 2012. [ECF Nos. 333, ¶ 12; 396, ¶ 12]. To be sure, the Court *could* have detailed the precise dates of *each* proposal, but neither party provided that information in their respective Statements of Material Facts. [*See* ECF Nos. 333; 335; 396]. Indeed, even now, Procaps does not tell the Court whether the 2 unaccounted proposals were before March 2012. Accordingly, the Court does not find this statement inaccurate. Regardless of Procaps' failure to provide greater specificity, the initial statement remains accurate.  The mere fact that a statement could be more detailed does not render it incorrect.

### ii.  When Patheon Began to Consider Banner

In its Order, the Court stated the following: "By August 2012, Patheon, without telling Procaps, began to reconsider whether it had chosen the right 'partner' . . . [and] began considering (again)  . . . Banner." [ECF No. 565, p. 9]. Procaps contends that the Order is incorrect because Patheon began *pursuing* Banner in **June** 2012. There are three problems with Procaps' contention.

First, as Patheon correctly points out, the Court did not say when Patheon began *pursuing* Banner. Rather, the factual statement concerns when Patheon began to *reconsider* Procaps as a partner.  While potentially related circumstances, pursuing Banner and reconsidering Procaps remain distinct factual events.

Second, the portions of the record that Procaps now cites in support of this contention were not cited in any of its summary judgment briefing or are not in the record. [ECF Nos. 399, p. 1; 505, p. 16]. And as the Court previously advised Procaps when it filed more than 2,500 pages of exhibits in support of its summary judgment, the Court was going to review only those portions of the record "actually cited by Procaps." [ECF No. 348, p. 3].

Finally, in its response to Patheon's Statement of Undisputed Facts, Procaps itself conceded that "Patheon had undertaken to acquire Banner since August 2012." [ECF No. 519-1, ¶ 15]. Accordingly, the Court does not find this statement that Procaps challenges here to be inaccurate nor in need of clarification.

### iii. Why Procaps Filed the Lawsuit

In a pre-suit internal memorandum between Procaps executives regarding the Banner acquisition, a Procaps' executive wrote the following regarding Procaps proposed strategy:

> IN THE INSTANCE THAT AN AGREED SOLUTION CANNOT BE REACHED AND THAT WE SHOULD PRESENT A LEGAL CLAIM, WHICH PATHEON WILL WANT TO SETTLE OUT OF COURT SO THAT IT DOES NOT INTERFERE WITH ITS ACQUISITION.

[ECF No. 333-7, p. 41 (all caps emphasis in original)]. The memorandum then discusses possible demands for monetary and other compensation from Patheon.

Based on the record before it, including this memorandum, the Court wrote:

> Procaps rejected all of Patheon's suggestions and offered none. Instead, Procaps focused on getting Patheon to pay it to leave the Collaboration Agreement or to divest Banner.
> . . .
> After the November 2012 discussion failed to produce a resolution, Procaps concluded that if it filed a lawsuit to interfere with the Banner acquisition, then Patheon would be willing to settle and pay Procaps to leave the Collaboration Agreement. As a result, on December 10, before the acquisition closed, Procaps filed its complaint.

[ECF No. 565, p. 10 (internal record citations omitted)]. Procaps argues that these statements by the Court are inaccurate because the memorandum was merely between a few Procaps employees and does not represent Procaps' actual motives. Procaps also argues that its motive in bringing this lawsuit is irrelevant.

Procaps' attempt to describe this memorandum as simply between a few Procaps employees is unpersuasive. These "employees" are more than mere employees. They are Procaps' President & CEO, its Director of Business Development, its Vice President, Soft Gel Unit, and Vice President, Corporate Development. In other words, these are the company's leaders. Consequently, the Court finds that these statements were not inaccurate. And further, Procaps can rest assured that the Court did not base its summary judgment decision on what appears to be a motive of Procaps in filing this lawsuit.

iv.  The Biocryst Proposal

Finally, Procaps contends that the Court was incorrect in noting that Procaps and Patheon each submitted bids to do work for Biocryst. Therefore, Procaps argues, this

point cannot support the proposition that Procaps and Patheon were competitors before the Collaboration Agreement. [ECF No. 569, pp. 13-14].

