UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

    Plaintiff,

v.

PATHEON INC.,

    Defendant.

_____/

**ORDER GRANTING IN LARGE PART AND DENYING IN SMALL PART
DEFENDANT PATHEON'S MOTION TO COMPEL
<u>INTERROGATORY RESPONSES</u>**

In this federal antitrust case, the Undersigned previously granted in large part Defendant Patheon, Inc.'s ("Patheon") motion for leave to serve additional discovery concerning Plaintiff Procaps S.A.'s ("Procaps") rule of reason theory of establishing liability and damages. [ECF No. 648]. Procaps provided interrogatory answers, but Patheon is not satisfied with them, and has filed a motion to compel. For all practical purposes, the motion to compel [ECF No. 662] is actually a motion to compel better answers to several of the interrogatories.

The Undersigned has reviewed the motion, Procaps' response [ECF No. 669], Patheon's reply [ECF No. 676] and the actual interrogatory answers [ECF No. 661-1], which were filed under seal.

By way of introductory summary, most of the interrogatory answers at issue need to be supplemented, as they are vague, incomplete and/or confusing. Procaps will need to provide better, more-complete and more-definitive answers by April 20, 2015 (or, for some interrogatories, provide a binding concession which would render the information requested irrelevant).

Patheon has been trying to obtain the information called for by the interrogatories for quite some time. Initially, Patheon relied upon Procaps' prior representation that it was pursuing only a *per se* antitrust claim and would not litigate a rule of reason approach as the rationale for its agreement to forego rule of reason discovery. But Procaps changed its position during the summary judgment briefing and is now pursuing the very rule of reason case it previously advised it would not use. The Undersigned's order permitting rule of reason discovery was designed to make sure that Patheon is not unduly prejudiced by Procaps' late-in-the-game strategic change.

As outlined below, however, Procaps did not provide adequate answers to several of the interrogatories, so the Court will grant the motion as to most of the interrogatories mentioned in the motion to compel. And because Federal Rule of Civil Procedure 37 contains a "loser pays" presumptive rule for a motion to compel, the Undersigned awards Patheon $3,500 in attorney's fees.  Procaps must pay the fees award by April 22, 2015. If any party objects to either the substantive ruling (i.e., Patheon's entitlement and the conclusion that Procaps' positions were not substantially

justified or that circumstances would not make a fees award unjust) or the amount of the fees award, then they may by April 21, 2015 file a notice and the Court will hold a hearing. If any party files a notice, then the fees award will be held in abeyance pending the hearing and a ruling. The $3,500 fees award recognizes that Patheon did not prevail on every aspect of its discovery motion, and the Undersigned reduced the amount to reflect this reality.

**Applicable Legal Principles Concerning Market Power**

In a rule of reason type of antitrust case, which is what this former *per se* case has morphed into, the test of legality is "whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996) (quoting *Chicago Bd. of Trade v. United States,* 246 U.S. 231, 238 (1918). In order to prove an anticompetitive effect on the market, an antitrust plaintiff may either prove (1) that the defendant's behavior had an "actual detrimental effect" on competition, or (2) that the behavior had "the potential for genuine adverse effects on competition." *Id.*

In order to prove the second alternative method of proving anticompetitive effect on the market, the antitrust plaintiff "must define the relevant market and establish that the defendants possessed power in that market." *Levine,* 72 F.3d at 1551 (quoting *F.T.C. v. Indiana Fed'n of Dentists,* 476 U.S. 447, 460, 461 (1986)). In those situations where the

3

plaintiff is unable to demonstrate actual effects (i.e., the first alternative method), it must "at least establish that defendants possessed the requisite market power so that their arrangement has the potential for genuine adverse effects on competition." *Id. See also Spanish Broad. System of Fla, Inc. v. Clear Channel Commc'n, Inc.*, 376 F.3d 1065, 1071-72 (11th Cir. 2004) (quoting *Levine* for two-option approach to proving anticompetitive effect on the market and noting that the "anticompetitive effects" are "measured by their impact on the market, rather than by their impact on competitors").

