UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

      Plaintiff,

v.

PATHEON INC.,

      Defendant.

_____/

## ORDER ON PATHEON'S RULE 37(B) MOTION
## FOR FAILURE TO COMPLY WITH DISCOVERY ORDER

*"Nobody ever did, or ever will, escape the consequences of his choices."*

      Alfred A. Montapert (1906 - ), American philosopher, and the author of

      "The Supreme Philosophy of Man: The Laws of Life"

Defendant Patheon, Inc. ("Patheon") has filed a motion [ECF No. 699] for an order requiring Plaintiff Procaps S.A. ("Procaps") to "show cause why it has not complied with the Order that it file a binding notice" concerning its position on how it intends to prove anticompetitive effect in this rule of reason antitrust case. Patheon's

motion is the latest salvo in an ongoing discovery dispute which has raged on for more than two years.[1]

At bottom, Patheon's current motion raises two concerns: (1) Patheon says (correctly) that Procaps never filed with Court the binding notice required by an earlier Order, and (2) it says that Procaps has not sufficiently disclosed the actual evidence it intends to rely on (but instead provided only generalities about economic principles).

In its response [ECF No. 709], Procaps explains that it did not read the earlier Order as requiring an actual filing with the Court but that it did in fact provide the requisite notice in a supplemental interrogatory answer. Procaps' response explains that it "now appreciates" that, "under one reading," the Order "could require a separate notice." Nevertheless, it describes its supplemental interrogatory answers as "binding" and, in effect, deems this part of the discovery dispute to be a disagreement over semantics.

Procaps describes Patheon's dissatisfaction over the level of detail in its substantive interrogatory answers concerning anticompetitive effects  as being based on an "erroneous understanding" of the applicable legal standard for proof of actual harm to competition under the so-called first prong of the standard articulated in *Levine v.*

---

[1]     Familiarity with the procedural history underlying this discovery dispute is assumed; the Court does not see the need to now rehash the protracted history leading up to the latest motion.

*Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996).[2]  Procaps argues that the forum to assess the sufficiency of its evidence under the first *Levine* prong is during summary judgment litigation or during trial, not during a discovery dispute.

Although Procaps should have filed a binding notice with the Court, rather than serve an interrogatory response to Patheon,[3] Procaps has now repeatedly and unequivocally given notice of its position. **The Court deems Procaps' supplemental interrogatory answers to be a binding notice of its position, which it cannot change.** Indeed, Procaps itself described (in its response to the motion) its supplemental interrogatory answers as "binding" and attached as an exhibit a proposed notice of its binding position. Procaps advised that it would "of course" file the notice if the

---

[2]      Under the first method of proving anticompetitive effect, the antitrust plaintiff must prove that the defendant's behavior had an "actual detrimental effect" on competition. Under the second method, *Levine* requires the plaintiff to prove that the behavior had "the potential for genuine adverse effects on competition." An antitrust plaintiff using the second prong must "define the relevant market and establish that the defendants possessed power in that market." *Id.*  In its interrogatory answers (and again in its response and a proposed notice), Procaps advised that it is proceeding only under the first prong of the two *Levine* alternatives.

[3]      The Order required Procaps to "formally advise Patheon (and the Court) of its position on how it intends to prove an anticompetitive effect on the market." [ECF No. 678, p. 9]. It also explained that Procaps could avoid the requirement of providing supplemental, more-detailed interrogatory answers "by filing an unequivocal, **binding** notice that it will **not** seek to establish the requisite anticompetitive effect on the market through proof that Patheon's behavior had the potential for genuine adverse effects on competition." [*Id.*, at pp. 13-14 (emphasis in original Order)]. On the other hand, the Order *also* made reference to supplemental interrogatory answers, which are not filed with the Court unless specifically authorized or unless part of a discovery dispute which the Court is expected to resolve. In the Court's view, however, a required "filing" can mean only a formal submission to the Clerk of the Court.

Undersigned concluded that it would be necessary. Under these circumstances, it would be superfluous to require Procaps to now file a "binding" notice of its legal position.

The Court will now address Patheon's problem with Procaps' supplemental interrogatory answers.

Procaps has not technically filed a notice with its binding legal position. Nevertheless, Patheon now knows, and knew before it filed this motion, that Procaps' supplemental interrogatory answers advised that it would not seek to establish that Patheon's conduct had the "potential" for genuine adverse effects on competition, but would instead seek to establish anticompetitive effect by showing that Patheon's behavior had an **actual**, detrimental effect on competition in the relevant markets.

