**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-24356-CIV-GOODMAN**

**[CONSENT CASE]**

PROCAPS S.A.,

      Plaintiff,

v.

PATHEON INC.,

      Defendant.

_____/

<u>**ORDER ON PATHEON'S MOTION TO CANCEL MEDIATION**</u>

Does a plaintiff violate some type of purported requirement to mediate in "good faith" when it fails to respond to a defense request for a current settlement demand before scheduling a court-ordered mediation? If it does, then should it cause a court to cancel a mediation? And even if the failure to respond does not equate to bad faith or a lack of good faith, should the Undersigned use it as a ground to cancel the Court-ordered mediation, on the basis that mediation would be a waste of time?

These are the basic questions generated by Defendant's Motion for an Order Canceling the Mediation [ECF No. 715]. In a nutshell, Defendant Patheon, Inc. ("Patheon") contends that Plaintiff Procaps S.A. ("Procaps") is "show[ing] an unwillingness to mediate in good faith" because it steadfastly refused to give Patheon a current demand and would not even state "whether it would *ever* do so." Therefore, Patheon argues, the mediation would be a waste of time and should be canceled.

Procaps objects to the motion and says it *is* acting in good faith and is looking forward to the mediation. [ECF No. 717].

Neither the local rules nor this Court's mediation requirement (in the trial scheduling order [ECF No. 655]) requires parties to mediate "in good faith." Although the applicable order and local rule require parties and representatives with full settlement authority to *attend* the mediation, there is no specific requirement in this case that the parties mediate in good faith, nor is there an express sanction provided for mediating "in bad faith" or for failing to mediate in good faith.

The concept of mediating in good faith, while not a specific requirement in this case, is sometimes a requirement in other cases. Indeed, many states and district courts specifically mandate that parties participate in good faith in court-ordered mediation. But the good faith concept can at times be an inherently vague and subjective notion which would be difficult, if not impossible, to reasonably and logically enforce in practice in situations similar to the one presented here.

To be sure, a trial court can sanction a party for violations of **objective** mediation requirements, such as: (1) not attending a court-ordered mediation, (2) not having a representative with sufficient settlement authority attend the mediation, (3) failing to submit a court-required written mediation summary, (4) leaving a mediation after a few minutes (or some other inadequate amount of time), and (5) failing to timely give notice before a court-required mediation that it did not intend to make a settlement offer at a

mediation. Those circumstances might all be deemed a failure to mediate "in good faith." But those scenarios all involve objective conduct and specific rules (e.g. an attendance requirement), which are quite different than the situation in Patheon's motion, which is not based on an alleged violation of a particular, objective rule.

In the Undersigned's view, in the absence of a specific statute, rule of civil procedure or local rule: (1) a court should not require or pressure parties to make an actual offer at mediation; (2) a party is allowed to **not** make *any* offer when attending a court-required mediation; (3) a court should not obtain confidential information about the specific settlement offers made at a mediation in order to determine if a party mediated "in good faith;" (4) a court should not evaluate an offer made at a mediation and decide whether it was too high or too low to constitute a "good faith" offer; and (5) a party required by a judge to attend mediation can be directed to, before the mediation, discuss in general whether it has a settlement *position* or if it will make an offer -- but should not be compelled to actually *have* a specific offer which includes a precise dollar figure or a dollar range (or to disclose the particulars even if they exist).

The parties can certainly be *encouraged* to exchange detail-filled offers and positions before a court-mandated mediation and can likewise be urged to make offers at the mediation. But the Undersigned is extremely hesitant to mandate such measures under the nebulous umbrella that these steps are required for a "good faith" participation in mediation. And the Undersigned will not deem a refusal to provide a

pre-mediation settlement demand to be a lack of good faith when there is no statute, rule, local rule or order which requires it in this case.

The Court does not in any way consider Procaps' failure to provide its latest settlement demand as a violation of an unwritten requirement that parties mediate in good faith, and the Undersigned therefore will not cancel the mediation. The Undersigned therefore **denies** the motion.

It is not atypical for parties to advise the Court or the mediator that a case will "never settle" -- but then it does. In addition, parties often assert wildly unrealistic demands before mediation, which, in practical terms, means that the competing demands are sometimes completely unhelpful because they are not remotely objective and because they are designed to primarily promote purely strategic agendas. Having knowledge about a party's latest settlement demand *migh*t be helpful (if it is realistic) to know before a mediation, but a failure to provide one without a specific requirement to do so should not be deemed a failure to mediate in good faith.

