# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 12-24356-CIV-GOODMAN

### [CONSENT CASE]

PROCAPS S.A.,

      Plaintiff,

v.

PATHEON INC.,

      Defendant.

_____/

## ORDER ON PATHEON'S MOTION TO COMPEL
## RE-REVIEW AND RE-DESIGNATION
## OF "HIGHLY CONFIDENTIAL" DOCUMENTS

*"Why are we keeping secrets / Why don't we both come clean and begin"*

-    Christine McVie, from the "Keeping Secrets" song[1]

Defendant Patheon Inc. ("Patheon") wants the Court to require Plaintiff Procaps S.A. ("Procaps") to re-review and re-designate "highly confidential" documents so that Patheon employees, and not merely its attorneys, may see material Procaps has designated as being worthy of the greatest protection afforded under an agreed Confidentiality Order [ECF No. 86]. Patheon advises that Procaps designated 95% of its forensically-produced documents (141,525 of 148,636) as "highly confidential" and contends that this mass designation was not done in good faith and is generating undue

---

[1]    From the "Christine McVie" (Warner Bros., 1984) album, the second solo effort by the Fleetwood Mac vocalist and keyboardist.

and severe prejudice. In its motion to compel re-review and re-designation [ECF No. 804], Patheon asks the Court to permit it to use all documents without restriction, subject only to Procaps' ability to in good faith re-designate documents as either "confidential" or "highly confidential" within 5 calendar days.

In addition, Patheon wants Procaps to redact portions of its revised supplemental interrogatory answers and its damages expert's report so that Patheon's employees may review them.

Not surprisingly, Procaps disagrees and opposes [ECF No. 813] the relief requested in the motion. It argues that its designations *were* made in good faith. It concedes that there is over-designation, but it contends that the unnecessary designations were innocuous mistakes which were made because the review of forensic production was done on an expedited basis. Procaps argues that re-review and re-designation are "unnecessary, burdensome and prejudicial, if not impossible." It says the circumstances do not merit the requested relief, and it offers two alternatives.

In its reply [ECF No. 815], Patheon argues that Procaps (1) concedes the over-designation and does not challenge the statistics, (2) cites no law contradicting the authority which requires re-designation under these circumstances, (3) inappropriately tries to blame the vendor who performed the initial document review and designation evaluation, (4) unpersuasively relies on the tight deadline it had in which to review, designate and produce ESI, (5) incorrectly refuses to agree that two in-house attorneys

2

may review material after the level of classification is downloaded, (6) will not need to re-review documents because (Patheon suggests) it never reviewed them in the first place (and, instead, marked nearly all documents as highly confidential to *avoid* the review), and (7) should pay almost $35,000 for the fees and costs incurred in connection with the motion.

For the reasons outlined below, the Court **grants** the motion. It is difficult to believe that 95% of the documents produced in a court-ordered forensic examination of Procaps' electronically stored information ("ESI") are all actually worthy of the "highly confidential" designation. Procaps *has* over-designated documents -- a conclusion it now acknowledges -- but there is not much time in which to provide any meaningful relief. Patheon may use **all** the recently-produced (from the forensic analysis by Setec) documents, even if marked "confidential" or "highly confidential," unless Procaps re-designates in good faith documents into one of these two categories by Thursday, July 30, 2015 at 5:00 p.m., EST. In addition, because Procaps' sweeping designations were not permitted by the Stipulated Confidentiality Order and were actually a misuse of the defined designations, Procaps will also be required to pay $25,000 in attorney's fees and costs. This is the natural consequence (under Federal Rule of Civil Procedure 37) of being on the losing side of a discovery motion without substantial justification.

**Factual Background**

Procaps is a Colombia-based company that develops and manufactures softgel capsules. It entered into a Collaboration Agreement with Patheon, which provides commercial manufacturing and development services to the pharmaceutical industry. Under the Collaboration Agreement, the parties manufactured and sold softgels through a unified brand, and agreed to share profits, expenses and the risk of failure. Even though the Collaboration Agreement allocated markets and customers among horizontal competitors, the parties agree that this arrangement was lawful because it brought a new competitor and a new product into the Territory and Field.

The parties' collaboration did not go well, and Patheon, without advising Procaps, began to again consider entering into a strategic relationship with Banner Pharmcaps Europe B.V., a competitor of Procaps that specialized in the research, manufacture and distribution of softgel products. Patheon ultimately acquired Banner without Procaps' approval. Procaps believed the Collaboration Agreement had morphed into an illegal horizontal restraint on trade as a result of Patheon's acquisition of Banner. Procaps filed a federal court lawsuit against Patheon in December 2012. In its current form, the Complaint seeks more than $300 million in treble antitrust damages against Patheon under a "Rule of Reason" evaluation.

