UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24356-CIV-GOODMAN

[CONSENT CASE]

PROCAPS S.A.,

    Plaintiff,

v.

PATHEON INC.,

    Defendant.

_____/

## ORDER ON PATHEON'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS ON PROCAPS' PRIVILEGE LOG

    Defendant Patheon Inc. ("Patheon") seeks [ECF No. 800] an order requiring Plaintiff Procaps S.A. ("Procaps") to produce various documents listed on its forensic analysis privilege log based upon several purported deficiencies that Patheon identified in the privilege log. Not surprisingly, Procaps opposes this relief. [ECF No. 812]. The Undersigned held a hearing on July 21, 2015, to address these issues, at which the Undersigned issued *ore tenus* rulings on several aspects of Patheon's motion, as well as on separate issues surrounding upcoming expert depositions and the Stipulated Confidentiality Order [ECF No. 86] that the parties raised orally at the hearing.[1] The Court took under advisement one matter -- whether communications with Procaps'

---

[1] If the parties wish to appeal these rulings, then the transcript of the hearing will need to be ordered, as it outlines the Undersigned's reasoning.

"agent" Diana Comas were privileged in the first place (or whether they constituted waiver of any potential privilege -- i.e. attorney-client communications or attorney work product -- as a communication to a third party). For the reasons set forth at the hearing (concerning the *ore tenus* rulings) and the reasons set forth below (concerning the matter taken under advisement), it is **ORDERED** and **ADJUDGED**[2] as follows:

1) Patheon argued that it does not know the employment status of more than 150 individuals on the privilege log who either drafted, received or were copied on communications. Therefore, it says, it cannot determine whether the attorney-client or work product privilege counsel extends to communications involving these individuals as authors or recipients (including "CC" and "BCC" status). Patheon shall, by July 24, 2015, provide Procaps' counsel with a list of otherwise unidentified third persons from the universe of approximately 150 or more individuals for whom it wants employment status information. The list provided by Patheon shall include designations of the page numbers and document control numbers in the privilege log associated with those individuals. Procaps shall, by July 31, 2015, provide Patheon with the employment information sought concerning these individuals.

2) Patheon also argued that Procaps' privilege log inappropriately includes blanket assertions of privilege over entire families of documents, when the privilege

---

[2] Although this written order summarizes the rulings made at the hearing, it also supplements those rulings with additional requirements. Therefore, the parties are urged to carefully review the order.

2

should only apply to specific documents within the families. Patheon shall, by July 24, 2015, provide Procaps with a specific list of the families of documents that Patheon contends have not been sufficiently reviewed on a document-by-document basis, in order for Procaps to provide an appropriate document-by-document designation of privilege, or to confirm that such an appropriate designation was *already* performed. Procaps shall, by July 31, 2015, respond to Patheon's specific list of document families, either confirming that the original review was appropriately done or re-reviewing those families and re-designating privilege (where appropriate) on the appropriate document-by-document basis.

3) Patheon argued that Procaps did not actually review all pre-October 22, 2012 entries on the privilege log that were originally flagged as attorney work product before changing the privilege assertions to attorney-client privilege. Procaps asserts in opposition that it did, in fact, appropriately review all of the pre-October 22, 2012 entries (and correctly applied the attorney-client privilege status after removing the work product claim to those same documents). Because Procaps has unequivocally asserted that such a review of the documents was done and because, despite its suspicions to the contrary, Patheon has presented nothing specific to contradict that position, the Undersigned rejects Patheon's demand that Procaps produce these documents or review them again (or further). Thus, the Court accepts Procaps' representation at face value. If Patheon has actual evidence and facts, as opposed to

hunches and suspicions, demonstrating that the appropriate review was not done on a document-by-documents basis after the work product assertion was rescinded, then it may seek appropriate relief.

4)    Patheon argued that many of the entries on the privilege log related to attorneys who may have performed dual roles with the company, acting in both a legal capacity and a business advice capacity. Patheon asserts that because of these dual roles, the Court should order Procaps to establish or confirm on a log that all of the attorney-employees were acting in solely a legal capacity in the privileged communications. Patheon offers only bare speculation that it is *possible* some of the communications marked as privileged were in fact instances of attorneys offering non-legal advice. Accordingly, the Undersigned hereby rejects Patheon's argument that Procaps be required to offer further assurances in its log that any attorney who *may* have played a dual role in the company was in fact providing legal, and not business, advice in the subject communication.

The notion that an attorney provided non-legal advice or purely business advice could theoretically be made about almost any communication protected by the attorney-client privilege, especially for attorneys who have in-house positions with their employer or client. Yes, it is *possible* that an attorney might be communicating non-privileged business advice, but this speculation is not sufficient to demand that a party re-review every privileged communication and confirm again that legal, not business,

4

advice was being provided. If Patheon has specific evidence to establish that non-legal advice was being provided, then it may revisit the issue in an appropriate motion.

5)   At the hearing, Procaps agreed to produce all communications involving (either as author, recipient or copied party) Ted Green, Walter Tanaka, Eduardo Minski and John Kelly, except in specific circumstances where these individuals may have been seeking legal advice. Documents in this category will be provided by July 24, 2015. Procaps' counsel explained that he did not actually know of any communications in which one or more of the four individuals were in fact seeking legal advice, but he adopted a prudent approach in the event that such a scenario had occurred.

