**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-24356-CIV-GOODMAN**

PROCAPS S.A.,

     Plaintiff,

v.

PATHEON INC.,

     Defendant.

_____/

## ORDER ON DEFENDANT PATHEON'S BILL OF TAXABLE COSTS

After obtaining an order granting summary judgment in its favor and a related final judgment, Defendant Patheon Inc. ("Patheon") filed a bill of taxable costs. [ECF No. 1023]. Patheon supported its application with a memorandum of law, a declaration and myriad exhibits. Plaintiff Procaps S.A. ("Procaps") filed an opposition [ECF No. 1026], asking that the costs bill be stayed, that the Court deny all costs or, alternatively, significantly reduce them.

The Undersigned previously entered a stay [ECF No. 1040], at Procaps' request, in connection with Patheon's motion for attorney's fees (of almost $23 million, under three separate theories) and non-taxable costs (of approximately $1.6 million). The order granting the stay was based on the fact that most of the fees and costs sought arose from

the Florida Deceptive and Unfair Trade Practices Act ("FDUtpA"), which provides that an award cannot be entered until all appeals have been exhausted. Procaps' appeal is pending and is only in its preliminary stages. The taxable costs, however, do not arise from FDUTPA, so the Undersigned will consider them now.

For the reasons stated below, the Undersigned **grants** in part the taxable costs bill and **awards** Patheon **$173,480.80** in costs against Procaps.

## I.      BACKGROUND

Procaps' lawsuit against Patheon was filed in December 2012 and has been actively and aggressively litigated. There are now 1040 docket entries.  The Order granting Patheon's summary judgment motion was docket entry 1020.

According to Patheon's memorandum filed in support of its bill of costs [ECF 1023-1], the litigation, in which Procaps sought approximately $380 million in treble damages, involved nearly 50 depositions.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Local Rule 7.3(c) establishes guidelines for a bill of costs, specifically referencing 28 U.S.C. § 1920. Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Although the prevailing party is entitled to costs, a court can still exercise its discretion in awarding the costs enumerated in § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). When challenging whether costs are taxable, "the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009). *See also Aguiar v. Natbony,* No. 09-60683-CIV 2011 WL 4383224, at *2 (S.D. Fla., April 15, 2011).

Despite this burden, a court is limited to taxing only those costs specifically authorized by statute. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford*, 482 U.S. at 445).

Patheon contends that it incurred far more costs than it seeks in its bill of costs. Patheon is entitled to the costs outlined in the federal statute because it prevailed on summary judgment. *Head v. Medford,* 62 F.3d 351, 354-55 (11th Cir. 1995) (reversing trial

court's order denying a costs recovery for defendants after they obtained summary judgment).

Although Rule 54(d) provides that costs need not be awarded to the prevailing party if "the court otherwise directs," the Eleventh Circuit has held that the trial court "must give a reason for its denial of costs so that the appellate court may have some basis upon which to determine if the trial court acted within its discretionary power." *Head*, 62 F.3d at 354. Moreover, the discretion to deny costs to a prevailing party is "not unfettered." *Id*.

## III.   ANALYSIS

The Undersigned analyzes each of Patheon's requested costs below.

### A.   Fees of the Clerk and Marshal

Section 1920(1) provides that "[a] judge or clerk . . . may tax as costs the fees of the clerk and marshal." Procaps does not challenge the $390.00 costs for private process server fees.

The Eleventh Circuit has held that "private process server fees may be taxed pursuant to §§ 1920(1) and 1921" provided that these fees do not exceed what it would cost to have a U.S. Marshal effectuate service. *See E.E.O.C.*, 213 F.3d at 624; *Santana v. RCSH Operations, LLC*, No. 10-61376-Civ, 2012 WL 3779013, at *2-*3 (S.D. Fla. 2012). The current rate of the U.S. Marshal's service is $65.00 per hour plus travel costs and out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3).

Although Patheon incurred $1,150 hiring process servers to serve six third-party subpoenas, it seeks only $390 -- six subpoenas at the $65 rate. The Undersigned finds that this rate is reasonable, as it is the rate used by the U.S. Marshal. Accordingly, the Undersigned orders that Patheon be awarded **$390** in costs for service of subpoenas.

### B. Fees for Printed or Electronically Recorded Transcripts Necessarily Obtained for Use in the Case

Pursuant to § 1920(2), Patheon seeks $150,579.78 in costs for printed or electronically recorded deposition transcripts that it necessarily obtained for use in the case. Specifically, Patheon seeks to recover the following: (1) $103,171.32 to obtain transcripts of 29 depositions, including the costs of expedited transcripts and videographers, (2) $33,106.56 to obtain transcripts of the 20 depositions which Procaps took in the case, and (3) $14,301.90 to obtain hearing transcripts, many of which required expedited delivery. Patheon's request includes costs for the transcripts, expedited delivery, ASCII/rough versions of transcripts, processing and copying of exhibits, witness reading and signing transcripts, video transcript synchronization, and archiving and cloud storage.

The Eleventh Circuit has held that the "[t]axation of deposition costs is authorized by § 1920(2)." *E.E.O.C.*, 213 F.3d at 620. Furthermore, "the non-prevailing party bears the burden of showing that specific deposition costs . . . [are] not necessary for use in the case[.]" *Monelus*, 609 F. Supp. 2d at 1337 (citing *E.E.O.C.*, 213 F.3d at 621).

Procaps objects to these costs, saying that much of them are purely for the convenience of counsel (and are therefore not recoverable) and contending that Patheon's 12-page memorandum and supporting 22-page declaration do not sufficiently break down the costs, a purported failure it says should cause the Undersigned to entirely deny all requested transcription costs. Fifteen of the 22 pages in the supporting declaration concern the request for reimbursement of expenses for deposition and hearing transcripts.

A party may recover fees for depositions and transcripts obtained for use in the case. *Aguiar*, 2011 WL 4383224, at *3; *PODS Enters., LLC v. U-Haul Int'l, Inc.*, No. 8:12-cv-01479, 2015 WL 5021668, at *1 (M.D. Fla. Aug. 24, 2015); 28 U.S.C. § 1920(2). "Recoverable costs include deposition transcript costs and attendance fees of the court reporter or *per diem*." *Parrot, Inc. v. Nicestuff Dist. Int'l, Inc.*, No. 06-61231, 2010 WL 680948, at *14 (S.D. Fla. Feb. 24 2010); *Barrera v. Weiss & Woolrich S.*, 900 F. Supp. 2d 1328, 1335 (S.D. Fla. 2012) (awarding costs for court reporter's appearance fee and transcript). If a deposition was taken by the non-prevailing party, the prevailing party "may recover the costs associated with obtaining a copy of a deposition transcript." *Frasca v. NCL (Bahamas) Ltd.*, No. 12-20662, 2014 WL 4206697, at *5 (S.D. Fla., Aug. 25, 2014). Costs for hearing transcripts are also taxable. *Embroidme.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 12-81250, 2014 WL 5325211, at *4 (S.D. Fla. Aug. 20, 2014).

"Normal delivery charges for transcripts are considered reasonable costs associated with depositions and are recoverable." *Parrot, Inc.*, 2010 WL 680948, at *14. If an expedited or rough transcript was necessary, the cost is recoverable. *Barrera*, 900 F. Supp. 2d at 1335 (necessary if it occurred within 30 days of a deadline or motion because the short timeframe required expedited services); *Embroidme.com, Inc.*, 2014 WL 5325211, at *4, 6 (awarding cost of expedited transcripts where, "given the short amount of time" between the deposition and a motion, "the expedited rate was necessary"); *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-00595, 2010 WL 1856060, at *2 (M.D. Fla. May 10, 2010) ("[N]ecessary to obtain expedited transcripts or rough draft transcripts for 12 witnesses deposed shortly before the August 14, 2009 discovery deadline").

The costs of a videographer may be taxed if the party noticed the deposition to be recorded by non-stenographic means, or by both stenographic and non-stenographic means, and no objection was raised at that time by the other party. *Morrison v. Reichold Chem., Inc.*, 97 F. 3d 460, 464-65 (11th Cir. 1996); *PODS Enters.*, 2015 WL 5021668, at *1 ("costs of videotaping depositions" are "taxable as a part of the cost of a videotaped deposition"). Video synchronization fees may also be awarded where they "help the jury and the Court and conserve[] time." *Frasca*, 2014 WL 4206697, at *6-7.  Transcripts are "necessarily obtained for use in the case" where testimony was used in motions or needed for impeachment at trial, the deponent was on the losing party's trial witness list, or the deposition was "necessary to the issues" when taken, even if "use of a

7

deposition is minimal or not critical to that party's ultimate success." *Monelus*, 609 F. Supp. 2d at 1337 (quoting *Lovett v. KLLM, Inc.*, No. 4:05-CV-026, 2007 WL 983192, at * 6 (N.D. Ga. 2007)); *EEOC*, 213 F.2d at 621 (allowing deposition costs where deponent was listed on witness list); *Parrot*, 2010 WL 680948, at *14 (awarding costs for transcripts that were cited in briefs).

A "deposition taken within the proper bounds of discovery will normally be deemed to be 'necessarily obtained for use in the case.'" *Santana*, 2012 WL 3779013, at *5 (quotations omitted). Because the parties have equal knowledge of the basis for each deposition, the non-prevailing party bears the burden of showing that a specific deposition or court reporter cost was not necessary or that the deposition was not related to an issue present in the case at the time of the deposition. *Monelus*, 609 F. Supp. 2d at 1333, 1337.

On the other hand, Procaps argues that a prevailing party is not entitled to recover costs that were incurred solely for the convenience of counsel. *See e.g., Spatz v. Microtel Inns & Suites Franchising, Inc.*, No. 11-60509, 2012 WL 1587663, at *6 (S.D. Fla. May 4, 2012) (denying exhibit costs because "the Court will not award costs for deposition exhibits when the prevailing party 'has provided no information demonstrating that the copies of transcript exhibits were made for anything more than convenience of counsel,'" particularly where "the party otherwise had access to the exhibits") (internal citation omitted); *Responsible Me, Inc. v. Evenflo Co., Inc.*, No. 06-

8

61736, 2009 WL 528247, at *8 (S.D. Fla. Mar. 2, 2009) ("With regard to the additional charges included in the five deposition transcripts, most courts have found that the costs for shipping, exhibit scanning, disk copies and mini-scripts are not taxable as costs."); *Waste Servs., Inc. v. Waste Mgmt. Inc.*, No. 6:05-cv-320, 2007 WL 1174116, at *4 (M.D. Fla. Apr. 18, 2007) (text to video synchronization not taxable); *Feinschreiber v. United States*, No. 01-3628, 2002 WL 31084156, at *2 (S.D. Fla. Aug. 12, 2002) (denying recovery for ASCII draft transcripts and manuscripts); *Am. Guar. & Liab. Ins. Co. v. United States Fid. & Guar. Co.*, No. 06-655, 2010 WL 1935998, at *4, *6 (E.D. Mo. May 10, 2010) (denying costs for mini, E-transcript, and rough ASCII because they were for the convenience of counsel).

Procaps argues that the majority of Patheon's costs for deposition transcripts were for expedited service.

Patheon contends that expedited transcripts were necessary, as depositions occurred shortly before critical deadlines or motions because:  (1) the parties had to litigate scheduling several depositions that Procaps refused to schedule without a Court order (*see, e.g.*, ECF Nos. 252; 291; 450); (2) Procaps would not make its witnesses available until shortly before deadlines; or (3) Patheon had to wait for Procaps to produce documents before the depositions. [ECF No. 1023-3, ¶¶ 6, 9, 12]. These costs include the fees charged by videographers. [*Id.*]. Both parties noticed depositions to be recorded both by video and stenographic means without objection and Patheon

contends that videographer services were necessary because it submitted video to the Court [ECF Nos. 230; 882], and Procaps either refused to agree to make its witnesses available at trial and/or refused to respond to Patheon's requests that Procaps make witnesses available for Patheon to call during Patheon's defense case.

Patheon further notes that the transcripts were "necessarily obtained for use in the case" because: (1) the witnesses were identified in Procaps' initial disclosures as "likely to have discoverable information" (28 U.S.C. § 1920(2); *see also* ECF No. 807-4); (2) the witnesses were on Procaps' trial lists, thus the transcripts were needed for impeachment [ECF No. 816-3]; (3) the transcripts were used, and relied on by Patheon, in its summary judgment filings [*see e.g.*, ECF No. 1023-3, ¶ 5]; and/or (4) Patheon relied on the transcripts throughout the litigation, for example, in its motion for a forensic analysis, which resulted in Procaps producing about 150,000 documents [*see e.g.*, ECF No. 301].

Patheon also says it incurred $33,106.56 obtaining transcripts of 20 depositions which Procaps conducted in this case [ECF No. 1023-3, ¶ 45], and incurred $14,301.90 obtaining 28 hearing transcripts. [*Id.*, ¶ 46]. It says these transcripts frequently required expedited delivery because: (1) the parties were on an expedited schedule to try this case in 2015; (2) it had to rely on hearing transcripts to file a motion or respond to Procaps' motion; and/or (3) the Court ordered Patheon to file documents, such as a draft summary judgment order, that relied on the transcript. [*Id.*; ECF No. 977, p. 2].

As a practical matter, Procaps does not contest that the transcripts were obtained for use in the case. Instead, its opposition focuses almost exclusively on the expedited nature of the expenses and the costs it says were incurred solely for counsel's convenience.

Patheon disputes that attack, and notes that the costs it requests do not include expenses for services for its counsel's convenience, such as realtime charges, costs for shipping and handling, processing fees, CD deposition packages and summary or condensed transcripts.

The Undersigned is extremely familiar with this case and the aggressiveness with which both parties litigated it. For all practical purposes, both sides had a *team* of attorneys working on this lawsuit. At times, the attorneys had to work under extreme deadline pressure -- which generated the need to order transcripts on an expedited basis. In addition, Procaps was seeking more than $350 million in treble antitrust damages and the trial date was tight, especially when framed against the comparatively late discovery provided by Procaps after a Court-ordered forensic analysis of its electronically stored information. Under these circumstances,[1] the

---

[1]    Patheon is seeking more than $17 million attorney's fees, and this request is based on a reduced hourly fee schedule previously used by the Court. The amount of the fees request is one illustration of legal effort which Patheon put forth in defending this case, and that has a relation to the amount of costs incurred.

Undersigned does not find that Procaps met its burden to establish that these costs were not recoverable as expenses incurred purely for counsel's convenience.

Therefore, Patheon is entitled to **$150,579.78** in costs for printed or electronically recorded transcripts of depositions and hearings.

### C. <u>Paper and Electronic Copying Costs</u>

Patheon seeks $44,253.77 in copy expenses, which includes costs for both traditional and electronic copying. Of that, $10,955.14 is for paper copying and related costs and $33,298.63 is for electronic copying. Procaps contends that the charges sought for electronic copying are not taxable under Section 1920. It also argues that the costs request in both categories includes expenses incurred primarily for the convenience of counsel (and are therefore not recoverable) and that Patheon has not provided a sufficiently detailed explanation of the expenses (which Procaps says is a fatal flaw, leading to a no-recovery scenario).

The parties have a significant legal disagreement over the basic issue of whether electronic copy expenses are even recoverable at all.

Given the significant disconnect between the parties' positions on what types of copying expenses the courts deem reimbursable under Section 1920, the Undersigned is required to determine the applicable law concerning electronic copying costs. I also must determine if Patheon has sufficiently met its burden when seeking an award for both paper copying and electronic copying. The analysis will begin with the request for

the more-traditional paper copying and related costs and will then address electronic copying -- a more-detailed and more-nuanced evaluation.

<em><u>Paper Copying</u></em>

Costs of making copies and fees for exemplification are normally taxable under § 1920(4). "However, costs of copies made for the mere convenience of counsel are not taxable." *Diaz v. AIG Mktg., Inc.*, No. 09-60011-CIV, 2010 WL 2541872, at *4 (S.D. Fla. June 1, 2010). Copies of documents used for the purposes of discovery and for the preparation of trial are recoverable under § 1920(4). *See Miccosukee Tribe of Indians of Fla. V. Kraus-Anderson Const. Co.*, No. 04-22774-CIV, 2007 WL 2254931, at *2 (S.D. Fla. Aug. 2, 2007) (awarding costs under § 1920(4) for photocopies necessary for trial); *Fressell v. AT&T Technologies, Inc.*, 103 F.R.D. 111, 118 (N.D. Ga. 1984) (awarding costs pursuant to § 1920(4) for discovery-related photocopies).

Likewise, costs of copies of pleadings, correspondence, documents tendered to the opposing party and documents prepared for the court's consideration are recoverable." *Parrot*, 2010 WL 6809948, at *15. *See also Frasca*, 2014 WL 4206697, at *9. This includes the "costs associated with copying documents for the purpose of providing them to the court," and "copies produced to opposing counsel." *Monelus*, 609 F. Supp. 2d at 1335; *Frasca*, 2014 WL 4206697, at *9.

Rates between $0.10 and $0.25 per page are recoverable. *Fla. Pawnbrokers & Secondhand Dealers Ass'n v. City of Fort Lauderdale*, 711 F. Supp. 1084, 1086 (S.D. Fla. 1989)

13

($0.25 per page); *Exime v. E.W. Ventures, Inc.*, No. 08-60099, 2009 WL 1759351, at *2 (S.D. Fla. June 18, 2009) ($0.19 per page); *Ferguson v. Bombadier Servs. Corp.*, No. 8:03-cv-539, 2007 WL 601921, at *7 (M.D. Fla. Feb. 21, 2007) ($0.10 to $0.15 per page).  Color copying rates as high as $1.25 per page are reasonable.  *Curry v. Montgomery*, No. 07-22899, 2010 WL 883798, at *5-6 (S.D. Fla. Mar. 9, 2010).  And while Patheon must present evidence regarding the use or intended use of the copies in general, it need not explain the "need for, or use of, each particular copy." *Barrera*, 900 F. Supp. 2d at 1334; *Frasca*, 2014 WL 4206697, at *9.

As the party seeking these types of costs, Patheon bears the burden of showing that it obtained the copies for use in the case. *Diaz*, 2010 WL 2254931, at *4.

Procaps underscores the rule that the party seeking costs has the burden of proving that its photocopying expenses were "necessary." *George v. Fla. Dep't of Corrections*, No. 07-80019, 2008 WL 2571348, at *2 (S.D. Fla. May 23, 2008) (prevailing party "cannot make unsubstantiated claims that copies of the documents were necessary" and therefore must "provide information regarding the **purpose** of copies") (emphasis supplied). And it stresses that the prevailing party must provide enough information "so the court will be able to determine whether the rates paid for copies were reasonable, whether the copies made were related to the action at issue and what the copies were for." *Id.*

Continuing with its "Patheon-must-specifically-demonstrate-that-the-copying-costs-were-necessary" theme, Procaps relies upon cases holding that copying expenses lacking sufficient specifics are not taxable. *Curry v. HSBC Tech & Servc., LLC*, No. 6:11-cv-963, 2013 WL 5567414, at *4 (M.D. Fla. Oct. 9, 2013); *Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570, *aff'd* 998 F.2d 1023 (11th Cir. 1993).

According to Patheon, most of the copies it made were in black and white, but some of the copies were in color when this was necessary for a deposition or for the Court. It paid between 9 cents and 12 cents per page for black and white copies and between 35 and 90 cents per page for color copies.

Patheon has submitted myriad exhibits to support its request for paper copying costs and several paragraphs of the supporting declaration from its lead counsel also provide additional explanation for the costs. Nevertheless, Procaps is correct when it contends that costs for binders, folders, labels and similar items are usually not recoverable because they are for counsel's convenience.  On the other hand, the Undersigned specifically requested that both parties submit to chambers duplicate copies of motions, memoranda and case law authority in tabbed binders, so the expenses incurred to comply with those types of Court orders are recoverable because the costs were incurred for the Court.

Thus, the costs for binders, folders, labels and related items are reimbursable when used in conjunction with complying with an order specifically requiring them,

but they would not be eligible for an award when used in other settings, such as a deposition. Those uses would be for the convenience of counsel, and thereby not compensable. *Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974, 2010 WL 2105921, at *4 (M.D. Fla. April 26, 2010) (costs for binders, labeling and bates numbering are "extraneous" and to be borne "primarily of convenience, and not necessity"). *See also Powell v. The Home Depot, U.S.A., Inc.*, No. 07-80435, 2010 WL 4116488 (S.D. Fla. Sept. 14, 2010), at *16 (deductions for Bates labeling, notebooks, bindings and tabs must be made because these costs "are not permitted by section 1920 and appear to have been incurred for the convenience of counsel"); *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, No. 10-61532, 2011 WL 6138740, at *4-5 (S.D. Fla. Dec. 9, 2011) (reducing by 50% the requested costs for exemplification and copying); *Osorio v. Dole Food Co.*, No. 07-22693, 2010 WL 3212065, at *8 (S.D. Fla. July 7, 2010) (expenses for blowbacks from CD, custom tabs and binders are not taxable); *Luken v. International Yacht Council, Ltd.*, No. 02-60772, 2009 WL 678005, at *7 (S.D. Fla. Mar. 11, 2009) (binders, tabs and dividers are not compensable); *Van Voorhis v. Hillsborough Board of County Commissioners*, No. 8:06-1171, 2008 WL 2790244 (M.D. Fla. July 18, 2008) (excluding as recoverable costs expenses for binders and dividers, which are "subsumed within operating overhead and are not taxable"); *Rundus v. City of Dallas*, No. 3-06-CV-1823, 2009 WL 3614519, at *4 (N.D. Tex. Nov. 2, 2009) (no recovery under section 1920 for "incidental expenses" such as binding, folders, labels CDs and DVDs); *M.D. Mark, Inc. v. Kerr-McGee Corp.*,

No. 01-cv-00413, 2008 WL 162990, at *5-6 (D. Colo. Jan. 15, 2008) (no costs recovery for binders, index tables, bates-labeling and other photocopying related costs even though they "probably made the handling of the discovery and exhibits more convenient").

For some, but not all, of the invoices at issue, Patheon's costs request (and the supporting exhibits, declaration and memorandum) sufficiently breaks down these typically non-recoverable expenses into those incurred to comply with a Court order and those incurred solely for counsel's convenience. For example, attorney Michael Klisch's declaration [ECF No. 1023-3] explains which specific invoice relates to copy expenses for materials delivered to the Court and it even specifies how many copies were provided to the Court, how many were provided to the clerk and how many were for Procaps. The declaration also notes the copies for which it is *not* seeking reimbursement, such as the extra copy of its second summary judgment motion and exhibits. [ECF No. 1023-3, pp. 17-18]. It also noted when the Undersigned required that the parties highlight the relevant portions of the case law authorities they submitted, a directive requiring color copies.

Procaps' opposition contends that the declaration does not provide detail "other than stating, in a conclusory fashion, that the total charges for each invoice were incurred for specific depositions or to provide copies of documents to the Court." [ECF No. 1026, p. 7]. The Undersigned is not completely convinced by this objection, which

is itself vague and conclusory, but finds that Patheon did not always provide adequate detail to support its costs request for traditional photocopying.

To be sure, the declaration provides background on an invoice-by-invoice basis, and that is adequate[2] for *some* of the requested reimbursement. But there is still a lack of support for some of the copying costs which are not recoverable unless specifically required by the Court (e.g., binders, tabs, dividers, etc.). Even when Patheon explains that an invoice seeks copying expenses related to a Court directive to submit materials to chambers in a certain way, it does not carve out these costs for the copies provided to opposing counsel or to itself. For example, Patheon explains that Invoice FTL 14040035 notes that the certain costs were incurred "because the Court ordered Patheon to **deliver** courtesy copies of its summary judgment materials, bound and tabbed, in hard copy form." (emphasis added). But it also includes costs for one copy sent to Procaps and one for itself, and it notes that the costs were for "binders, tabs and

---

[2]       For example, paragraph 54 of Mr. Klisch's declaration discusses an invoice, as follows: "Invoice 24-26935, in the amount of $3,126.30 was incurred because the Court ordered Patheon to deliver additional paper courtesy copies of its summary judgment materials, bound and tabbed.  DE 933.  This invoice represents (1) one copy of Patheon's second motion for summary judgment and exhibits that Patheon submitted to the Court's law clerk; (2) three copies of Patheon's reply in support of its second motion for summary judgment, which Patheon submitted to the Court, the Court's law clerk, and the clerk; and (3) four copies of the legal authority cited in Patheon's second motion for summary judgment, which Patheon submitted to the Court, the Court's law clerk, Procaps, and Patheon retained one copy for itself.  *Exhibit 25*. This includes the cost of making black and white copies at $0.12 per page, making color copies at $0.35 per page, and the cost of binders and tabs.  *Id*.  Color copies were necessary because the Court specifically requested that the parties highlight relevant case law.  *See* DE 933."

assembling the copies." It appears as though Patheon is seeking recovery for these expenses.

Moreover, other invoices not related to a Court directive to provide copies in a certain format also seek an award under Section 1920 for these non-recoverable items. By way of example, Patheon explains that Invoice FTL 14020131 is for hard copy exhibits for three depositions -- which included "the costs of folders, binders, tabs and assembling the copies." Patheon should have, but did not, exclude those expenses from its costs request. In addition, the attached invoices often do not separate the actual copying cost from the other costs, such as "assembly."

Similar to the Court's position in *Habersham Plantation,* the Undersigned "declines to unilaterally undertake [an] analysis" of the invoices and, recognizing that Patheon "bears the burden of identifying the taxable versus the non-taxable costs," will reduce the requested photocopying expenses of $10,955.14 by 25% (i.e., a $2,738.78 reduction), leaving a photocopy expense award of $8,216.36.

The Court therefore awards Patheon **$8,216.36** in paper copying costs.

<u>Electronic Discovery Costs</u>

As Patheon notes in its supporting memorandum, Procaps' document request required Patheon to produce documents in TIFF format, with associated metadata, and in searchable form. Therefore, Patheon contends it had no choice but to scan paper

19

documents into electronic form, extract native electronic documents and metadata, format and import them into a database and convert them from native format into TIFF.

Moreover, Patheon further argues that part of its electronic discovery costs concerned expenses it had to incur in order to cause Procaps to correct its over-designation of Highly Confidential documents. Patheon contends that it is not seeking e-discovery costs for services performed solely for its counsel's convenience of reviewing or processing documents Procaps produced to Patheon. Finally, Patheon argues that its taxable e-discovery costs request is *conservative* because it does not include expenses for its e-discovery vendor's technical support (even though they were incurred, in part, for producing documents to Procaps).

Patheon contends that **electronic** discovery costs are copying costs and "clearly are recoverable" if they involve extracting documents and metadata, formatting documents, importing and loading them into a database, or converting them into a form requested by the non-prevailing party.

To advance that argument, Patheon says that the services required for producing information stored electronically differ from the services required to produce information from hard copies of documents.

But Procaps notes that electronic copies made for the convenience of counsel are ordinarily not taxable costs. *See Roberts v. Charter Nat'l Life Ins. Co.*, 112 F.R.D. 411, 414 (S.D. Fla. 1986). *See also Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328,

1340 (M.D. Fla. 2002) (noting that photocopies must be "necessarily obtained" and that "the burden of establishing entitlement to photocopying expenses lies with the prevailing party").

Procaps contends that the electronic copying charges are *not* taxable under Section 1920.

Even where courts have awarded electronic discovery costs, Procaps argues, they have strictly limited them to certain activities. In *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2007), for example, the Third Circuit held that "Section 1920(4) authorizes only the cost of making copies," and that activities "leading up to the actual production" are **not** taxable. *Id.* "[G]athering, preserving, processing, searching, culling and extracting ESI simply do not amount to 'making copies' and would be 'untethered to the statutory mooring.'"*Id.* at 169-70. The court allowed recovery only of the limited cost to convert documents to TIFF format because it was akin to photocopying.

Patheon admits that it is seeking costs for "extracting metadata from Patheon's native files," "applying Optical Character Recognition ("OCR") to the documents," "Scan, OCR," "imaging," and "OCR/Text Extraction." [ECF No. 1023-3, ¶¶ 61-63].

Procaps contends that Patheon's assertion that it incurred electronic charges in order to challenge Procaps' Highly Confidential designations is no justification for

circumventing the clear mandate of Section 1920. Procaps' position is that these costs are not taxable and should be denied.

Neither party has relied upon an applicable United States Supreme Court or Eleventh Circuit case on the issue of what costs, if any, for electronic copying (and the steps leading up to it) are recoverable under Section 1920. Most of the cases cited by the parties are non-binding district court cases. The parties cite a total of three appellate cases (all non-binding ones from circuits other than the Eleventh). Patheon cites one appellate case (*Online DVD-Rental Antitrust Litig.*, a 2015 decision[3]) and Procaps cites two: *Eolas Techs, Inc.*[4] and *Race Tires America*, a 2011 appellate ruling.[5] But *Eolas* is a per curium affirmed decision with no discussion or analysis.

Although there is no United States Supreme Court case directly on point, a recent case provides guidance on how Section 1920's costs provisions should be interpreted. The issue in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S.Ct. 1997 (2012), involved Section 1920(6), which authorizes costs reimbursement for "compensation of interpreters." The specific issue was whether this subsection covers the costs of translating documents. The Supreme Court held that the document translation costs may not be awarded under the costs statute for "compensation of interpreters." In

---

[3]       779 F.3d 914, 927-28 (9th Cir. 2015).

[4]       521 F. App'x 928 (Fed. Cir. 2013).

[5]       674 F.3d 158 (3d Cir. 2007).

reaching this holding, the Court emphasized several guidelines on how to interpret Section 1920:

First, the Court unequivocally explained that "we have never held that Rule 54(d) creates a presumption of statutory construction in favor of the broadest possible reading of the costs enumerated in § 1920." 132 S.Ct. at 2006.

Second, the Court than noted that "the 'discretion granted by Rule 54(d)[6] is not a power to evade' the specific categories of costs set forth by Congress" and that it is, instead, "solely a power to decline to tax, as costs, the items enumerated in § 1920." *Id.* (internal citation omitted).

Third, the Court described its decision as being in accord with "the **narrow** scope of taxable costs." *Id.* (emphasis added).

Fourth, the Supreme Court explained that the concept of taxable costs is "more limited" than the "everyday meaning synonymous with 'expenses,'" and then stressed that taxable costs are "limited to relatively minor, incidental expenses," which it noted was evident from the statute itself, which lists items such as clerk fees and printing expenses.

---

[6]     Federal Rule of Civil Procedure 54(d) provides in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees -- should be allowed to the prevailing party." In *Taniguchi,* the Supreme Court noted that section 1920 defines the term "costs" as used in Rule 54(d). 132 S.Ct. at 2001. It also noted that it previously "rejected the view that 'the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920.'" *Id.*

Fifth, after noting that taxable costs are "a fraction" of the nontaxable expenses borne by litigants, it pointed out that taxable costs are "**limited** by statute and are **modest** in scope." *Id.* (emphasis supplied).

Therefore, when determining whether e-discovery costs are recoverable under Section 1920 (and, if so, which ones), the Undersigned will be guided by the overarching principles outlined by the Supreme Court in *Taniguchi.*

Determining "whether a particular expense falls within the purview of section 1920, and thus may be taxed in the first place, is an issue of statutory construction, subject to de novo review." *Race Tires America,* 674 F.3d at 164. The subdivision providing for an award for exemplification and copying costs has been amended only once since 1948. In 2008, the statute's reference to "copies of papers" was replaced with "the costs of making copies of any *materials." Id.* (emphasis in original).

Although there are a few circuit courts which have recently analyzed the issue of whether section 1920 authorizes a costs award for different tasks and expenses associated with electronic discovery, the Eleventh Circuit is not one of them. Nevertheless, the Federal Circuit applied Eleventh Circuit law in *CBT Flint Partners, LLC v. Return Path, Inc.,* 737 F.3d 1320, 1325 (Fed. Cir. 2013) (applying Eleventh Circuit law as the regional circuit law). In addition, *CBT Flint Partners* noted that its general approach (rendered as part of a comprehensive analysis) and most of the specific applications it decided are "consistent with the analysis of other circuits that have

24

interpreted section 1920(4) to allow for only limited recovery of the costs of electronic discovery." *Id.* at 1333.

In addition to the factors listed above (which provide support for the Court's reliance on *CBT Flint Partners*, the Undersigned has carefully reviewed *CBT Flint Partners*), as well as the other circuit court decisions noted in this order, and I find the case to be logical, comprehensive, organized and compelling.

Consequently, in the absence of any on-point Eleventh Circuit law, the Undersigned deems *CBT Flint Partners* to be the most persuasive circuit court opinion on the issue of which costs associated with electronic discovery are recoverable under Section 1920. Therefore, the Undersigned will discuss the case in some detail and then, after flagging relevant holdings and points, apply its rules to the electronic discovery costs which Patheon has requested here under Section 1920.

Initially, *CBT Flint Partners* noted that the Eleventh Circuit had not addressed Section 1920(4) since it was amended in 2008, but it noted that the Eleventh Circuit's pre-amendment precedent "expressed the general principle that section 1920(4) 'allows recovery only for the reasonable costs of actually duplicating documents, **not for the cost of gathering those documents as a prelude to duplication.**'" 737 F.3d at 1326 (emphasis supplied) (citing *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 n.5 (5th Cir. Unit B 1982)). The Federal Circuit then noted that it would be interpreting Section 1920(4) in accordance with the Eleventh Circuit's principle, "making necessary

25

allowances for the inherent differences between paper and electronic documents." *Id.* Consistent with that approach, the *CBT Flint Partners* court also explained that the process leading up to the 2008 amendment "tends to suggest that the change was modest rather than dramatic in its bottom-line effect on litigants." *Id.*

Significantly, the Court noted that recoverable costs under Section 1920(4) are those "necessary to duplicate an electronic document in as faithful and complete a manner as required by rule, by court order, by agreement of the parties, or otherwise." *Id.* at 1328. To the extent a party is obligated to produce electronic documents in a particular format, the costs to make duplicates in that format are recoverable. However, the Court held that "only the costs of creating the produced duplicates are included, **not a number of preparatory or ancillary costs** commonly incurred leading up to, in conjunction with, or after duplication." *Id.* (emphasis supplied).

In order to determine which costs associated with electronic discovery are recoverable, the court divided the process into three stages and then analyzed specific steps in each stage. Regardless of which precise discovery-related task was being evaluated, however, the Court held fast to basic rules: (1) costs incurred in preparing to copy are not recoverable, (2) a requester's demands for activities other than making copies "does not bring those non-copying activities within the provision," (3) courts should use "common sense judgment guided by a comparison with the paper-document analogue," (4) the mere fact that a process "may well be valuable to both

26

sides in making post-copying review more efficient" is insufficient to change the rule that it is not a cost of "making copies,"[7] and (5) the costs of copying responsive documents to production media *are* recoverable under Section 1920(4).

The Court gave a concrete example of how to use common use and how to analogize to the paper version by discussing whether decryption is recoverable. Decryption of a document stored in encrypted form may be necessary to make a final production copy viewable by the requester, but that decryption cost is not recoverable. The Court compared the process to a scenario where a party decided to store paper documents securely by placing them in a safe in a remote location. The party's expenses in removing those paper documents from security -- traveling to the remote location, retrieving the documents and getting them to a duplication machine -- would "not naturally constitute 'making copies.'" *Id.* at 1331. Therefore, the Court held, decryption of electronic documents would likewise not constitute making copies (and would not be a recoverable cost).

Although the *CBT Flint Partners* Court did not render final decisions on every type of cost associated with electronic discovery, it did make the following determinations:

---

[7]     *See also Finnerty v. Stiefel Laboratories, Inc.,* 900 F. Supp. 2d 1317, 1322 (S.D. Fla. 2012) (noting that "the statute enumerating taxable fees and costs is not about making an attorney's job easier").

1.      Formatting is a recoverable cost (i.e., converting documents to a uniform production format (such as TIFF).

2.      If a party is required to create an image of the original source first and then apply special techniques to extract documents while preserving all associated metadata, then those costs are recoverable.[8]

3.      Costs incurred in preparing to copy, such as source code planning, are not recoverable.

4.      Tasks such as project management, keyword searching, statistical previews auditing and logging of files and extraction of proprietary data" are not recoverable because they are not the costs of making copies. Instead, they are "part of the large body of discovery obligations" which Congress did not include in section 1920(4).

5.      Costs incurred in acquiring, installing and configuring a data-hosting server are not recoverable.

6.      Deduplication (i.e., the culling of a set of documents to eliminate duplicate copies of the same document) is not covered by Section 1920(4).

7.      Costs for the creation of "load files" are covered to the extent that the files contain information required by the requested production. [The Court explained that

---

[8]      The Court noted that this decision "apparently differs" from the Third Circuit's decision in *Race Tires*, but then explained that it thinks its rule of inclusion is "the better application of the principle that governs in the Eleventh Circuit." *Id.* at 1333.

some of the basic information in load files is comparable to the slip sheets used to separate distinct documents in a paper production].

As outlined in the Klisch declaration, Patheon recognized that certain electronic discovery costs were not recoverable under Section 1920 and therefore removed those costs. Thus, in paragraph 61 [ECF No. 1023-3, p. 20], Patheon explains, through the declaration, that it is removing duplicate documents and culling documents that are not taxable, but it takes the position that extracting metadata from its native files and applying optical character recognition to the documents without searchable text are recoverable costs.

*CBT Flint Partners* does not discuss the use of optical character recognition and therefore did not decide whether those costs are recoverable. *Race Tires* does not permit a cost reimbursement for optical character recognition, but *Online DVD Rental* would permit recovery. 779 F.3d 17 at 931-932. Confronted with a lack of authority from the Eleventh Circuit (or from the Federal Circuit, construing Eleventh Circuit law in *CBT Flint Partners)*, the Undersigned will follow the fundamental principle that the costs statute is "modest" and "narrow" and limited to "relatively minor, incidental expenses" and therefore excludes the OCR costs from Patheon's costs request.

Specific discussion of precise charges related to OCR appear in three paragraphs of the Klisch declaration -- paragraphs 61, 62 and 63. In paragraph 61, Patheon notes that the costs for applying OCR to the documents is one of two categories of expenses

which created the $15,716.20 it seeks. It does not specify how much of the $15,716.20 is for the OCR, however. Paragraph 62 discusses a cost of $3,677.89, which consists of three types of processes under the category of "Scan,OCR,' one of which is OCR/Text Extraction, a process described as "making the scanned document searchable." The declaration does not pinpoint how much of the $3,677.89 is for OCR/Text Extraction, though. My review of the invoices located only one invoice using the heading "Scan, OCR," and it totaled $557.19, not $3,677.89. Finally, paragraph 63 discusses Invoice No. 005811COMB, for $3,114.88, for OCR/Text extraction.

Based on these observations, the Undersigned will subtract the following as non-recoverable costs for OCR expenses: $3,114.88 (under paragraph 63), $3,677.89 (under paragraph 62, because Patheon did not adequately segregate the expenses and did not reference an invoice number) and $15,716.20 (under paragraph 61, because Patheon did not reference specific invoice numbers and did not otherwise meet its burden to delineate how much of a grouped total is attributable to an expense which is not a recoverable cost). Therefore, the Court's *reduction* for electronic copying is **$22,508.97**, leaving a recoverable cost of **$10,789.66** for electronic copying.

### D. Interpreters

Patheon seeks $3,505 for interpreters.  Procaps does not oppose this request, noting that Patheon provided sufficient documentation. Nevertheless, Procaps asks the Court to use its discretion and deny the costs pending the outcome of its appeal of the

adverse summary judgment ruling. Although the Court stayed the request for attorney's fees and non-taxable costs, it denied the motion on taxable costs. Therefore, the Court awards Patheon **$3,505.00** in costs for interpreters under Section 1920(6).

### E.  <u>Special Master Fees</u>

Patheon seeks $26,935.86 as a cost reimbursement, which represents its 25% payment of the Special Master's fees. Procaps opposes the request on several  grounds, but does not challenge the Court's legal authority to assess the costs. Section 1920(6) provides for a costs recovery for "compensation for court appointed experts."

There is no doubt that the Court has authority to split the master's fees during the litigation but award the prevailing party an award for its share of those fees as a costs item to the prevailing party at the end of the case. *Fulton Fed. Sav. & Loan Ass'n of Atlanta v. Am. Ins. Co.,* 143 F.R.D. 292, 296 (N.D. Ga. 1991). On the other hand, there is also no doubt that Section 1920 provides that the Court "may" award some or all of the designated costs to the prevailing party -- which means that the language is construed "solely [as] a power to **decline** to tax[.]" *Taniguchi,* 132 S.Ct. at 2006 (emphasis added).

In the Order appointing the Special Master, the Undersigned explained that it was Procaps' failure to timely implement a litigation hold and to adequately search for ESI that generated the need for a forensic analysis. Nevertheless, I then noted that it was "both parties' inability to agree on even the most basic points which is partially responsible for the ongoing disputes concerning the forensic analysis." [ECF No. 558,

pp. 10-11]. Although I directed a 75% (for Procaps) and 25% (for Patheon) allocation of payment responsibility for these fees, I also mentioned that a party could seek reimbursement at the end of the case as the prevailing party. However, I also specifically noted that "by providing this opportunity, the Court is not indicating or signaling a positon on whether Procaps or Patheon would be entitled to recover their portion of these fees and costs . . . as a prevailing party."

I see no need at this point to change the payment allocation by adding Patheon's 25% payments to a costs award, and I therefore exercise discretion to exclude that from a costs award under Section 1920. This ruling does not in any way constitute a ruling on whether Patheon is entitled to recover  its portion of the special master's fees as a non-taxable cost (under other theories) should it prevail on Procaps' appeal of the summary judgment order and related final judgment.

## **INTEREST**

Patheon asks that the costs award bear interest from the date of the original final judgment (i.e., October 29, 2015). "When a district court taxes costs against a losing party, the award of costs bears interest from the date of the original judgment." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994). *See also Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1339 (S.D. Fla. 2009) (entering interest on costs award in favor of defendant after the Court granted its summary

judgment motion and entered a final judgment).[9] The interest rate applicable for the week ending October 23, 2015 was 0.23%, so the costs award shall bear interest at that rate, calculated from October 29, 2015).

## CONCLUSION

For the reasons stated above, the Undersigned grants in part Patheon's motion (i.e., its bill of costs) and **awards Patheon $173,480.80 in costs,** an amount which is $52,183.61 less than requested**).**

**DONE AND ORDEED** in Chambers, in Miami, Florida, February 2, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All Counsels of Record

---

[9]    The final judgment in *Monelus* [ECF No. 41, Dec. 16, 2008] was the judgment used to calculate when the interest started. It did *not* include a money judgment, a status which is fundamentally at odds with Procaps' argument that interest is allowed only on a money judgment and that the final judgment against Procaps cannot support an interest award on costs because the initial final judgment entered in October 2015 was not a *money* judgment.