**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-24356-CIV-GOODMAN**

**[CONSENT CASE]**

PROCAPS S.A.,

     Plaintiff,

v.

PATHEON INC.,

     Defendant.

_____/

**OMNIBUS ORDER ON DEFENDANT'S MOTIONS**
**FOR ATTORNEY'S FEES AND NON-TAXABLE COSTS**

<u>**Introduction**</u>

     This Order concerns the consequences, if any, which Plaintiff Procaps S.A. ("Procaps" or "Plaintiff") should face after losing this aggressively-litigated lawsuit. It decides whether Defendant Patheon Inc. ("Patheon" or "Defendant") is entitled to approximately $18.5 million in attorney's fees and non-taxable costs after prevailing in a full-throttle lawsuit which has generated 1165 docket entries and an appeal (including oral argument) since it was first filed in mid-December 2012.

     The primary issue underlying Patheon's Motions for Attorney's Fees and Non-Taxable Costs is whether the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") authorizes an attorney's fees and costs award to a prevailing defendant when most of the FDUTPA claim involved the same facts and transactions at issue in a

plaintiff's unsuccessful federal antitrust claims, which were based on a federal antitrust statute authorizing an award to a prevailing plaintiff but not to a prevailing defendant. Phrased differently, the issue is whether Procaps, which had an adverse summary judgment entered against it affirmed on appeal, is required to pay fees and costs when its FDUTPA claim is what Procaps deems a so-called "tag-along" claim -- i.e., based mostly (though not entirely) on the same circumstances at issue in its federal Sherman Act antitrust claim (which does not authorize fees and non-taxable costs to Patheon even though it prevailed).

Noting the intense, aggressive nature of the litigation, Patheon advocates for a rule permitting a discretionary award of fees and costs under FDUTPA. On the other hand, Procaps urges the Court to not enter an award because the federal antitrust claims, not the FDUTPA claims, were the **primary** claims. Procaps relies on a few non-binding federal district court opinions holding that fees and costs are unavailable under FDUTPA when the FDUTPA claim is a tag-along claim to another primary claim where fees are otherwise unavailable.

But Patheon (1) argues that those non-binding trial-level cases were incorrectly decided; (2) emphasizes that the FDUTPA statute does not itself contain any restriction on a fees/costs award to a party prevailing on a "tag-along" FDUTPA claim; and (3) relies upon binding state court decisions (including those from the Florida Supreme

Court) which do not even mention the supposed tag-along or primary claim theory (but which instead hold that fees for the *entire* action are recoverable).

Both sides agree that FDUTPA gives the trial court broad discretion to award (or not award) fees to a prevailing party, including a defendant, but both sides also contend that the Court would abuse its wide and considerable discretion if the issue was decided in favor of the opposing party. Both sides agree that there is no binding United States Supreme Court or Eleventh Circuit precedent, though Patheon relies upon non-binding, unpublished Eleventh Circuit case law, which it says is persuasive. Both sides agree that Florida state law controls the FDUTPA analysis.

In addition to relying on FDUTPA's prevailing party provision, Patheon's initial motion also seeks fees and costs under two other theories: (a) fees incurred as the result of the forensic analysis of Procaps' computers to obtain electronically stored information ("ESI"), and (b) fees and non-taxable costs caused by Procaps' change in its basic antitrust theory after the deadlines passed for motions filed under Federal Rules of Civil Procedure 12(b) and 56.

Patheon's supplemental fees motion emphasizes even more grounds relating to the FDUTPA theory: (a) Procaps' alleged misconduct in its unsuccessful Eleventh Circuit appeal; (b) Procaps' alleged misconduct in the arbitration; (c) the purported weakness of Procaps' claim (i.e., the appellate court described its claims as "intrinsically

hopeless"); and (d) the fact that Procaps' lead trial counsel had been previously sanctioned for significant misconduct by another judge.[1]

For reasons outlined in greater detail below, the Court **grants** Patheon's motions for attorney's fees and non-taxable costs. And because Procaps did not challenge the hourly rates or the reasonableness of the attorney time requested or of the non-taxable costs, the Court's award (which is also based on an overall assessment of the reasonableness of the requested fees and costs) is for the full amount of Patheon's requests.

In granting Patheon the full amount of its requested fees, the Court notes that the calculation is based on significantly-discounted hourly rates for many of Patheon's attorneys and further points out that Patheon engaged in a self-discounting approach (and demonstrated that its requests are on the conservative side). Thus, Patheon is entitled to an award of **$18,494,846**. This amount is based on: (1) $14,847,150.56 in fees and $1,558,708.63 in non-taxable costs sought in the initial motion; (2) $1,395,741.45 in

---

[1] However, the sanctions Order was later vacated by a successor judge as part of a settlement agreement. Patheon contends that this Court may still consider the sanctions award because the settlement-triggered order vacating it does not mean that the misconduct did not happen. Procaps, of course, takes the opposite position and argues that the sanctions Order is off limits because it was vacated.

fees and $45,733.66 in non-taxable costs sought in the supplemental motion; and (3) Patheon's Notice of Filing Supplemental Declaration.[2]

## Factual Background

The Court has outlined the factual scenario underlying this case many times in many different Orders. Therefore, there is no need to again outline in detail the comprehensive factual and procedural background. Instead, familiarity with the background is assumed, and the Court will summarize the **basic overall** background and provide details about the appeal and post-appeal developments. Providing a *complete,* step-by-step history of the underlying facts and significant procedural developments would require dozens of pages and the Court does not consider that necessary here.

---

[2] The fees and non-taxable costs were current as of June 15, 2017, the day before the June 16, 2017 supplemental declaration. There are now 1163 docket entries in this case, *many* of which were comprehensive motions and memoranda.

The Court held a multi-hour hearing on these attorney's fees motions on May 30, 2017, and the parties then attended mediation on the motions. Patheon's most-recent declaration [ECF No. 1156-1, p. 7] notes that the amount it seeks for work from April 1, 2017 to June 15, 2017 is "vastly understat[ed]." Specifically, Patheon explains that it is seeking an additional $621,489.60 in attorney's fees even though the amount it actually incurred (at a negotiated 15% discount) is $987,669.05. [ECF No. 1156-1, p. 7].Thus, the additional amount sought is slightly less than 63% of the actual fees incurred. Phrased differently, Patheon's updated fees request is based on a discount of 37%. Patheon's initial motion and supplemental motion are based on the same types of significant discounts.

Procaps and Patheon entered into a Collaboration Agreement (the "Agreement") to work together to produce and market a new brand of softgel capsules called P-Gels. Several months later, Patheon acquired Procaps' main competitor, Banner.

The Agreement contained a market allocation provision. Certain opportunities were allocated to Procaps, while other opportunities were allocated between the parties by mutual agreement. Neither party could individually develop or manufacture softgels within the scope of the Agreement. The parties both agreed that the Agreement allocated markets and customers. [ECF No. 487, pp. 36, 137].

The parties nonetheless took the position that the Agreement, even though it is one which allocated markets and customers, was **procompetitive** and lawful when it originated because it combined the complementary assets and capabilities of two companies that individually lacked the assets essential to compete in these markets and introduced a new competitor and a new softgel offering, P-Gels, into the marketplace. [ECF No. 565, p. 8].

By September 2012, Patheon, without telling Procaps, began to reconsider whether it had chosen the right "partner." [ECF No. 335, ¶ 24]. Patheon began considering (again) entering into a strategic relationship with Banner, the "#2" player in the prescription and over-the-counter ("OTC") softgel market by size. [ECF No. 335, ¶ 10].

By October 2012, Patheon told Procaps that it was considering an acquisition of Banner, a softgel competitor. [ECF No. 565, p. 9]. On October 22, 2012, during a meeting in Miami, Patheon notified Procaps that it might acquire Banner, and it proposed that Banner join the parties' collaboration. [ECF No. 333, ¶ 14].

Procaps began to analyze the pros and cons of integrating Banner. Procaps had some initial predictions that procompetitive benefits would result from integrating the Banner assets. [ECF No. 333, ¶¶ 17-18]. But it never gave Patheon its blessing to bring in Banner. [ECF No. 335, ¶ 26]. On October 29, 2012, Patheon went ahead and signed the Stock Purchase Agreement to acquire Banner without Procaps' approval. [ECF No. 335, ¶ 26].

By the beginning of November 2012, after further thought, Procaps believed that it could not continue performing under the Agreement because it believed the Collaboration had become an illegal horizontal restraint on trade. [ECF No. 335, ¶ 15]. At the same time, some Patheon executives also believed that Banner's acquisition was problematic. [ECF No. 335, ¶¶ 32-33]. In particular, they believed it created a conflict of interest for Patheon because both Banner and Procaps were engaged in the manufacture and sale of prescription softgels. [ECF No. 335, ¶¶ 32-33].

The parties met in November 2012 to try and work out a solution to continue working together. [ECF No. 333, ¶ 16]. But this "strategic relationship" was, for all intents and purposes, over. Patheon suggested a few ways where all three entities could

work together. [ECF No. 396, ¶ 14]. Procaps rejected all of Patheon's suggestions and offered none. [ECF No. 396, ¶ 14]. Instead, Procaps focused on getting Patheon to pay it to leave the Collaboration Agreement or to divest Banner. [ECF No. 333, ¶ 20]. Patheon was not willing to do either.

After the November 2012 discussion failed to produce a resolution, some Procaps' executives predicted, in an email correspondence, that if Procaps filed a lawsuit to interfere with the Banner acquisition, then Patheon would be willing to settle and pay Procaps to leave the Collaboration Agreement. [ECF No. 333, ¶ 20].

The Collaboration Agreement, however, contains a dispute resolution clause which requires arbitration for breach of contract claims, fraud in the inducement claims, and all other disputes, excluding a limited list of claims. An antitrust claim is one of the few types specifically excluded from the mandatory arbitration provision. Procaps decided to file an antitrust lawsuit.

In the antitrust lawsuit, Procaps did *not* challenge Patheon's acquisition of Banner as violating any antitrust laws. Rather, Procaps claimed that the parties were *not* competitors before the Collaboration Agreement, but that the acquisition would **transform** them into competitors. According to Procaps, this would in turn transform the Collaboration Agreement's allocation into an unlawful horizontal restraint on trade.

In the lawsuit, Procaps sought to "terminate" the Collaboration and "enjoin" the acquisition on the grounds that the acquisition transformed the Collaboration into a *per*

*se* unlawful horizontal allocation in violation of Section 1 of the Sherman Act. Procaps alleged that the action was filed "as a result of Patheon's unlawful business conduct and gross disloyalty in connection with Patheon's imminent acquisition of companies organized under the 'Banner' trade name." [ECF No. 1, p. 1].

Count I was for declaratory judgment under the federal antitrust laws, Section 1 of the Sherman Act. Count II was for injunctive relief, under the Clayton Act, for violations of Section 1 of the Sherman Act. In that count, Procaps sought to enjoin Patheon from consummating the Banner acquisition or, if the transaction had been consummated, Procaps sought to require Patheon to immediately divest Banner's softgel manufacturing capabilities and facilities to a third party. Count III was for damages, brought under Section 4 of the Clayton Act, for violations of Section 1 of the Sherman Act. Count IV was for damages under Florida statutory law, FDUTPA, and Count V was for common law unfair competition.

Procaps never filed a motion for a temporary restraining order or preliminary injunction. Instead, it filed a motion for expedited discovery four days after filing the lawsuit. [ECF No. 13]. Specifically, Procaps asked for permission to serve a request for production of documents before the parties had engaged in a discovery conference. The proposed document request it attached to its motion did not contain an accelerated response time. Instead, it included the standard thirty-day response deadline provided for in Federal Rule of Civil Procedure 34. Patheon opposed Procaps' motion to

propound discovery before the discovery conference and noted that it was "too late" to accomplish the need articulated by Procaps because Patheon *already* owned Banner, as the transaction had already closed. [ECF No. 18]. The Undersigned denied Procaps' motion, albeit without prejudice, [ECF No. 21], and Patheon filed a motion to dismiss [ECF No. 34] approximately three weeks later.

The District Court Judge, who presided before the parties consented to full magistrate judge jurisdiction, initially denied Patheon's motion to dismiss, holding that Procaps stated a *per se* claim for violation of the Sherman Act. [ECF No. 50].

After a more fully-developed record, however, and after discovery had closed, the Undersigned ruled on the parties' cross-motions for summary judgment and determined that the restraint embodied in the Agreement should be analyzed under the rule of reason, the precise structure of which the Court would later determine. [ECF No. 565]. The Court subsequently ruled that Patheon could take additional rule of reason discovery and file a second summary judgment motion.

In the meantime, Patheon had discovered that "Procaps' counsel did not supervise the ESI search, collection and preservation process," "did not use or develop any ESI search terms," "allowed some of its client's executives to use a single search term to collect emails, and failed to realize that its client never actually implemented the litigation hold[.]" [ECF No. 341, p. 4]. Procaps' actions "strongly suggest[ed]" that it had not produced responsive discovery to Patheon. [ECF No. 341, p. 6]. Thus, the Court

ordered a forensic analysis of Procaps' computers and ordered it to implement a litigation hold. [ECF Nos. 324; 341]. As a result, the case was removed from the trial calendar, a development which caused a year-and-a-half delay. [ECF No. 432, pp. 11-12]. The forensic analysis resulted in the production of about 150,000 new documents.

At the same time that the Court permitted Procaps to pursue a rule of reason claim, the Court dismissed the *per se* and quick-look antitrust claims, the common law unfair competition claim, and the FDUTPA claim (except to the extent that it duplicated the antitrust claim). [ECF No. 565, pp. 3-4, 43-50].

Patheon later filed a second summary judgment motion, which the Court granted. [ECF Nos. 889, 1020]. In the motion, Patheon contended that it was entitled to summary judgment for four reasons, any one of which was sufficient to sustain a defense summary judgment: (1) there were no substantial actual detrimental effects on competition as a result of the removal of the Banner assets from the relevant markets; (2) Procaps did not, and cannot, prove **substantial** market-wide harm; (3) Procaps had the burden of proving the absence of *all* procompetitive benefits or justifications, which it failed to satisfy; and (4) Procaps lacked antitrust standing because it had not been excluded *entirely* from the relevant markets. [ECF No. 889, p. 7].

The Court granted summary judgment on the first two grounds, but not on the third and fourth grounds. [ECF No. 1020]. In that summary judgment Order, the Court noted that Patheon would not be foreclosed from asserting on appeal (should Procaps

pursue an appeal) its theory that Procaps failed to establish the requisite agreement to establish a violation of Section 1 of the Sherman Act because only its own unilateral action was involved in the purported unlawful restraint.

The Court entered a final judgment in favor of Patheon, which Procaps appealed. [ECF Nos. 1021; 1022]. Patheon filed a motion for costs and a motion for attorney's fees and non-taxable costs. [ECF Nos. 1023; 1028]. The Court granted in part Procaps' motion to stay Patheon's motion for attorney's fees and non-taxable costs pending the exhaustion of all appeals but denied it as to taxable costs. [ECF No. 1040]. The Court later entered an order on Patheon's bill of taxable costs, awarding Patheon a judgment of $173,480.80 in taxable costs. [ECF Nos. 1040; 1048].

The Court later granted Procaps' motion to make a cash deposit into the Court Registry in lieu of a superseadas bond, and Procaps posted the money. [ECF No. 1050-51].

The Notice of Appeal [ECF No. 1022] challenged the Court's: (a) Section 1 summary judgment rulings; (b) July 30, 2014 order rejecting Procaps' FDUTPA claim as it related to confidential information; and (c) October 29, 2015 order rejecting Procaps' Sherman Act claim and the remainder of the FDUTPA claim (*i.e.*, the state law antitrust claim). Procaps mentioned the Court's ruling on the FDUTPA claim in its Civil Appeal Statement under the heading "issues proposed to be raised on appeal" -- and identified the question of "whether the court additionally erred" in its ruling on "Procaps' state

law claims." [ECF Nos. 1073-1; 1073-2, Klisch Decl., ¶ 16 & *Exhibit* A]. And its appellant

brief, filed February 18, 2016: (a) specifically referenced FDUTPA ("Sherman Act claims

and corresponding FDUTPA claim"); (b) admitted that its FDUTPA claim "rises or falls

with the Sherman Act claims;" and (c) argued that "[h]ad the trial court applied the

correct legal standard, it would have imposed liability under Procaps' Sherman Act § 1

and corresponding FDUTPA claims." [ECF No. 1045-1, pp. 1, 3, 23 n. 1, 28, 62].

Procaps coupled its 62-page brief with a 13-volume appendix totaling nearly

2,900 pages.

Patheon filed a 65-page brief, followed by a four-volume appendix of nearly 700

pages. Procaps filed a 32-page reply brief, followed by a 121-page supplemental

appendix.

After the parties briefed the issues, and with the benefit of oral argument, the

Eleventh Circuit Court of Appeals affirmed the Court's summary judgment ruling.

*Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072 (11th Cir. 2016). In doing so, the Eleventh

Circuit explained that "at bottom, this is essentially a breach of contract case – and so

Procaps's failure to support an antitrust theory is not all that surprising." *Id.* It cited

another appellate case[3] for the proposition that "[s]ome antitrust cases are intrinsically

hopeless because . . . they merely dress up in antitrust garb what is, at best, a business

---

[3]      *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 69 (1st Cir. 2004).

tort or contract violation." *Id.* And it noted that Procaps' case "is such a case." *Id.* As noted above, however, a breach of contract claim would have been subject to the arbitration provision of the Collaboration Agreement.

The Court then entered orders for release of the funds in the Court Registry [ECF Nos. 1065-66; 1068].

Patheon then filed, under seal, a Supplemental Motion for Attorney's Fees and non-taxable costs [ECF No. 1072]. After extensive briefing, a multi-hour hearing and motion practice on other legal issues, Patheon filed a supplemental declaration [ECF No. 1156], explaining that the revised total amount sought is $18,494,846. [ECF No. 1156].

In its initial motion, Patheon pointed out [ECF No. 1030, p. 21] that the Court previously set the hourly rate for eight of its attorneys (concerning an earlier fees award), which effectively required Patheon to use an average hourly rate discount of 47.25%. In its Supplemental Motion, Patheon used higher hourly rates for fees incurred in 2016 and 2017 because its hourly rates increased over time.

Nevertheless, the motion noted that the rates represent a 47.25% reduction off its primary law firm's standard rates. The declaration which Patheon submitted in support of its Supplemental Motion [ECF No. 1073-1, p. 12], explained that it incurred $2,245,327 in fees in this case (since the first motion) and on appeal but is seeking only $1,395,741 in fees. This means Patheon is seeking only approximately 62% of its fees since the first

motion, reflecting a 38% discount. The hourly fees used for the attorneys from the Cooley firm (primary, lead counsel) were reduced by 47.25%, regardless of whether the hourly rates increased in 2016 or 2017.

<u>Alleged Prior Misconduct by Procaps' Lead Counsel</u>

Patheon argues that the Court should consider the prior litigation history of Procaps' primary, lead litigation attorney when assessing the amount of attorney's fees it requested here. Procaps objects, and the parties have extensively briefed and argued the issue. These contrary positions all arise from *SP Healthcare Holdings, Inc. v. Surgery Centers Holdings, LLC*, Case No. 11-CA-005595, Thirteenth Judicial Circuit of Florida, and Case Nos. 2D14-3503 and 2D14-4458 (consolidated), Second District Court of Appeal.

In a June 2, 2014 Order, Circuit Court Judge Paul L. Huey of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Complex Business Litigation Division, issued a seven-page, single-spaced Order Granting in Part and Denying in Part Motion for Sanctions. [ECF No. 1148-1]. Judge Huey began his analysis by noting that the sanctions motion "raises serious issues." [ECF No. 1148-1, p. 2]. He then noted that he "specially finds that it was not filed out of spite, sour grapes or for an ulterior purpose."[ECF No. 1148-1, p. 2]. He then explained that Procaps' lead counsel, who was representing another party in the state court lawsuit, engaged in "consistent delays and

obfuscations" and "made it unpractical to obtain hearing times for every violation in real time." [ECF No. 1148-1, p. 2].

Noting that Procaps' lead litigation attorney "is a bright, experienced and skilled trial lawyer" who is also "likeable," Judge Huey's Order then said that "the record is clear that he 'crossed the line' during the litigation of this case" and that sanctions were therefore in order. [ECF No. 1148-1, p. 2]. In doing so, he noted that Procaps' lead attorney had "set up so many roadblocks to basic discovery" and that he had "continuously and repeatedly" violated the "boundaries" established by Florida's Rules of Professional Conduct, especially those governing meritorious claims, expediting litigation and fairness to opposing counsel. [ECF No. 1148-1, pp. 2-3].

Judge Huey concluded that Plaintiffs proved that Procaps' counsel "made misrepresentations to the trial court and the appellate court." [ECF No. 1148-1, p. 4]. The judge also described counsel's behavior at a deposition to be "the very type of conduct that shames the profession" and was "outside all bounds of integrity, fairness and civility." [ECF No. 1148-1, p. 5].

The *Surgery Center* clients represented by Procaps' primary litigation attorney filed a motion for reconsideration of Judge Huey's Order granting sanctions. [ECF No. 1148-2]. Basically, they urged the Court to carefully reconsider its Order because "it is necessary to prevent Defendants and their lawyers from being wrongfully indicted by the Court." [ECF No. 1148-2, p. 2]. The reconsideration motion contended that "factual

misapprehensions" prompted the court to single out one attorney for criticism and noted that the sanctions order attributed to him by name was a discovery objection that was actually made by other lawyers at his firm, before he became involved in the case. [ECF No. 1148-2, p. 2]. It also disagreed with the judge's general observations about counsel's "'sharp practice'" and "'petty' conduct." [ECF No. 1148-2, p. 23]. The motion asked Judge Huey to reconsider the findings which caused him to make statements "unjustifiably damaging" to counsel's "professional reputation." [ECF No. 1148-2, p. 23].

At the hearing on the motions for fees and non-taxable costs in this case, Procaps' primary counsel represented that his clients did not actually and technically seek to vacate the sanctions order on the merits in the *Surgery Centers* case. Saying he "want[ed] to be very careful with my words[,]" he advised that "[e]xactly as phrased, with regard to a motion directed to Judge Huey to vacate the order on the merits, Carlton Fields [counsel's law firm] did not do so." [ECF No. 1145, p. 77]. Procaps' counsel also advised this Court that "a motion to vacate the order titled that way was not done." [ECF No. 1145, p. 77].

In response to additional questioning from this Court at the hearing, Procaps' counsel explained that the reconsideration motion

> sought, among other things, a correction of mistakes, including conduct attributed by Judge Huey in his original order imposing sanctions to me when I wasn't even involved in the case. There were other mistakes similar in nature. The motion for reconsideration resulted in the entry of

an amended order. I do not believe that we sought to vacate that order
before Judge Huey.

[ECF No. 1145, p. 81].

But the reconsideration motion requested the following relief: "Defendants thus
urge the Court to reconsider and withdraw its misconduct findings." [ECF No. 1148-2,
p. 23 (emphasis supplied)]. In a post-hearing memorandum, Patheon stated that the
record "shows just the opposite" of the representations Procaps' counsel made to this
Court and argued that this Court could consider Procaps' counsel's prior misconduct
[ECF No. 1155, p. 4].

Judge Huey issued an Order on the reconsideration motion. [ECF No. 1148-3].
Although it made one or two clarifications, the Order did nothing to change the initial
sanctions order. For example, he noted that "the argument about what [Procaps'
counsel] knew during more than a year of hotly contested litigation likewise lacks
credulity, especially in light of the decision by [Procaps' counsel] to not testify in the
sanctions matter." [ECF No. 1148-3, p. 2]. Most of the points raised in the
reconsideration motion were resolved with a "needs no response" conclusion by the
judge. [ECF No. 1148-3]. In the final paragraph, Judge Huey noted that he "studied
Florida law at length before ruling" on the initial sanctions order and "found that each
of the violations noted were willful, deliberate and without justification, resulting in
delay, prejudice and waste of Plaintiff's money and Plaintiff attorneys' time." [ECF No.
1148-3, p. 2]. He did not vacate or rescind the sanctions order.

On appeal, the parties who obtained the sanctions award in the *Surgery Centers* case filed an initial brief, arguing that the trial court abused its discretion by refusing to dismiss the buyers' claims as a sanction for their egregious litigation misconduct. [ECF No. 1148-4]. The appellate brief noted that the trial court had entered "a blistering sanctions order" and found that the buyers and their counsel "obstructed and evaded discovery, interfered with depositions and made false statements to the court." [ECF No. 1148-4, p. 8]. Therefore, the initial appellate brief argued, it was "unreasonable" to conclude that they had "a fair and just opportunity to present their case." [ECF No. 1148-4, p. 8].

Procaps' counsel's clients in the *Surgery Center* case filed an answer brief as the appellees and, as cross-appellants, filed an initial brief on the cross-appeal. [ECF No. 1148-5]. They challenged Judge Huey's sanctions order. They noted that the judge, while criticizing Procaps' counsel and his law firm "in harsh terms," never expressly found that they acted "solely for bad faith purposes." [ECF No. 1148-5, p. 84]. They asked the appellate court to reverse Judge Huey's findings of misconduct "in their entirety" and to remand for several purposes. [ECF No. 1148-5, p. 95]. The appellants filed an answer brief in which they asked the appellate court to affirm the sanctions award. [ECF No. 1148-6]. Procaps' counsel's clients filed a reply brief on the cross-appeal, repeating their position that "the sanctions order should be reversed in its entirety." [ECF No. 1148-7, p. 10].

The Second District Court of Appeal issued its order on the consolidated appeals in the *Surgery Center* cases. [ECF No. 1148-8]. It said, "[w]e conclude, without comment, that the arguments raised by the appellants [i.e., the parties opposing the clients represented by Procaps' lead counsel and his firm] are without merit." [ECF No. 1148-8, p. 2]. It then held, in the same introductory paragraph, that it did not have jurisdiction to consider the appeal of the sanctions orders, and therefore dismissed that portion of the appeal. [ECF No. 1148-8, p. 2]. Specifically, the appellate court explained that "an order that only determines entitlement to attorney's fees and does not set the amount is a nonfinal and nonappealable order." [ECF No. 1148-8, p. 11]. Therefore, the appellate court determined that it lacked jurisdiction to challenge the order determining entitlement. [ECF No. 1148-8, p. 11].

At the May 30, 2017 hearing in this Court on the motions for fees and non-taxable costs, Procaps' lead trial counsel advised that the *Surgery Centers* appellate court "rejected all arguments put forth by the appellants[.]" [ECF No. 1145, p. 87]. And in a post-hearing memorandum, Procaps' lead counsel argued that "[i]t was apparent to undersigned counsel that the Second District sent a message to the parties about the errant findings in the sanctions order when it rejected the opponents' appeal as 'without merit' and awarded Carlton Fields' clients their attorneys' fees." [ECF No. 1149, p. 3].

But Patheon contends that "there is no basis whatsoever" for that argument. [ECF No. 1155, p. 4]. Patheon says that nothing in the appellate opinion "suggest[s]

anything of the sort -- nor *could* it because the appellate court never addressed the merits of the sanctions order other than" to rule that the "sanctions orders were not *yet* appealable." [ECF No. 1155, p. 4 (emphasis in original)].

After the Second District Court of Appeal issued its opinion and awarded appellate attorney's fees to the clients represented by Procaps' current counsel [ECF No. 1148-9], the *Surgery Centers* parties entered into a written mediated settlement agreement in which they, among other provisions, agreed to request by joint stipulation an order from the trial court withdrawing and vacating *nunc pro tunc* Judge Huey's original sanctions order, his amended order on the motion for reconsideration, and any motion or orders related to them in any fashion. [ECF No. 1148-10].

In an April 28, 2017 Order, a circuit court judge (not Judge Huey, but a successor circuit court judge)[4] entered an order withdrawing the sanctions motion, vacating the initial sanctions order, and vacating the amended sanctions order. [ECF No. 1148-11]. The order was entered three days before Procaps filed its opposition to Patheon's fees motion in this Court. In that opposition, Procaps argued that Patheon's reliance on the

_____

[4]      The copy of the written Order which Procaps filed at the Undersigned's direction [ECF No. 1148-11] does not contain the name of the judge, nor does it contain a signature. Instead, the order's signature block merely says "circuit judge" and "electronically conformed 4/28/2017" on the signature line. At the May 30, 2017 hearing, Procaps' lead counsel identified the judge who vacated the sanctions orders as "Judge Stevens." [ECF No. 1145, p. 80 (spelling selected by the court reporter who transcribed the digital audio recording of the hearing)]. The Court takes judicial notice of the fact that the Thirteenth Judicial Circuit's official judicial directory page on its website lists Scott Stephens as a circuit judge in the business court.

*Surgery Centers* sanctions order and findings was misplaced because those rulings were vacated *nunc pro tunc.*

<u>Procaps' Waiver of Challenges to Hourly Fees and Reasonableness of Fees</u>

Local Rule 7.3(b) requires the respondent to "describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount[.]" In addition, it further requires a party objecting to an hourly rate to have its counsel "submit an affidavit giving its firm's hourly rates for the matter and include any contingency, partial contingency, or other arrangements that could change the effective hourly rate." Local Rule 7.3(a).

Procaps never challenged the hourly rates or described the specific time entries it contested.

In a post-mandate Order [ECF No. 1057], the Court flagged as pending the issue of whether Procaps waived its objections to the amount of the fees request. In addition, the Order required Procaps to take certain steps if it were to take the position that Patheon's fee requests are unreasonable "because its attorneys did not bill efficiently or wisely or because there was unnecessary duplication." [ECF No. 1057, p. 3]. Specifically, Procaps was obligated to file an affidavit from counsel, explaining the total time for all Procaps attorneys and paralegals who worked on the case and to file copies of the billing records. [ECF No. 1057, p. 3].

Procaps did not file an affidavit from its counsel, nor did it submit copies of its attorneys' billing records. Likewise, Procaps did not address the waiver issue in its opposition memorandum.

At the May 30, 2017 hearing, Procaps' counsel conceded that Procaps is "not challenging the hourly fees or the reasonableness of various tasks" because it is arguing only that Patheon is "not entitled to fees under FDUTPA or any of the other theories that they're seeking fees under." [ECF No. 1145, pp. 39-40].

So Procaps has undoubtedly **waived** all arguments about the hourly rates used by Patheon's attorneys and about the reasonableness and efficiency of the attorneys' time.

## Applicable Legal Principles and Analysis

### FDUTPA

Under FDUTPA, a "prevailing defendant" is permitted to recover its attorney's fees and costs from a non-prevailing plaintiff after the exhaustion of all appeals. *Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352, 2015 WL 5687693, at *2 (M.D. Fla. Sept. 25, 2015); *see, e.g.*, Fla Stat. § 501.2105(1) ("prevailing party" may recover its "reasonable attorney's fees and costs from the non-prevailing party"). Patheon is the "prevailing party" and Procaps is the "non-prevailing party" under "the FDUTPA claim, as evidenced by the Final Judgment entered in favor of [Patheon] and against the plaintiff." *Victory Int'l (USA) LLC v. Perry Ellis Int'l, Inc.*, No. 08-20395, 2009 WL 1956236,

at *5 (S.D. Fla. July 7, 2009); [ECF No. 1021]. Patheon prevailed on appeal, Procaps did not pursue a motion for reconsideration in the Eleventh Circuit, and did not seek further review in the United States Supreme Court.

Therefore, there is no dispute that Patheon prevailed and that now is the time to evaluate its ability to recover under FDUTPA.

Because FDUTPA is a Florida state statute, this Court is bound by Florida Supreme Court decisions interpreting FDUTPA. If there are no Florida State Supreme Court cases, then this Court is "bound to follow an intermediate state appellate court unless there is persuasive evidence the [Florida Supreme Court] would rule otherwise." *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009) (internal citations omitted).

Procaps does not challenge the rule that the Undersigned is obligated to follow binding Florida state law interpreting FDUTPA. At the hearing, Procaps' counsel, in response to a question from the Court, said: "Yes, you are bound to follow Florida law, but Florida law, Chapter 501, makes it very clear that an award of fees under FDUTPA is discretionary." [ECF No. 1145, p. 22].

Both Patheon and Procaps agree that the non-exhaustive list of discretionary factors that are considered when evaluating a FDUTPA fee application is found in *Humane Society of Broward County, Inc. v. Florida Humane Society*, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007):

> (1) the scope and history of the litigation; (2) the opposing party's ability
> to satisfy the award; (3) whether an award would deter others from acting

in similar circumstances; (4) the merits of the respective positions, including the degree of [Procaps'] culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but was frivolous, unreasonable, or groundless; (6) whether the defense raised a defense mainly to frustrate or stall; and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.[5]

*Id.*

The Court will discuss these discretionary factors from *Humane Society* on a factor-by-factor basis. The Court will then address Procaps' argument that the FDUTPA claim is a "tag-along" claim which would not justify a FDUTPA prevailing party fees award to Patheon. Procaps contends that its "tag-along" theory, supported by several federal district court opinions, is one of the myriad discretionary factors which the Court can consider.

**Scope and History**

As noted in the now-affirmed Order granting Patheon's summary judgment motion, this lawsuit was an "expensive, bitter, time-consuming and hard-fought legal battle in federal court." [ECF No. 1020, p. 1]. The sheer number of docket entries establishes the rigor each side fought for its position. This Court held many hearings, both on discovery issues and substantive motions. Many of the hearings lasted multiple hours, and few hearings lasted less than an hour.

---

[5] Before a 1994 amendment, FDUTPA provided for the mandatory award of reasonable attorney's fees to any prevailing party. The 1994 amendment "placed an award of prevailing party attorney's fees within the discretion of the trial court." *Humane Soc.*, 951 So. 2d at 971 (internal citations omitted).

Nothing was easy in this case. Nothing. Basically, the parties fought about anything and everything. Scheduling depositions was difficult. Obtaining documents and ESI was problematic. Taking the depositions was often stressful. The deposition transcripts and emails exchanged between counsel (many of which were submitted to the Court) reflect the acrimony underlying every aspect of this case. Facilitating the forensic analysis of Procaps' ESI was grueling. Although it was with Court permission, Procaps changed its theory of the case after the Court's ruling on the initial round of summary judgment motions, switching from a *per se* antitrust theory to a rule of reason approach. This generated the need for more discovery.

Procaps' initial litigation strategy was to threaten to derail the Banner acquisition and cause Patheon to pay a significant settlement to allow the transaction to move forward. But the Collaboration Agreement required the arbitration of most claims, so if Procaps wanted to proceed in a Court-filed lawsuit, then it needed to pursue claims exempt from the arbitration provision. The antitrust claim and the FDUTPA claim, which was largely based on the same antitrust theories, fit into this narrow exception to the arbitration provision.

As the Court has noted several other times in this case, the litigation was especially unpleasant and nasty. Counsel routinely launched personal attacks against each other, and the motions and memoranda were routinely riddled with insults, allegations of bad faith and unprofessionalism, and, in general, purple prose.

Procaps largely based its FDUTPA claim on its antitrust claim theory and sought both damages and attorney's fees under this count. [ECF No. 1, ¶ 108]. It continued to press despite the Court's warning that it might be liable for all of Patheon's fees under FDUTPA. [ECF No. 487, pp. 115-16].[6] And after the Court dismissed Procaps' "confidential information" FDUTPA theory, [ECF No. 565, p. 43], the FDUTPA claim became wholly duplicative of the federal antitrust claim, but for the prevailing party fee provision.

**Procaps' Financial Ability to Satisfy the Award**

For all practical purposes, this is not a genuine issue, and it certainly appears that Procaps has the financial wherewithal to pay an award of $18.5 million. In its initial fees motion, filed in December 2015, Patheon explained that Procaps' market value was $238.9 million, that it had total assets of $187.6 million and that its 2012 EBITDA[7] was $24.3 million. [ECF No. 1028, p. 7].[8]

---

[6]     At the April 24, 2016 hearing on the parties' competing summary judgment motions, the Court advised Procaps that it understood its apportionment argument but then added the following point: "But given the fact that you told me earlier that your FDUTPA claim is in large part based on the antitrust claim, I don't know how you would carve out or segregate out all the work done on the antitrust claim from the FDUTPA." [ECF No. 487, p. 116].

[7]     EBITDA is earnings before interest, tax, depreciation and amortization. Many financial professionals deem it a helpful measure of a company's financial health by allowing analysts to generate useful comparisons between companies and to project long-term profitability and the ability to pay off future financing. Some financial professionals argue against the significance of an EBITDA analysis, noting that it is not part of generally accepted accounting principles, may be deceptive and might not

In its response [ECF No. 1094], Procaps does not exactly say that it lacks the ability to pay. Instead, it raises *other* points, none of which directly address the issue of ability to pay. Procaps discusses *Patheon's* financial situation, such as noting that Patheon's revenues are "close to $2 billion." [ECF No. 1094, p. 13]. But even if that were true, it would have no bearing on *Procaps'* ability to pay. Procaps argues that the 2012 EBITDA figure of $24.3 million is "not the same thing as net profit after taxes and therefore not an indication of 'ability to pay.'" [ECF No. 1094, pp. 12-13]. Again, that may well be correct, but Procaps does not offer any more-current financial information and does not disclose what its net profits after taxes actually were in 2012 (or any other year, for that matter).

Procaps argues, in a detail-free, wholly conclusory way, that the requested award "would have a substantial negative financial impact on Procaps, amounting to more than 50% of its 2012 EBITDA." [ECF No. 1094, p. 11]. But it does not say that it **cannot**

---

accurately represent a company's profitability. Nevertheless, EBITDA is one of the most important measures that investors consider when a company is being bought or sold. http://www.businessnewsdaily.com/4461-ebitda-formula-definition (last visited July 20, 2017).

[8]     This language is extracted from Patheon's *sealed* Motion for Attorney's Fees and Non-Taxable Costs. [ECF No. 1028]. This same motion was publicly filed with this financial information redacted. [ECF No. 1030]. Because Procaps discusses its EBITDA for 2012 and Patheon's financials, including its filing of Patheon's 10-K Form for 2012, in its publicly filed response to Patheon's motion, the Court finds it appropriate to discuss Procaps' redacted financial information from Patheon's sealed motion. [ECF Nos. 1094; 1094-1].

pay the award, nor does it provide clarification of "substantial" impact. Many companies required to pay an $18.5 million award might deem it to be "significant," so that argument is not particularly helpful without further financial details. Significantly, it does not even address Patheon's point that Procaps has (or had, at the time the motion was filed) total assets of $187.6 million. Procaps also argues that Patheon's fees request would "provide [Patheon] with a competitive advantage *in the marketplace*," but this is not a factor relating to Procaps' ability to pay. [ECF No. 1094, p. 13 (emphasis in original)].

Based on the information presented (and, for some of Procaps' positions here, *not* presented), the Court finds that Procaps does have the ability to pay an $18.5 million judgment.

**The Merits (including a bad faith assessment)**

Procaps' FDUTPA claim was largely based on its antitrust claim. The confidential information claim was unconvincing, and the Court granted summary judgment against Procaps because it had no evidence to support the theory. The common law unfair competition claim failed because there was no evidence to support it, and its unusual and attenuated customer confusion theory had no legal basis.

The parties do not dispute that Procaps' primary focus was on its antitrust claim, which, after the ruling on the first summary judgment motions was handed down, was based on a rule of reason approach. But the Eleventh Circuit Court of Appeals held that

Procaps "failed to establish the foundational requirement of <u>concerted action</u> necessary for a Section 1 claim under the Sherman Act[.]" *Procaps*, 845 F.3d at 1077 (emphasis in original). Moreover, notwithstanding that fundamental failure, the appellate court held that Procaps "also failed to show any actual anticompetitive effects." *Id.*

So Procaps lost on the merits of its primary claim. However, the Eleventh Circuit characterized the loss as more than a mere victory for Patheon. It pointed out that Procaps' failure to support an antitrust case "is not all that surprising" because the lawsuit was "essentially a breach of contract case." *Id.* at 1087. The Eleventh Circuit compared the scenario here with an explanation in another antitrust case: "[s]ome antitrust cases are intrinsically hopeless because … they merely dress up in antitrust garb what is, at best, a business tort of contract violation." *Id.* (internal citation omitted).

Although Procaps argues that it "made a good faith argument based on support from the case law and the record," [ECF No. 1094, p. 15], it is difficult for Procaps to overcome the Eleventh Circuit's negative comments about the merits of its position. Confronted with the strong language quoted above from the Eleventh Circuit's opinion, Procaps argues that the comments are "simply a rhetorical flourish." [ECF No. 1094, p. 15]. The Court does not find this argument convincing. Instead, the Court views the appellate court's comments as a clear indication of its conclusion that Procaps' entire antitrust theory was flawed from the start. Thus, the merits factor supports Patheon's fees motion under the discretionary multi-factor analysis.

Although the Court finds the merits factor in Patheon's favor, it recognizes that Patheon urges *other* arguments. At bottom, Patheon contends that Procaps "engaged in plenty of other misconduct" (in addition to its purported misconduct concerning its failure to implement a litigation hold and properly search for ESI, a failure which led to the Court-ordered forensic analysis, which generated additional fees and costs and further delayed the case). [ECF No. 1030, p. 18]. Patheon emphasizes its argument (i.e., that Procaps acted in bad faith) in the section of its fees motion concerning the forensic analysis, which is a *separate* ground asserted for a fees recovery. [ECF No. 1030, pp. 16-20]. Because the *Humane Society* merits factor includes "the degree of the opposing party's culpability or bad faith," 951 So.2d at 971, it is appropriate to also mention it here.

In its initial fees motion [ECF No. 1030, pp. 18-19], Patheon lists 16 instances or categories of misconduct, ranging from "repeatedly disavowing a rule of reason theory to avoid rule of reason discovery, only to later reverse itself when it was beneficial" to "improperly instructing witnesses not to answer deposition questions," and including an "'indiscriminate designation' of 95% of the documents produced in the forensic analysis as 'highly confidential'" and "changing position on the date it reasonably anticipated litigation to limit the scope of the forensic analysis." [ECF No. 1030, pp. 18-19].

Patheon's sealed supplemental fees motion asserts new and additional allegations of Procaps' purported bad faith, including allegations that Procaps made false statements to the arbitrators and made unsubstantiated allegations and arguments to the Eleventh Circuit. [ECF No. 1072, pp. 3-4]. Procaps filed a motion to strike Patheon's references to pending international arbitration. [ECF No. 1085]. In an omnibus order on pending motions [ECF No. 1125], the Court denied Procaps' motion to strike but ruled that Patheon's references to the pending international arbitration would not be considered for purposes of determining whether Patheon is entitled to attorney's fees and/or non-taxable costs, and for determining the amounts owed, if necessary. Therefore, this Order will not consider and will not further discuss the specific allegations concerning the positions taken, representations made, and testimony provided in the pending arbitration. In an August 16, 2017 filing, Patheon gave notice that the arbitration panel issued its final award on August 15, 2017. [ECF No. 1165]. Patheon's notice did not provide any further details about the arbitration award. The Court does not know which party prevailed in the arbitration, whether a damages award was issued and, if so, the amount of the award.

Patheon also filed a separate sealed motion to show cause why Procaps should not be sanctioned for violating a protective order. [ECF No. 1071]. The motion alleges, in general, that Procaps' counsel improperly gave one of its client's principals documents in violation of a protective order entered by this Court. Patheon's motion

contends that Procaps' counsel did this in connection with an arbitration proceeding concerning the very Collaboration Agreement at issue in this federal antitrust/FDUTPA case. Procaps filed its arbitration demand after losing the summary judgment motion here and after the appeal of that summary judgment order was filed.

Patheon's separate show cause motion does not directly implicate its motions for fees and costs, as those motions are not expressly based on the argument that Procaps acted in bad faith in the arbitration by violating this Court's protective order. This Court has already initially advised the parties that an evidentiary hearing will be needed to resolve the parties' competing positions on the protective order issue. The Court has not yet scheduled that evidentiary hearing but anticipates doing so in the near future. Nevertheless, the Court has not finally decided whether an evidentiary hearing will take place. The Court has required supplemental briefing on issues related to some of Procaps' objections to an evidentiary hearing.

To the extent Procaps pursues an appeal of this award of fees and non-taxable costs, the record (including sealed filings) contains the information which Patheon relies upon for the challenges it makes to Procaps' conduct in the arbitration (other than the alleged violation of the protective order, which will be supplemented by the evidence received in the evidentiary hearing), and what effect, if any, the conduct (or misconduct) there should have on the analysis here. Therefore, although the Court is not relying upon any of the events in the arbitration as part of its analysis of the

motions for attorney's fees and non-taxable costs, Patheon would not be foreclosed from asserting these arguments on appeal. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1302 (11th Cir. 2007), *cert. denied*, 552 U.S. 1022 (2007) (reviewing court can affirm summary judgment on any legal ground, regardless of the grounds addressed and relied upon by the lower court); *see, generally, Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging Co.*, 286 F.3d 1233, 1263 (11th Cir. 2002) (finding that appellate court may affirm ruling below "as long as the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court") (internal quotation omitted).

Concerning the 16 separate categories of purported additional misconduct (and the newer bad faith assertions raised in Patheon's supplemental fees motion), the Court is not going to engage in a point-by-point review of this Patheon theory. Evaluating the facts and documents underlying each of the 16 types of alleged bad faith (and the new bad faith assertions concerning representations made to the Eleventh Circuit) would be an arduous task and would require dozens of pages of discussion to thoroughly analyze.

Because fees litigation is not intended to "result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Court declines to tackle this massive project. It is unnecessary. The Court is able to rule on the fees motion without diving into a 16-scenario pool of purported misconduct and without further swimming into

the waters of purported bad faith from the appeal. As noted, Patheon can, if it wishes, refer to these arguments (and the evidence it filed to support them) on appeal. *Thompkins*, 476 F.3d at 1302.

Patheon also urges the Court to consider the conduct (or, to be more accurate, alleged misconduct) of Procaps' lead litigation attorney in the state court *Surgery Centers* lawsuit in which Judge Huey entered the sanctions award. Rather than slotting this argument under the deterrence category of the *Humane Society* factors for assessing a FDUTPA fees request, Patheon's initial fees motion discusses it under its second legal argument heading -- concerning "the forensic analysis and Procaps' change in theory." [ECF No. 1030, pp. 14-18].

If the Court were to consider the alleged misconduct in *Surgery Centers* (which it is not going to do, as explained below), then the Court would consider it under the deterrence or bad faith *Humane Society* factors, not in connection with the Patheon argument about Procaps' ESI discovery failings which led to the forensic analysis. The forensic analysis scenario is actually a separate theory being advanced by Patheon, apart from the primary FDUTPA theory.

Now that Procaps has, at the Court's direction, filed copies of the relevant *Surgery Centers* orders, motions and briefs, there is little or no dispute about what actually happened. But there is still a dispute (and a significant one, at that) about the

significance of *Surgery Centers* and whether the now-vacated sanctions order could, or should, be considered here.

Procaps conceded at the hearing that, as a general matter, an attorney's prior misconduct could be considered under the discretionary FDUTPA factors. [ECF No. 1145, pp. 71-73]. So the parties agree that, as a matter of law, a court *may* consider an attorney's prior misconduct to determine whether the prevailing party is entitled to fees and costs under FDUTPA, but neither party actually found a case which specifically says that. [ECF No. 1155, p. 2]. But the dispute here is not *whether* a court *could* consider the misconduct from another lawsuit in a FDUTPA case. Instead, it is whether this Court, in this case, can properly consider the purported misconduct when the *Surgery Centers* sanctions order against Procaps' counsel was vacated.

Each side submitted a memorandum on whether this Court may consider the now-vacated *Surgery Centers* sanctions order. [ECF Nos. 1149; 1155]. In its memorandum, Procaps noted that "there appears to be *no* FDUTPA fees case in which a court has considered findings of misconduct in another unrelated case, much less one in which the order was vacated."[ECF No. 1149, p. 2]. It emphasized that "only the 'scope and history of *the* litigation' before the Court has ever been cited as a FDUTPA fees factor." [ECF No. 1149, p. 2 (emphasis in original)]. Procaps did not, however, cite anything to rescind, change or modify counsel's in-hearing concession that prior attorney misconduct could theoretically be considered as a discretionary FDUTPA fees

factor. And it cited no case holding that the prior misconduct could not, or should not, be added to the mix of non-exhaustive discretionary factors.

Instead, Procaps' primary argument on the prior attorney misconduct issue is that a vacated order is void and therefore cannot be judicially noticed for its factual findings. *See, e.g., Anago Franchising, Inc. v. Shaz, LLC*, 599 F. App'x. 937 (11th Cir. 2015) (explaining that a court may judicially notice only that the sanctions order was entered and then vacated, and "not for the truth of the facts set forth in the order," and affirming district court's declination to judicially notice "factual findings" in a "now-vacated order in the prior lawsuit") (internal quotation omitted); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (noting "indisputability [of facts] is a prerequisite" before judicially noticing another court's findings); *Cavero v. The Law Offices of Erskine & Fleisher*, No. 12-21196, 2012 WL 12886982, at *5 (S.D. Fla. Nov. 15, 2012) ("Defendants' request ignores the fact that the Court cannot examine the contents of these [judicially-noticed] documents" as evidence).

Procaps' law firm denies that it settled the *Surgery Centers* sanction order after appeal because it was pressured to do so and noted that its *Surgery Centers* clients prevailed on every issue raised in the *Surgery Centers* appeal, including an attorney's fees award for both the trial court litigation and the appeal. [ECF No. 1149, p. 3]. Procaps also emphasized that the opponent requested mediation after the appellate

decision and that the *Surgery Centers* clients "obtained a substantial, multi-million dollar settlement." [ECF No. 1149, p. 3].

On the other hand, Patheon's memorandum cites cases to support its view that "courts may, for determining sanctions, consider sanctions orders in other cases that were vacated per a settlement." [ECF No. 1155, p. 2]. For example, Patheon cites *Goodman v. Tatton Enterprises*, 2012 U.S. Dist. LEXIS 189060, at *60-67, 107-12 (S.D. Fla. 2012) and *Bernal v. All American Investment Realty, Inc.*, 479 F. Supp. 2d 1291, 1331 & n. 57 (S.D. Fla. 2007). [ECF No. 1155, p. 2]. In *Goodman*, the Court explained that a "relevant and proper consideration in the Court's analysis of whether sanctions are appropriate includes consideration of [counsel's] litigation history." 2012 U.S. Dist. LEXIS 189060, at *107-08. And in *Bernal*, the Court considered that other divisions of the Court "[had] previously admonished or imposed sanctions" against an attorney, "with no apparent deterrent effect." 479 F. Supp. 2d at 1331.

The Court observes that the issue of whether the vacated *Surgery Centers* sanctions order may be factored into the *Humane Society* factors is far from clear. Both sides raise good arguments, and both sides assert valid theories to counter their opponent's arguments. In the Court's view, the more-prudent course is to not substantively consider the vacated sanctions order. The attorney's fees award in Patheon's favor is based on the *other* factors, and the purported misconduct in *Surgery Centers* is not necessary to justify the FDUTPA fees award. Nevertheless, similar to

other Patheon-raised arguments discussed in this Order, Patheon is free to argue the *Surgery Centers* factor on appeal, as the record evidences the developments from that case.

So the Court is not going to consider the *Surgery Centers* case and similarly will not specifically consider the 16 bad faith factors (from this case) and the alleged appellate-level misconduct asserted by Patheon.

Nevertheless, from a 30,000-foot broad view of this case, which consumed a significant part of the Court's judicial life for the past few years, the Court is extremely familiar with the background.

For purposes of this Order, suffice it to say that the Court is, at a minimum, extremely disappointed in the way that Procaps and its counsel handled many aspects (both substantive and procedural) of this complex case. It is perhaps conceivable that all 16 bad faith factors and the alleged misconduct before the appellate court and arbitration panel were merely the results of neutral decisions that only in retrospect may appear problematic. And it is theoretically possible that Procaps and its counsel were simply overwhelmed with the complexity of the case and did not have sufficient time to avoid developments that now are fodder for Patheon's argument that Procaps and its counsel repeatedly acted in bad faith.

The facts underlying the 16 bad faith factors are, for the most part, true or substantially true. They happened. The Court knows that they happened (or

substantially happened) because of its involvement in this case for the past four-and-a-half years. The Court does not, however, have any insight into the accuracy of Patheon's newer bad faith allegations concerning Procaps' representations to the appellate court or the arbitration panel. The Undersigned has, of course, read the allegations, the opposition response, and the reply but has not otherwise evaluated the merits of these new allegations.

Procaps has explanations, rationales, additional information, clarifications and other ways in which it addresses these 16 bad faith factors from the trial level portion of this case. As noted, the Court is not going to engage in a fine-tuned, digging-into-the-weeds approach for each factor. But the Court has no difficulty in determining that, at a minimum, Procaps and its counsel made this case far more difficult than it had to be, and that this caused Patheon to incur additional attorney's fees and costs. Patheon contends that Procaps did more than be difficult, but the Court is not going to make a finding on whether the conduct of Procaps and its counsel reached the bad faith level. Patheon has preserved the issue for appellate review, however, as it raised the argument and submitted evidence that it says supports the argument.

## Frivolous, Unreasonable or Groundless

Although frivolousness is a **factor** which may be considered under the discretionary *Humane Society* protocol, it is not a *requirement* for recovery of a FDUTPA attorney's fees award as a prevailing party. In fact, courts award fees under FDUTPA to

defendants who prevail on summary judgment on a FDUTPA claim after a plaintiff initially gets past a motion to dismiss. *Chow v. Chak Yam Chau*, 640 F. App'x 834, 835, 843 (11th Cir. 2015) (finding fee award appropriate under FDUTPA where court granted summary judgment to defendants on FDUTPA claim); *Flexiteek Americas, Inc. v. Plasteak, Inc.*, No. 12-60215, 2016 WL 7497485, at *21 (S.D. Fla. Feb. 4, 2016), *report and recommendation adopted*, 2016 WL 7508240 (S.D. Fla. 2016) (awarding fees where court granted summary judgment on FDUTPA claims to defendants even though "there is no evidence that the Plaintiffs' FDUPTA [sic] claims were brought in bad faith"); *Prato v. Hacienda Del Mar, LLC*, No. 2:08-cv-883, 2011 WL 3875373, at *2 (M.D. Fla. August 31, 2011) (awarding defendant FDUTPA fees where plaintiff prevailed at summary judgment on FDUTPA claim, plaintiff lost at trial, there was no bad faith, and the claims were not unreasonable); *Mandel v. Decorator's Mart, Inc.*, 965 So. 2d 311, 314-15 (Fla. 4th DCA 2007) (finding fees appropriate where plaintiff lost FDUTPA claim at trial).

In the instant case, the Court rejected Procaps' non-antitrust FDUTPA claims at the summary judgment stage. And the antitrust strand of its FDUTPA claim was based on the same intrinsically hopeless theory (i.e., there never was any agreement or concerted action to violate the antitrust laws).

Procaps argues that its claims were not meritless or frivolous "simply because the plaintiff ultimately lost the case." [ECF No. 1094, p. 17]. While this position is surely correct as a *general* proposition of law, it overlooks the specific condemning language

used by the Eleventh Circuit in this particular case. Moreover, the factor here is "frivolous, unreasonable or groundless," but both parties seem to treat all three sub-factors as if they are the same. Both parties discuss only the frivolous factor; they do not separately discuss whether Procaps' claim was unreasonable or groundless, which may well be a lower burden than frivolousness.

In its sealed reply, Patheon notes that it "did not argue that Procaps' claims were frivolous." [ECF No. 1130, p. 2]. The Court is not here making a finding that Procaps' claim was frivolous. On the other hand, the Court is finding that the antitrust claim, which was embodied in the FDUTPA claim, was either unreasonable or approaching the level of being unreasonable. An antitrust plaintiff pursuing a Section 1 Sherman Act claim must establish "concerted action" between two or more persons. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). But the Eleventh Circuit held that Procaps had "wholly failed" to establish concerted action in restraint of trade. *Procaps*, 845 F.3d at 1080. It also held that any claim that Banner was Patheon's co-conspirator "is dead in the water." *Id.* at 1082.

Because Procaps needed to demonstrate concerted action to pursue its antitrust theory, arguments seeking to establish concerted action which were "dead in the water" or which "wholly failed" are likely either groundless or close to being groundless. *Id.* at 1080, 1082. The arguments might not reach the extreme negative level of being *frivolous*, but they certainly were not powerful or persuasive.

But regardless of what adjective could be appropriately linked to Procaps' antitrust claims (both separately and embodied in its FDUTPA claim), the significant point is that the Eleventh Circuit effectively concluded that Procaps lacked a viable legal theory. Therefore, it is difficult to see how the frivolous, unreasonable or groundless factor could be fairly analyzed to wind up as a *positive* point in Procaps' column. To the contrary, the Court places this factor in the Patheon column.

**Deterrence (of others)**

Patheon contends, in a somewhat conclusory fashion, that a full award would deter others from doing the things it condemns Procaps for in this case: "adopting a litigation strategy designed to delay entry of judgment and multiply proceedings," and "shifting the costs of such obligations to their adversaries by requiring their adversaries to participate in a forensic analysis to ensure document production." [ECF No. 1030, p. 13]. On the other hand, Patheon also says that a fee award in its favor would "incent parties to comply with their discovery obligations" and would not deter plaintiffs from bringing meritorious or even arguable claims -- because, in contrast, it says Procaps' claims here "were insufficient as a matter of law."[ECF No. 1030, p. 13]. Patheon also argues that a strong sanction (by way of a substantial fee award) is needed because Procaps' counsel "has not been deterred *at all* by Judge Huey's sanctions order." [ECF No. 1072, p. 21 (emphasis in original)].

Procaps' opposition argues that a fee award would undermine strong antitrust policy, designed to "encourage suits by plaintiffs acting as private attorneys general." [ECF No. 1094, p. 13]. The Undersigned is not convinced by Procaps' argument.

First, the record evidence supports Patheon's perspective that Procaps framed an antitrust claim (which was in large part the basis for its FDUTPA claim) only because it was a limited exception to the arbitration provision and because it wanted to use the threat of treble damages to pressure Patheon into paying a hefty settlement.

Second, the antitrust claim was weak, at best, as evidenced by the Eleventh Circuit's negative comments about the antitrust claim. Thus, a fee award would not deter *legitimate* antitrust claims brought by private attorneys general. And to the extent that it would deter a putative plaintiff from bringing an "intrinsically hopeless" antitrust claim, that is a *positive* result, not a consequence to be avoided. So this factor is in Patheon's favor. *Hanaw*, 2015 WL 5687693, at *6 (awarding defendant FDUTPA fees as a "deterrent," even where the FDUTPA claim was "entirely dependent" on other claims, because "discovery revealed holes in the theory of the case" and there was a "relative lack of merit of the claims that formed the basis of the FDUTPA claim").

**Did the defense raise a defense mainly to frustrate or stall?**

Patheon did not discuss this factor in its initial motion, and Procaps discusses it only briefly. Patheon mentions it, though only succinctly, in its reply.

This factor appears relevant primarily when a *plaintiff* prevails in a FDUTPA case and is based on the reasonableness of the *defendant's* positions and the strategy underlying its tactics. But in the instant case, the *defendant* prevailed, so it seems somewhat odd to discuss as a *Humane Society* factor whether Patheon's defenses were designed to frustrate or stall. Its primary defenses **succeeded**, as evidenced by the Eleventh Circuit's opinion, which affirmed the defense summary judgment on two separate grounds, either one being sufficient.

Nevertheless, Procaps argues that Patheon proffered some defenses that were unsuccessful. The Court is not convinced that Patheon should be somehow blamed for asserting a few defenses upon which it did not prevail. Those defenses were not designed to frustrate or stall the case, and Procaps has not explained why they were. Instead, Procaps merely notes that some defenses failed. This is insufficient to cause this factor to tip in Procaps' favor, and the Court designates this factor in Patheon's favor (though it is a comparatively *minor* factor in the *Humane Society* analysis in this specific case).

**Was the claim brought to resolve a significant FDUTPA legal question?**

In its initial fees motion, Patheon addresses this factor only in a footnote. [ECF Nos. 1030, p. 13 n. 5; 1147, p.1]. It contends that this factor is neutral because the case was not brought to resolve a significant legal issue under FDUTPA. Procaps' response

[ECF No. 1094, p. 18] agrees that this factor is neutral. Given the lack of a dispute and the absence of briefing on this issue, the Court will classify this factor as neutral.

**Are Fees Available When a FDUTPA Claim Is A So-called "Tag-along" Theory?**

This issue is not one of the specific *Humane Society* factors, but Procaps' primary argument is that FDUTPA fees are legally unavailable here because its FDUTPA claim was primarily a repeat of its federal antitrust claim (which does not provide for attorney's fees for a prevailing *defendant)*.

Procaps argues that this legal position is the **most** important of the factors used in the discretionary *Humane Society* analysis, which, as noted earlier, is a non-exclusive list of elements. In fact, it contends that this factor is, by itself, *dispositive.* Procaps argues that awarding fees and costs under FDUTPA here would be an end run around the Congressional decision to not award fees and costs to a prevailing defendant in a federal antitrust claim and would be tantamount to awarding fees under the Sherman Act.

More specifically, Procaps argues that a FDUTPA fee award might be appropriate for a prevailing defendant when the FDUTPA claim is the main or primary claim -- but not when it is a derivative or dependent or a tag-along claim. Procaps also argues that a FDUTPA award to Patheon would "make for terrible policy" and "would create a chilling effect" on putative plaintiffs who want to function as "private attorneys general" in order to "enforce competition laws in this country." [ECF No. 1145, p. 38].

46

According to Procaps, because this one unlisted factor is in its favor, it prevails on its opposition, and Patheon, the prevailing party, cannot obtain any fees and non-taxable costs under FDUTPA, which permits a court to award fees and costs to either a prevailing plaintiff or a prevailing defendant.

Procaps relies upon several non-binding federal district court cases. And although it acknowledged that this Court could "theoretically" award fees under FDUTPA without a finding of bad faith or vexatiousness, it also contends that entering a fee award here "would be an abuse of discretion." [ECF No. 1145, p. 49].

Patheon disagrees with all of that.

The starting point for any analysis or interpretation of the FDUTPA statute, other than the actual text of the statute itself, is the Florida Supreme Court. Because a Florida statute is at issue, this Court is obliged to follow Florida Supreme Court decisions interpreting the statute, and, if there are none, to follow the ruling of intermediate state appellate courts "unless there is persuasive evidence that the highest state court would rule otherwise." *Bravo*, 577 F.3d at 1325-26.

Federal courts look to the decisions of the state courts to determine the meaning of a state statute because "it is axiomatic that the highest court of the state is the final arbiter of what is state law," a rule which means that the state supreme court's "pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified,

limited or restricted." *In re Schlein*, 8 F.3d at 754; *see also In re Tobkin*, 638 F. App'x. 822, 824 (11th Cir. 2015) (when interpreting a state statute, federal courts look to the decisions of the state courts).[9]

The leading Florida Supreme Court case on interpreting FDUTPA is *Diamond Aircraft Industries Inc. v. Horowitch*, 107 So. 3d 362 (Fla. 2013). Because it is the law in Florida on how to evaluate FDUTPA, *Diamond Aircraft* deserves a comprehensive discussion.

The Florida Supreme Court issued its ruling in *Diamond Aircraft* after the United States Court of Appeals for the Eleventh Circuit certified four questions for review. 107 So. 3d at 364-65. The case arose from a contract dispute between Dr. Alan Horowitch, a resident of Arizona, and Diamond Aircraft Industries, Inc., a foreign corporation which operates in Florida and has an agent in Florida. *Id.* at 365. Horowitch contracted to buy a single engine jet aircraft from Diamond, but Diamond failed to deliver the aircraft to Horowitch and refused to complete the transaction unless Horowitch paid a purchase price of at least $1.38 million. *Id.* Horowitch filed a lawsuit against Diamond Aircraft, which was removed to federal court in the Middle District of Florida. *Id.* After his lawsuit was removed, Horowitch amended his complaint to assert four claims: (1)

---

[9]     Procaps readily acknowledged, at the hearing, that this Court is bound to follow Florida law when interpreting FDUTPA and determining whether a fees and costs award to a defendant should be rendered unavailable or be apportioned when the FDUTPA claim is derivative of another claim in which fees are not available. [ECF No. 1145, p. 22].

specific performance; (2) breach of contract; (3) breach of the covenants of good faith and fair dealing; and (4) FDUTPA. *Id.*

Both parties moved for summary judgment. *Id.* at 366. On the FDUTPA claim, the district court permitted the deceptive trade practices claim to proceed -- but held that Arizona law (specifically, the Arizona Consumer Fraud Act ("ACFA")), not Florida's FDUTPA law, applied. *Id.* The district court reasoned that Arizona law applied because that state was the location of most of the business contacts between the parties. *Id.* After a nonjury trial, the district court entered judgment in favor of Diamond Aircraft and against Horowitch on the deceptive trade practices claim. *Id.*

Defendant Diamond Aircraft then moved for attorney's fees on the basis of, among other grounds, the prevailing party attorney's fees provision in FDUTPA. *Id.* Diamond Aircraft contended it was entitled to fees under FDUTPA even though the district court had previously concluded that FDUTPA did not apply to Horowitch's deceptive trade practices claim. *Id.* According to Diamond Aircraft's theory, Horowitch, by asserting and seeking recovery under FDUTPA, had invoked FDUTPA's attorney's fees provision even though he did not prevail under that specific statutory provision. *Id.*

The district court denied Diamond Aircraft's motion for attorney's fees. *Id.* It held that Diamond Aircraft was not entitled to attorney's fees under FDUTPA because Arizona law, not FDUTPA, applied to Horowitch's deceptive trade practices claim. *Id.* The district court concluded that Diamond Aircraft was not entitled to attorney's fees

under Arizona's ACFA statute because the ACFA did not have an applicable attorney's fees provision. *Id.* Diamond Aircraft sought review of that ruling in the Eleventh Circuit, which concluded that Florida law had not specifically addressed those issues and certified four questions to the Florida Supreme Court. *Id.* Only the first two of those questions are relevant here.

The first certified question was: "Does Fla. Stat. § 501.2105 entitle a prevailing defendant to an attorney's fee award in a case in which a plaintiff brings an unfair trade practices claim under the FDUTPA, but the district court decides that the substantive law of a different state governs the unfair trade practices claim, and the defendant ultimately prevails on that claim?" *Id.* at 366-67. The Florida Supreme Court answered that question in the affirmative because Horowitch invoked FDUTPA by filing an action asserting a claim seeking recovery under that act in which Defendant Diamond Aircraft ultimately prevailed. *Id.* at 370.

The second certified question was: "If Fla. Stat. § 501.2105 applies under the circumstances described in the previous question, does it apply only to the period of litigation up to the point that the district court held that the plaintiff could not pursue the FDUTPA claim because Florida law did not apply to his unfair trade practices claim, or does it apply to the entirety of the litigation?" *Id.* The Florida Supreme Court concluded that Diamond Aircraft was entitled to fees for the period of litigation until

the federal district court held that FDUTPA did not apply to Horowitch's claim. *Id.* at 371.

In deciding the first question, the Florida Supreme Court held that Diamond Aircraft, as the prevailing defendant, was entitled to attorney's fees under § 501.2105(1) because Horowitch "filed an action against it *under* FDUTPA and ultimately was the nonprevailing party." *Id.* at 369. It provided several insights which shed light on the issue of whether Patheon is entitled to FDUTPA fees here:

> By invoking FDUTPA and seeking redress under its remedial provisions, Horowitch exposed himself to both the benefits and the possible consequences of that act's provisions.
>
> Horowitch cannot assert and invoke the protections of this act by filing a legal action under its provisions, but then rely on the act's ultimate inapplicability as a shield against the application of the act's attorney's fees provision. To hold otherwise would negate individual accountability in filing actions by permitting meritless filings of FDUTPA claims without recourse for a defendant who was forced to defend an action initially filed under a law ultimately held to be inapplicable. As the Fourth District reasoned in *Brown*, that approach would permit the plaintiff to assert claims under FDUTPA pursuant to the dubious rationale: "heads I win, tails you lose." *Brown*, 424 So. 2d at 184.[10]

*Id.* at 370.

In the instant case, of course, no court ever held that FDUTPA was *inapplicable.* Instead, the rulings were that Procaps failed to present sufficient evidence to sustain the claim on certain FDUTPA theories and, later, that Patheon was entitled to summary

---

[10]     *Brown v. Gardens by the Sea S. Condo. Ass'n*, 424 So. 2d 181 (Fla. 4th DCA 1983).

judgment because the FDUTPA claim was based on the same doomed antitrust theory advanced to support the federal Sherman Act claim.

So the equities discussed in *Diamond Aircraft* -- that a plaintiff cannot simultaneously seek to obtain the benefits of a FDUTPA claim yet try to avoid its burdens -- generate even greater support here, where no court ever held that FDUTPA did not *apply* because of a choice of law issue (or for any other reason).

When addressing the second certified question, The Florida Supreme Court in *Diamond Aircraft* needed to evaluate the scope of attorney's fees under FDUTPA. It cited with approval *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 270 (Fla. 1st DCA 1985), and it explained *Heindel's* holding as "contemplating recovery for the hours an attorney dedicated to litigating a civil action involving a FDUTPA claim 'unless the attorney's services clearly were *not related* in any way *to establishing or defending* an alleged violation of Chapter 501.'" 107 So. 3d at 370 (citing *Heindel*, 476 So. 2d at 271) (emphasis added in the *Diamond Aircraft* case).

More importantly, the *Diamond Aircraft* Court expressly agreed with the interpretation that "even if a FDUTPA claim is based on the same transaction as an alternate theory of recovery, a court may allocate attorney's fees under section 501.2105 for only the FDUTPA portion of an action if either (1) counsel admits that the other services provided in that action were unrelated to the FDUTPA claim, or (2) a party

establishes that the services related to non-FDUTPA claims were clearly beyond the scope of a 501 proceeding." 107 So. 3d at 370 (internal quotation omitted).

Phrasing its ruling from the opposite perspective, the Florida Supreme Court also held that FDUTPA fees should not be awarded for "parts of an action *clearly unrelated* to or beyond the scope of a FDUTPA violation." *Id.* at 371. (emphasis added and internal citation omitted).

Thus, in the absence of an admission by the prevailing party that some of the legal services were unrelated to the FDUTPA claim, *Diamond Aircraft* authorizes attorney's fees to a prevailing party for **all** fees incurred in the case *unless* the non-FDUTPA claims were clearly unrelated to or clearly beyond the scope of a FDUTPA proceeding. Patheon does not admit that the services were unrelated. In fact, to the contrary, Patheon urges that the antitrust claim and FDUTPA claim were, in effect, the same. Procaps also argues the claims were substantively similar.

The Eleventh Circuit Court of Appeals had a relatively recent opportunity to explore the contours of *Diamond Aircraft* in *Chow*, 640 F. App'x. at 838, a case which, as here, involved a defendant who sought FDUTPA attorney's fees because it prevailed on the FDUTPA claim. The *Chow* Court held that the fees recoverable "are those devoted to the **entire** action, not merely the FDUTPA claim," unless "the attorney's services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501." *Id*. (emphasis added and internal quotation omitted).

In *Chow*, the trial court granted summary judgment to all defendants on the unfair competition claims under FDUTPA and the California Business and Professional Code and later granted judgment as a matter of law in the defendants' favor on the trade secrets misappropriation claim. *Id.* at 835. The jury returned a verdict for the corporate plaintiff on the false advertising and unfair competition by deceptive conduct claims, and it also returned a verdict on those claims in favor of the individual plaintiff. *Id.* The plaintiffs prevailed on none of their other claims for trademark infringement, unfair competition, or conversion. *Id.* The defendants received verdicts in their favor on plaintiffs' remaining FDUTPA claim of unfair or deceptive practices. *Id.* And none of defendants' counterclaims against the plaintiffs succeeded. *Id.*

In awarding FDUTPA fees to the defendants, the district court explained that the "major thrust" of the evidence presented by plaintiffs concerned the allegedly stolen trade secrets and the alleged infringement concerning the plaintiffs' name and style of cooking -- and concluded that they were "at the heart of the FDUTPA claim." *Id.* at 836. The plaintiffs raised several objections and challenges to the FDUTPA fees award. *Id.* at 837. Although it corrected an arithmetic error made in computing the amount of fees, the appellate court concluded that the district court correctly determined that the defendants were entitled to fees and costs. *Id.* Its analysis and holding were based on *Diamond Aircraft*.

Among other arguments, the plaintiffs contended that the district court made an unreasonable award of fees and costs because "it did not determine that there was any 'additional effort' in defending against the FDUTPA claims and it did not properly determine how many hours were billed on the FDUTPA claim." *Id.* at 843.

The Eleventh Circuit was not convinced by the arguments. It explained that it is "the **non-prevailing party's burden** to show that the services related to non-FDUTPA claims were **clearly beyond the scope** of a 501 proceeding." *Id.* (emphasis supplied). The appellate court pointed out that the plaintiffs had not provided any reason to conclude that the district court erred when it explained that the majority of the attorney's fees were substantially related to the FDUTPA violation. *Id.*

Moreover, the *Chow* Court was also not swayed by the plaintiffs' argument that the FDUTPA claim was **only one of nineteen claims** and counterclaims litigated by the parties. *Id.* The Court rejected the argument because the one-in-nineteen theory "says nothing about how much time was devoted to the various claims, the importance of each claim in the litigation and whether some non-FDUTPA claims nonetheless fell within the scope of the FDUTPA claims." *Id.*

The *Chow* Court also emphasized the district court's observation that the lawsuit was "a relatively straightforward dispute which was aggressively litigated" and had "extensive discovery disputes" that the parties litigated in an "extremely adversarial posture[.]" *Id.* at 842. It did so in connection with its conclusion that the district court

did not abuse its "considerable discretion" when it awarded FDUTPA fees to the prevailing defendants. *Id.* at 843.

Based on these legal standards, it is Procaps' burden to establish that the attorney's fees and costs incurred by Patheon were clearly not related to the FDUTPA claim, which was largely based on the same antitrust theory as the antitrust count. At bottom, there is no dispute about the reality of the FDUTPA claim: it was an alternative theory of recovery to the Sherman Act claim, based in large part on the same transaction and facts. The antitrust claim work cannot fairly be described as being "totally unrelated" to the FDUTPA claim. Procaps admits that the FDUTPA claim is duplicative of the federal antitrust claim. This means that the time Patheon spent defending the Sherman Act claim was time spent defending the FDUTPA claim (and that the time spent defending the antitrust theories of the FDUTPA claim was time spent defending the Sherman Act claim). *See, generally, Am. Registry*, 2015 WL 5687693, at *6 (finding that because the FDUTPA claim was "entirely dependent" on the other misappropriation claims, counsel was not required to limit the fees incurred in connection to the FDUTPA count).

Therefore, unless Procaps is correct about its tag-along theory adopted by some federal district courts, Patheon is entitled to attorney's fees under FDUTPA for the entire action, without allocation, given that the Court's *Humane Society* analysis strongly tips in Patheon's favor. *Smith v. Bilgin*, 534 So. 2d 852, 854 (Fla. 1st DCA 1988)

("[FDUTPA] contemplates recovery of attorney's fees for hours devoted to the entire litigation") (internal quotation omitted); *LaFerney v. Scott Smith Oldsmobile, Inc.*, 410 So. 2d 534, 536 (Fla. 5th DCA 1982) (finding it an abuse of discretion to award only one-fifth of the total fees under FDUTPA for a five-count complaint because attorney had not allocated his time records to specifically show only his work on the FDUTPA count when "only one transaction or set of facts … gave rise to all" of the theories in the complaint); *see also Victory Int'l LLC*, 2009 WL 1956236, at *5 (awarding defendant the attorney's fees it incurred in the entire action, not merely the FDUTPA claim, where the plaintiff brought claims under Section 1 of the Sherman Act and FDUTPA, and common law torts).

Procaps relies on this "tag-along" theory to justify its argument that Patheon is entitled to absolutely no attorney's fees or costs under FDUTPA. This theory appears to have been first articulated in a Florida federal district court case in *JES Properties, Inc. v. USA Equestrian, Inc.*, 432 F. Supp. 2d 1283 (M.D. Fla. 2006) -- even though it does not actually use the phrase "tag-along" to describe its approach. Indeed, *JES* does not cite any authority for its rule that FDUTPA fees are unavailable when the FDUTPA claim is linked to a non-FDUTPA claim where fees are not authorized. The entire analysis is found in one paragraph. Many of the later cases citing *JES* contain little or no analysis; they simply cite *JES* (or parrot its conclusion) and perhaps add one or two sentences of

background. Given this dynamic, it is logical to discuss *JES* (and to explain why this Court does not find it persuasive).

In *JES*, the plaintiffs asserted antitrust claims under the federal Sherman Act and Florida's Antitrust Act -- and also asserted a FDUTPA violation. *Id.* at 1288. The trial court granted summary judgment in favor of the defendants, who then filed a motion for attorney's fees and costs under, among other grounds, FDUTPA. *Id.* at 1288-89. Significantly, the Court noted that the defendants failed to provide the Court with any citation of authorities to support their FDUTPA fees request. *Id.* at n. 5-9. In essence, defendants argued only that they were prevailing parties and therefore were automatically entitled to FDUTPA fees and costs. *Id.*

The district court held that the defendants had not established that a FDUTPA award was "appropriate" because they "have not demonstrated that they expended any meaningful attorney time or costs in defending against Plaintiff's Florida Deceptive and Unfair Trade Practices Act claim." *Id.* at 1291. The Court noted that Plaintiff's single FDUTPA claim "was based upon the same allegations as their antitrust claims." *Id.* Pointing out that the plaintiffs conceded that their FDUTPA claims "survive" or "fall" with their antitrust claims, the Court explained that Defendants "largely relied on the outcome of their antitrust arguments in defending against" the FDUTPA claim. *Id.* at 1291-92. The district court then said that granting the FDUTPA fees motion "would be tantamount to awarding them attorneys' fees under the Sherman Act, or the Florida

Antitrust Act, which they are not entitled to." *Id.* at 1292. Therefore, the district court

concluded, an award is "not warranted[.]" *Id.*

And **that** is the entire *JES* analysis.

The Court has several observations about *JES*. First, the defendants appear to

have done a poor job advocating their position, as the district court saw fit to point out

that they submitted no legal authority. Second, the Court's discussion and analysis do

not cite to any authorities. Third, the analysis and discussion do not even mention

**Florida** law, which controls the interpretation of a Florida statute. Fourth, it does not

discuss the other Florida cases (decided before this 2006 opinion), such as *Heindel*,

which reject this theory.

In addition, to the extent that *JES* might have *been* valid under Florida law when

it was issued in 2006, it is no longer a correct interpretation of Florida's FDUTPA statute

after the Florida Supreme Court's 2013 *Diamond Aircraft* decision.

The other non-binding Florida district cases that discuss *JES* do not cite to

*Diamond Aircraft* either. The Court will discuss them briefly:

*VP Gables, LLC v. Cobalt Group, Inc.*, 597 F. Supp. 2d 1326, 1330 (S.D. Fla. 2009):

This case has no discussion of Florida law, includes a cryptic citation to *JES*, and a

conclusion that FDUTPA fees and costs are not recoverable "because the defendant has

not demonstrated that additional effort was expended to defend the case because of the

FDUTPA claim." *Id.*

*Poveda v. Popular Mortgage Servicing, Inc.*, No. 08-21822, 2009 WL 361093 , at *3 (S.D. Fla. Feb. 9, 2009): The district judge affirmed and adopted the magistrate judge's report and recommendations because no objections were filed, listed the non-exclusive *Humane Society* factors but included no discussion of other Florida cases construing FDUTPA. This case also rejected the FDUTPA fees request because movant did not demonstrate that it expended any significant time in defending the FDUTPA claim and noted that a fee award "would be tantamount to awarding fees for the other alleged statutory violation to which it is not entitled." *Id.* at *3. The Court did not cite *JES* (or any other authority, for that matter, other than *Humane Society* -- for its list of factors), but it pointed out that the litigation was "resolved in a matter of months." *Id.* The instant case, of course, was not resolved for several *years.*

*Chastain v. N.S.S. Acquisition Corp.*, No. 08-81260, 2010 WL 5463859 at *2 (S.D. Fla. Dec. 29, 2010): This case invoked the term "tag-along FDUTPA claim," cited *JES,* and described the FDUTPA claim as an "incidental one."

*Suntree Technologies, Inc. v. Ecosense International, Inc.*, No. 6:09-1945, 2013 WL 1174841, at *1 (M.D. Fla. March 20, 2013): This case adopted the magistrate judge's report and recommendations, which cited *JES* and *Chastain* and recommended denial of the fees request because the FDUTPA claim was "inseparably intertwined" with Lanham Act claims, and Defendants did not demonstrate that they expended any time

separate from their Lanham Act defense. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, No. 6:09-CV-1945-ORL-28, 2013 WL 1174399, at *7 (M.D. Fla. Feb. 7, 2013).

*Pods Enterprises, LLC v. U-Haul International, Inc.*, 126 F. Supp. 3d 1263, 1292 (M.D. Fla. 2015): This case cited to *Suntree* (which cites to *JES*) and noted that the denial of the fees request under the Lanham Act supports a denial of a FDUTPA fees request "since its FDUTPA claim was subordinate to and 'inseparably intertwined with [the] Lanham Act claims.'" *Id.*

*Florida Van Rentals, Inc. v. Auto Mobility Sales, Inc.*, No. 8:13-cv-1732, 2015 WL 4887550, at *41 (M.D. Fla. Aug. 17, 2015): This case notes that the defendant had not specifically objected to the portions of a magistrate judge's report and recommendations which recommended denial of its attorney's fees request. The report and recommendations cited *Suntree* for its conclusion that FDUTPA fees were not warranted because the plaintiffs' FDUTPA claims rose or fell with the trademark infringement claims, and the defendant was not entitled to a fee award under the Lanham Act. *See Florida Van Rentals, Inc. v. Auto Mobility Sales, Inc.*, No. 8:13-CV-1732-T-36EAJ, 2015 WL 4887529, at *5 (M.D. Fla. Apr. 29, 2015).

*Pronman v. Styles*, No. 12-80674, 2015 WL 11347666, at *3 (S.D. Fla. Nov. 9, 2015): This district court explained that the case involved a Lanham Act claim "with a derivative FDUTPA claim," and concluded that FDUTPA fees would be "inappropriate" because the theory of the FDUTPA claim was that the Lanham Act

violation was a deceptive practice. The district court cited *VP Gables* in support of its finding, which simply and briefly cited *JES. Id.*

Unlike the other district court cases summarized above, the *Pronman* court *does* discuss Florida state court cases. However, the district court makes a distinction between primary and secondary claims for recovering fees under FDUTPA.

Because the *Pronman* case involved a Lanham Act claim, attorneys' fees would not automatically be awarded to a prevailing party unless exceptional circumstances were present. *Id.* at *1. Presumably, this was the reason that the district court viewed the derivative FDUTPA claim as essentially a tag-along claim. Without bringing a FDUTPA claim in the lawsuit, a fee recovery may have not been available for the plaintiffs.

Thus, the district court reasoned that, unlike *Heindel, LaFerney,* and *Covington v. Arizona Beverage Co., LLC,* No. 08-21894-CIV, 2011 WL 11796786 (S.D. Fla. Aug. 25, 2011), a case the Court will discuss at length below, that were all primarily and "essentially FDUTPA cases[,]" the *Pronman* case involved only a secondary FDUTPA claim. *Pronman,* 2015 WL 11347666, at *3. The FDUTPA claim was only included in *Pronman* for fees, so the prevailing defendant was not entitled to attorneys' fees where the plaintiffs may have been barred from recovering attorney fees in the first place under the plaintiffs' primary Lanham Act claim.

This case is distinguishable from *Pronman* in two major ways. First, unlike the *Pronman* Court, the Court here applied the binding *Diamond Aircraft* case, which did not

even mention the primary/secondary distinction which drove the *Pronman* Court to disallow fees under FDUTPA. Therefore, the logic that convinced the *Pronman* Court to deny the fee request was not based on any test or language from the Florida Supreme Court case that announced the law on this point in 2013. Second, the test adopted by *Diamond Aircraft,* that fees under FDUTPA should be awarded for the entire action and not apportioned unless the non-prevailing party meets its burden of establishing that the FDUTPA claims were clearly not related to the other claim, was not discussed at all.

At bottom, *Pronman* ignored the law it should have considered and adopted an approach never mentioned in the binding Florida case. Therefore, *Pronman* (and *JES,* for that matter) effectively created its own exception to § 501.2105(3) for FDUTPA claims. But this is contrary to the rule that creating exceptions to a statute is a legislature's function. *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (finding that courts are "without power" to extend, modify or limit an unambiguous statute and "[t]o do so would be an abrogation of legislative power") (internal quotation omitted). Under these circumstances, the Court does not find *Pronman* (or *JES* and the cases which followed it) persuasive.

In *Covington*, 2011 WL 11796700, at *2 (S.D. Fla. Feb. 15, 2011), *report and recommendation adopted in part, rejected in part*, 2011 WL 11796786, the magistrate judge did not find *JES* and its progeny persuasive and recommended awarding all fees

incurred by the defendants during a certain time period because the FDUTPA claim and other claims were "inextricably intertwined."

In the plaintiff's objections to the report, the plaintiff argued that the magistrate judge applied the wrong case law and that the appropriate case law "leads to the conclusion that fees should not be awarded for FDUTPA claims when there is no additional effort in defending the case because of the FDUTPA claims." *Covington*, 2011 WL 11796786, at *3.

The district court, citing *Heindel*, *LaFerney* and *Bilgin*, held that the magistrate judge did not err in recommending an award to the defendants of all fees, without apportionment. *Id.* The district court rejected *JES* and *VP Gables*, finding them **not binding** when a federal court is interpreting state law and noted that the decisions of a state court's intermediate appellate courts **are** binding, unless there is persuasive evidence that the state's highest court would rule otherwise. *Id.* at *3.

However, the district court *did* discuss the primary/secondary claim distinction which was later applied in the *Pronman* case. *Id.* at *3. In *Covington*, the district court stated that the case involved primarily a FDUTPA claim. As a result, the district court reasoned that it was proper to award fees under FDUTPA. *Id.* The *Covington* court stated that *VP Gables* was properly decided because it involved a primary breach of contract claim, and so was *JES* because the primary claim there was an antitrust claim. *Id.*

64

Arguably, *if Covington* is binding law (which it is not) or if it is still persuasive (which it also is not), the Court might not award attorneys' fees to Patheon because, just like in *JES*, the primary claim was a federal statutory antitrust claim which does not provide for fees to a prevailing defendant. However, *Covington* was decided before *Diamond Aircraft*, so the district court in *Covington* could not discuss its applicability. Because of that, this Court finds that, in the aftermath of *Diamond Aircraft,* this distinction of primary versus secondary FDUTPA claims no longer controls the Court's analysis of whether to award attorneys' fees. Instead, the correct Florida law is found in *Diamond Aircraft*, which uses a standard other than the primary/secondary distinction.

In addition to finding *JES* (and the few other non-binding federal district court cases) inapplicable, not persuasive and contrary to controlling **Florida** law, the Undersigned's ruling here also relies on a recent Eleventh Circuit case involving FDUTPA and the issue of whether fees are recoverable for the entire action: *Alhassid v. Bank of America,* No. 16-15834, 2017 WL 2179118 (11th Cir. May 16, 2017).

In *Alhassid*, a defendant (Nationstar Mortgage LLC) appealed the district court's award of $447,446 in attorney's fees and costs to plaintiff under FDUTPA. *Id.* at 1. The claims raised by the plaintiff concerned her reverse mortgage. *Id.* She alleged that Nationstar charged improper fees. *Id.* She raised six claims against Nationstar: three breach of contract claims, breach of the implied covenant of good faith and fair dealing, a FDUTPA claim, and a Fair Debt Collection Practices Act claim. *Id.* The court denied

class certification and also granted the plaintiff summary judgment on all counts except the one for violating the implied covenant of good faith and fair dealing, because it duplicated other counts. *Id.* Based on her affidavit, the district court found that she incurred $5,000 in actual damages because she agreed to pay her attorney that amount to defend against the foreclosure action. *Id.*

The plaintiff then moved for attorney's fees and costs of $827,552. *Id.* The magistrate judge held a hearing and recommended that the plaintiff receive the award under FDUTPA. *Id.* However, the magistrate judge reduced the hourly rate recoverable for associates and further reduced the number of hours by 40% to account for the plaintiff's failed class action attempt, the settlement with other defendants, and duplicative or unrecoverable fees. *Id.* The district court approved the recommended 40% reduction in hours and applied an additional 5% reduction in hours to account for time spent defending the state foreclosure action. *Id.* at *2. The district court declined to further reduce the award of fees and costs "because of the protracted nature of the proceedings and because [the plaintiff's] attorneys were largely successful in their efforts." *Id.*

The Eleventh Circuit began its analysis of the FDUTPA fees and costs by looking to *Diamond Aircraft* -- the 2013 Florida Supreme Court case which had not yet been decided when *JES* and many of the other Florida district court cases relied upon by Procaps were decided. *Id.* And it therefore followed the rule that the "fees recoverable

are those devoted to the **entire** action, **not merely the FDUTPA claim**, 'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501.'" *Id.* (emphasis added) (quoting *Diamond Aircraft*, 107 So. 3d at 370).

The Eleventh Circuit rejected the argument that the district court "misinterpret[ed] Florida law and include[d] fees for services clearly beyond the scope of a FDUTPA proceeding. *Id.* at *4. It noted that the trial court reduced the hours in the lodestar calculation to exclude hours spent on the class claims, the state foreclosure action, claims against a bank, and a claim asserted by a co-plaintiff who settled and dismissed her claims. *Id.* However, the appellate court also held that it would not have been improper under Florida law "if the district court had not excluded those hours." *Id.*

The Eleventh Circuit explained that "**all** of the claims in the complaint arguably concerned deceptive and unfair trade practices, and the success of the FDUTPA claim **depended** on a determination that the servicers charged improper fees and initiated unauthorized foreclosure proceedings." *Id.* (internal citation omitted). Therefore, the appellate court further explained, the "work on the non-FDUTPA claims, class claims, and state foreclosure proceeding **related in some way** to establishing a violation of FDUTPA." *Id.* (emphasis added and internal citation omitted).

Using this same legal approach, the Court notes that even Procaps admits that the antitrust theory inherent in its FDUTPA claim was dependent on the success it had with the federal Sherman Act antitrust claim. Therefore, those federal claims concerned allegations of deceptive and unfair trade practices, which means that Patheon, as the prevailing party, is entitled to fees and costs for the entire action. *Cf. Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 n. 3 (11th Cir. 2017) (reversing fee award which improperly reduced the lodestar by 92.5% and explaining that "if the successful and unsuccessful claims are intertwined and share a 'common core' of facts or a related legal theory, then a reasonable fee is allowed as to **all** hours expended on **both** sets of claims") (internal quotation omitted and emphasis added). Procaps' antitrust count and its FDUTPA count share both a common core of facts and a related legal theory, so there would be no need to apportion claims if Patheon had (hypothetically) lost one count but prevailed on another.

So the Court concludes that Patheon is entitled to attorney's fees and costs under FDUTPA for its defense of the entire action. Procaps has not established that the time incurred defending the antitrust claim was totally unrelated to Patheon's defense of the FDUTPA claim. To the contrary, its argument adopts the opposite position: it contends (correctly) that the antitrust claims inherent in the FDUTPA claim were based on the same facts as the federal statutory antitrust claims. Indeed, it admits that the FDUTPA claim was dependent on the antitrust claim.

The Court also concludes that Procaps' argument, which is based on the non-binding paragraph from *JES* (that spawned similar rulings), is contrary to Florida law (*Diamond Aircraft)* and is also in conflict with recent (and persuasive, though not technically binding) Eleventh Circuit cases (*Chow* and *Alhassid).*

But even if the Court were inclined to follow *JES,* which I am not, the Court also notes that several of the other non-binding district court cases viewed the *JES* rule (i.e., no FDUTPA fees if the FDUTPA claim is derivative of another claim or is a tag-along claim) as merely one of *many* factors used in the *Humane Society* assessment, as opposed to being the **sole** determining factor. For example, the *Chastain* Court evaluated **all** of the factors listed in *Humane Society* before ultimately ruling that fees were not warranted. And in *Covington,* the Court reviewed all of the *Humane Society* factors after concluding that *JES* is not binding but was properly decided under its primary/secondary claim analysis.

In doing so, the *Covington* Court emphasized points which also apply to the instant case. The *Covington* case was (1) "heavily litigated for more than two years" and (2) the district court rejected the notion that a fee award would "have a substantial chilling effect on future legitimate claims under FDUTPA" because "the deterrence issue is not just about bringing FDUTPA claims; it is also about deterring future plaintiffs from abdicating their role in the litigation to their attorneys." 2011 WL 11796786, at *4-5.

In the instant case, of course, the lawsuit was aggressively litigated for more than four years (and is still being aggressively litigated, for that matter) and the fundamental antitrust theory underlying the FDUTPA claim was, to use the Eleventh Circuit's condemning language, "intrinsically hopeless." *Procaps*, 845 F.3d at 1087. Therefore, the Undersigned would still award attorney's fees and costs to Patheon under FDUTPA even if the *JES* "rule" were factored into the *Humane Society* analysis. But, as noted, the Court concludes that *JES* should not be used because later-issued Florida law (as well as later-decided Eleventh Circuit cases) adopts a different and opposite approach.

**Patheon's other two theories**

The Court need not address the other two theories Patheon advanced in its initial fees motion (i.e., fees incurred in the forensic ESI analysis and fees incurred after Procaps' so-called "change in theory"). As explained in the affidavit Patheon submitted in support of its motions, the FDUTPA theory encompasses **all** requested fees and costs (albeit at discounted hourly rates, as further reduced by Patheon's additional voluntary reductions). [ECF No. 1156-1].

Patheon itself notes that there is no need to analyze the other two theories if the full amount of fees and costs are awarded under FDUTPA (i.e., "[i]f the Court does not award all fees under FDUTPA, there are two other bases of recovery[.]" [ECF No. 1156-2, n. 3]. Moreover, in the affidavit Patheon submitted in support of its first attorneys' fees motion, lead litigation attorney Michael Klisch explained that "if the Court awards

70

Patheon all of the fees sought under FDUTPA, it should not award fees under the other two categories[.]" [ECF No. 1030-1, p. 43]. In addition, he further explained that "Patheon seeks all fees submitted for reimbursement under FDUTPA, and the fees in the other categories are a subset of the fees sought under FDUTPA." [ECF No. 1030-1, p. 43].

Because the Court is in fact awarding all of the FDUTPA fees (after applying the discounts on the hourly rates), there is no need to address other theories which, if accepted, would yield *less* than the total FDUTPA award. Nevertheless, to the extent that Procaps pursues an appeal, Patheon has record evidence to point to if it seeks to justify a lesser award on one or both of the other theories. Similarly, Patheon is also able to justify this fee award (or one for a lesser amount) on the other grounds it asserted (but that the Court is not considering on the entitlement issue): misconduct by Procaps' counsel in another lawsuit; Procaps' purported misrepresentations to the Eleventh Circuit; and Procaps' alleged misstatements to the arbitration panel.

**Determining the Amount of Attorney's Fees and Costs under FDUTPA**

Federal appellate courts review an attorney's fees award for abuse of discretion. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that

are clearly erroneous." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (internal quotation omitted).

The district court's discretion in determining the amount of a fee award is appropriate because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437. The Court's understanding of this case is informed by four-and-a-half years' worth of litigation, myriad hearings (some lasting more than five hours), several summary judgment motions, and a lengthy and comprehensive hearing on the motions for fees and costs. The district court's "superior understanding of the litigation clearly places it in the best position to calculate such an award when appropriate." *Yellow Pages Photos*, 846 F.3d at 1163 (internal citation omitted).

The abuse of discretion standard "implies a range of choices," and an appellate court "will affirm even if '[it] would have decided the other way if it had been [its] choice.'" *Yellow Pages Photos*, 846 F.3d at 1163 (internal quotation omitted).

Generally, what constitutes a reasonable attorney's fee is calculated using the "lodestar" method, taking the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433-34.[11] When faced with a voluminous fee application, an hour-by-hour review is both impractical and a waste of

---

[11]    Florida courts use the federal lodestar method to determine appropriate attorney's fees. *See Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150-51. (Fla. 1985).

judicial resources. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). Thus, the Eleventh Circuit has approved across-the-board percentage cuts to the number of hours claimed. *Id.; see also Alhassid,* 2017 WL 2179118, at *2.

However, as the Eleventh Circuit made clear in *Alhassid*, courts will not consider challenges concerning an award of fees and costs that were not raised below. 2017 WL 2179118, at *2. Procaps challenged only Patheon's **entitlement** to attorney's fees. It did not in any way challenge the amount of time or the hourly fees or the legitimacy of the costs. In fact, it specifically declined to offer its own attorney's hourly rates or submit its counsel's billing records. Therefore, it may not object to the *amount* of this award of fees and costs. *See, e.g., id.* at *3 (holding that Nationstar waived argument that the plaintiff was not entitled to any fees because equitable factors weighed in favor of complete denial because Nationstar did not assert the argument below and also waived the argument); s*ee also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149-50 (11th Cir. 1993) (barring challenge to number of hours and rate used to calculate lodestar because of failure to object).

But the Court is not basing its ruling on the amount of fees and costs *solely* on Procaps' waiver.[12] It is also considering the comprehensive submission of affidavits and

---

[12]     "Local Rule 7.3's requirements are not optional, but mandatory." *Club Madonna v. City of Miami Beach*, No. 13-23762, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015) (internal citation omitted). That court agreed "that Plaintiff's failure to comply with Local Rule 7.3 is grounds for granting [defendant's] requested amount of fees, if otherwise reasonable." *Id.*

time records and personal familiarity with the case. In addition, the Court is also factoring in the length and contentiousness of the litigation, the reality that the lawsuit was aggressively litigated, the presence of extensive discovery disputes, and the fact that the litigation should have been simpler but had been drawn out and made unreasonably contentious, and the extremely adversarial posture of these parties since at least the beginning of this litigation. *Cf. Chow*, 640 F. App'x. at 842-43 (listing factors mentioned by the district court as evidence that the trial court had considered the scope and history of the litigation and the merits of the respective positions).

Moreover, the Court's ruling is based, in part, on additional factors. First, Patheon's counsel obtained an excellent result. Obtaining a defense summary judgment on all counts and having that ruling affirmed on appeal is surely a significant defense victory. In addition, the Court recognizes the complexity of the legal issues and the intensity with which this lawsuit was fought. Beyond that, the parties were required to engage in substantially technical issues surrounding the ESI discovery and the forensic audit, including coordination with a special master.

At bottom, Patheon was well served by a dedicated effort from a well-coordinated legal team. It would have been impractical (and likely impossible) for Patheon to have adequately defended this lawsuit **without** multiple attorneys, including those with expertise in specific sub-areas. To the extent that there might have been overstaffing, the Court does not believe that this problem plagued Patheon's

representation.  Moreover, the method the Court often uses to assess whether a case was overstaffed -- comparing the billing records of the law firm representing the party seeking fees with the billing records of opposing counsel -- is unavailable here because Procaps failed to submit its counsel's billing records.[13]

The Court is itself an expert on the question of the reasonableness of an attorney's hourly rate and I also may use my "own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (11th Cir. 1994); *see also Crescenzo v. Healthcare Revenue Recovery Grp., LLC*, No. 11-60384-CIV, 2012 WL 291431, at *2 (S.D. Fla. Jan. 31, 2012).

The Court previously entered an Order on December 3, 2013, significantly reducing the hourly fees of the attorneys working for the Cooley law firm, Patheon's primary litigation counsel. [ECF No. 223, pp. 26-32]. That Order arose in connection

---

[13]     *See, generally,* Local Rule 7.3(a); *Kalzip, Inc. v. TL Hill Constr., LLC*, No. 8-11-cv-01842, 2013 WL 3242400, at *2 n. 6 (M.D. Fla. June 25, 2013) (acknowledging that time incurred by opposing counsel is not "determinative" of what amount of time was reasonable but, nevertheless, analyzing billing records of both parties and engaging in detailed comparison before reaching conclusions about reasonableness); *cf. Paton v. Geico Gen. Ins. Co.*, 190 So. 3d 1047, 1052  (Fla. 2016) (holding that billing records of opposing counsel are relevant to the issue of reasonableness of time expended on a case, noting that discovery of those bills is within the trial court's discretion and explaining that the billing records of opposing counsel "will demonstrate the complexity of the case along with the time expended and may belie a claim that the number of hours spent by plaintiff was unreasonable[.]").

with two motions to compel. For the reasons outlined in that Order,[14] the Court reduced

Cooley's standard market rates by an average of 47.25%. Patheon is using that

discounted rate for the hourly billing rates. Patheon explained that it believes that

Cooley's actual market rates are reasonable and that it should be reimbursed at that rate

-- but then noted that it would not re-litigate the Court's decision to apply a 47.25%

reduction even though it maintains its objection to it. [ECF No. 1073-1, p. 14]. Therefore,

Patheon could, on appeal, assert that the hourly billing rates used by this Court to

calculate the lodestar should have been higher.

To the extent that the hourly billing rates of the Cooley attorneys working on the

case increased over time, which is not surprising given that the lawsuit was filed in

---

[14]    The Court reduced the hourly rates for the Cooley attorneys because they were
higher than the prevailing market rates in South Florida for similar services by
attorneys having reasonably comparable skills, experience and reputation. The Court
noted that most of the hourly rates for this Florida-filed lawsuit were for Washington,
D.C. hourly rates, which are among the highest in the country. The Court explained,
when determining the hourly fee, that it must "step[] into the shoes of the reasonable,
paying client, who wishes to pay the **least amount necessary** to litigate the case
effectively. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d
182, 184 (2d Cir. 2008) (emphasis added); *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697
F. Supp. 2d 1349, 1364 (S.D. Fla. 2010) (internal citations omitted)." [ECF No. 223, p. 30].

The 2013 Order provided illustrations of cases where the hourly rates in fees
awards were reduced to reflect the local billing practices. *See, e.g., Golf Clubs Away, LLC
v. Hostway Corp.*, No. 11-62326-CIV, 2012 WL 2912709 (S.D. Fla. July 16, 2012) (awarding
Arthur Miller (nationally known law professor and author of leading federal practice
treatise) only $500 per hour even though he requested $995 per hour*); MKT Reps S.A. De
C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-22963-CIV, 2013 WL 1289261
(S.D. Fla. Mar. 28, 2013) (finding rates of attorneys at large Miami-based firm to be
excessive and lowering hourly rates from $610 to $500 and from $475 to $350).

December 2012, Patheon seeks reimbursement at the higher rates (but reduced by 47.25%).[15] It is reasonable and appropriate for an attorney's rates to increase over the course of litigation. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, No. 5:04-cv-12, 2008 WL 906739, at *5 (M.D. Fla. April 2, 2008) (awarding fees at rates that increased during litigation). Florida federal courts have awarded fees based on a law firm's annual rate increases of between 16% and 66%, and found such annual increases are "reasonable and appropriate." *Am. Honda Motor Co.*, 2008 WL 906739, at *5, 11 nn. 18-21 (awarding annual fee increases of 16% ($215 to $250), 18% ($275 to $375), 50% ($100 to $150) and 66% ($195 to $325)).

Patheon has submitted comprehensive and detailed packages to support its motions for attorney's fees and non-taxable costs. It has submitted billing and costs records and detailed affidavits explaining the hourly rates, how and why the rates were calculated, the time entries which were not included, and the procedures used to eliminate entries from attorneys and staffers under certain situations. The background and experience of the attorneys were provided, along with explanations of the roles they played in the case. Patheon also explained the nature of the non-taxable costs. Even if Procaps *had* interposed a response to any of the motions, as required by Local Rule

---

[15]    Specifically, according to Mr. Klisch's declaration [ECF No. 1030-1, p. 38], "Patheon did not apply the 47.25% reduction on top of the 20% fee reduction Patheon negotiated with Cooley on the November 2013 invoice or the 15% fee reduction Patheon negotiated with Cooley for invoices dated December 1, 2013 and thereafter." Instead, Patheon applied the 47.25% reduction to Cooley's standard billing rates. [ECF No. 1030-1, p. 38].

7.3, it would have been hard-pressed to successfully argue that Patheon had submitted incomplete or otherwise inadequate requests.

**Conclusion**

Because "the result is what matters" when determining an appropriate attorney's fee, *Hensley*, 461 U.S. at 426, Patheon's summary judgment award, which was affirmed in all respects on appeal, establishes that it obtained significant relief. Moreover, the Court's decision to apply a 47.25% discount to the hourly fees for the Cooley attorneys further establishes that Patheon is not in fact recovering "a fully compensatory fee." *Id.*

The approximate $18.5 million it seeks for fees and non-taxable costs is an extremely large number, to be sure, but the mere fact that the request is substantial does not somehow mean that the two requests should be denied or reduced even further. Indeed, it could easily be argued that the award here, large as it may be, should be even higher because, among other reasons, the 47.25% discount on Cooley's fees should either have been lowered or completely eliminated.

District courts do not hesitate to award substantial fee awards when the circumstances warrant it. *See, e.g., Takeda Chemical Indus., Ltd. v. Mylan Labs., Inc., Nos. 03 CIV. 8253, 04 CIV 1966*, 2007 WL 840368, at *11 (S.D.N.Y. Mar. 21, 2007) (awarding approximately $14 million in attorney's fees and noting that the prevailing party would "certainly be fairly entitled to an enhancement" of an additional $3 million); *Bristol-Myers Squib Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 CIV 8833, 2002 WL 1733681, at *1

(S.D.N.Y. July 26, 2002) (awarding $27 million in fees and costs, where $20.7 million were for fees, based on the Court's determination that the case was exceptional). *Cf. Barnhill v. Fla. Microsoft Anti-trust Litig.*, 905 So. 2d 195, 200 (Fla. 3d DCA 2005) (approving $15.5 million in attorney's fees in FDUTPA class action settlement).

For more than four-and-a-half years, Patheon has been defending a lawsuit it should not have needed to defend in the first place. The antitrust theory that drove Procaps' case (including the FDUTPA count) was strategically designed to avoid the arbitration provision and generate pressure for a quick settlement, but Procaps continued to push it even though it was hopeless and intended to convert a garden variety commercial contract dispute into a treble damages antitrust claim that spawned the related FDUTPA claim.

The Court's ruling does not mean that every party who prevails on a FDUTPA claim would be entitled to fees, and it likewise does not mean that all defendants who prevail on both a FDUTPA claim and a federal statutory antitrust claim would be entitled to fees and non-taxable costs under FDUTPA. To the contrary, the ruling here is fact-specific, based on an exercise of discretion, which involved an analysis of the non-exclusive *Humane Society* factors. If some of the factors had tipped in Procaps' favor, then the decision here may well have been different. But the factors strongly favor Patheon, so the Court's considerable discretion generates a defendant-friendly decision under the unique circumstances of this acrimonious litigation.

The Undersigned finds that the hourly rates, as reduced by 47.25% for the Cooley lawyers, and the number of hours are reasonable. Procaps, of course, cannot complain about this finding because it did not comply with Local Rule 7.3 and did not follow this Court's Order establishing a protocol for challenging the requested fees. The Court also finds that the non-taxable costs are reimbursable. Procaps did not interpose any objection to costs.

The Court **grants** Patheon's motion and supplemental motion for attorney's fees and non-taxable costs in the full amount requested -- $18,494.846.[16] The Court will enter a separate judgment.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 17, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record

---

[16] Patheon's supplemental fees motion was filed on April 14, 2017. Patheon has incurred additional fees and costs since then, including preparation for, and attendance at, a multi-hour May 30, 2017 hearing on the fees motions. [ECF No. 1142]. Patheon's supplemental fees motion was filed as docket entry No. 1072, but there are now 1163 docket entries.