UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PROCAPS S.A.,

CASE NO. 12-cv-24356-JG

Plaintiff,

v.

PATHEON INC.,

Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR PROCEEDINGS SUPPLEMENTARY TO COMPEL ASSIGNMENTS OF INTELLECTUAL PROPERTY**

Plaintiff, Procaps S.A. ("Procaps"), hereby responds in opposition to Defendant's, Patheon, Inc. ("Patheon"), Motion for Proceedings Supplementary to Compel Assignments of Intellectual Property. [D.E. 1396].

## I. Introduction

Patheon seeks to strip its competitor Procaps of intellectual property and force it out of the market – Patheon's apparent endgame in the collection proceedings. This would be extraordinary relief under any circumstance, but especially here considering that, contrary to settled law, Patheon has not exhausted traditional means of judgment execution. The Motion should be denied as deficient, premature and inequitable.

While Patheon's Motion mouths the procedural requirements for proceedings supplementary, execution on intellectual property is in fact an equitable remedy which requires a fact-specific inquiry and a weighing of the respective harms to the parties. In that regard, Patheon's Motion ignores the status of less intrusive means of judgment collection which Patheon itself initiated but has allowed to languish. Patheon served 48 post-judgment deposition

subpoenas, but has not taken the first deposition. Patheon served 38 writs of garnishment, all of which remain open, and only one of which, against Procaps' U.S. affiliate Sofgen Pharmaceuticals LLC ("Sofgen"), it is pursuing -- and then only after Procaps flagged the issue in its Motion for Extension of Time to respond to this Motion [D.E. 1407]. Notably, Sofgen *stipulated* that it owed Procaps over $1.5 million – funds which Patheon has failed to pursue. [D.E. 1281].

More importantly, Patheon's Motion ignores the harm that would result if Procaps were stripped of its patents. Procaps is a 40-year-old company which employs over 3,000 hardworking men and women. The company engages in extensive charitable work in Barranquilla, Colombia and elsewhere, benefiting more than 4,000 individuals through its health and nutrition programs which grant access to medicine and health benefits to low-income populations in Northern Colombia. Procaps relies on its patents to manufacture pharmaceutical products for the healthcare community. Loss of its patents would deprive the company of its ability to use its own technology, to the detriment of both Procaps and consumers. This would ultimately mean the death penalty for the company – harm which cannot be undone if Procaps prevails in its appeal of the $18.5 million fee award. The old adage is particularly apt here: once the toothpaste is out of the tube, it cannot be put back in.

Procaps' patents should not be taken when less intrusive means, including those already initiated by Patheon, exist to satisfy the judgment.

## II. Status of Judgment Collection

### A. The Underlying Action and Judgment

Patheon's Motion arises from its Final Money Judgment entered on August 17, 2017 against Procaps for $18,494.846.00 (the "Judgment"). [D.E. 1167]. In the underlying action,

Procaps sued Patheon for antitrust violations associated with Patheon's acquisition of Procaps' principal competitor, Banner Pharmacaps ("Banner"). [D.E. 1]. The Court acknowledged Patheon's wrongdoing, finding that "Procaps ha[d] developed evidence which . . . could support a compelling narrative about a company wronged by a business partner." [D.E. 1020 at *2]. However, the Court ultimately granted summary judgment in Patheon's favor. (*Id.*). Patheon moved for attorney's fees pursuant to the fee-shifting provision of the Florida Deceptive and Unfair Trade Practices Act,[1] and the Judgment followed. [D.E. 1167]. Procaps has appealed the Judgment and filed its Initial Brief on December 15, 2017. Patheon's answer brief is due February 16, 2018, and Procaps' reply brief is due March 2, 2018.

Procaps has made substantial offers to Patheon to resolve the Judgment pending appeal. (R. Minski Dec. ¶ 6) (Ex. A). Settlement discussions remain ongoing.

### B. Patheon's Initial Discovery Efforts and Conduct

Patheon initated collection efforts by serving exhaustive Interrogatories and a Request for Production in aid of execution. Patheon simultaneously subpoenaed Procaps' CEO for deposition and additionally served 58 third parties with subpoenas, 48 of which included deposition notices. The subpoenaed parties included Procaps' two key trial lawyers from Carlton Fields Jorden Burt, P.A. ("CF") and a corporate representative of CF.

Patheon's hyper-aggression continued when it objected to a simple extension for Procaps to assemble responses and documents, which the Court overruled. At a September 29, 2017 discovery hearing, Patheon justified its opposition to an everyday professional courtesy by claiming it had been waiting five years for these funds (even though it had been a judgment holder for a month) and warned the Court that Procaps would use the additional time to engage in asset-hiding maneuvers.

---

[1] Fla Stat. § 501.2105(1).

Patheon's paranoia proved to be unwarranted, as Procaps undertook costly efforts to comply with discovery, including deploying undersigned counsel and the accounting firm KPMG to oversee document collection from Procaps' home office in Barranquilla, Colombia. Procaps timely responded to discovery on November 1, 2017 and, between November 14 and November 22, engaged in a rolling production of over 7,300 documents.[2] Procaps' production included three years of corporate tax returns, three years of audited consolidated financial statements, four years of bank statements, documents listing all real estate, automobiles and other significant asset holdings, and massive quantities of data relating to receivables, indebtedness and customer lists. Procaps further produced two agreements with Sofgen Pharmaceuticals LLC ("Sofgen"), its U.S.-based distributor, relating to the funding of this litigation, including the affiliates' accounting relating to same. Procaps' assets and liabilities have remained in plain sight. Tellingly, Patheon has not challenged the adequacy of Procaps' written responses nor the depth of its document production. Patheon further has failed to follow up as to any of its 48 deposition subpoenas. Patheon has not taken the first deposition in aid of execution.

### C. Patheon's Unfinished Garnishment Campaign

In addition to its written discovery to Procaps and 58 other individuals and entities, the Court has issued at least 38 writs of garnishment on Patheon's behalf.[3] Several points from the garnishment proceedings warrant mention. First, Patheon has received 37 answers to writs of

---

[2] In opposition to Procaps' Motion for an Extension of Time to file this Response [D.E. 1407], Patheon stated, "Procaps' counsel also managed to string out its production of documents by refusing to produce them and, after the Court ordered it to produce the documents, obtaining an extension to do so." [D.E. 1415 at 2]. We have no earthly idea what Patheon is talking about. Procaps sought and obtained (by Cout order) a 30-day extension to respond to Patheon's written discovery requests. [D.E. 1221]. Procaps timely responded to Patheon's requests. Within two weeks of Procaps' response, it began a rolling production of its most highly sensitive business and financial information which was completed in eight days, with measures taken to protect the security of such production. No court involvement was required, there were no "refusals," nothing was "strung out."

[3] See chart describing Writs and status attached as Ex. B.

garnishment.[4] One of the garnishees, Sofgen, disclosed a payable of over $1.5 million to Procaps. [D.E. 1281]. Second, Patheon has served 34 replies to the answers, each general denials.[5] While the replies are virtual carbon copies, but for changing the names of the garnishees, Patheon exhausted the full 20 day window to reply as to each answer.[6] Third, Patheon's denials, 23 of which date back to November 20, 2017, set the stage for "mini-trials" to resolve disputes between Patheon and the garnishees. To date, Patheon has made *zero* inquiries about coordinating trial dates on the garnishment disputes and *zero* inquiries regarding depositions or any other discovery relating thereto.

Patheon asks this Court to grant equitable relief in the form of an extraordinary remedy while it has permitted less intrusive remedies to languish. Notably, one day after Procaps filed its motion for extension to file this Response and flagged Patheon's inactivity [D.E. 1407], Patheon wrote undersigned advising that it was preparing a separate motion for proceedings supplementary to implead Sofgen. (Ex. C). With any diligence, Patheon already could have collected over $1.5 million from Sofgen. Alternatively, Patheon could have set its disputes for trials and taken any necessary discovery. Instead, Patheon sat on its legal remedies in favor of an

---

[4] See [D.E. 1276], [D.E. 1277], [D.E. 1278], [D.E. 1279], [D.E. 1280], [D.E. 1281], [D.E. 1282], [D.E. 1283], [D.E. 1286], [D.E. 1287], [D.E. 1288], [D.E. 1289], [D.E. 1290], [D.E. 1291], [D.E. 1292], [D.E. 1293], [D.E. 1294], [D.E. 1295], [D.E. 1296], [D.E. 1297], [D.E. 1298], [D.E. 1299] [D.E. 1300], [D.E. 1306], [D.E. 1307], [D.E. 1308], [D.E. 1309], [D.E. 1321], [D.E. 1327], [D.E. 1335], [D.E. 1367], [D.E. 1376], [D.E. 1380], [D.E. 1381], [D.E. 1387], [D.E. 1389] and [D.E. 14014].

[5] [D.E. 1339], [D.E. 1340], [D.E. 1341], [D.E. 1342], [D.E. 1343], [D.E. 1344], [D.E. 1345], [D.E. 1346], [D.E. 1347], [D.E. 1348], [D.E. 1349], [D.E. 1350], [D.E. 1351], [D.E. 1352], [D.E. 1353], [D.E. 1354], [D.E. 1355], [D.E. 1356], [D.E. 1357], [D.E. 1358], [D.E. 1359], [D.E. 1360], [D.E. 1361], [D.E. 1368], [D.E. 1369], [D.E. 1370], [D.E. 1371], [D.E. 1378], [D.E. 1379], [D.E. 1388], [D.E. 1397], [D.E. 1398], [D.E. 1405] and [D.E. 1406].

[6] Fla. Stat. § 77.061 ("When any garnishee answers and plaintiff is not satisfied with the answer, he or she shall serve a reply within 20 days thereafter denying the allegations of the answer as he or she desires.").

equitable remedy to pursue a larger goal -- using the Judgment to force a competitor out of the market.

### D.  Procaps and its Patents

Procaps, headquartered in Barranquilla, Colombia, is a manufacturer of pharmaceutical products, including softgel capsules ("gel caps"). (R. Minski Dec. ¶ 3). Procaps contracts with pharmaceutical and healthcare companies to manufacture gel caps for oral consumption. *Id.* The company is an industry leader in gel cap innovation. *Id.* Procaps has operated since 1977 and employs over 3,000 individuals. *Id.* ¶ 4. In addition to creating sustainable quality jobs in the region, Procaps, through the Procaps Foundation, is an avid promoter of social work in poverty stricken communities, benefiting more than 4,000 individuals through its health and nutrition programs. *Id.* ¶ 5. Additionally, the company makes extensive donations to charitable organizations, granting access to medicine and health benefits to low-income populations in northern Colombia. *Id.* Beyond its charitable work, Procaps actively promotes innovation and infrastructure development in regional projects that seek the betterment and growth of the region's healthcare and cultural and business community, including Barranquilla's convention center and hospital complex. *Id.* Procaps is recognized as a respected strategic local ally for the development of innovation and technology in the healthcare industry in the regional and national market. *Id.*

As discussed above, Procaps has appealed the $18,494,846.00 Judgment. *Id.* ¶ 6. Procaps is not financially capable of satisfying the Judgment at this time, nor is it capable of posting a bond sufficient to suspend Patheon's collection efforts. *Id.* Like many companies, Procaps operates profitably but has significant loan commitments which are secured by its assets, including intellectual property. *Id.* The loans would be subject to being called if Procaps

engaged in the type of asset liquidation needed to pay the Judgment or post a sufficient bond, or if its intellectual property were seized. *Id.* Procaps has produced documentation of its audited financial statements and banking information to Patheon as part of its document production and has made substantial offers to resolve this matter in good faith, with settlement discussions ongoing. *Id.*

In addition to gel cap manufacturing, Procaps continually strives to improve the safety and efficacy of its products through its Technology Innovation Department. *Id.* ¶ 7. Success in the gel cap market is driven by innovation and product differentiation geared toward minimizing the risks associated with pharmaceutical treatments, reducing healthcare costs and increasing product safety. *Id.* Procaps owns a number of U.S. patents on its innovations which specifically advance these objectives, giving the company national and international recognition. *Id.*

For example, Procaps owns U.S. Patent No. 9,433,584 (the "584 Patent"), mentioned in Patheon's motion. *Id.* ¶ 8. The 584 Patent encompasses a groundbreaking apparatus and process technology for encapsulating capsules or other solid dosage forms within gel caps which permits the end product to contain two otherwise incompatible components in a single gel cap. *Id.* Formerly, two necessary but incompatible active principle ingredients would need to be administered to the patient in separate pills. *Id.* The 584 Patent permits the components to be contained and administered safely to the individual user in a single gel cap. *Id.* In light of the reduction in manufacturing costs associated with this technology, the 584 Patent ultimately translates into a more sustainable public healthcare system and increases healthcare access to all individuals. *Id.* Patients have an improved chance of successful treatment and recovery by simplified drug therapies by way of fewer pills and/or dosages. *Id.*

Procaps owns similar technology protected by U.S. Patent No. 8,974,820 (the "820 Patent"). *Id.* ¶ 9. The 820 Patent permits microgranules containing two different active ingredients to be contained within a single gel cap. *Id.* The 820 Patent achieves a similar goal as the 584 Patent but in a slightly different form. *Id.*

Procaps also owns U.S. Patent No. 9,675,522 (the "522 Patent"), referenced in Patheon's motion. *Id.* ¶ 10. The 522 Patent revolutionizes the gel cap manufacturing process utilizing the rotary die method for cutting and an electronic method for dosage measuring and dispensing. *Id.* The 522 Patent represents state of the art technology for efficient and effective manufacturing of gel caps assuring accurate dosage within the final product. *Id.*

Procaps owns U.S. Patent No. 8,739,698 (the "698 Patent"), mentioned in Patheon's motion. *Id.* ¶ 11. The 698 Patent is a new method for printing pre-determined words, letters or symbols on a gel cap in the normal course of gel cap production during filling while the product is being encapsulated. *Id.* The 698 Patent reduces the number of steps within the manufacturing process thereby minimizing costs, the risk of errors of cross-contamination and counterfeit pharmaceutical products. *Id.* The 698 Patent is critical technology to product identification, a recurring demand in the healthcare community.

Procaps owns 14 other patents and patent applications not referenced above, all of which are critical to the company's offerings and ultimately to patient care. *Id.* ¶ 12. Assignment of Procaps' patents to a third party would strip Procaps of the ability to utilize its own technology, a direct threat to the company's sustainability. *Id.* ¶ 13. The U.S. market represents approximately 40% of the global pharmaceutical market. *Id.* Procaps' removal from the U.S. market would impact the company globally as a result of reputational harm, as participation in the U.S. market is a bellwether to customers around the world. *Id.* Additionally, the company's national and

international projects and sustainability models are based on Procaps' participation in the U.S. market. *Id.*

Stripping Procaps of its technology also would have a negative impact on the pharmaceutical market and individual consumers who are the ultimate beneficiaries of Procaps' innovations. *Id.* ¶ 14. Procaps relies on the revenue stream created by its gel cap sales, much of which is invested toward innovating new devices and products. *Id.* Loss of its technology prevents Procaps from offering unique products to the market. *Id.* Without innovation, Procaps cannot compete long term, and its viability would be threatened. *Id.* This will have a detrimental effect on innovation and competition, ultimately at the expense of healthcare consumers. *Id.*

The highest and best use of Procaps' technology is for it to remain with Procaps. *Id.* ¶ 15. Procaps employs the inventors of the technology and is best suited to implement and improve upon the technology. *Id.* A forced sale of Procaps' patents will dilute their value and stunt the application and expansion of the technology, to the detriment of Procaps, the healthcare market and the individual user. *Id.*

### III. Discussion

**A.    Equity Does Not Support Assignment of Procaps' Intellectual Property Because Patheon has Other Remedies.**

Proceedings supplementary are equitable in nature. *Donan v. Dolce Vita SA, Inc.*, 992 So. 2d 859, 861 (Fla. 4th DCA 2008) (*cited by Heritage Corp. of South Florida, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2008 WL 4858244, *4 (S.D. Fla. Nov. 10, 2008)). Patheon's Motion should be denied as premature and deficient, but especially as inequitable.

Patheon's Motion is more telling in its *omissions* than in its factual and legal analysis. The supporting Affidavit, like the Motion itself, provides no detail regarding Patheon's efforts to

satisfy the Judgment through legal remedies. This is likely because, as discussed above, these efforts had been abandoned until Procaps highlighted Patheon's sluggish efforts in its motion for an extension to file this response. [D.E. 1407]. Further, the Motion does not address the irreparable harm and inequity that would result from allowing Patheon to eradicate a competitor by seizing its intellectual property while the Judgment is on appeal.

Patheon's legal briefing is similarly lacking. The Motion lacks citation to any authority setting forth the applicable standard for granting the drastic and extraordinary remedy of appointing a receiver to dispose of a debtor's intellectual property. While quick to point out a 19th century case on intellectual property attachment and two out-of-state cases regarding attachment of patents without a receiver,[7] the only *Florida* authority Patheon cites relating to the attachment of intellectual property is *Continental Cigar Corp. v. Edelman & Co., Inc.*, 397 So. 2d 957 (Fla. 3d DCA 1981). *Continental Cigar* indeed involved an appeal of a trial court order requiring a third party to quitclaim its trademark rights to a judgment debtor for the purpose of assignment to a receiver. *Id.* The only issue on appeal, however, was the third party's challenge to the trial court ruling that the judgment debtor owned the trademark. *Id.* Whether and how intellectual property could be seized and applied towards a judgment was not decided.

Notably absent from Patheon's legal discussion is *Ultimate Combustion Co., Inc. v. Fuecotech, Inc.*, 2015 WL 11622426 (S.D. Fla. Apr. 28, 2015), a Magistrate Judge Snow report

---

[7] Patheon cites *Skycam, LLC v. Bennett*, 62 F. Supp. 3d 1261, 1267 (N.D. Okla. 2014), and *Olive Branch Holdings, L.L.C. v. Smith Tech. Dev., L.L.C.*, 909 N.E.2d 671, 683 (Ohio Ct. App. 2009). Neither case addresses the procedure for reaching patents. *Skycam* merely held that "intellectual property is personal property subject to writs of execution" under Oklahoma law. 62 F. Supp. 3d at 1267. Similarly, *Olive Branch Holdings* states only that "a creditor's bill is an appropriate method by which a judgment creditor may subject its debtor's rights in a patent to satisfaction of a judgment." 909 N.E.2d at 683. The court in *Olive Branch Holdings* underscored the importance of appointing a receiver when it pointed out that the trial court vacated its initial order that directed the assignment of the debtor's patents without having "assigned a value to the patents nor provided for their sale as a means of reducing [the debtor]'s judgment." *Id.*

and recommendation, later adopted by Judge Dimitrouleas,[8] which is directly on point. *Ultimate Combustion* involved a claim for patent infringement which resulted in the plaintiff obtaining a judgment for $358,905.82. *Id.* at *1. Unlike here, defendant did not appeal. *Id.* at *2. To satisfy the judgment, plaintiff moved to initiate proceedings supplementary, appoint a receiver, and require the defendant to assign its patents to the receiver for a forced sale to satisfy the judgment. *Id.* at *1.

Defendant opposed the motion and moved to stay, arguing that the validity of the underlying patent was still in dispute based on ongoing proceedings before the U.S. Patent and Trademark Office ("USPTO"). *Id.* In other words, collection proceedings should be stayed because the underlying judgment for patent infringement could be nullified by a USPTO finding that the patent in question was invalid. *Id.* The debtor based its argument on *Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F. 3d 1330 (Fed. Cir. 2013), which held that cancelation of claims by the USPTO is binding on district courts in a pending infringement action, even one on appeal from a district court judgment.

Judge Snow denied the judgment-creditor's motion for proceedings supplementary to attach the debtor's intellectual property, and in so doing made two observations crucial to the issue now before this Court. First, Judge Snow rejected the debtor's argument regarding ongoing proceedings before the USPTO, but only because the debtor failed to appeal. Judge Snow found *Fresenius* to be distinguishable because the underlying decision in *Ultimate Combustion* was *res judicata*. *Id.* at *2. If the debtor had appealed, as Procaps has, Judge Snow signaled that a sale or assignment of patents would have been improper because the because the harm could not be undone if the underlying judgment were to be reversed.

---

[8] *Ultimate Combustion Co., Inc. v. Fuecotech, Inc.*, 2015 WL 11622422 (S.D. Fla. 2015).

Second, despite rejecting the debtor's argument as to USPTO proceedings, Judge Snow denied the motion for proceedings supplementary and ruled as follows:

> [T]he Court still must weigh the potential harm to the parties should a receiver be appointed to marshal all of the Defendants' assets. The Court notes that the Plaintiff has offered no evidence that the Defendants have attempted to fraudulently conceal their assets or otherwise thwart efforts at collection, and the Plaintiff, which has liens on at least some of the patents referred to in its motion, has other remedies. *See Marolax Handels*, 2009 WL 1660036 at *2.

Judge Snow relied on *Marolax Handels-Und Verwaltungsgesellschaft MBH v. 898 5th Ave. S. Corp.*, 2009 WL 1660036, at *1 (M.D. Fla. June 15, 2009), wherein plaintiff moved to appoint a receiver to marshal the debtor's assets. *Id.* at 2. The Court found "the appointment of a receiver to be a drastic and extraordinary remedy." *Id.* The Court noted that the debtor had a single asset – real property. If the receiver took the rents, the debtor would not be able to maintain the property and would lose its sole asset. The court also noted that the Plaintiff has other available remedies, including garnishment and foreclosure on the property. *Id.*

*Galen Tech. Sols., Inc. v. VectorMAX Corp.*, 107 A.D.3d 435 (N.Y. App. Div. 2013) is similar. There the appellate court affirmed the trial court's order denying a judgment creditor's motion to appoint a receiver to take possession of four patents owned by a judgment debtor. The appellate court refused to appoint a receiver because:

1. Plaintiff did not show a "special reason" to appoint a receiver;

2. Plaintiff did exhaust its alternative collection remedies;

3. There was no proof a receivership would increase the likelihood that the judgment would be satisfied because plaintiff did not demonstrate the value or marketability of the four patents and whether their sale would be sufficient to cover the judgment;

4. The sale of its patents would likely jeopardize defendant's operations, thereby preventing it from paying any of its creditors, including plaintiff;

5. Appointing a receiver and selling the patents could create a risk of insolvency, which receivership was designed to avoid; and

6. Plaintiff's application was opposed by another judgment creditor who filed a lien encumbering the patents.

*Id.* at 436.

These reasons apply with equal force here:

1. Patheon has not provided a "special reason" to appoint a receiver. Other less draconian collection efforts are available, including pursuing the 38 writs of garnishments Patheon issued and taking depositions to learn of additional assets to seize.

2. Patheon has leveled accusations but has offered no proof that Procaps has concealed assets or delayed post-judgment discovery.

3. Patheon has provided no proof about the value of Procaps' patents.

4. Procaps has provided proof that the sale of its patents would jeopardize its operations.

5. The sale of its patents would likely lead to Procaps' insolvency.

In short, Patheon has multiple traditional collection remedies available and only partially pursued. Cash is readily available in garnishment as evidenced by Sofgen's Answer to the Writ of Garnishment. [D.E. 1281]. Patheon itself contends that as many as 34 third parties owe Procaps money. Patheon has stood pat on 48 deposition subpoenas which it purportedly believes will lead to the discovery of recoverable assets. On the other hand, seizure of Procaps' patents could sound the death knell for the company. If the fee Judgment is overturned by the Eleventh Circuit Court of Appeal, the damage cannot be undone. Irreparable harm should not be inflicted through an equitable remedy.

For all of these reasons, Patheon's Motion should be denied as deficient, premature and inequitable.

**B.     If the Court Does Not Outright Deny Patheon's Motion, it Should Conduct an Evidentiary Hearing.**

Section 56.29 of the Florida Statutes grants the Court discretion to conduct proceedings supplementary in a manner befitting the circumstances of a given case. *Donan v. Dolce Vita SA, Inc.*, 992 So. 2d at 861. The stakes raised in Patheon's Motion warrant evidentiary proceedings to inform the Court's exercise of discretion.

As discussed above, Patheon's Motion is bare bones. Patheon asserts that it has a valid and unsatisfied judgment, identifies some of Procaps' patents, and requests an order compelling Procaps to appear for examination and execute written assignments to Patheon of all of its intellectual property. [D.E. 1396]. Patheon has not informed the Court of the status of its more conventional execution remedies, nor has it provided any information to the Court regarding the relative gain of pursuing this remedy compared to the irreparable harm that such sales would inflict upon Procaps, the market or the healthcare consumer. *See Ultimate Combustion*, 2015 WL 11622426 at *2. Patheon likewise has proffered no evidence regarding the expected return such sales would generate toward satisfaction of the Judgment compared to the countervailing harms, or whether judgment satisfaction is more likely to be achieved by means that do not cripple Procaps' ability to do business.

Accordingly, if the Court considers granting Patheon the extraordinary relief requested over Procaps' strenuous objection, it should first conduct an evidentiary hearing on, among other things:

1)   Whether Patheon has exhausted other less intrusive means of judgment collection.

2)   The expected harm to Procaps from such sales.

3)   The expected harm to the healthcare market from such sales.

4)   The expected harm to the healthcare consumer from such sales.

5) The expected harm to the global community from such sales.

6) Whether Procaps has fraudulently concealed assets.

7) The value of the patents compared to the size of the Judgment.

8) The expected return from a forced sale compared to the value of the patents and in relation to the expected recovery from other judgment collection remedies.

9) Whether Patheon's Judgment can be protected by less drastic measures, such as injunctive relief prohibiting Procaps from selling its patents during the pendency of the appeal.

10) Whether a receiver should be appointed to sell the patents.[9]

11) Whether patent sales should be broken up and sequenced in such a manner as to inflict the least amount of harm.

In other words, the Court should conduct actual "supplementary proceedings" rather than grant the perfunctory lethal seizure that Patheon seeks.

## IV. Conclusion

For the foregoing reasons, Procaps respectfully requests that the Court deny Patheon's Motion. Alternatively, the Court should conduct an evidentiary hearing to consider whether

---

[9] Unsurprisingly, Patheon's primary requested remedy is an order requiring a direct assignment of Procaps' intellectual property to Patheon, raising the possibility of a receiver only in the alternative. [D.E. 1396 at 8]. Patheon fails to cite a single Florida case authorizing attachment of intellectual property by direct assignment to the judgment creditor. Again, this is not surprising because the weight of authority in Florida and elsewhere is that appointment of a receiver is required to apply a debtor's intellectual property toward a judgment. *See Continental Cigar Corp.*, 397 So. 2d at 957 (affirming trial court's order requiring third party with interest in debtor's intellectual property "to execute documents necessary to quitclaim its right to the trademark and logo to [debtor] and retain[ing] jurisdiction to appoint a receiver"); *Ultimate Combustion Co., Inc.*, 2015 WL 11622426 at *1 (appointment of receiver the exclusive remedy considered as it related to attachment of intellectual property); *Marolax Handels-Und Verwaltungsgesellschaft MBH*, 2009 WL 1660036, at *1 (M.D. Fla. June 15, 2009) (same); *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 2006 WL 297451, at *4 (E.D.N.Y. Feb. 8, 2006) (appointing receiver "because of the lack of marketability of the patent and the difficulty in determining its true value"); *Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.*, 859 N.W.2d 527, 535 (Minn. Ct. App. 2015) (appointing a receiver in order to reach the value of a website and domain name because assignment without a fair process for applying a value to reduce the judgment by created a "potential for judgment creditors to misuse" the remedy).

equitable relief is warranted and, if so, order remedies in a manner which balances the interests of the parties.

## V. Request for Hearing

Pursuant to Southern District of Florida Local Rule 7.1(b)(2), Procaps requests a hearing on this Motion. The Motion seeks extraordinary equitable relief, the ruling upon which could determine the future viability of Procaps. Procaps estimates that approximately two hours is required for the hearing to decide the threshold issue of whether the Motion should be denied outright or set for evidentiary hearing.

Respectfully submitted,

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Telephone: (305) 377-0700
Facsimile: (305) 377-3001
*Counsel for Procaps S.A.*

By: /s/Craig Salner
 Spencer H. Silverglate
 Florida Bar No. 769223
 ssilverglate@cspalaw.com
 mpedraza@cspalaw.com
 Francisco Ramos, Jr.
 Florida Bar No. 114766
 framos@cspalaw.com
 cdeleon@cspalaw.com
 Craig Salner
 Florida Bar No. 669695
 csalner@cspalaw.com
 aford@cspalaw.com
 Eduardo R. Robayna
 Florida Bar No. 118399
 erobayna@cspalaw.com
 socd@cspalaw.com

CASE NO. 12-cv-24356-JG

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct of the foregoing was electronically served on January 12, 2017 to the attorneys of record listed below.

CLARKE SILVERGLATE, P.A.

By: /s/Craig Salner
Craig Salner

| | |
|---|---|
| David A. Vogel, Esq.<br>Douglas P. Lobel, Esq.<br>Robert T. Cahill, Esq.<br>Cooley, LLP<br>One Freedom Square<br>Reston Town Center<br>11951 Freedom Drive<br>Reston, VA  20190-5656<br>Telephone (703) 456-8000<br>dvogel@cooley.com<br>dlobel@cooley.com<br>rcahill@cooley.com<br><br>Mary Kathryn Kelley, Esq.<br>Mazda K. Antia, Esq.<br>Cooley, LLP<br>4401 Eastgate Mall<br>San Diego, CA  92121<br>Telephone (858) 550-6000<br>mkkelley@cooley.com<br>mantia@cooley.com | Dee Bansal, Esq.<br>Joshua M. Siegel, Esq.<br>M. Howard Morse, Esq.<br>Marc Schildkraut, Esq.<br>Michael J. Klisch, Esq.<br>Meredith M. Snyder, Esq.<br>Cooley, LLP<br>1299 Pennsylvania Avenue, N.W.<br>Suite 700<br>Washington, DC  20004<br>Telephone (202) 842-7800<br>dbansal@cooley.com<br>jsiegel@cooley.com<br>hmorse@cooley.com<br>mschildkraut@cooley.com<br>mklisch@cooley.com<br>msnyder@cooley.com |
| Gavin Cunningham Gaukroger, Esq.<br>Berger Singerman LLP<br>350 East Las Olas Boulevard<br>Suite 1000<br>Fort Lauderdale, FL  33301<br>Telephone (954) 525-9900<br>ggaukroger@bergersingerman.com | Justin B. Elegant, Esq.<br>Berger Singerman LLP<br>1450 Brickell Avenue, Suite 1900<br>Miami, FL  33131<br>Telephone (305) 755-9500<br>jelegant@bergersingerman.com |

436408