The Court has reviewed again the pertinent exhibits regarding the Biocryst proposal [ECF No. 333-4, pp. 8-15] and does not find this factual statement inaccurate. In particular, in his deposition testimony, Procaps' Vice President of its Soft Gel Unit indicated that both Procaps and Patheon were planning on submitting bids to Biocryst and that one bid to Biocryst came from Patheon's Cincinnati facility and the other came from Procaps' Colombian facility. [ECF No. 333-4, pp. 13-14]. This testimony demonstrates that the statement is accurate and need not be corrected or clarified.

### 3.     *The FDUPTA Arguments*

Procaps contends that the Court erred in granting Patheon summary judgment on its FDUPTA claim for various reasons. [ECF No. 569, p. 2]. Before addressing Procaps' arguments, the Court notes that it did not grant Patheon's entire summary judgment motion on Procaps' FDUPTA claim. Rather, the Court **denied** Patheon summary judgment on the portion of Procaps' FDUPTA claim which arose from Procaps' antitrust allegations. The Court, however, granted summary judgment to Patheon on Procaps' *new* FDUPTA theory -- that Patheon did not protect the confidential information for which Procaps gave Patheon full access.  Thus, Procaps still has a viable, albeit narrowed, FDUPTA theory.

i.   The Court Applied the Correct Legal Standard to Procaps'
FDUPTA Claim

Procaps' first argument is that the Court erred in finding that FDUPTA requires

Procaps to show misuse or unlawful disclosure of its confidential information to a third

party under the facts and allegations at issue in this lawsuit.   [ECF No. 569, p. 2]. It

contends that the Court misinterpreted the holding in *Sensormatic Electronics Corp. v.*

*TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1193 (S.D. Fla. 2008), the decision on which the

Court relied.  It also contends that the Court's "narrow" reading of FDUPTA contradicts

the broad scope of the statute.  At bottom, what Procaps wants is for the Court to hold

that Procaps can maintain its FDUPTA "access-to-information" theory on the basis that

it gave Patheon full access to its confidential information and Patheon did not protect

that information. There are two problems with this.

First, Procaps is no longer at the pleading stage; it, therefore, must produce some

**evidence** to substantiate its theory that Patheon did not protect its confidential

information. In that regard, the Court reiterates the point that there is no evidence

Patheon has *misused* Procaps' confidential information or *disclosed* it to a third party.

[ECF No. 565, pp. 44, 48-49]. Consequently, what is left before the Court is Procaps'

contention that it can state and maintain a FDUPTA claim based only on Patheon's

*access* to its confidential information. That leads to Procaps' second problem.

To be sure, FDUPTA has a broad scope. That scope, however, is not limitless.

*Hanson Hams, Inc. v. HBH Franchise Co., LLC*, No. 03-61198-Civ-Seltzer, 2004 WL

5470401, at *6 (S.D. Fla. Dec. 21, 2004). Under FDUPTA, an "unfair act" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citation omitted).

Procaps' argument seems to be that because FDUPTA has a broad scope, it encompasses its full access-to-information theory. But there is a logical gap in that argument: why and how would mere access to confidential information, without more,[3] constitute an "unfair act"? Despite having two chances to brief the issue, Procaps has not pointed to binding, persuasive authority validating Procaps' access-to-information FDUPTA theory. There is a good reason for that. To accept Procaps' argument would turn every breach of a contract with a confidentiality provision into a FDUPTA claim -- which the Florida Supreme Court has explained is not the intent behind FDUPTA. *PNR*, 842 So. 2d at 777 n. 2 ("[T]his opinion does not operate to convert every breach of contract or breach of lease case into a claim under the Act. Indeed, such a construction would be precluded by the FDUTPA, which only reaches conduct that is unfair or deceptive as judged by controlling case law.").

Finally, the Court does not agree that it misinterpreted *Sensormatic* in its summary judgment ruling. The *Sensormatic* court, after reciting FDUPTA's general

---

[3]     Procaps has argued that this something more is Patheon's decision to enter into the Collaboration Agreement and its later decision to then enter into another agreement, i.e., the Banner acquisition. As the Court has explained, there is no legal authority to support this theory. [ECF No. 565, pp. 46-47].

principles, found a FDUPTA violation where the defendants intentionally copied the plaintiff's confidential information and disseminated it. *Sensormatic,* 632 F. Supp. 2d at 1197. All this Court did was adopt the *Sensormatic* court's holding that this type of conduct constitutes an "unfair act" under FDUPTA. [ECF No. 565, p. 44]. The summary judgment order did not limit FDUPTA to only these "unfair acts." [*Id.* at pp. 43-44 ("FDUPTA, however, requires, at a minimum, . . .")]. The Undersigned's view of *Sensormatic* is not legally incorrect and did not unfairly deprive Procaps of a legitimate claim. *See generally DSSDR, LLC v. Zenith Infotech, Ltd.,* No. 13-10026-FDS, 2013 WL 5724052, at *8 (D. Mass. Oct. 18, 2013) (holding that defendants' "alleged failures to . . . maintain confidentiality obligations under the License Agreement, without more, do not constitute unfair practices" under FDUPTA).

## ii.  Procaps' Request to Amend its Complaint

Procaps requests that if the Court declines reconsideration of the Order on the FDUPTA claim because of pleading deficiencies, then Procaps should now be given the ability to amend its complaint. [ECF No. 569, p. 5]. This request is aimed at Patheon's argument that Procaps' FDUPTA claim cannot incorporate by reference the prior *factual allegations* in the complaint. [ECF No. 580, pp. 3-4].

While the Court has noted the pleadings deficiency and pointed out that Procaps' FDUPTA claim does not contain the misconduct it alleges now and at summary judgment, the Court has addressed the **merits** of this misconduct theory in its

Summary Judgment Order and now. [ECF No. 565, pp. 43-44]. Accordingly, this request is denied as moot. The Court also denies this request because the deadline to amend the complaint passed more than a year ago and Procaps has not shown the requisite good cause for an amendment. *Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) ("it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions.") (citations omitted); *see generally Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 n. 2 (11th Cir. 1998).

### iii. <u>Summary Judgment was not Premature</u>

Procaps' final argument is that summary judgment on its FDUPTA claim was premature because the Court overlooked the fact that substantial discovery was outstanding. [ECF No. 569, p. 6]. In particular, Procaps points to the following discovery issues: (1) its discovery request from DSM Phamaceutical Products ("DSM") is pending in the district of New Jersey; (2) its motion to compel a forensic analysis of Patheon's ESI is pending before the special master; and (3) Patheon has improperly refused to answer its discovery requests and Procaps will soon (and now has) filed motions to compel. [*Id.* at pp. 6-11]. Procaps' first two discovery arguments are not well taken. The Court will address the third argument when it addresses the parties' discovery motions.

First, neither in its papers nor during the **all day** summary judgment hearing did Procaps advise the Court of its view that summary judgment would be premature. To the contrary, on several occasions Procaps' counsel stated they were comfortable with the summary judgment schedule. [ECF Nos. 358, pp. 17-19; 387, pp. 4, 14-15].

Moreover, if Procaps believed that it could not respond to Patheon's summary judgment without more discovery, then it should have filed an affidavit explaining why, as required by Federal Rule of Civil Procedure 56(d).  Procaps did not do that. All there is in the record to indicate that Procaps gave notice of its belief that additional discovery is required is a cryptic footnote about discovery in its summary judgment response. [ECF No. 520-1, p. 29 n. 14]. This does not come close to complying with Rule 56(d)'s affidavit requirement. Accordingly, the Court finds that Procaps has not preserved this argument. *See Fiorillo v. Carnival Corp.*, No. 12-21599-Civ-Cohn, 2013 WL 632264, at *3 (S.D. Fla. Feb. 20, 2013) ("because Plaintiff has failed to file the necessary affidavit or declaration, she cannot rely on Rule 56(d) as a reason to avoid the entry of summary judgment.") (citing *Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 686 (11th Cir. 2013)).

Second, Procaps' argument that discovery from DSM and the potential forensic analysis of Patheon's ESI might show Patheon's actual misuse of its confidential information (as opposed to merely having access to it) is too speculative. For instance, the Special Master has not even ruled on Procaps' forensic analysis motion. And even if

he were to recommend that it be granted, the Court would still have to review his recommendation and also agree that it be granted.

As to the DSM discovery, Procaps has not offered any concrete basis to show that the *forthcoming* discovery from DSM will support its FDUPTA claim. Nevertheless, the Court will not entirely foreclose Procaps' argument on this point. If the DSM discovery or the potential forensic analysis discovery from Patheon (if it happens) produces substantial and *bona fide* evidence that supports Procaps' FDUPTA claim (of actual misuse of confidential information), then, consistent with its Rule 11 obligations Procaps may file a renewed motion on this limited issue.

### B. The Discovery Motions and Arguments

Discovery in this case closed on March 10, 2014. [ECF No. 94, p. 5]. Fifteen days before the discovery cutoff, each party was required to advise the court of any unresolved discovery motions. [*Id.* at p. 6]. In a March 25, 2014 Order that removed this case from the trial calendar because of the delay in completing Procaps' forensic analysis, the Court reiterated the point that only the deadlines that had not passed by that date would be held in abeyance. [ECF No. 432, p. 12]. In addition to the Court's orders, the Local Rules require all discovery issues to be brought before the Court within 30 days of the grounds for the occurrence of the discovery motion. Local Rule 26.1(h)(1).

More than five months after the expiration of the Court's discovery deadline, both Procaps and Patheon have now filed motions to compel discovery from the other. [ECF Nos. 576; 577; 593]. Procaps has also used this ongoing discovery to argue that summary judgment was premature. The purported ongoing discovery is well beyond the expiration of the discovery deadline, however.

Although the Undersigned was never aware of the purely private agreement until recently, it seems as though Procaps and Patheon decided among themselves to hold discovery in abeyance until the Court ruled on their summary judgment motions. In particular, in early June 2014 the parties exchanged emails and stipulated as follows:

> [T]he parties mutually agree that the 30-day time period set forth in Local Rule 26.1(h) within which to bring all discovery motions is tolled during the period of the 'stay.' As such, both sides agree that neither will argue that any future discovery motion related to the issues identified in the two letters is time barred as a result of the time that elapsed before this agreement or the time that elapses between now and the Court's order deciding the summary judgment motions.

[ECF No. 569-9]. Interestingly enough, it appears that no one proposed asking the Court to adopt this stipulation or to even let the Court know of its existence. Of course, these failures to involve the Court in the post-deadline discovery arrangement make the stipulation problematic.

First, the parties have not cited to any legal authority permitting them, by agreement, to vary a court's local rules, without court permission. *Cheshire v. Bank of Am., NA*, 351 F. App'x 386, 388 (11th Cir. 2009) (noting that local rules have the "force of

law"). This is particularly true here, where the parties' private agreement subverts Local Rule 26.1(h)'s policy "of promoting the prompt resolution of discovery disputes by requiring the parties to timely bring to the court's attention matters that the parties cannot resolve amongst themselves." *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.,* No. 10-24310-CIV, 2011 WL 6190160, at *2 (S.D. Fla. Dec. 2, 2011). In addition, this is not the parties' first encounter with Local Rule 26.1(h). In an earlier order, the Court made clear that, under Local Rule 26.1(h) **it** has the *discretion* to consider a late-filed discovery motion. [ECF No. 433, p. 3 (citing *Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.,* No. 09-CV-80787, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010))].

Second, by agreement and without the Court's knowledge or permission, the parties have *de facto* tried to extend the Court's already-expired discovery deadline. [ECF Nos. 94, p. 5; 432, p. 12]. It is well settled that "parties may not independently extend any deadline imposed by the Federal Rules of Civil Procedure or this Court. If the parties seek an extension, they are required to file an appropriate motion explaining the relief sought . . . ." *Lytle v. Lowe's Home Ctrs., Inc.,* No. 8:12-CV-1848-T-33, 2014 WL 1819650, at *2 (M.D. Fla. May 7, 2014). Here, the parties never asked the Court for permission to extend its discovery deadline. In fact, they did not even let the Court know of this agreement.

To be sure, the Court's trial scheduling order notes that the parties may by agreement conduct discovery after the expiration of the discovery deadline [ECF No. 94, p. 6]. However, this provision has two important caveats: (1) the parties cannot "rely on the Court to resolve any discovery disputes arising after the discovery cutoff date," and (2) counsel should not seek to extend any deadline based on post-deadline discovery. [*Id.*].

But the three motions to compel are surely efforts to use the private, secret agreement to persuade the Court to resolve discovery disputes beyond the discovery deadline. In other words, the parties' motions to compel seek the very type of relief precluded by the trial scheduling order.

Third, it seems clear that even the parties understand that discovery is over. In fact, at an August 20, 2014 hearing in New Jersey federal district court on Procaps' motion to compel against DSM [ECF No. 588-2, p. 7], Procaps' counsel advised the Court there that "discovery is now over except a few pending matters, one of which is this one."

Finally, the Court addresses Procaps argument that Patheon is being rewarded for obfuscating discovery. Procaps' argument is inconsistent with the extensive record in this case. Specifically, the Court has given the parties more than their fair share of its time in dealing with their discovery disputes. The Court's informal review of the record shows that the Court has already addressed no less than 22 discovery-related

motions/issues. [ECF Nos. 13; 69; 96; 122; 131; 133; 212; 214; 216; 262; 264; 272; 337; 340; 350; 354; 373; 443; 450; 480; 499; 559]. Thus, it is puzzling to suggest that somehow Procaps, and for that matter Patheon, have not had ample time and opportunity to get the discovery they need for this case.

Accordingly, for the foregoing reasons, the Court rejects the parties' private stipulation to hold discovery in abeyance and finds that their discovery motions are significantly untimely under Local Rule 26.1(h) and its Scheduling Order. Therefore, the Undersigned **denies** all three motions to compel, **with one category of exceptions** : If (1) the discovery provided by Procaps to Patheon as part of the Court-ordered forensic analysis of Procaps' ESI, (2) any similar discovery which might be provided in connection with Procaps' motion to compel a forensic analysis of Patheon's ESI,[4] or (3) the DSM-provided discovery yields any substantively significant evidence warranting further discovery, then the party or parties receiving the evidence may (after consulting with opposing counsel) file a motion for additional discovery, limited to issues arising out of the newly-provided evidence.

---

[4]     By mentioning this possibility, the Undersigned is not suggesting that the Special Master will or should recommend that Procaps' motion for a forensic analysis of Patheon's ESI be granted, nor am I implying that I would enter an actual order requiring this if the Special Master were to recommend it.

III.     **CONCLUSION**

For the sake of musical symmetry, the Undersigned will end this Order by paraphrasing lyrics from another JJ Cale song.  The song is "Carry On,"[5] which, as modified for this case, advises: "Let out all the slack, take it off your back, Carry on, carry on [with the claims remaining after the summary judgment order]." Therefore, for the reasons discussed above, the Undersigned denies Procaps' Motion for Reconsideration and the parties' cross-motions to compel discovery.

**DONE AND ORDERED** in Chambers, in Miami, Florida, October 2, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
All Counsel of Record

---

[5]        From the *Shades* album (MCA 1981).