In defining and proving a relevant market, a plaintiff must recognize that a relevant market consists of both relevant products and geographic markets. *All Care Nursing Service, Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 749 (11th Cir. 1998) (explaining that competition occurs only in a market, which means that plaintiffs must "confront the threshold problem of defining the relevant market" and affirming jury's finding that plaintiffs' -- temporary nursing services agencies -- "failure to establish the relevant market (either by product or geography) was fatal" to their rule of reason antitrust claims).

**Additional Context**

Procaps contends that it has provided "all the information in its possession" and that this is an entirely appropriate response. Assuming that this representation is in fact correct, then Procaps' view is correct. *See e.g., Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ. 2068, 2014 WL 642970 (S.D.N.Y. Feb. 14, 2014) (because a party cannot be

4

compelled to produce what he does not have, a plaintiff's response that he has no documents is a permissible response to a document request).

Similarly, Procaps correctly notes, as a general matter, that a party is not required to create evidence it does not have and is not required to do independent research in order to acquire information **merely** to answer interrogatories. *La Chemise Lacoste v. Alligator Co., Inc.*, 60 F.R.D. 164, 171 (D. Del. 1973) ("a party, of course, must provide by way of answers to interrogatories the relevant facts available to it but should not be required to enter upon extensive independent research in order to acquire such information").

Nevertheless, as succinctly explained by one of the leading federal procedure treatises, "it would be a mistake, however, to suppose that the fact that answering an interrogatory would require research by the interrogated party is enough to bar the interrogatory in every case. It is not." 8B *Wright, Miller & Marcus* FEDERAL PRACTICE AND PROCEDURE § 2174 (3d ed. 2014). Significantly, an "interrogatory will not be held objectionable as calling for research if the interrogated party would gather the information in the **preparation of its own case**." *Id.* (emphasis added). *See generally Flour Mills of Am., Inc. v. Pace,* 75 F.R.D. 676, 68-81 (D.C. Okl. 1977). Additionally, in order to justify a ruling upholding an objection on the grounds that the discovery request requires research by the answering party, it must be shown that the research

5

required "is *unduly* burdensome or oppressive." *Wilson Land Corp. v. Smith Barney, Inc.*, No. 5:97CV519, 2000 WL 33672980, at *5 (E.D. N.C. Dec. 8, 2000) (emphasis added).

Framed by these basic principles of discovery, Patheon argues that Procaps' stated position that market power is irrelevant must have consequences "and that the Court must bind Procaps" to the concession inherent in its position "or order Procaps to provide the information." In particular, Patheon urges a straightforward rule: "If Procaps doesn't have the market power evidence sought in the interrogatories, it must clearly indicate this (e.g., that, other than Banner and the Collaboration, it (i) cannot identify current or future competitors; (ii) does not know present and future market shares; and (iii) will not assert (and has no facts to assert) a disparity between market share and market power, or a connection between market power and any anticompetitive effect").

Patheon's position (i.e., provide market-related discovery or be bound by a concession that you are not -- and will not be -- proceeding on a theory requiring market share and market power) arises from its often-invoked frustration over Procaps' change in legal theory (from a *per se* case to a rule of reason case].[1]

The Court is familiar with Patheon's view and its argument that "given the history of this case, it [Procaps] cannot be taken at its word." Without commenting on

---

[1]   For example, at an October 7, 2013 discovery hearing, Procaps' counsel said: ". . . I repeat. We will not assert other than a *per se* claim of antitrust violation in this case with respect to any type of antitrust analysis save in defense of allegations or expert opinions put forth by Patheon." [ECF No. 147, p. 13].

the merits of Patheon's rhetoric, the Undersigned agrees that the parties (in general) and Procaps (in particular) cannot be hopscotching around a case with ever-changing legal theories.

**Interrogatories at Issue**

*Interrogatory 1*: In this interrogatory, Patheon asks for present and projected market share information for all competitors in the market. After objecting with the argument that the market share of Procaps' competitors is irrelevant, Procaps' answer "refers" Patheon to the market share information prepared by Patheon's own expert economist, a professor, and the market share information prepared by Patheon and DSM in connection with their 2014 merger. But Procaps does not expressly state that it, too, is adopting this market share information.

Similarly, Procaps' answer discusses a Patheon "overview" and a Patheon "lenders Presentation," which state that Patheon has a 16% share of the "multi-billion" soft-gel market and provides other information. The answer also quotes Patheon's former CEO. But Procaps does not advise that it accepts these market share numbers; it simply mentions them.

If Procaps contends that market share is irrelevant, then it must implicitly be taking the position that it is going to use the first method of establishing an anticompetitive effect. But it has not expressly made this concession, and Patheon is

concerned that Procaps may shift its position at trial and seek to use the second theory, which would require evidence about the relevant market and power in the market.

Given that Procaps initially pursued only a *per se* case and then switched to a rule of reason approach after the Court's rulings on the summary judgment motions, Patheon's concern is not irrational.

Therefore, Procaps must either announce in writing a **binding** decision to not use the second method of proof *or* it must answer this interrogatory with more-detailed information. If Procaps does not provide the binding concession but lacks specific details about market power, then it must state so specifically -- but the Court will not permit Procaps to change, supplement, revise or otherwise modify its "we-have-no-specific-information-on-market-share" interrogatory answer at trial (or in pre-trial motion practice).

*Interrogatory 2:* Patheon asked Procaps to disclose whether the projected market shares identified in Interrogatory 1 will be greater than the past and/or present market shares and to provide supporting facts. Instead of substantively answering, however, Procaps provided a one-sentence response which referred Patheon to its answer to the first interrogatory and to prior interrogatory answers which cited facts **from Patheon.** Unless Procaps provides the binding written concession, then it must provide a better, more-detailed answer to this interrogatory.

*Interrogatory 3:* This is a contention interrogatory. It asks Procaps to explain whether its position is that any competitor had, or will have, more or less market power than Procaps provides in its answer to the first interrogatory. If Procaps does contend that this disparity exists, then the interrogatory asks for the facts about the disparity between each competitor's market power and market share. Procaps objected, saying that market power is irrelevant. But if, at trial, or in pre-trial motion practice, Procaps is going to contend that Patheon's behavior had "the potential for genuine adverse effects on competition," then market share **is** relevant (and therefore discoverable).

Therefore, to use a well-known metaphor applicable to the first three interrogatories, Procaps must fish or cut bait and then formally advise Patheon (and the Court) of its position on how it intends to prove an anticompetitive effect on the market. Its binding answer will determine whether this interrogatory answer needs to be supplemented.

*Interrogatory 11:*[2] In this interrogatory, Patheon wants Procaps to list the facts relating to any connection between a competitor's market power and each anticompetitive effect that Procaps contends was caused by Patheon's allegedly unlawful conduct. Patheon did not answer. Instead, it repeated its objection -- that "assertions of market power are irrelevant to this case" -- and then said that "the

---

[2] The Undersigned is discussing the interrogatories in the order selected by Patheon. Patheon grouped this interrogatory in with the discussion of interrogatories 1–3.

9

anticompetitive effects that resulted from Patheon's conduct exist regardless of whether any Competitor has market power."

Without the binding, expressly articulated expression that would render market power irrelevant to this rule of reason case, Procaps' response is inadequate. It must either provide the binding written notice or it must answer this interrogatory. As noted earlier, if it has no information, then it must unequivocally say so and then it will be bound by its representation at trial and in pre-trial motion practice.

*Interrogatory 6:* This interrogatory asks Procaps to identify all customers who have been or will be harmed by Patheon's alleged anticompetitive conduct and to describe the harm and to provide the factual basis. For all practical purposes, Procaps merely said that "all" of its customers were harmed, though it does not name the customers, and does not provide details about any actual harm. Instead, the answer offers detail-free, fact-free, summary-type information about theoretical harm, on a market-wide basis. This is inadequate. If Procaps has no specific evidence, then it should so state, in which case it will be bound by its concession. Alternatively, it must answer the question, naming specific customers and giving particular facts about the harms.

Although the Court earlier in this case[3] permitted Procaps to give an interrogatory answer simply saying that all customers were subject to the market

---

[3] The earlier discovery order was entered on December 3, 2013. [ECF No. 223].

division (if that was in fact its position), that was before Procaps switched its claim from a *per se* theory to a rule of reason approach. Moreover, the current interrogatory specifically asks for information about the quantification of the harm and the supporting facts. Procaps must answer the interrogatory if it fails to expressly advise that it is pursuing a theory which does not require market power.

*Interrogatory 8:* Because the interrogatory is phrased in confusing language, the Undersigned is unable to artfully summarize it. Procaps asserted this very objection, but then proceeded to provide an answer which is largely rhetoric and argument. But the Undersigned will not compel Procaps to answer a poorly-worded, confusing interrogatory, and it is too late in the case to permit Patheon to propound another interrogatory. The Undersigned denies the motion to compel a better answer to this interrogatory.

*Interrogatory 12:* This interrogatory requires Procaps to identify each sentence in other, earlier responses that refer to activities outside the relevant market. Patheon's objection to the answer is that it "*suggests* that Procaps has not fully responded to the request." (emphasis supplied). This is not a sufficient ground to compel a better response.[4] The Undersigned denies the motion to compel as to this interrogatory.

---

[4] In its reply, Patheon adds two sentences, taking issue with something Procaps asserted in its response. But the Undersigned typically does not consider an argument raised for the first time in a reply.

*Interrogatory 14:* In parts (b) and (c), this interrogatory asked Procaps to provide all facts concerning its "efforts to sell any softgel product in the market" and "efforts to compete in the market." Procaps provided some information, but it was general and vague. For example, it broadly referred to attending trade shows and mentioned one of them, but it did not identify the others, nor did it identify customers or potential customers it communicated with from 2012 to the present.

Part (d) calls for all facts relating to "efforts to obtain a new Collaboration partner in the Market (including the names of such persons)." Although Procaps said it has not found a potential partner that satisfies the same criterion as Patheon, it did not describe any of its efforts. If it made no efforts, then it should so state. And if it did make efforts, then the information about them must be provided.

Finally, part (f) calls for Procaps to provide all facts relating to "customers or potential customers approaching you about the Market." In its brief answer, Procaps identified three customers from whom it has actually obtained business -- but it did not provide basic facts about the business and it failed to provide any information whatsoever about potential customers (i.e., customers who approached Procaps). If no other potential customer ever approached Procaps besides the three mentioned, then Procaps shall so state. If potential customers approached, then Procaps shall provide information about them. And if potential customers approached but Procaps never

12

obtained their information or no longer has the information, then it must clearly explain this, as well.

*Interrogatory 16:* This interrogatory requires Procaps to provide information on proprietary softgels it marketed or sold and to provide all facts concerning those efforts on a customer-by-customer basis. Procaps provided a cryptic, four-sentence answer. Patheon contends that Procaps' answer did not address the softgels it *tried* to sell. Procaps says that it provided this information and that Patheon is quibbling over semantics. As to that precise point, Procaps has the better argument. Information about an item "marketed" is, for all practical purposes, information about efforts to sell those products.

However, Procaps' answer failed to provide any meaningful information about the marketing efforts and it likewise did not contain any facts about the successful efforts, such as the dates of the marketing efforts, the customers or potential customers involved, the volume of the sales, the amounts billed, etc. The Undersigned therefore grants Patheon's motion to compel that missing information.

**Conclusion**

The Undersigned grants Patheon's motion to compel for those interrogatories (or portions of interrogatories) outlined above. For the interrogatories which relate to market power and market share, Procaps may avoid the requirement to provide supplemental, more-detailed answers by filing an unequivocal, <u>binding</u> notice that it

will **not** seek to establish the requisite anticompetitive effect on the market through proof that Patheon's behavior had the potential for genuine adverse effects on competition. This binding concession, if provided, must also clearly give notice that Procaps will seek to establish the anticompetitive effect on the market with proof that Patheon's behavior had an "actual detrimental effect" on competition. Procaps must provide all interrogatory answers by April 20, 2015. The supplemental answers shall be comprehensive, detailed and clear. Nebulous, conclusory, fact-light answers will not be acceptable.

Procaps must pay the $3,500 fees award by April 22, 2015 (assuming it does not challenge the award or its amount) and must submit an affidavit of compliance in the Undersigned's e-file inbox by April 24, 2015.

**DONE AND ORDERED** in Chambers, in Miami, Florida, April 10th, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record
John Barkett, Special Master