According to Procaps' supplemental interrogatory answer, "Patheon's behavior harmed the competitive process by removing the Banner assets from the relevant markets, thereby preempting the normal working and proper functioning of market forces." Procaps also noted, on a different page of its supplemental interrogatory answer, that "withdrawing the Banner assets from the relevant markets and the resulting exclusion of Procaps would, based on well-established economic principles, lead to further anticompetitive effects as to price and output, compared to the 'but for' world where Banner and Procaps would be competing."

Unhappy with a supplemental interrogatory answer it branded as theoretical and not based on actual evidence, Patheon initiated a meet-and-confer process, and Procaps advised that its supplemental interrogatory response provided "6 pages of evidence of actual harm, demonstrating that all customers in the relevant markets were harmed by the withdrawal of the Banner assets because their choice of suppliers was directly impaired." Procaps also explained that page 7 of its interrogatory response identified "specific customers who were harmed by Patheon's withdrawal of Banner assets from the relevant markets as well as documents demonstrating that impairment." Procaps further noted that "the harm to competition is market-wide" and that it did not have an "individualized accounting to quantify the competitive harm to each customer."

Patheon's motion asks that Procaps file a binding notice about which method of proof it will be using (i.e., the first *Levine* prong) **and** to confirm that it will prove anticompetitive effect *only* by showing that customers in the relevant markets were harmed by the withdrawal of the Banner assets because their choice of suppliers was directly impaired. Patheon also wants the binding notice to warrant that Procaps has no evidence of higher prices, lower output, degraded quality and reduced innovation or effects other than the impairment on the choice of suppliers.

In response, Procaps argues that Patheon is ignoring its evidence that Patheon's interference has disrupted the proper functioning of the price and output setting

mechanism and its anticipated testimony that this disruption, "based on well-established market **principles**," has "inevitably, predictably and inexorably led to adverse price and output effects as compared to the "but for" world (emphasis added). It also rejects the notion that "empirical evidence of an actual price increase in the actual world" is necessary.

Summing up its opposition to Patheon's motion, Procaps says that "Patheon is entitled to know what Procaps plans to do and not do at trial; it is not entitled to tell Procaps how to prove its case."

Given the myriad opportunities it has been given in its discovery responses to explain its theory of the case and the evidence which purportedly supports it, it is clear to the Court that Procaps has no other specific evidence of actual detrimental effects beyond what it has already disclosed. To be sure, it is *possible* that Procaps is simply unwilling to provide any further detail despite an order compelling further information, but the Undersigned's review of Procaps' discovery response and follow-up letters strongly suggests that this possibility has not morphed into reality at this late stage of the case. The Court is not going to again require Procaps to spell out its case in any greater detail or compel it to pinpoint facts, as opposed to relying on generic theories which may or may not ultimately carry the day. So Procaps will not need to provide a second round of supplemental interrogatory answers -- but this result will generate **consequences.**

6

Specifically, Procaps will not be able to defend against a summary judgment motion (and Patheon has repeatedly indicated its intent to file one) or a motion before or during trial with theories not already articulated in the initial and supplemental interrogatory answers, which are now binding. Likewise, Procaps will not be able to rely on facts disclosed for the first time in a new report by an expert witness or new factual themes developed by witnesses (but not presented in the original and supplemental interrogatory answers).

To the extent that Procaps intends to rely on *general* economic principles to establish <u>actual detrimental effects</u> on competition, the Court is not now going to determine whether such an approach is legally sufficient. Procaps seems to believe that it can meet its burden, at least in part, with this approach; Patheon disagrees. Procaps is the master of its own case. The parties will learn which one is advancing the correct theory when the Court rules on the virtually inevitable summary judgment motion (or motions).

For now, though, the Court is **denying** (other than outlined below) Patheon's motion for a show cause order, with the caveat that Procaps' supplemental interrogatory answers are **binding**, both as to which *Levine* prong it is using and the evidence/assumptions/principles it is relying on (and will rely on, for the remainder of the case) to establish anticompetitive effect. Procaps has advised that it has provided all the information in its possession. Thus, Procaps cannot later amend, supplement or

7

otherwise seek to improve the evidence and/or theories it has now advanced. To provide a concrete example, if Procaps, in an answer responsive to a particular interrogatory, listed only three customers who approached it, then it cannot have its expert later mention marketing efforts with *additional* customers at a trade show, nor can it have a witness testify about meetings or communications with other customers.

Procaps need not have disclosed each and every fact it intends to rely upon at trial, but it was required, if asked in discovery, to disclose factual themes or categories or approaches. Moreover, it cannot answer a specific interrogatory by relying on vague comments or general principles but then later seek to rely on more-particularized evidence.

Specifically, Patheon asked Procaps to identify all customers who have been or will be harmed by Patheon's anticompetitive conduct and to describe the harm and provide the factual basis. This requires a specific list of customers. If it failed to provide the names of specific customers and did not give particular facts in the supplemental interrogatory answer, then it will not be able to introduce such evidence later, such as in a summary judgment motion opposition or at trial. Instead, it will be limited to whatever discovery responses it provided (e.g., all customers were affected, without further detail).[4]

---

[4]    Procaps says that it does not have an individualized, customer-by-customer accounting of competitive harm because, it contends, the "harm to competition that has occurred is market-wide" and that "all customers in the relevant markets were harmed

Likewise, Procaps will not be able to later pinpoint specific, never-disclosed-before evidence of higher prices, lower output, degraded quality and reduced innovation. The Court realizes that Procaps may later seek to use basic antitrust or economic "principles" to somehow meet its evidentiary burden to show anticompetitive effect. Specifically, Procaps says that Patheon's "interference with the competitive process has disrupted and continues to disrupt the proper functioning of the price and output setting **mechanism** in the relevant markets and its *anticipated* expert testimony that this disruption, based on well-established economic **principles**, has inevitably, predictably and inexorably led to adverse price and output effects as compared to the "but for world." [ECF No. 709, p. 3, quoting original and supplemental interrogatory answers (emphasis supplied)]. That legal approach (i.e., providing a theory which relies on principles but not specific evidence of actual effects) may well work or it may be legally insufficient.

To the extent that Procaps relies upon "anticipated" expert testimony, rather than information already disclosed in the original and supplemental interrogatory answers, **Procaps must provide detail about the "general principles" it will be relying upon,** however, including an explanation in an expert witness report (assuming that the expert is relying on one or more of the general principles). It must do so in sufficient

---

by the withdrawal of the Banner assets and the resulting exclusion of Procaps through the Collaboration." [ECF No. 704-1, non-confidential portion of sealed supplemental interrogatory answers filed under seal].

time to permit Patheon to adequately prepare to take the deposition of the expert (or experts) who are expected to advance the principle-based theory. So, in one respect, this is an order compelling Procaps to provide a second supplemental interrogatory answer, though it does not expressly grant the motion at issue because the Undersigned is not issuing the requested show cause order.

At the risk of being redundant, the Court underscores the critical point that Procaps' view and its litigation position may have far-reaching consequences. Having opted to rely, at least in part, on economic theory and antitrust assumptions, instead of actual evidence of actual effects, Procaps must understand that its strategy will surely generate consequences. If the law supports Procaps' view, then its failure to provide sufficient amounts of precise evidence and specific illustrations of detrimental, actual effects will not prove fatal. But if the law is exactly what Patheon says it is, then Procaps' "we've-disclosed-enough," "we're-relying-on-general-principles," "we're-not-providing-more-specific-evidence-in-discovery"   and   "we-have-no-more-facts-to-provide" approaches may be fatal or significantly damaging to its case.

The Court is not finding or even suggesting that Procaps is in fact providing misleading interrogatory answers by purposefully not providing evidence-filled interrogatory answers. The Court has reviewed the interrogatory answers and understands that Procaps has provided extensive, multi-page answers which try to explain why specific evidence is **not available**. For example, Procaps' supplemental

answer to interrogatory 6 is more than six pages long. It explains that it has only limited knowledge about the identity of customers and potential customers in the relevant markets because of "the nature of its role during the Collaboration and due to its substantial foreclosure from the relevant markets as a result of the market division."

So it may well be that Procaps simply cannot provide additional discovery about the specific evidence which supports its claim because it just does not have the evidence and cannot obtain it.  If that is the reality, then Procaps is not engaged in discovery abuse. But its inability to provide more-detailed discovery creates two main consequences: (1) it may not later rely on new evidence not previously disclosed (assuming Patheon requested it in discovery), and (2) it might not be able to sustain its burden to prove anticompetitive effects. Time (and the inevitable further legal briefing) will tell.

**DONE AND ORDERED** in Chambers, in Miami, Florida, May 12, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record
John Barkett, Special Master

11