The reasoning underlying this decision is outlined below:

**<u>Factual Background</u>**

In January 2012, Procaps and Patheon entered into a Collaboration Agreement to develop and market a brand of softgel products called "P-Gels." [ECF No. 565, pp. 6-7]. A few months later, Patheon acquired Banner Pharmcaps Europe B.V. ("Banner"), a Procaps competitor. [*Id.*, at p. 29]. Procaps then filed this action, alleging that the Banner

4

acquisition rendered the Collaboration Agreement illegal under federal and state antitrust and competition laws because Procaps and Patheon will become horizontally-situated competitors in the softgel market. [ECF Nos. 1; 21, p. 3]. In counts I-III of its complaint, Procaps sought equitable and monetary damages under the Sherman Act, 15 U.S.C. § 1. In count IV, Procaps claimed a Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") violation. And, in count V, Procaps sought damages for common law unfair competition.

Both parties moved for summary judgment; Patheon for full summary judgment and Procaps for partial summary judgment. [ECF Nos. 332; 334]. The Court denied in large part the contested aspects of the summary judgment motions. As to the antitrust claims (counts I-III), the Court granted Procaps' motion that the interstate commerce requirement was met (a point which was not in dispute). The Court, however, denied the remainder of both parties' motions on these claims and found that the rule of reason analysis, rather than the *per se* analysis, applies to the antitrust claims. As to the FDUPTA claim, the Court denied in large part Patheon's summary judgment motion on this claim for the same reasons articulated in its antitrust analysis. But the Court granted Patheon summary judgment on count IV for any recovery theories other than the section 1 antitrust claim. Finally, the Court granted Patheon summary judgment on count V, the common law unfair competition claim.

The parties attended mediation in April 2014 but reached an impasse.  The Court later issued a new trial scheduling order, which includes a mediation requirement. The trial scheduling order [ECF No. 655] requires the parties to mediate at least 70 days before the special set November 16, 2015 trial date. Therefore, the parties must complete mediation by the end of the first week of September 2015.

The litigation has been, to use a diplomatic term, *energetic*.

Procaps is seeking more than $300 million in treble damages under the antitrust laws. Filed on December 10, 2012 [ECF No. 1], the lawsuit has (as of today) generated 730 docket entries.[1] Many of those entries contain requests for sanctions or for fees, and they often describe the opposing party or opposing counsel in harshly negative terms. The two lead attorneys appear to genuinely and strongly dislike each other.  Suffice it to say, opposing counsel have likely not been sending each other holiday greeting cards since the lawsuit was filed. The Undersigned notes, from a review of emails which are frequently attached to motions and memoranda or otherwise submitted to the Court, that the dislike appears to have spread to other trial team members. The Court has reviewed myriad emails in which counsel attack each other and otherwise sling mud and generally adopt an unpleasant, accusatory tone.

---

[1]      According to the Clerk's Office, as of docket entry 728, the record consists of 15,545 pages.

So it is no surprise that the parties and their lawyers are now fighting about an upcoming mediation, where they are supposed to *cooperate* to pursue a settlement for their clients' collective best interest.

The parties have now filed motions attacking each other for conduct related to purported mediation positions and statements contained in documents filed in connection with the upcoming mediation and to Patheon's efforts to cancel it. The parties filed five submissions in three days concerning Patheon's earlier motion to cancel the mediation.

Patheon began the recent flurry of mediation-related issues by filing the instant motion to cancel mediation. In the motion, Patheon outlined the relevant (at least from its perspective) mediation history:

In August 2014, after the Court entered its summary judgment order, Procaps asked Patheon to return to mediation. Patheon asked for a current settlement demand, but Procaps refused to provide one, and instead asked Patheon to provide one.  Patheon did so two days later, on August 14, 2014, in a written settlement offer. Procaps never responded but filed a motion to compel a return to mediation, which the Undersigned denied [ECF No. 609].

On May 14, 2015, Patheon again asked Procaps for a current settlement demand, "in order to advance [the second] mediation" required by the trial scheduling order. Procaps refused, and Patheon now says that Procaps contended that it had *already* made

specific proposals but refused to identify them. Patheon contends that it does not know what specific proposals Procaps is referring to, but, in any event, the offers must be outdated because Procaps made them more than a year ago (before the Court ruled on the competing summary judgment motions). Patheon advises that it repeated its request for a current demand and gave notice to Procaps that it would seek Court intervention if Procaps did not provide a current demand. According to Patheon, Procaps' only response was that it did not consent to such a motion (but did not give any additional information, and failed to say whether it would ever provide a current demand).

Patheon and its counsel say they have never before encountered a plaintiff who refused to provide a current settlement demand. They say a current demand is easy for Procaps to provide, and could be given in a simple, short sentence -- such as "our current demand is X dollars." Patheon argues that it is **entitled** to know Procaps' demand before attending the mediation and predicts that a mediation would not be productive without such advance information.

Patheon puts these facts together to support its conclusion that "Procaps is not interested in mediating in good faith." It theorizes that perhaps Procaps hopes to "use the high cost of a second mediation as some kind of leverage." Noting that mediation is "very expensive," Patheon argues that it should not be required to incur the high cost of mediation under these circumstances.

The Court directed Procaps to respond, provided a deadline and prohibited Patheon from filing a reply absent specific authority to do so. [ECF No. 716].

In response to Patheon's motion, Procaps describes its position as merely asking that Patheon *begin* any pre-mediation settlement discussions because Procaps has provided numerous proposals (all deemed "reasonable") and Patheon has not. Procaps' response [ECF No. 717] provides additional details about the settlement history: it says that Patheon never "offered a penny" to settle the case, either before or since the first mediation. It describes Patheon's so-called good faith offer in August 2014 as a demand that Procaps make a substantial payment to *Patheon* and release Patheon from all liability under the Collaboration Agreement.[2]

Procaps also represented that it looks forward to the mediation.

Procaps attached two exhibits to its response, one of which is an email from Patheon's counsel to Procaps' counsel mentioning a dollar figure (covered with a box, to hide the actual number) which Procaps would need to pay to settle the lawsuit it brought. [ECF No. 717-1].

Later the same day, Procaps filed a motion [ECF No. 718] to replace the exhibit, explaining that Patheon informed it that the exhibit can be "manipulated by removing the redaction boxes." Procaps' counsel explained that he tried to remove the redaction

---

[2]     Procaps explains that this historical summary does not violate the mediation confidentiality rule because the offers were not made during the mediation itself. Procaps noted that it did not reference any communications made during the mediation in its response.

boxes but was unable to do it but nevertheless sought to replace the exhibit, in an abundance of caution.

The next morning, Patheon responded [ECF No. 719] to the motion. Patheon complained about the submission because it provided only "a snippet" of the settlement discussion story -- and because the material Procaps attempted to redact was not in fact redacted.

Patheon criticized the computer skills of Procaps' attorneys, noting that "there is no excuse" for Procaps' failure to use the correct Adobe Acrobat tool because "Procaps has a well-established Information Technology Department and lawyers who tout their experience in this field." Patheon cited cases in which counsel was sanctioned for failure to redact confidential information, but it did not itself seek sanctions. Patheon also faulted Procaps for its purportedly misleading description of the events leading up to the motion to replace exhibits, branding its explanation as "mind bending." Despite all this negative rhetoric in the response, Patheon did not actually *oppose* the motion in any way. In fact, it was Patheon who, for all practical purposes, caused the motion to be filed by demanding that Procaps "immediately rectify this improper redaction and disclosure of privileged material."

The Court granted [ECF No. 720] the motion to replace exhibits approximately three hours later.

But, less than four hours later, Procaps filed [ECF No. 721] a motion to strike Patheons' response to the already-granted motion to replace the exhibit (or for leave to file a reply -- to a motion which had already been granted).

Procaps' motion to strike argues that Patheon's response to Procaps' ministerial motion to replace an exhibit is actually a disguised reply in further support of its motion to cancel the mediation. Noting that the Court did not allow Patheon to file a reply to the then-still-pending motion to cancel mediation, Procaps contends that Patheon's response (to the motion to replace the exhibit) violates the no-reply order "under the guise" of responding to a routine procedural motion. Procaps also argues that Patheon's purportedly improper response makes serious allegations about Procaps' ineffective redactions and also makes "unsubstantiated and misleading allegations about Procaps' settlement offer."

Early the next afternoon, Patheon responded [ECF No. 722] to Procaps' motion to strike (or to file a reply). It denied that its response is actually a reply memo masquerading as a response. It denied misleading the Court about Procaps' settlement offers, described Procaps' argument to the contrary as "illogical," and pointed out that the Court would agree with its description of the competing demands as evidencing a "monumental gap" if it saw the demands.

So. This was quite the flurry of activity. As noted earlier, the litigation here is *energetic*, to say the least.

In any event, the Court denied [ECF No. 723] Procaps' motion to strike. The Undersigned will now further discuss the motion to cancel the mediation, which raises meatier issues than the procedural skirmishing described above.

**Applicable Legal Principles and Analysis**

A court has the inherent power to direct parties to produce individuals with full settlement authority at pretrial settlement conferences and mediations, and can use its inherent power to enforce mediation-related orders. *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *In re Novak,* 932 F.2d 1397, 1407 (11th Cir. 1991). Pursuant to Federal Rule of Civil Procedure 16,[3] Local Rule 16.2 authorizes the court to refer parties to mediation and requires that "all parties and required claims professionals (e.g., insurance adjusters) shall be physically present at the mediation conference" with "full authority to negotiate a settlement." The local rule also provides that "the mediator shall report non-attendance to the Court" and further specifies that "failure to comply with the attendance or settlement authority requirements may subject a party to sanctions by the Court." *See generally Those Certain Underwriters at Lloyds, London v. GMC Land Services, Inc.*, No. 06-60325-CIV, 2007 WL 3306964 (S.D. Fla. Nov. 6, 2007).

---

[3] Federal Rule 16(a) authorizes a court to order the attorneys to appear for a pretrial conference for the purpose of, among other things, "facilitating settlement." Subsection (f)(1)(B) of Rule 16 authorizes a court to issue a sanctions order if a party or its attorney "is substantially unprepared to participate – or does not participate in good faith – in the conference," which refers to, among other conferences, settlement or mediation conferences (i.e., conferences for the purpose of "facilitating settlement").

The local rule's language concerning settlement conference-related sanctions mirrors in substantial part the sanctions provisions of Federal Rule 16(f) -- sanctions for failing to appear. Although Rule 16(f) authorizes sanctions for not participating in "good faith," **it does not define good faith** and virtually all of the cases awarding or affirming sanctions concern parties who did not attend a settlement conference/mediation or who failed to have a representative with sufficient authority. *See e.g., Lucas Auto. Eng'g, Inc. v. Bridgestone/Firesone, Inc.,* 275 F.3d 762 (9th Cir. 2001) (affirming sanctions award because the plaintiff's president failed to attend a mediation session); *Empire, Inc. v. Wal-Mart Stores, Inc.,* 188 F.R.D. 478 (E.D. Ky. 1999) (awarding sanctions against defendant for unilaterally canceling the settlement conference and not having a representative at the settlement conference).

In other words, most of the enforceable requirements concerning mediations and settlement conferences concern *objective* criterion (such as attending the mediation, bringing an appropriate representative with sufficient settlement authority), not subjective concepts, such as whether an offer is a good faith offer or whether a party can refuse to make an offer and not run afoul of a good faith requirement. Thus, Federal Rule 16(f) authorizes a court to impose sanctions if a party fails to appear at a scheduling or other pretrial conference -- an objective obligation. But neither the text of the Rule itself nor the Advisory Committee Notes define, explain or provide any

13

guidance about the provision giving a court authority to issue sanctions for "not participat[ing] in good faith."

Although courts expect litigants and their counsel to be prepared when they attend mediation and may require parties and their lawyers to "discuss settlement options before the start" of mediations and settlement conferences, this "does not mean, of course, that parties and their attorneys must be willing to settle a case." *Novak*, 932 F.2d at 105 n. 15 (noting that "the purpose of Rule 16 [of the Federal Rules of Civil Procedure] is not 'to impose settlement negotiations on unwilling litigants'"). Indeed, as explained in a case cited by the Eleventh Circuit in *Novak*, Rule 16 "was not designed as a means for clubbing the parties – or one of them – into an involuntary compromise." *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir. 1985).

Unlike mediation requirements imposed by some states and some district courts,[4] the provision requiring mediation here (found in the trial scheduling order, ECF No. 655) does **not** require the parties to mediate "in good faith." In addition, there is no express provision requiring the parties to exchange offers before the mediation or to actually *have* or *disclose* a substantive offer before or at the mediation.

---

[4]     A 2002 study noted that at least 22 states and 21 federal district courts had statutes or rules imposing a duty to mediate in good faith. Sarah R. Cole et al., <u>Mediation: Law, Policy and Practice</u>, § 9:6 (database updated December 2014) (citing John Lande, *Using Dispute Systems Design Methods to Promote Good-Faith Participation in Court-Connected Mediation Programs*, 50 UCLA L. REV. 69, 79 (2002).

The American Bar Association's Section on Alternative Dispute Resolution passed a Resolution on Good Faith Requirements for Mediators and Mediation Advocates in Court-Mandated Mediation Programs in August 2004. The resolution acknowledged that rules authorizing sanctions are "needed to ensure attendance at mediation" but that the rules must "respect litigants' and lawyers' broad discretion about how they want to negotiate in mediation." The resolution explained that any rules must comply with statutes and rules "protecting the confidentiality of mediation communications." The Section noted that sanctions should be imposed "only for violations of rules specifying **objectively-determinable** conduct," such as "the failure of a party, attorney or insurance representative to attend a court-mandated mediation for a limited and specific period or to provide written memoranda prior to the mediations." (emphasis supplied). The Section's Resolution rejected the imposition of a good faith obligation and noted that rules permitting courts to sanction "a wide range of subjective behavior create a grave risk of undermining core values of mediation and creating unintended problems."

Courts analyzing a party's conduct vis-à-vis mediation sometimes make distinctions between the mere failure to make an offer, which is typically not sanctionable, and the failure to timely **advise** the court and the parties of a no-offer position before the mediation. *Compare Dawson v. U.S.,* 68 F.3d 886, 897-98 (5th Cir. 1995) (reversing a sanctions award because the trial court effectively -- and incorrectly --

made a settlement offer part of the requirement that the parties engage in good faith settlement efforts) *with Guillory v. Domtar Indus., Inc.,* 95 F.3d 1320 (5th Cir. 1996) (affirming sanctions award because a party's failure to warn that it did not intend to settle before a settlement conference violated the "good faith" participation requirement of Federal Rule 16).

The Undersigned finds *A.T. Reynolds & Sons, Inc.,* 452 B.R. 374, 381-83 (S.D.N.Y. 2011) to be a particularly comprehensive and persuasive analysis of the rule or philosophy that parties are obligated to mediate "in good faith." The district court in that case reversed a bankruptcy judge's order sanctioning Wells Fargo for failing to participate in mediation in good faith. The sanctions order, in effect, found that Wells Fargo improperly entered the mediation with the position that it would not make a settlement offer, a view the bankruptcy judge equated to failing to engage in adequate risk analysis. In reversing the sanctions award, the district court rejected a subjective approach. It also made several observations and expressed concerns which the Undersigned finds insightful, helpful and persuasive:

1.      Courts have not developed any clear standards for evaluating good faith in court-ordered mediations.

2.      Nevertheless, courts typically interpret good faith requirements narrowly, and limit them to compliance with orders to attend mediation, to provide pre-mediation memoranda and produce representatives with sufficient settlement authority.

3.      A good faith standard imposes several problems: (a) good faith is an intangible and abstract quality with no technical meaning or statutory definition; (b) inquiring into good faith is inconsistent with the confidential nature of mediation -- but a court must investigate and endanger the mediation's confidentiality if a bad faith allegation arises; and (c) inquiring into a party's mediation conduct, backed by a sanctions threat, may exact a coercive influence on the parties to settle.

4.      It is well-settled that a court cannot force a party to settle, nor may it use pressure tactics designed to coerce a settlement.

5.      Although a court may certainly require parties to appear for mediation or a settlement conference, it may not coerce a party into making a settlement offer at that mediation.

6.      There is no meaningful difference between coercion of an offer and coercion of a settlement; if a party is forced to make a settlement offer in order to avoid sanctions for failing to act in good faith and the offer is accepted, then a settlement has been achieved through coercion.

7.      A party is within its rights to adopt a "no-pay" position.[5]

---

[5]      Although not expressly mentioned by the *A.T. Reynolds* Court, the opposite is also true:  a plaintiff is within its rights to adopt a "no-compromise" position and not budge off its initial settlement demand or the amount prayed for in the Complaint.

8.      "Mediation will only succeed if the parties themselves want it to," and a court's requirement that they mediate in good faith "will not change the mind of a party who believes that settlement is not in their best interest."

9.      Certain disputes are simply not amenable to mediation, and it should be no surprise when efforts to settle them at mediation quickly deteriorate.

10.     The standard for determining adequate participation in mediation is not risk analysis.

11.     A party does not forego risk analysis merely because it determines that it is not liable and adheres to that position at mediation.[6]

Several courts have entered rulings embracing the logic of some or all of the points outlined above. *See generally*, *Hunter v. Prisbe*, No. 1:12-CV-2013, 2013 WL 1246797 (M.D. Pa. Mar. 27, 2013), at *2 ("where a party's conduct consists of simply adopting a fixed, inflexible position in an initial mediation session, and that fixed position is timely communicated to others, sanctions often are not appropriate since sanctions cannot be used as a vehicle for pressing parties to surrender honestly held convictions on the merits of litigation"); *Advance v. Kerr-McGee Chem. LLC*, No. 5:04CV209, 2006 WL 4402359 (E.D. Tex. Mar. 21, 2006) (denying mediation-based sanctions motion filed because defendant failed to extend any settlement offer at the

---

[6]      The converse, of course, is equally accurate: a party may conclude that it is entitled so significant damages and decide to not discount its number as part of its risk analysis.

18

mediation). *See also, Freedom Scientific BLV Grp., LLC v. Orient Semiconductor Elec., Ltd.,* No. 8:13-cv-569-T, 2014 WL 201745 (M.D. Fla. Jan. 17, 2014) (denying sanctions motion accusing party of conducting the mediation in bad faith when the defendant's representative told the mediator that she would not respond to plaintiff's offer and "could not get the authority to do so" and suggesting that appearing at the mediation with a representative is sufficient by itself to satisfy any type of good faith requirement).

In the instant case, Patheon alleges that Procaps' failure to provide its current settlement number demonstrates a lack of good faith and therefore justifies an order canceling the mediation. But there is no requirement that any party provide a pre-mediation settlement number. *See generally Smith v. Bank of Am. Home Loans,* No. 2:11-cv-676, 2013 WL 6477495 (M.D. Fla. Dec. 10, 2013) (denying motion for sanctions for defendant's alleged failure to participate in the mediation in good faith and noting that "there is no requirement that a party disclose its position prior to mediation").

The two cases Patheon cited in its motion are not persuasive and do not compel a different result.

First, Patheon cites [ECF No. 715, p. 2] *Access Now, Inc. v. City of Miami,* No. 02-21413-CIV, 2008 WL 708605, at *2 (S.D. Fla. Mar. 14, 2008), for the proposition that "the parties have an obligation to mediate in a good faith effort to resolve this dispute, and that mediation is not merely a procedural hurdle which must be overcome prior to filing an inevitable motion with the Court." But that case had little to do with

mediation, and the single line quoted is *dicta* unrelated to the core issues before the Court: whether the Court should have granted a motion to enforce a settlement agreement and whether it should have stayed the motion pending the outcome of litigation. The case did **not** involve *how* the parties were required to *act* before, at, or after the mediation.

The Court merely noted, in passing, that the parties had to mediate in good faith, and that issues might be narrowed, if not resolved completely, at the mediation. Therefore, the federal magistrate judge concluded that a potential new motion to enforce the settlement agreement would (if the case did not settle completely at mediation) be more efficient than a stay of the current motion, which might well be partially or substantially outdated. The Court did not state, suggest or even imply what the succinct reference to "good faith" would mean in practice, and it may well be that the court meant nothing more than the standard objective obligations, such as attending the mediation with a representative with sufficient settlement authority.

To the extent that this non-binding case stands for some other type of *subjective* good faith duties associated with mediations, such as making "good faith" offers or not acting in bad faith by refusing to make any offers, the Undersigned finds the case unpersuasive. But, as noted, the quick good faith reference may well be significant of nothing other than a general platitude about mediation, and the Undersigned is not at all convinced that the magistrate judge there intended to include subjective factors

(such as being obligated to respond to a pre-mediation request for an offer) as part of the "good faith" reference.

Second, Patheon cites *Vay v. Huston,* No. 14-769, 2015 WL 791430 (W.D. Pa. Feb. 25, 2015) for the notion that when "the parties indicate they will be engaging in a mediation process, a plaintiff would be proceeding in bad faith if he or she refuses to make a demand for settlement." Although that Pennsylvania federal magistrate judge did in fact use those words in her opinion, there are several other points about the case which are worthy of discussion:

First, the motion concerned a party's purported misbehavior concerning **both** an "early neutral evaluation" ("ENE") and a mediation. In fact, the opinion stresses the failures at the ENE more than the failure to make a demand at the mediation which immediately followed the ENE. Second, the plaintiff also failed to prepare a written statement, as <u>required</u> by the ADR Policies and Procedures adopted by the Board of Judges for the district (i.e., the Western District of Pennsylvania). Third, the plaintiff failed to present medical records or documents relating to her wage loss at the ENE, another violation of the applicable Policies and Procedures, which require the Position Statement to include documents, such as medical reports, to enable the neutral evaluator to review the case before the actual ENE session. Fourth, the judge noted that "the record is confusing at best." Fifth, the Western District of Pennsylvania **requires**

parties to engage in alternate dispute resolution in good faith, a specific, albeit subjective, requirement notably absent in the instant case.[7]

Nevertheless, *Vay* does construe circumstances *involving* the failure to make a demand at mediation to constitute bad faith. This attitude is inconsistent with decisions reached by other federal district court judges and magistrate judges in Pennsylvania, albeit from other districts in Pennsylvania. *See e.g. Day-Lewis v. U.S. Equal Emp't Opportunity Comm'n,* No. 12-2638, 2015 WL 221067, at *3 (E.D. Pa. Jan. 15, 2015) (denying sanctions motion alleging that defendants failed to participate in good faith at the mediation/settlement conference because they failed to increase their settlement offer at mediation and explaining that "each party is **entitled to its settlement position** and it is inappropriate for the court to utilize sanctions to coerce a defendant to surrender its honest valuation of the case") (emphasis supplied); *Adams v. Corrections Corp. of Am.,* No. 1:10-CV-259, 2011 WL 4974198, at *3 (M.D. Pa. Oct. 19, 2011) (denying sanctions motion for alleged mediation misconduct and stressing that "adopting a

---

[7]   The answer to question 19 of the Western District of Pennsylvania's Questions and Answers page (on the district's ADR Program Information Page) proclaims that "good faith participation is essential to the use of this program." Although it also explains that a party who reasonably believes that the other party is not participating in good faith should "address that issue to either the judge assigned to their case or the ADR judge," it does not define good faith or bad faith. In addition, Procedure 2.4, entitled "ADR Judge," provides: "If a party files a motion with the court alleging matters such as **bad faith** or requesting enforcement of a settlement reached as a result of the ADR process, the assigned judicial officer may adjudicate the motion or may elect to request another judge to do so." (emphasis added). "Bad faith" is not defined, and it is therefore unclear whether a failure to make an offer at a mediation is bad faith.

**fixed, inflexible position** in settlement talks" is perfectly appropriate when the position is timely communicated) (emphasis added).

Several of the opinions from Pennsylvania district court judges in the other districts (i.e., not the Western district) cite with approval to *Kerr-McGee Chem. LLC,* 2006 WL 4402359, where the court denied a sanctions motion against defendant for failing to make any settlement offer during the mediation. But, even if *Vay* is not fully distinguishable, and recognizing that it frowns upon a failure to make an offer because it supposedly violates some perceived subjective belief about good faith/bad faith offers, the Undersigned will not follow *Vay* for three reasons: (1) it is a non-binding, out-of-circuit trial-level opinion, (2) it is arguably inconsistent with the Eleventh Circuit's opinion in *Novak* (where the court upheld a criminal contempt adjudication against an insurer's representative for failing to appear at a settlement conference but noted that parties and their attorneys need not be willing to settle a case when attending court-required settlement and mediation), and (3) I simply disagree with the analysis and conclusion. *See generally* John Lande, *Why a Good-Faith Requirement is a Bad idea for Mediation*, 23 Alternatives to High Cost Litig. 1 (2005).

Although the Undersigned could have required the parties to discuss their settlement positions before the mediation (which has not even been scheduled yet), I did not impose that obligation. But even if such a requirement had been imposed, the Undersigned would have required only a *discussion* -- not an obligation that a specific

offer or demand be provided under threat of being deemed a bad faith mediation party. The Court appreciates the fact that Patheon, in its motion, has advised the Court that Procaps appears unwilling to be the first party to disclose its latest settlement position before the actual mediation. But this information is hardly sufficient to convince me to cancel the mediation.

Procaps may have strategic reasons to not reveal its settlement number before the mediation.  If so, that does not then mean that Procaps is not acting in good faith. As the Fifth Circuit Court of Appeals explained in *Dawson*, 68 F.3d at 897, "parties may have valid and principled reasons for not wishing to settle particular cases. These reasons may not be based necessarily on the merits of a particular case[.]" Here, the Undersigned does not believe that Procaps' actual agenda is to *not* settle the case. To the contrary, it seems clear that Procaps very much would like to resolve the case at mediation. However, it may have reasons for not now responding to Patheon's request to disclose its current settlement number. Perhaps it wants to wait until it learns whether the Court will permit it to obtain additional discovery before giving Patheon a pre-mediation settlement demand.[8] Or maybe it wants to await a ruling on its recently-filed motion [ECF No. 726] to substitute or join DPx Holdings B.V. as a party defendant.

---

[8]    Procaps recently filed a motion [ECF No. 724] for leave to take additional depositions, based on additional documents produced by a third party after motion practice in the District of New Jersey, which ruled on issues arising from Procaps' service of a subpoena.

Moreover, even if Procaps had responded, the response might not have been useful. For example, if Procaps had advised Patheon that its current offer is $350 million, then Patheon may have deemed the response negatively -- but that would not justify a motion to cancel the mediation on the grounds that Procaps was not acting in good faith.[9]

The Undersigned has participated in, presided over and/or observed several mediations over the past 32 years and this experience informs the conclusion that cases can and do settle even when the parties and their attorneys predict to the contrary. By way of example, the Undersigned has personal knowledge of cases which settled at court-ordered mediations when (1) both parties filed pre-mediation motions to be excused from mediating because mediation would be "futile"; (2) a defendant filed a motion to cancel a mediation because it represented that it would never pay anything to resolve a lawsuit it deemed frivolous; (3) a plaintiff threatened to walk out of the mediation because the other party's offer was "insulting"; (4) a plaintiff began the mediation by announcing he would not settle for less than one million dollars but ultimately settled for less than $20,000; (5) a plaintiff demanded at the mediation that the mediation be canceled because the defense had not brought a representative with sufficient settlement authority; (6) a defendant announced at the start of mediation that

---

[9]    The $350 million figure is purely hypothetical, and the Undersigned has no interest in learning what specific dollar figures were exchanged before the second mediation and is precluded from learning about actual offers made during the confidential mediation.

25

the opposing party should be sanctioned because his attorney just handed defense counsel new documents responsive to outstanding discovery; and (7) a party griped about the mediator and suggested the mediation be rescheduled because his attorney just learned that the mediator was "friendly" with opposing counsel.

So a plaintiff's refusal, months before a mediation occurs, to provide a specific dollar figure for its latest settlement demand is not particularly significant, at least not to the Undersigned. To the contrary, it is a relatively common type of pre-mediation skirmish or strategic ploy.

In addition, the Court is unwilling to probe the parties' strategies to determine whether a particular mediation-related position constitutes a lack of good faith. Peeling back the layers of a party's comments, positions and/or offers before and during mediation would be a slippery slope indeed. Maybe Procaps did not respond to Patheon's request for a current settlement demand because its strategy was to send some type of message. Maybe Patheon's strategy in filing the motion was to demonstrate to Procaps that it was confident in its last settlement posture. Maybe both parties had *multiple* strategies. Who knows? Trying to figure out if a strategy is permissible or an indication of bad faith would, in the Undersigned's view, be an impossible task, riddled with risk and uncertainty.

The Undersigned is not persuaded by Patheon's other argument that the mediation should be canceled in order to save the parties money. Yes, mediation is, to

26

use Patheon's verbiage, "very expensive." However, the Undersigned does not accept Patheon's argument that perhaps Procaps "hopes to use the high cost of a second mediation as some kind of leverage." The parties have most likely incurred **millions of dollars** in attorney's fees and costs. The added cost of a mediation would pale in comparison to the fees and costs incurred to date.  Indeed, the parties spent thousands of dollars in attorney's fees litigating over a three-page motion to cancel the mediation, so the expenditures associated with travel and preparation costs are not, on balance, significant.

Moreover, what type of leverage would be obtained?  Patheon can't be *forced* to settle a case at mediation, and it seems extremely unlikely that Patheon would dramatically change its overall settlement posture just to avoid the comparatively paltry additional mediation costs. Is Patheon suggesting that Procaps' hidden strategy is to pressure Patheon into settling this case against its wishes in order to avoid the additional mediation costs? If so, the logic of that position is unclear to the Undersigned.

Procaps is free to provide a pre-mediation settlement figure if it wishes.  Or it is free to *not* give out that information. The same holds true for Patheon. As long as the parties and their representatives appear at mediation with adequate settlement authority, as required, the Court will not further analyze the subjective type of mediation-related conduct. They are free to make reasonable offers, to not make offers,

27

to make offers the opposing party deems illogical or to stand on an offer and not make counter-offers. *Cf. Dawson*, 68 F.3d at 898 (finding that district court's alternative reason for sanctions, that a party's representatives did not attend the settlement conference with an "open mind," was clearly erroneous).

The Court appreciates that the parties have been vigorously litigating this lawsuit since December 2012 and are involved in a full-scale litigation war. But even Sun Tzu, the famous Chinese military general (544 – 496 BC) who wrote the often-quoted *The Art of War*, understood the importance of ending a war: "In peace, prepare for war, in war, prepare for peace."

The parties will be able to comply with their obligation to be prepared for potential peace flowing from a court-ordered mediation by attending the mediation with appropriate representatives with adequate settlement authority. Because the Court has not imposed any other rules (other than requiring Patheon to have a particular category of representative attend), the parties need not do anything further. As outlined above, the Undersigned does not require parties to mediate "in good faith" for the myriad reasons discussed here, but, even if I did, the requirement would be limited to the objective requirements of attending with a representative and remaining for a sufficient time. The Undersigned *hopes* that the parties engage in pre-mediation settlement discussions, but this attitude does not translate into an obligation for the

parties. Moreover, the Undersigned does not conclude that a mediated settlement is doomed if the requested information is not provided before the mediation.

**Conclusion**

The Court denies Patheon's motion to cancel the mediation.  The Court does not agree that Procaps' failure to respond to a request for a current settlement number before mediation constitutes bad faith or a failure to mediate in good faith. Instead, the Court is still requiring the parties to mediate, and passes along the following musical comment as a potentially helpful observation: "All we are saying is give peace a chance."[10]

**DONE AND ORDERED** in Chambers, in Miami, Florida, June 4, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record
John Barkett, Special Master

---

[10]     From "Give Peace a Chance," a song written by John Lennon and released as a single by the Plastic Ono Band (Apple 1969).