In July 2013, the Undersigned entered a Stipulated Confidentiality Order [ECF No. 86] which the parties submitted. For purposes of this Order, two definitions in the

stipulated order are important: "Confidential Information" and "Highly Confidential Information."

"Confidential Information" is defined as discovery material "containing information that either: (i) has not been made public and the Producing Party would not make public in the ordinary course of its activities; (ii) the Producing Party is under a preexisting obligation to a non-party to treat as confidential; (iii) the Producing Party has good faith been requested by the Receiving Party to so mark on the ground that the Receiving Party considers such material to contain information that is confidential or proprietary to the Receiving Party; or (iv) the Receiving Party has in good faith been requested by a Producing Party to so mark on the ground that the Producing Party such material to contain information that is confidential or proprietary to the Producing Party." [sic]. [ECF No. 86, pp. 2-3].

"Highly Confidential Information" is a "**narrow subset** of "Confidential Information," containing **trade secrets** or information of a competitively sensitive nature that would create a **genuine risk of competitive injury** if disclosed to a Receiving Party." [*Id.*, at p. 3 (emphasis added)].

Pursuant to the Stipulated Confidentiality Order, "Confidential Information" may be disclosed to, among other recipients, counsel and "any employee of a Party who Counsel believes in good faith has a need to access the information solely for the purposes of this Action." But "Highly Confidential Information" **may not be disclosed**

**to a Party or its employees** (although it may be shown to the party's outside counsel)**.** (emphasis supplied). This type of restriction is often also known as an "attorney's eyes only" ("AEO") limitation.

Section 3 of the Stipulated Confidentiality Order concerns "designation of protected material." Subsections (a) and (b) provide in relevant part: "Discovery Material that the Producing Party believes **in good faith** to contain or constitute" "Confidential" or "Highly Confidential" information may be so designated. [*Id.*, at pp. 4-5 (emphasis added)].

Section 8 of the Stipulated Confidentiality Order provides the procedure for challenging confidentiality designations. [*Id.*, at p. 14]. Any party challenging a designation must first serve notice upon counsel for the producing party within two business days of filing a challenge with the Court. The parties are required to first "attempt to resolve such challenges in good faith on an informal basis," but the "**burden of proof shall be on the Producing Party claiming 'Protected Material'** status for the Discovery Material." [*Id.* (emphasis added)].

In an email leading up to the parties' submission of the proposed Stipulated Confidentiality Order, **Procaps'** counsel made the following points [ECF No. 804-1]: the definition of "highly confidential" would need to "guard against the wholesale marking of documents under that designation," because it would "hamper[] the opposing party from showing such documents to their client for purposes of prosecuting or defending

6

the litigation." Procaps' counsel also noted that "the mere fact that a party designates a document as 'confidential' or 'highly confidential' pursuant to a confidentiality agreement or umbrella order does not, in and of itself, mean that those documents are in fact trade secrets entitled to be protected under either tier."

Approximately a month after the Court entered the Stipulated Confidentiality Order, Procaps filed a motion [ECF No. 96] to require Patheon to re-designate "highly confidential" documents. In the motion, Procaps argued that relief was necessary because Patheon had designated as "highly confidential" more than 35% of its produced documents.

In its motion, Procaps represented that "when the parties agreed to the 'attorney's eyes only' restriction of the Highly Confidential category, they both understood that the Highly Confidential category was to be used **sparingly.**" (emphasis added). Procaps also noted that "overly broad stipulated orders are generally disfavored." It also explained that "an overly broad use of the Highly Confidential category necessarily precludes documents from being shared with the parties to a case, even though they have otherwise agreed to confidentiality and restricted use."

Pursuing a similar point, Procaps reminded the Court that the application of the "highly confidential" category "to specific documents should be limited to information that truly requires highly sensitive protection." Procaps further noted that "overly broad designations hamper counsel's ethical obligation to keep the client informed."

7

Based on these principles, Procaps argued then that Patheon's "abuse of the 'highly confidential' designation is obvious from the percentage of documents so designated" -- 35%. But the parties then reached an agreement that certain documents submitted to the Court as illustrative samples should remain "highly confidential" but that others should be downgraded to confidential or completely de-designated, leaving 49 pages (out of 100 pages submitted under seal for *in camera* review) of "highly confidential" documents still under dispute. Procaps' motion asked that Patheon re-review 8,893 documents.

Part of this first dispute arising from the Stipulated Confidentiality Order concerned the *methodology* of designating -- whether the Producing Party could use a document-by-document methodology or whether a page-by-page approach would be permissible.

Significantly (at least for purposes of the instant motion), the parties agreed "that if one party over-designates in bad faith, **then the burden shifts to the producing party to re-review its designations.**" [ECF No. 121, p. 13 (emphasis added)].

In the September 2013 Order [ECF No. 121] denying as premature Procaps' motion to require re-designation, the Undersigned concluded that the stipulated confidentiality order provides for document-by-document designations. In addition, the Undersigned noted then that the published cases where courts found a lack of good

faith involved percentages of highly confidential documents significantly greater than 50%.

The Court noted then (in September 2013) that it was too early to determine whether Patheon's designations were made without the requisite good faith. The Court authorized Procaps to make specific page-by-page challenges. It never did. In addition, the Court permitted Procaps to file a motion for fees and costs and/or for complete review and designation if it had proof that Patheon did not act in good faith. It never did that either.

After this early discovery skirmish over the stipulated confidentiality order, the Court learned that Procaps failed to timely implement a litigation hold and conduct adequate discovery of its own ESI. At Patheon's request, the Court in February 2014 ordered a forensic analysis of Procaps' electronic media. The forensic analysis took a significant amount of time and was plagued by myriad logistical and administrative hurdles, which triggered the need for the Undersigned to appoint (in July 2014, with the parties' agreement) a special master for ESI issues. [ECF No. 558]. The ESI was not produced in full to Patheon until June 2015.

Trial is set to begin on November 16, 2015 [ECF No. 655]. Summary judgment motions are due by August 28, 2015. Although deposition discovery is, for all intents and purposes, over, there are a few specific fact witness depositions which the Court has permitted for certain limited issues. Those depositions, as well as Court-ordered

mediation, are scheduled for the first two weeks of August, 2015 (i.e., within slightly more than three weeks). Patheon is scheduled to take the depositions of Procaps' rebuttal experts by September 1, 2015. [ECF No. 795, pp. 1-2].

Patheon filed its motion for re-designation of highly confidential documents on July 13, 2015. The motion explains that Procaps marked each highly confidential document with the "highly confidential" legend but did so in a way which prevented Patheon from doing a computer search for the term "highly confidential." To count the number of highly confidential documents, Patheon performed optical character recognition ("OCR") to generate searchable text and then searched for the term "highly confidential" in the OCR text.

Patheon attached several emails (between its counsel and Procaps' counsel) as exhibits. In a July 8, 2015 email, Patheon's counsel noted that Procaps' position -- that Patheon's employees, including its general counsel, could not review the highly confidential documents -- is "significantly prejudicing Patheon's defense of the case." Specifically, defense counsel "will not be able to get any client input on these documents for the upcoming depositions and our client cannot fully assess this case for purposes of mediation or trial."

After explaining that Patheon's general counsel asked to see the highly confidential documents to "evaluate the case for mediation," Patheon's lead trial counsel advised Procaps' counsel to "please don't be surprised if, at the mediation, this

is a serious impediment to settling the case." [ECF No. 804-4, pp. 2-3]. The highly confidential documents include Procaps' rule of reason interrogatory answers, which is also part of Patheon's motion at issue here, and its damages expert's report. Patheon wants two in-house attorneys, Eric Sherbet and Jason Conner, to review the highly confidential documents.

According to Patheon's motion, 148,636 Procaps documents were produced in the forensic analysis, and Procaps designated 141,525 of them as "highly confidential." Patheon says this is approximately 95% of the forensic production. Patheon also calculated that 91% of Procaps' *entire* production (141,696 of 155,759 documents) was branded by Procaps as "highly confidential."

Patheon explained that it reviewed a random statistical sample of 384 documents marked "highly confidential" (because reviewing the entire forensic document production would be too unwieldy). It then applied the results -- i.e., the percentage of documents not highly confidential -- to the entire production of 155,759 documents. Patheon's sample size review, which it claims allows for a 95% confidence level and a 5% margin of error, generated results establishing that a **substantial** number of designated documents are not, in fact, "highly confidential."

Under Patheon's statistical analysis, 32,709 documents (21% of the Procaps production) were generated by Patheon itself or related to the Collaboration and P-gels -- i.e., not highly confidential. Moreover, 10,903 documents (7% of the Procaps

11

production) were SPAM email, publicly available documents or documents with little or no substance or with absolutely no Procaps information -- not highly confidential. Under the Patheon sampling methodology, Procaps **incorrectly** designated as "highly confidential" approximately 28% of the forensic production, which is not a surprising result, given that Procaps designated 95% of its forensic production as "highly confidential."

Procaps does not dispute these statistics in its response. Instead, it explains that it reviewed approximately 150,000 documents at a rate of 50,000 per week through a third party vendor who "interpreted and applied the protocols conservatively," which resulted in the "apparent over-designation of documents as Highly Confidential." According to Procaps, this outside vendor conducted the "initial review of all documents," but it seems that Procaps' counsel performed (or should have performed) the later-stage reviews and made the final decisions about designations.

Procaps says it immediately engaged in a meet-and-confer process after Patheon requested relief, but it accuses Patheon of being "intransigent" and "prematurely terminat[ing]" the process in order to file the instant motion. It also contends that the legal authority relied upon by Patheon is inapposite because, "irrespective of the percentage of documents designated as Highly Confidential, Procaps has not acted in bad faith."

Procaps offers two alternative solutions to the one Patheon requests for the forensically-produced documents: (1) **Patheon** should identify, with Bates numbers, the specific documents it wants Procaps to re-review and re-designate, and Procaps will then perform a review of those pinpointed documents, or (2) Procaps would pay for the Special Master (for ESI issues) to review the documents specified by **Patheon** for possible re-designation.

Patheon does not address either of these two alternatives in its reply.

Procaps also suggested an alternative solution to the dispute surrounding the supplemental interrogatory answers (which outline the grounds for its Rule of Reason claim) and expert report. Before summarizing this suggestion, however, the Court must first provide additional facts about the unique scenario surrounding the snafu:

If a document is designated as "highly confidential," then it may be disclosed to outside counsel, but not inside counsel. If a document is designated as merely "Confidential," however, then it may be disclosed to an employee of a Party who outside counsel believes in good faith has a need to access the information solely for use in this lawsuit. It may not, however, be disclosed to third parties.

The dispute here arises, at least in part, from the fact that Jason Conner is an employee of Patheon Pharmacuetical Services, Inc., which, despite the similar-sounding name, Procaps says is not Defendant Patheon Inc. and is therefore not a corporate party defendant to the litigation. Moreover, he is *also* assistant general counsel of DPx

13

Holdings B.V. ("DPx"), which is, for all intents and purposes, Patheon's parent (but not a named party defendant in this lawsuit). Procaps has asked the Court to substitute DPx for Patheon or to add it as a defendant, but the Court has not yet ruled.

Although Procaps contends that *Conner* would never be eligible to review confidential documents because he is not employed by Patheon, it does not make a similar argument about *Sherbet*. It does, however, note that Sherbet is also an attorney with DPx.

Procaps offered to redact highly confidential information from its supplemental interrogatory answers and expert report, so that Patheon employees could review them. However, Patheon rejected that proposal, a response which Procaps attributes to Patheon's apparent intent to disclose the materials to Conner (and perhaps Sherbet). [Much of the email traffic on this point focuses on Conner, but Patheon also wants Sherbet to review confidential material]. Procaps contends that the redacted documents could be shown to Patheon employees, but not to Conner (because he is not a Patheon employee, and, even if he were, he is *also* in-house counsel for DPx, a non-party). Procaps says it seeks practical solutions to these disagreements.

<u>**Applicable Legal Principles and Analysis**</u>

Federal Rule of Civil Procedure 26(c) governs the stipulated order governing the confidentiality designations in this case. That rule authorizes a court to enter an order "to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense." Among the type of relief illustrated in subsection (c) is, in subsection (G), "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be **revealed only in a specified way."** (emphasis added).

Federal Rule of Civil Procedure 37(a)(5) **requires**, except when one or more of three exceptions apply, the Court to pay the movant's reasonable expenses, including attorney's fees, if a motion to compel disclosure is granted.

The "failure to obey a protective order's prohibition against indiscriminate designations is covered by Rule 37" and its fee-shifting presumption in favor of the party prevailing on a motion to compel. *Del Campo v. Am. Corrective Counseling Serv., Inc.,* No. C-01-21151, 2007 WL 3306496, at *4 (N.D. Cal., Nov. 6, 2007).

An AEO designation such as the "highly confidential" designation which Procaps used for 95% of the documents it forensically produced is "the most restrictive possible protective order" because it "confines dissemination of discovery materials only to the opposing party's attorneys and other consultants/experts specified in the agreement." When this type of designation is challenged, the party seeking to uphold the designation (e.g., Procaps) "must describe the alleged harm it will suffer from any disclosure 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Penn, LLC v. Prosper Bus. Devel. Corp.,* No. 2:10-cv-0993, 2012 WL 5948363 (S.D. Ohio Nov. 28, 2012) (quoting *Nemir v. Mitsubishi*

*Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004). *See generally Brown v. Tellermate Holdings, Ltd.*, No. 2:11-cv-1122, 2014 WL 2987051, at *23 (S.D. Ohio, July 1, 2014) (showing of harm which the designating party must make "must be particularized and cannot simply rest on conclusory statements").

Many courts have noted that a good faith requirement is "implicit" in the protective order and its provision for designating documents as confidential or AEO (or highly confidential). *See, e.g., Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, 248 F.R.D. 598, 605 (D. Kan. 2008). But the good faith requirement here is actually a requirement of the Stipulated Confidentiality Order that both parties submitted to the Court. Specifically, numbered paragraph 3 defines the discovery material governed by the order to be material that the producing party "believes in **good faith** to contain or constitute" either confidential or highly confidential information. (emphasis added).

Many courts have held that the indiscriminate use of an AEO designation poses "a significant handicap on the restricted litigant" because "[d]iscovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant." *Arvco Container Corp. v. Weyerhaeuser*, No. 1:08-cv-548, 2009 WL 311125, at *6 (W.D. Mich. Feb. 9, 2009).  In addition, "courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in

mediation and other settlement methods."[2] *Id.* Consequently, "it is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client." *Id. See also K & M Int'l, Inc. v. NDY Toy, L.L.C.*, No. 1:13CV771, 2015 WL 520969 (N.D. Ohio Feb. 9, 2015) (noting that preventing counsel from sharing and discussing discovery with their client "creates a substantial impediment" to the client's "ability to prepare and litigate" the claim).[3]

Although federal courts do not seem to have established a specific bright line test to determine when a party's designation of discovery as AEO in excess of a certain percentage is deemed presumptively improper, designation percentages of 95% -- such as the rate used here by Procaps -- have frequently been condemned. In fact, many courts confronted with this level of designations (and lower designations) brand the percentage as "absurd." *See e.g., THK Am., Inc. v. NSK Co. Ltd.*, 157 F.R.D. 637, 645 (N.D. Ill. 1993) (79% is "absurdly high"); *In re Ullico Inc.*, 237 F.R.D. 314, 317-18 (D.D.C. 2006) (99% designation rate was a "gross[] abuse[]" of the designation, was done in bad faith and was a "flagrant unwarranted designation" which "unfairly burdened" the opposing party). *See generally Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229, 2014 WL

---

[2]   As noted above, Patheon has already flagged the possibility that mediation might be adversely affected if Conner cannot see confidential information. It did not, however, specifically mention that mediation might be affected if Sherbet could not review confidential information.

[3]   Procaps itself noted the burdens associated with "highly confidential" or AEO designations when it was negotiating the terms of the stipulated order.

6886923 (D. Col. Dec. 5, 2014) (90% designation rate is "an absurd number" which is "made all the more absurd by Defendants' failure to designate a single document as Confidential but not [AEO]," a scenario which caused the Court to conclude that Defendants "acted in bad faith by indiscriminately designating nearly their entire production" as AEO).

Unlike parties in other cases who seek to justify designations with vague explanations, Procaps does not try to argue that 95% of the documents are in fact entitled to highly confidential status, nor does it seek to rationalize a slightly lower designation rate. Rather, it concedes the excessive justification but tries to minimize the consequences by saying it always acted in good faith, providing a reason for the unfortunate scenario (i.e., they were rushing under a tight deadline) and offering less-drastic alternatives.

But Procaps' indiscriminate designation of documents as highly confidential should not lead to the "result of improperly shifting the cost of review of confidentiality" to Patheon. *Del Campo*, 2007 WL 3306496, at *4 (explaining that a party's "belated recognition" that the designation could not be supported "does not render its behavior substantially justified and does nothing to undermine the justification for sanctions"). *See also Paradigm Alliance*, 248 F.R.D. at 605 (explaining that party's argument that it "fixed things" brought to its attention "is an inadequate response" because the duty of good faith in the protective order is a "duty to review the

documents in good faith **before** designating them as AEO") (emphasis in original by Court); *Healthtrio,* LLC, 2014 WL 6886923, at *3 (rejecting designating party's suggestion that opposing party cannot make a blanket challenge but must challenge individual documents or pages because designating party "waived the provisions of the protective order by acting in bad faith").

The Court is not persuaded by Procaps' efforts to allocate blame to the third party vendor or to the deadline. First, from an overarching perspective, the need to conduct the expedited forensic ESI analysis arose from Procaps' failure to conduct an appropriate ESI search in the first place. Thus, to the extent there are logistical problems associated with the forensic review, Procaps is responsible because it is Procaps' inattentiveness which created the ESI snafu. Second, Procaps should have staffed the project with sufficient team members (either from an outside vendor, its own attorneys or contract attorneys). Third, Procaps is ultimately responsible for the designations. Fourth, if Procaps realized that the review was taking longer than anticipated, then it should have immediately made adjustments and increased the number of members on the review team or increased the level of effort from team members. And fifth, the consequences of the over-designation, regardless of why it happened, should not fall on the party (i.e., Patheon) who did nothing wrong. *See generally Brown,* 2014 WL 2987051, at *22 ("the alleged burden imposed by a high volume production does not provide the

producing party or its counsel free reign to choose a given designation and ignore the Court's order pertaining to that designation").

The Court will now focus specifically on Procaps' two suggested alternatives:

First, requiring *Patheon* to specifically identify the precise documents it wants Procaps to re-review and re-designate (if appropriate) would unduly punish Patheon for Procaps' failings. Given that the very last fact depositions are about to be taken in a few weeks, it is inequitable to shift the burden of reviewing more than 141,000 documents to Patheon, who is in no way responsible for Procaps' less-than-precise (to be diplomatic) use of the designation methodology established in the very confidentiality order it jointly proposed. *Cf. THK Am., Inc.,* 157 F.R.D. at 647 (finding that defendants "lost the right" to use the AEO classification, requiring de-designation and reclassification into either "confidential" or "non-confidential" categories on a "forthwith" basis and explaining that "any extra costs incurred by the offending party," such as "assigning additional personnel to review and reclassify the documents over weekends and holidays are part and parcel of the sanction imposed for the intentionally wrongful designations").

Second, asking the ESI Special Master to review the materials flagged by Patheon generates the same undue burden consequence and also creates the virtually inevitable result of unreasonable delay. *Ullico,* 237 F.R.D. at 318 (explaining that one party "should not be prejudiced as a result of what can be viewed as [the other party's] bad faith

participation in discovery" and noting that, "because of the sheer quantity of documents involved, it is especially important for this burden to remain with" the designating party).

In order for this suggestion to be implemented, Patheon would need to assign its own team of attorneys to review 141,000 documents so that specific documents could be flagged for re-review by the Special Master. This would take several days, if not more.

Moreover, the Special Master is a busy attorney with an active practice, and Procaps has not advised that it has contacted the Special Master to confirm that he even has the time to now review documents. Moreover, even if the Special Master had absolutely nothing else to do (which is unlikely), it is inconceivable that only **one** person could effectively review the flagged documents in the time necessary to permit Patheon to use the documents the Special Master were to find as improperly classified at the upcoming depositions. In fact, Procaps' response explained that it used a third party vendor to review documents at a rate of 50,000 per week. Given that the vendor used *multiple* reviewers, it is fundamentally illogical to assume that one busy attorney would be able to conduct a sufficient review in less than several weeks, even if the universe of documents pinpointed for evaluation by Patheon were less than 141,000.

Obviously, a **team** of many attorneys will be required, and the attorneys selected will likely need to work nights and weekends. The Undersigned is not prepared to ask the Special Master to commit to a round-the-clock schedule because (1) it would still not

be sufficient, and (2) it would be a classic illustration of "no good deed goes unpunished." Procaps' offer to pay the Special Master's fees is an academic point.

**The Remedy**

Given that Procaps admits to over-designating the documents from the forensic production as highly confidential and given that its suggested alternatives to Patheon's recommended remedy are unworkable, the Court will now assess Patheon's proposal.

There is ample legal authority to support the remedy of allowing Patheon to use all the documents designated from the forensic production as highly confidential, subject to Procaps' good faith re-designation, on a specific, document-by-document basis, by Thursday, July 30, 2015, at 5:00 p.m., EST.[4] *See generally Brown,* 2014 WL 2987051; *Ullico,* 237 F.R.D. 314; *THK Am., Inc.,* 157 F.R.D. 637; *Healthtrio, LLC,* 2014 WL 6886923; *Broadspring, Inc. v. Congoo, LLC,* No. 13-CV-1866, 2014 WL 4100615 (S.D.N.Y. Aug. 20, 2014)(ordering re-designation and production within a week).

Procaps does not cite any contrary case law or other authority. Instead, it seeks to avoid these consequences by saying it acted in good faith under difficult circumstances (i.e., many documents being reviewed in a short amount of time) and tried to resolve

---

[4] Because Patheon does not have much time to arrange for its employees to review the material which Procaps re-designates as only confidential (or which is not re-designated at all) before the upcoming mediation and depositions, time is of the essence. The July 30 deadline provides for significantly more than the 5 days suggested in Patheon's motion, but Procaps must strictly comply with it. Any information not re-designated as "highly confidential" by 5:00 p.m. on Thursday, July 30, may be reviewed by eligible Patheon employees.

the dispute. As explained above, the Court is not convinced that these arguments are sufficient to avoid the consequences which Patheon classifies as necessary. *Brown*, 2014 WL 2987051, at *22.

To be sure, Procaps will undoubtedly be under an extremely tight deadline to re-review and re-designate documents.  It may need to use a dozen or more attorneys working nights and an entire weekend.  This will undoubtedly be burdensome, but, given the choice of burdening Patheon (to re-review the entire production and list specific documents worthy of re-review by Procaps or the Special Master) or Procaps, the Undersigned sees no reason to shift the burden to Patheon. Procaps is responsible for its over-designations.  Even if an outside vendor conducted the first level of review, Procaps cannot avoid its discovery obligations by shifting blame to the third party it hired for the project. Moreover, Procaps' attorneys presumably performed the *final* review, and one or more of its attorneys realized, or should have realized, that a 95% highly confidential, AEO designation rate is problematic and questionable (or "absurd") on its face.

**The Interrogatory Answer and the Damages Expert's Report**

If, as Procaps has offered, Procaps redacts information from these highly confidential materials and re-designates them so that they are merely confidential documents, and if Conner is a Patheon employee, then the Stipulated Confidentiality Order permits him to review the interrogatory answer and expert report which would

now be designated with the less-restrictive confidential classification. If Conner is not an employee of Patheon (i.e., the actual party named here as the party defendant), then he may not see the materials even if they are downgraded from highly confidential to confidential. Patheon describes Conner as an "in-house lawyer" who is entitled to see confidential materials, but Procaps says otherwise, noting that Conner is actually an employee of a *different* entity containing the name Patheon. This same conclusion applies to Sherbet, who appears to be a Patheon employee (since Procaps did not advise to the contrary, as it did for Conner).

This appears to be a straightforward issue which seemingly should not trigger a dispute.  Conner either is or is not an employee of Patheon, Inc. That sounds like a simple question to answer. But few things in this case have been simple and easy.

If Conner *is* an employee, then it **appears** as though he (and Sherbet) would be eligible to review the materials once they are redacted and downgraded. The Court understands that Procaps is concerned because Conner and Sherbet are *also* in-house attorneys with DPx, a non-party. Apparently, the parties never contemplated a scenario where an employee eligible to review a confidential document wears a second hat as an employee or officer of *another* entity which is not eligible to review the material. Thus, if Conner and Sherbet are Patheon employees, then they would be able to review confidential documents under one paragraph but would arguably be prevented from

24

accessing the material under another provision (because they also work for an ineligible third party).

Although there is an ambiguity concerning the status of an employee who also is associated with an ineligible third party, Patheon notes that Procaps' dual-role theory is inconsistent because it would mean that some of Procaps' principals would be ineligible to review confidential materials even though they too are associated with other entities. Patheon represented that two Procaps principals, Alvaro Franco and Ruben Minski, "have been reviewing confidential documents in this case since they were first produced." [ECF No. 815, p. 3].

Procaps cannot have it both ways. If Minski and Franco are reviewing Patheon's confidential documents even though they are "associated with third parties," then Patheon employees cannot be excluded from review because of their third party association.

There may be two other possibilities which would eliminate this specific dispute, however: First, Procaps could substantially redact the interrogatory answer and its expert report -- so that the materials no longer contain *any* type of restriction and would not have any designation attached to them. Second, for purposes of facilitating a meaningful mediation,  Procaps could *agree* (with Patheon's agreement that the position would not waive Procaps' ability to rely on the protections in the stipulated order*)* that Conner and Sherbet would be permitted to access these materials, as long as they

agreed to not share the information with anyone not otherwise afforded access. The Undersigned is not ordering the parties to select one of these alternatives, nor am I encouraging them to adopt one of these options.

**<u>Attorney's Fees</u>**

Because Procaps' use of the highly confidential designation was significantly incorrect and over-inclusive on a grand scale, an attorney's fees award is appropriate under the fee-shifting mechanism of Federal Rule of Civil Procedure 37. *See THK Am., Inc.,* 157 F.R.D. 637; *Ullico,* 237 F.R.D. 314; *Del Campo,* 2007 WL 3306496; *Brown,* 2014 WL 2987051. The question now, of course, is to determine the amount.

Procaps' response included a declaration from its lead trial counsel, disclosing (at the Court's request) that it incurred $5,491 litigating the over-designation issue. The declaration included a section for time incurred in connection with the dispute over the interrogatory answers and expert report.

Patheon's fees in connection with the over-designation issue necessarily includes time *not* incurred by Procaps, because it includes time *since* Procaps filed its response. Therefore, the Court would expect that Patheon's fees might exceed Procaps' fees.

Patheon advised the Court that it incurred $3,293 in costs for its e-discovery vendor to perform the OCR review purportedly necessitated by Procaps' methodology, which apparently prevented a meaningful review by Patheon without further expert involvement. Patheon also represented that it incurred $31,091.70 in fees. In total,

Patheon seeks $34,385.69. The Undersigned concludes that a $25,000 award is appropriate. The Undersigned is not including Patheon's costs request in the award and is reducing the fees award (even though Patheon represents that it adopted an "extremely conservative approach" and "resolved any doubt in favor of Procaps").

If either party (or either law firm) objects to either the fees entitlement decision entered here or to the amount of fees required to be paid by this Order, then it may file a notice requesting a hearing and the Court will promptly schedule a hearing. If such a hearing were to take place, the law firms would be required to produce their billing records for the legal services provided during the time period at issue. Of course, the time incurred in connection with the hearing itself would either be subtracted from, or added to, the fees award (assuming that the entitlement decision did not change).

## Conclusion

Procaps shall have until July 30, 2015 at 5:00 p.m. EST to re-review and re-designate its forensically-produced materials. Procaps shall provide written notice of any new designations to Patheon by this deadline. These designations must be exercised in good faith. If the Court later determines that Procaps' second round of designations was not performed in good faith, then the Court will entertain a motion for other, more-severe sanctions. Any document not re-designated as either "confidential" or "highly confidential" may be used by Patheon for any purpose related

to this case.  For documents which Procaps re-designates, Patheon may only use them to the extent permitted by the Stipulated Confidentiality Order.

Federal Rule of Civil Procedure 37 permits a fees award to be entered against the party, its counsel or both.  The Undersigned finds that it would be inappropriate and unfair to impose the fees award against Procaps itself, as the over-designation is its counsel's responsibility. Therefore, the fees award will be against only Procaps' attorneys. The Court assumes that many of Procaps' outside attorneys were involved to some extent in the review of the designations initially placed on the materials by the vendor the law firm retained. The Undersigned does not want to use valuable time on a fact-finding mission designed to pinpoint which specific attorneys were responsible for what portion of the activities involved in the over-designation, and I do not want to create satellite litigation on this collateral issue. Therefore, Procaps' law firm will internally determine which attorneys should bear financial responsibility for the fees award, but the actual payment may come from the firm itself and the declaration need not specifically disclose how the firm decided to allocate financial responsibility.[5]

---

[5]     The Undersigned does not consider a Rule 37(a)(5)(A) expense-shifting award to be a sanction, or the imposition of discipline, or an indication that anyone acted in bad faith. Rather, it is merely a **consequence** of taking certain unsuccessful discovery positions, such as indiscriminately designating 95% of a large-scale document production as "highly confidential." Thus, this Order would not require Procaps' counsel to answer "yes" if ever asked (e.g., by a prospective employer, by an insurance carrier, by a judicial nominating commission, by a client, or by a prospective client) if he or she had ever been sanctioned or disciplined.

Procaps' counsel shall pay Patheon the attorney's fees reimbursement award by August 10, 2015. Procaps' counsel shall, within three days of payment, submit to the Court's efile inbox an affidavit or declaration confirming that payment was made.

Procaps' counsel may not, either directly or indirectly, pass on this fees award to its client.

**DONE AND ORDERED** in Chambers, in Miami, Florida, July 20, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record