6)   At the hearing, the parties raised one issue that was not part of Patheon's motion -- who would be permitted to attend upcoming depositions. Because certain upcoming depositions will apparently be designated as containing "Confidential Information" under the Stipulated Confidentiality Order [ECF No. 86], attendance at these depositions is limited to those individuals eligible to receive "confidential" information -- namely, "employees" of a party. The parties dispute whether two individuals affiliated with Patheon, Jason Conner and Eric Sherbet, may attend these depositions.

Patheon acknowledged at the hearing that, despite their close involvement in this litigation and with Patheon's lead trial counsel, both Conner and Sherbert are not presently employees of Patheon Inc., the specifically named defendant. Accordingly,

5

the Undersigned concludes that neither of them may attend the upcoming depositions because information designated as "highly confidential" and "confidential" under the Stipulated Protective Order will be addressed there.

7) At the conclusion of the hearing, the Undersigned took under advisement the issue of whether Procaps' communications involving Diane Comas -- whether as author, recipient, or copied party -- may be properly deemed privileged. *Apparently*, Ms. Comas is not a Procaps employee. Instead, as Procaps' counsel asserted, she is an "agent" of the corporation. Procaps' counsel said he did not know whether Ms. Comas is technically paid by Procaps. He explained that she works out of the South Florida office of Nature's Products, Inc., ("NPI"), a third party which is not Procaps (though there may be some type of friendly relationship between Procaps and NSI and its principals).

Procaps' counsel represented that Comas, despite her apparent status as not being a paid Procaps employee and likely not an official Procaps staffer, is an *authorized agent* of the corporation for financial matters of the company communicated to counsel. Procaps' counsel informally referred to Comas as "the numbers person" and he explained that he had several communications with her during this case, that she is the point person for the client's financial information in the case and that he considered the communications privileged.

Upon further analysis, the Undersigned finds that Comas' role as a non-employee "agent" of Procaps does not waive the attorney-client or work product privilege. Phrased differently, the communications are privileged.

While the Stipulated Protective Order in this case requires that an individual be an actual "employee" of a party in order to receive information designated as "confidential," there is no corresponding requirement in the law that a corporation's "agent" necessarily be an official employee in order for the attorney-client privilege or work product doctrine to apply. *See In re Bieter Co.*, 16 F.3d 929, 939-40 (8th Cir. 1994) (attorney-client privilege applies to communications between a law firm and an independent contractor retained by a partnership to help it develop real estate); *Scott Paper Co. v. United States*, 943 F. Supp. 489, 499 (E.D. Pa.), *aff'd*, 943 F. Supp. 501 (E.D. Pa. 1996) (privilege extends to communications between attorneys and all agents or employees authorized to act or speak for the organization); *see also Royal Bahamian Ass'n v. QBE Ins. Corp.*, No. 10-21511-CIV, 2010 WL 3637958, at *3 (S.D. Fla. Sept. 20, 2010) (communications with defendant insurer's independent field adjuster were privileged and privilege had not been waived).

Given this close principal-agent relationship between Comas and Procaps (and its counsel), where Comas acted as the point person on financial matters for Procaps' counsel, the Undersigned rejects Patheon's argument that any communication with Comas represents a non-privileged communication or a communication with a third

party that waives the attorney-client and work product protections. Accordingly, communications on the privilege log involving Comas shall remain privileged, unless there are *other* (actual) third parties involved in the same communications.[3]

8)   One final point:

If any of the information Procaps will provide in connection with the ruling in numbered paragraph 1 discloses that the names identified by Patheon are in fact third parties who are not employees, officers, directors, principal owners or specially-designated agents of Procaps, then Procaps shall also **produce** the documents on the privilege log on which those individuals are listed within 24 hours of providing Patheon with the employment/company affiliation information sought concerning these individuals.

Attorney's Fees

Procaps prevailed on some of these discovery disputes; Patheon prevailed on others. The multi-issue hearing therefore resulted in a draw, which means the Court is

---

[3]   If communications between Procaps' counsel and Comas are not privileged, then the communications between Patheon's counsel and Conner, who is not an official Patheon employee, might also be non-privileged. Patheon's counsel explained that Conner has been working closely with him on this lawsuit since before it was even filed. It appears inconsistent for Patheon to argue that communications between its lead trial counsel and Conner *are* privileged but similar communications between Procaps' lead trial counsel and Comas are somehow *not* privileged. Both Comas and Conner appear to be closely involved with each side's litigation position even though they are both not official employees of the specific corporate entity listed as a party to the lawsuit. Instead, they are both agents for specific litigation issues.

not going to determine whether an attorney's fee award to the prevailing party under Federal Rule of Civil Procedure 37 would be appropriate.[4]

**DONE AND ORDERED** in Chambers, in Miami, Florida, July 22, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record

---

[4] However, if it turns out that there are a significant number of third parties listed on the privilege log who are not actually Procaps employees, officers, directors, principal owners or specific agents for particular litigation-related roles in this case, then the Court, upon further request of Patheon, will consider a fee-shifting award under Rule 37. Communications by, to or from outsiders (i.e., true third parties) are not privileged and they should not have ever been listed on the privilege log in the first place. *In re Keeper of the Records*, 348 F.3d 16, 22 (1st Cir. 2003) ("when otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised").